MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Telephone: (516) 741-6565
Facsimile: (516) 741-6706
Erica B. Garay, Esq.
Lynn M. Brown, Esq.
egaray@msek.com
lbrown@msek.com
Attorneys for Defendants

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RITANI, LLC,

                                          Plaintiff,

                    - against -

HAROUT AGHJAYAN; HAROUT R, LLC; H. RITANI,
INC.; H. RITANI, LLC; H. RITANI, CORP.; and AMAZING
SETTINGS, LLP,

                                          Defendants.

---

Case No.
11-CV-8928 (RWS) (GWG)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

**Page**

Table of Authorities ................................................................................................................. ii

Statement of Facts ................................................................................................................... 1

    The Complaint ..................................................................................................................... 4

    Standard on this Motion ...................................................................................................... 7

Argument ................................................................................................................................ 8

   I.    Count I Fails to State a Claim for Copyright Infringement ........................................... 8

   II.   Counts II-VII Should Be Dismissed (federal and state trademark) ............................ 12

   III.  Counts VIII and IX Should Be Dismissed (state statutory claims) ............................ 21

   IV.  Count X Based upon Misappropriation of Trade Secrets Should Be
        Dismissed ...................................................................................................................... 22

   V.   Count XI for Common Law Tortious Interference Should Be Dismissed ................... 25

   VI.  Count XII Based upon the *Mohawk* Implied Covenant Should Be
        Dismissed ...................................................................................................................... 26

   VII.  Count XV Should Be Dismissed Because Preparatory Acts or Actions
        Taken After Employment Ends Are Not Breaches of Loyalty or
        Fiduciary Duty .............................................................................................................. 28

   VIII. Counts XIII, XIV, XVI and XVII Should Be Dismissed ........................................... 31

   IX.  Diversity Jurisdiction Is Lacking ................................................................................ 34

Conclusion ............................................................................................................................ 34

# TABLE OF AUTHORITIES

CASES

Abraham Zion Corp. v. Lebow,
  593 F.Supp. 551 (S.D.N.Y. 1984), aff'd, 761 F.3d 93 (2d Cir.1985) ....................................29

Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related
  Disorders Assoc., Inc.,
  2011 U.S. Dist. LEXIS 56282 (S.D.N.Y. May 25, 2011) ..........................................................21

Amana Express Int'l, Inc. v. Pier-Air, Int'l, Ltd.,
  211 A.D.2d 606 (2d Dep't 1995) ....................................................................................................24

Argentto Sys., Inc. v. Subin Assocs., LLP,
  2011 U.S. Dist. LEXIS 68141 (S.D.N.Y. Jun. 24, 2011) ..........................................................34

Ashcroft v. Iqbal,
  556 U.S. 662, 129 S.Ct. 1937 (2009) .........................................................................Passim

Ashland Mgmt. v. Janien,
  82 N.Y.2d 395 (1993) .......................................................................................................... 22-23

Attia v. Soc'y. of the N.Y. Hosp.,
  201 F.3d 50 (2d Cir. 1999) ..............................................................................................................11

Bajan Group, Inc. v. Consumers Interstate Corp.,
  28 Misc.3d 1227(A) (S.Ct. Albany Co. Aug. 12, 2010) ..........................................................34

Bell Atl. Corp. v. Twombly,
  550 U.S. 544, 127 S.Ct. 1955 (2007) .....................................................................................7, 17

Bessemer Trust Co. v. Branin,
  16 N.Y.3d 549 (2011) ...............................................................................................................26, 28

Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,
  973 F.2d 1033 (2d Cir. 1992)…......................................................................................................17

Carvel Corp. v. Noonan,
  350 F.3d 6 (2d Cir. 2003)..................................................................................................................25

Coach, Inc. v. Peters,
  386 F.Supp.2d 495 (S.D.N.Y. 2005)..............................................................................................15

Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.,
  42 N.Y.2d 496 (1977) ......................................................................................................................24

Constantin Assocs. v. Kapetas,
  17 Misc.3d 1137(A), 851 N.Y.S.2d 68 (S.Ct. N.Y. Co. 2007).............................................29

Contractual Obligation Prods., LLC v. AMC Networks, Inc.,
  546 F.Supp.2d 120 (S.D.N.Y. 2008)..............................................................................................35

CreditSights, Inc. v. Ciasullo,
  2008 U.S. Dist. LEXIS 91481 (S.D.N.Y. Sept. 5, 2008)..........................................................32

DBC of N.Y., Inc. v. Merit Diamond Corp.,
  768 F.Supp.414 (S.D.N.Y. 1991) ..................................................................................................12

*DeSantis v. City of Troy,*
  83 Misc.2d 195 (S.Ct. Rensselaer Co. 1975) ..........................................................25

*Diamond Direct, LLC v. Star Diamond Group, Inc.,*
  116 F.Supp.2d 525 (S.D.N.Y. 2000)..........................................................................12

*Diesel Props. S.R.L. v. Greystone Bus. Credit II LLC,*
  631 F.3d 42 (2d Cir. 2011)..........................................................................................32

*Don Buchwald & Assocs., Inc. v. Marber-Rich,*
  11 A.D.3d 277 (1st Dep't 2004) ................................................................................28

*Dove v. Fordham Univ.,*
  56 F.Supp.2d 330 (S.D.N.Y. 1999),
  *aff'd sub nom., Dove v. O'Hare,* 210 F.3d 354 (2d Cir. 2000)................................8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
  499 U.S. 340, 111 S.Ct. 1282 (1991)........................................................................10

*Gen. Outlet Corp. v. Acronite Corp.,*
  467 F.Supp. 269 (S.D.N.Y. 1979) .........................................................................19-21

*Houbigant, Inc. v. IMG Fragrance Brands, LLC,*
  2009 U.S. Dist. LEXIS 119478 (S.D.N.Y. Dec.18, 2009) .......................................7

*Howard Sys. Int'l Inc. v. IMI Sys., Inc.,*
  192 A.D.2d 371 (1st Dep't 1993) ...............................................................................24

*In re Blockbuster Inc.,*
  2011 Bankr. LEXIS 1025 (Bankr. S.D.N.Y. Mar. 17, 2011) ..................................7

*Ipreo Holdings LLC, v. Thomson Reuters Corp.,*
  2011 U.S. Dist. LEXIS 25356 (S.D.N.Y. Mar. 7, 2011) .........................................8

*Judith Ripka Designs, Ltd. v. Preville,*
  935 F.Supp. 237 (S.D.N.Y. 1996) .......................................................................12, 17

*Kelly v. L.L. Cool J.,*
  145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd,* 23 F.3d 398 (2d Cir. 1994).........................9

*Knitwaves, Inc. v. Lollytogs Ltd.,*
  71 F.3d 996 (2d Cir. 1995) .....................................................................................10-11

*Kronos, Inc. v. AVX Corp.,*
  81 N.Y.2d 90 (1993) ....................................................................................................26

*Kuklachev v. Gelfman,*
  600 F.Supp.2d 437 (E.D.N.Y. 1992) ................................................................9, 12-13

*L-7 Designs, Inc. v. Old Navy, LLC,*
  647 F.3d 419 (2d Cir. 2011)........................................................................................32

*LaChapell v. Fenty,*
  2011 U.S. Dist. LEXIS 80337 (S.D.N.Y. Jul.20, 2011). ...................................11, 13

*Landscape Forms, Inc. v. Columbia Cascade Co.,*
  113 F.3d 373 (2d Cir. 1997)........................................................................................21

*Lapine v. Seinfeld,*
375 Fed.Appx. 81 (2d Cir. 2010) ..................................................................21

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
454 F.3d 108 (2d Cir. 2006) ................................................................... 12-13

*M. Fabrikant & Sons, Ltd. v. Fabrikant Fine Diamonds, Inc.,*
17 F.Supp.2d 249 (S.D.N.Y. 1998) ..............................................................16

*Madrigal Audio Labs., Inc. v. Cello, Ltd.,*
799 F.2d 814 (2d Cir. 1986) ...............................................................16, 28

*Marietta Corp. v. Fairhurst,*
301 A.D.2d 734 (3d Dep't 2003) ..................................................................24

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.,*
938 F.2d 1544 (2d Cir. 1991) ......................................................................13

*Medinol Ltd. v. Boston Scientific Corp.,*
346 F.Supp.2d 575 (S.D.N.Y. 2004) ..................................................... 23-24

*MGM Court Reporting Serv. v. Greenberg,*
143 A.D.2d 404 (2d Dep't 1988),
*aff'd on other grounds,* 74 N.Y.2d 691 (1989) .........................................27

*Mills v. Polar Molecular Corp.,*
12 F.3d 165 (2d Cir. 1993) ............................................................................1

*Mitel Telecomms. Sys. v. Napolitano,*
226 A.D.2d 475 (1st Dep't 1996) .................................................................27

*Mohawk Maint. Co. v. Kessler,*
52 N.Y.2d 276 (1981) ........................................................................... 26-28

*Muniz v. Morillo,*
2008 U.S. Dist. LEXIS 69163 (S.D.N.Y. Sept. 10, 2008) .....................13, 19, 34

*Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.,*
198 F.Supp.2d 474 (S.D.N.Y. 2002) ............................................................22

*N. Atl. Instr., Inc. v. Haber,*
188 F.3d 38 (2d Cir. 1999) ..........................................................................23

*Omicron Capital, LLC v. Omicron Capital, LLC,*
433 F.Supp.2d 382 (S.D.N.Y. 2006) ............................................................13

*Onwuka v. N.Y.C. Taxi Limousine Comm'n,*
2012 U.S. Dist. LEXIS 1663 (E.D.N.Y. Jan. 6, 2012) ............................7

*Orange County Choppers, Inc. v. Olaes Enters. Inc.,,*
497 F.Supp.2d 541 (S.D.N.Y. 2007) ............................................................33

*Perkins Sch. for the Blind v. Maxi-Aids, Inc.,*
274 F.Supp.2d 319 (E.D.N.Y. 2003) ............................................................22

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
602 F.3d 57 (2d Cir. 2010) ..................................................................... 10-11

*Reed, Roberts Assocs., Inc. v. Strauman,*
   40 N.Y.2d 303 (1976) ....................................................................................24

*Scott Paper Co. v. Finnegan,*
   101 A.D.2d 787 (1st Dep't 1984) ...................................................................24

*Securitron Magnalock Corp. v. Schnabolk,*
   65 F.3d 256 (2d Cir. 1995)...............................................................................13

*Silipos, Inc. v. Bickel,*
   2006 U.S. Dist. LEXIS 54946 (S.D.N.Y. Aug. 8, 2006).................................24

*sit-up Ltd. v. IAC/Interactive Corp.,*
   2008 U.S. Dist. LEXIS 12017 (S.D.N.Y. Feb. 20, 2008).................................23

*Solomon v. Bell Atl. Corp.,*
   9 A.D.3d 49 (1st Dep't 2004) .........................................................................13

*Star Indus., Inc. v. Bacardi & Co. Ltd.,*
   412 F.3d 373 (2d Cir. 2005).............................................................................15

*Stork H&E Turbo Blading, Inc. v. Berry,*
   32 Misc.3d 1208(A), 932 N.Y.S.2d 763 (S.Ct. Tompkins Co. Jun. 30, 2011).......................29

*Sybron Corp. v. Wetzel,*
   61 A.D.2d 697 (4th Dep't 1978) .....................................................................24

*Telebrands Corp. v. Del Labs, Inc.,*
   719 F.Supp.2d 283 (S.D.N.Y. 2010)...........................................................9, 13, 21

*Titus & Donnelly v. Poto,* 205 A.D.2d 475 (1st Dep't 1994)....................................27

*Tulumello v. Taylor Int'l Constr. Co., Inc.,*
   84 A.D.2d 903 (4th Dep't 1981) .................................................................28-29

*U.S. ex rel. Evergreen Pipeline Constr. v. Merritt Meridian Constr. Corp.,*
   95 F.3d 153 (2d Cir. 1996)...............................................................................33

*USI Ins. Servs. LLC v. Miner,*
   2011 U.S. Dist. LEXIS 74623 (S.D.N.Y. Jul. 7, 2011) ..................................28

*Walter Karl, Inc. v. Wood,*
   137 A.D.2d 22 (2d Dep't 1988) ..................................................................28-29

*Washington v. Kellwood Co.,*
   2009 U.S. Dist. LEXIS 32565 (S.D.N.Y. Mar. 24, 2009) ...............................33

*Wilkinson v. Cmty. Preservation Corp.,*
   2009 N.Y. Misc. LEXIS 4753 (S.Ct. N.Y. Co. Mar. 11, 2009)....................31-32

*Yurman Design, Inc. v. Golden Treasure Imps., Inc.,*
   275 F.Supp.2d 506 (S.D.N.Y. 2003).............................................................10-11

*Yurman Design, Inc. v. PAJ, Inc.,*
   262 F.3d 101 (2d Cir. 2001)...............................................................10, 13, 17-18

*Zurich Depository Corp. v. Gilenson,*
   121 A.D.2d 443 (2d Dep't 1986) .....................................................................24

# <u>Table of Authorities</u>

## <u>(continued)</u>

### STATUTES

15 U.S.C. § 1114........................................................................................12, 20

15 U.S.C. § 1114(a).........................................................................................12

15 U.S.C. § 1125.............................................................................................20

15 U.S.C. § 1125(a) ........................................................................................12

17 U.S.C. § 505...........................................................................................1, 35

Fed. R. Civ. P. 8................................................................................................9

Fed. R. Civ. P. 12(b)(1).....................................................................................1

Fed. R. Civl. P. 12(b)(6).................................................................................1, 7

N.Y. G.B.L. § 349..................................................................................13, 21, 22

N.Y. G.B.L. § 350............................................................................................13

N.Y. G.B.L. § 360-I.........................................................................................21

Defendants submit this Memorandum of Law in support of their motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and 17 U.S.C. §505, on grounds that its seventeen claims are implausible, duplicative, inadequately pled, or because Plaintiff lacks capacity to raise certain claims. In addition, this Court lacks subject matter jurisdiction to hear certain claims as to some Defendants. In addition, Defendants seek their attorneys' fees.

The sole individual defendant, Harout Aghjayan ["Harout"] is a premier diamond ring designer, whose contractual non-compete ended in late 2010. By this suit, Plaintiff Ritani, LLC ["Plaintiff" or "LLC"] seeks to saddle Harout with restrictive covenants far broader those which it was able to obtain by negotiation, and which, if granted, would deprive Harout of his livelihood. LLC agreed by contract that Harout could sell, design and distribute diamond rings in competition with Plaintiff and sell to "Ritani customers" after his limited post-employment non-competition agreement expired. Now, however, fearful that he poses a competitive threat, LLC relies on a host of federal and state statutory and common law claims, including alleged copyright and trademark infringement (which have no basis in law or fact) in an unjustified and ham-handed attempt to remove Harout, a legitimate and talented ring designer, from the jewelry marketplace forever.

## Statement of Facts[1]

Harout was the founder, sole shareholder and chief designer of H. Ritani, Corp. ("Ritani Corp."), a diamond ring manufacturer. In or about 2002, he sought an investor for Ritani Corp. In March 2002, a new LLC was created called "Ritani, LLC" – the Plaintiff herein. In a complex transaction, Ritani Corp. contributed assets, including certain of its trademarks and copyrights, to

---

[1] For purposes of this motion, the statement of facts as set forth in the complaint are deemed to be true, except where they are disputed by documentary evidence or mere unsupported allegations. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). For a further statement of the facts, the Court is respectfully referred to the accompanying affidavit of Harout Aghjayan, sworn to February 1, 2012 ("Harout Aff.").

LLC in an exchange for a membership interest. It then conveyed a 41% interest to two companies, Julius Klein Diamonds, Inc. ("JKD") and For Krunch, LLC ("FK") (neither of which is a party hereto). Exs.1-3.[2] Harout initially owned a 44% membership interest in LLC. (JKD and FK also owned the remaining membership interests.) A list of Ritani Corp.'s largest customers were identified in Schedule 3.18 to Ex.1 (but was misplaced in Plaintiff's exhibits to the complaint) and is annexed to the Harout Aff. as Ex. B) and those relationships were addressed in §3.18.[3] The Operating Agreement provided that *members* could not compete against LLC, but expressly permitted JKD to do so. Ex.4, §5.6.4. The "Membership Interest Purchase Agreement," Ex.1, did not contain any restrictive covenant or confidentiality provision. Harout had no voting power. In March 2002, Harout was given an employment agreement with LLC. Ex.5. By December 2002, JKD was given control (51%) of LLC, Ex. 6, and in May 2003, Harout's 44% interest in LLC was "transferred to the Klein Group" – controlled by JKD – and Harout's direct ownership ended, and the non-competition provision of the Operating Agreement, applicable only to members, no longer applied to him. Ex.7. Over the next few years, through 2007, other tranches of ownership in *LLC* were acquired by JKD from *Ritani Corp.*; by 2007, JKD was Plaintiff's sole member. Ex.10. The exhibits to the complaint establish that the only purchasers of membership interests in LLC were non-parties JKD and FK (later bought out by JKD); the only conveyor of goodwill to Plaintiff was Ritani Corp. Harout himself did not individually contribute any assets or goodwill to LLC. Ex.2.

In 2002, LLC entered into an Employment Agreement (Ex. 5) with Harout, which provided that Harout would be employed by LLC as its CEO and contained a non-competition

---

[2] All numbered exhibits refer to the exhibits to the complaint. All lettered exhibits refer to the exhibits annexed to the Aghjayan Affidavit.

[3] Initially, JKD owned 10%, For Krunch 5%, Ritani Corp. 44% and Harout 41%, but Ritani and JKD each had 50% of the voting powers.

clause. In 2004, LLC entered into a superseding Employment Agreement ("2004 EA") with Harout (Ex. 9), which provided that he would be LLC's President, CEO and COO. The 2004 EA contained a *limited* non-compete and confidentiality agreement, which provided for a one-year non-compete post-employment. Ex. 9, §6.b. Expressly excluded from the scope of the confidentiality agreement was information "generally known in the diamond industry." *Id.* §6(a)(ii). The non-compete did not completely bar Harout from working in the industry, just in connection with companies that competed with Plaintiff.

On November 1, 2009, Harout left LLC's employ, after he advised of his intention to compete once the one-year non-competition provision ended on October 31, 2010. Harout Aff., ¶16, Shortly before that its expiration date, on October 20, 2010, the non-compete in the 2004 EA was expressly *modified* by letter agreement, Ex.12 (emphasis added):

> It is agreed that the effective ending date of the aforementioned blanket non-compete provision is amended to end on 10/14/10. In return, Aghjayan agrees that from this date and until 12/31/10, he is prohibited from selling, supplying, or consigning, jewelry of any type, to any current Ritani customer and in addition, will not attend the Centurian Show in January/February, 2011. A Ritani customer is defined as a retail seller of Ritani product appearing on the Ritani.Com website at the time that Aghjayan negotiates an order for any product. Sales to non-Ritani customers is permissible effective 10/14/10 and we hereby acknowledge that you may have had a casual conversation with a few potential non-Ritani customers prior to this time.

> All provisions of the 11/1/04 Employment Agreement, other than the changes noted above, remain in effect.

Thus, the non-compete, as modified, permitted Harout to sell to any "current Ritani customer" (as defined therein) after December 31, 2010 (prohibiting attendance at a specific tradeshow). Importantly, LLC expressly agreed that "Sales to non-Ritani customers" were "permissible effective 10/14/10" and acknowledged Harout's conversations with "potential non-Ritani customers prior to this time" without protesting such. Thus, Harout could compete with Ritani in connection with the sale of jewelry, including diamond rings, after December 31, 2010, with

no restrictions.

The name "Ritani," obviously more pronounceable than Harout's own surname, Aghjayan, was created by him based on his daughters' names. Although not his legal name, he was often referred to in the industry as "Harout Ritani" long before the creation of LLC. While its CEO and designer, Plaintiff gave him business cards that identified him by that name. Ex. C. The rights to the name "Ritani" were not transferred to LLC until August 2007. Ex.11, ¶5.2. In connection therewith, Harout and Ritani Corp. agreed not to use "Ritani" in connection with a competitive business, or any "similar" name as long as LLC engaged in the manufacture, sale and distribution of jewelry. Harout's use of the letter "R" was not prohibited, nor was he prohibited from naming a business using his own first name. Rings sold by Harout R bear that name − not Ritani − on the shank. Ex. J.

After leaving the LLC's employ on November 1, 2009, Harout formed a company called "Harout R LLC" on September 13, 2010 (Ex.21), created a website for "Harout R" on July 29, 2010 (Ex.19), and formed "Amazing Settings LLP" on November 9, 2009. Ex.20.

**The Complaint**

The only Plaintiff in this case is LLC. The seventeen-count complaint alleges federal copyright infringement (count I); federal trademark infringement and false advertising (counts II-IV); state false advertising (count V); trademark (counts VIII-IX) and common law trademark infringement under state law (count VI); state unfair competition (count VII), trade secrets (count X), "tortious interference with business relationships" (count XI), breach of the implied covenant of non-solicitation (count XII), "breach of contract and common law non-competition" (count XIII), unjust enrichment (count XIV), breach of fiduciary duty and loyalty (count XV), and breach of the implied covenant of good faith and fair dealing (count XVI), and imposition of a constructive trust (count XVII). The specific factual allegations concerning these claims are

addressed *infra*. Most allegations are expressly based upon mere "information and belief."

The complaint makes no effort to specify against which Defendant any particular claim is pled. Indeed, each claim makes allegations as to "Defendants.[4]" Annexed to the complaint are several agreements (but notably, neither Plaintiff nor each Defendant are parties to every agreement), as well as various photographs of diamond rings.

As evidenced by the complaint, Plaintiff regrets that it did not do more to prevent Harout, who left its employ over two years ago, from using his natural talent as a diamond ring designer to earn a living or from using the letter "R", including by extending the length and scope of his now expired non-compete. Plaintiff's allegation that Harout is using the name "Ritani" to sell jewelry in connection with his new venture, "Harout R" is completely unsupported, and is not based upon fact. Importantly, the exhibits establish that Defendants Harout and Harout R and Amazing Settings have expressly identified themselves to the public as <u>not</u> being currently associated with Plaintiff, describing "Harout R" as a *new* company, *not* affiliated with Plaintiff, and formed *after* he sold his interest in LLC – all of which is true and/or biographical.

Plaintiff's effort to create a non-compete by reliance on statutory and common law claims is unavailing. Neither trademark nor copyright statutes are intended to be used to prevent legitimate competition or to prevent an artist such as Harout from going out on his own and marketing new designs under a different name. Furthermore, as shown by the Harout Aff., and the documents in the appendix hereto, Plaintiff's rings and those sold by Harout R are not "substantially similar," nor are the trademarks, logos and name of this new company he now owns likely to be confused with the name "Ritani" or the Ritani logo. If Plaintiff is complaining

---

[4] Harout R and Amazing Settings design, manufacture and sell diamond rings wholesale. Harout R's customers are high-end jewelry stores; Amazing Settings manufactures private label products for retailers, creating "house brands" for them. Harout Aff., ¶¶22, 32.

about the use of the letter "R," it never trademarked its use of that unstylized letter (because it could not), and cannot legitimately stop its use (and a stylized "R" has not been "copied").

Importantly, the marketing materials of Harout R annexed to the complaint make it very clear that Harout R is unaffiliated in any way with Plaintiff. To the extent its marketing materials make reference in <u>Harout's personal biography</u> to the fact that he was also the founder of Ritani Corp. or formerly known as "Harout Ritani," they are merely stating unactionable facts. Further, those materials make it crystal clear that his relationship with "Ritani" ended in 2009. Plaintiff complains that Harout is supposedly using the name "Harout Ritani" – but significantly, it does not offer any facts that he has ever identified himself or his competing jewelry using that name. Indeed, Plaintiff does not allege that any of its customers has <u>ever</u> confused Ritani and Harout R (or Amazing Settings). As a matter of law, LLC cannot show that a retailer buying a ring from a Defendant is likely to be confused or believe it is buying a product of LLC's – since Harout R and Amazing Settings <u>expressly</u> disclaim any relationship with LLC and the Harout R rings contain such name on their shanks.

The complaint also improperly seeks to impose a duty upon all Defendants, including Harout, Harout R and Amazing Settings not to solicit the LLC's customers, supposedly based upon New York case law permitting a *buyer* of goodwill to enforce an implied covenant against its seller not to solicit the goodwill sold. The documents annexed to the complaint demonstrate that Harout, Harout R and Amazing Settings never sold any goodwill to <u>Plaintiff</u>. Even if Harout were deemed to be seller of goodwill to Plaintiff (which he is not), or Plaintiff were deemed the buyer of such (which it is not) that it could enforce such a covenant, the covenant not to solicit applies only Ritani Corp.'s customers that were actually "sold" in 2002 to LLC. Most importantly, because the parties expressly <u>agreed</u> that Harout could sell to non-LLC customers as

of October 14, 2010 and to LLC's current customers after December 31, 2010 (Ex.12), which could include those "sold" years earlier, the implied covenant permanently barring solicitation is simply inapplicable – it was negotiated away. Other, state law claims, to the extent subject matter jurisdiction exists, are not pled properly or are merely duplicative of implausible federal claims. Finally, imposition of a constructive trust is merely a remedy – unavailable here – and not a separate cause of action. For all these reasons, discussed more fully below, this motion should be granted in its entirety.

## Standard on this Motion

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Houbigant, Inc. v. IMG Fragrance Brands, LLC,* 2009 U.S. Dist. LEXIS 119478, at *5 (S.D.N.Y. Dec.18, 2009). Where a "pleading is porous – essentially skin and bones, and largely without the flesh to justify the conclusions presented," *i.e.,* where "[e]ssential facts are largely pled on unsourced information and belief" it will not "support a plausibility finding." *In re Blockbuster Inc.,* 2011 Bankr. LEXIS 1025, at *8 (Bankr. S.D.N.Y. Mar. 17, 2011). The Court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 129 S.Ct. at 1950 (citation omitted).

Furthermore, allegations in a complaint must be complete enough to enable a reader to understand how <u>each defendant</u> was personally involved in the wrongdoing plaintiff is alleging. *Onwuka v. N.Y.C. Taxi Limousine Comm'n,* 2012 U.S. Dist. LEXIS 1663, at *11 (E.D.N.Y. Jan. 6, 2012). As this Court has held, "[i]t is well-settled that 'where the complaint names a

defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y. 1999)(Sweet, J), *aff'd sub nom., Dove v. O'Hare,* 210 F.3d 354 (2d Cir. 2000).

The lengthy complaint here, upon scrutiny, has no meat on its bones. Indeed, most of the substantive allegations are against "Defendants" collectively, and are expressly made on "information and belief." It consists of "mere conclusory statements" and "threadbare recitals of the elements of a cause of action," insufficient to withstand this motion. *Ipreo Holdings LLC, v. Thomson Reuters Corp.,* 2011 U.S. Dist. LEXIS 25356, at *7 (S.D.N.Y. Mar. 7, 2011).

<u>Argument</u>

## I.  <u>Count I Fails to State a Claim for Copyright Infringement</u>

Plaintiff's copyright infringement claim is premised upon the allegation that "*upon information and belief,*" *Defendants* made "copies or substantial copies of the works." Compl.¶81 (emphasis added). Plaintiff, beginning at Compl.¶70, alleges that "Defendants" used Plaintiff's copyrighted designs in April 2011, described as "virtual copies of Plaintiff's styles and designs" under the Harout R brand. Plaintiff continues, "*[b]ased upon information and belief,* Defendant Aghjayan was able to create these designs by using [LLC's] copyrighted designs," and that "[a]s a result of the collective actions of Defendants, spanning over the past five years, Defendants have used [LLC's] full panoply of intellectual property rights to Defendants' own benefit to compete with, and solicit customers from, [LLC] to the detriment of Plaintiff's business reputation and goodwill." *Id.,*¶¶70, 74 (emphasis added). In support, Plaintiff offers <u>no facts</u>, but rather merely refers to copyright registrations (Ex.17) and photographs (Exs.26 and 27) as "comparisons." Significantly, Plaintiff never articulates how protected elements of the specific diamond rings depicted are supposedly substantially similar, infringing on Plaintiff's

copyrights. Indeed they are not.

To withstand a motion to dismiss, a complaint for copyright infringement must allege: (1) which original works are the subject of the claim; (2) that the plaintiff owns the copyrights; (3) the copyrights have been registered properly; and (4) by what acts during what time the defendant infringed thereon. *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd,* 23 F.3d 398 (2d Cir. 1994). Fed. R. Civ. P. 8 requires that particular copyright infringing acts be set out with some specificity, and broad, sweeping allegations of infringement are insufficient. *Kuklachev v. Gelfman,* 600 F.Supp.2d 437, 473 (E.D.N.Y. 1992).

Here, Plaintiff has not pled the critical fourth element as to Ex. 27, nor alleged a copyright of Ex. 26. Instead of alleging "by what acts during what time" a defendant infringed the copyright, it improperly relies on broad, sweeping allegations. It is unclear if the claim is based upon copyrights obtained for the "Ritani Show Collection," and the "Endless Love" and "2011 January Ritani show Collection." Compl.¶78; Ex.17. Plaintiff alleges the supposed infringement spanned "over the past five years," but pleads <u>no specific actions</u> during that period taken by any particular defendant that specifically violated any of these copyrights. Compl.¶74. At most, Plaintiff alleges that unspecified "Defendants have also used Plaintiff's copyright protected designs to create their design portfolio." *Id.,*¶70. <u>No facts are alleged</u> in the complaint identifying which Defendant(s) allegedly created that portfolio (and it could not have been Defendants Ritani Corp., Ritani, Inc. or Amazing Settings, LLP, as no allegations whatsoever are made against them in that regard), or when, or <u>any facts</u> supporting Plaintiff's claim that any defendant used <u>protected aspects</u> of those copyrighted collections in creating that portfolio. *Telebrands Corp. v. Del Labs., Inc.,* 719 F. Supp.2d 283 (S.D.N.Y. 2010). For this reason alone, this claim should be dismissed.

But this claim is infirm for other reasons as well. To prove infringement, Plaintiff must show that defendant(s) <u>actually copied</u> its copyrighted works and that such copying was illegal because a <u>substantial similarity</u> exists between the alleged infringer's jewelry designs and the protectable elements of the claimant's designs. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282 (1991). While the question of substantial similarity is typically a question of fact, "in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito Architecture, LLC v. Simone Dev.. Corp.,* 602 F.3d 57 (2d Cir. 2010). Under either of these tests, the requisite substantial similarity is lacking here as a matter of law.

In copyright infringement cases concerning jewelry designs, one of two tests have been used to determine whether an alleged copy is substantially similar so as to violate copyright law: (1) the "ordinary observer" test; or (2) the "discerning observer" test. "The ordinary observer test asks 'whether the ordinary observer, unless he set out to detect the disparities [between the two works], would be disposed to overlook them, and regard their aesthetic appeal as the same.'" *Yurman Design, Inc. v. Golden Treasure Imps., Inc.,* 275 F.Supp.2d 506, 516 (S.D.N.Y. 2003), quoting *Folio Impressions, Inc. v. Byer Cal.,* 937 F.2d 759, 765 (2d Cir. 1991). If "an average lay observer would recognize [ ] the alleged copy as having been appropriated from the copyrighted work, then the two products are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995). "The fact-finder must examine the works for their total concept and feel.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)(quotation marks and citations omitted). However, "[w]hen a work contains both protectable and unprotectable

elements, the inspection must be more discerning" and the "discerning observer" test applies. *Golden Treasure,* 275 F.Supp.2d at 516. When applying this test, the Court "must attempt to extract the unprotectable elements from [its] consideration and ask whether the protectable elements, standing alone, are substantially similar." *Id.,* quoting *Knitwaves,* 71 F.3d at 1008. "This more discerning test does not change the degree of similarity required, only what elements of the works are being compared." *Id.* "Ultimately the inquiry focuses upon whether the alleged infringer has misappropriated 'the original way in which the author has selected, coordinated, and arranged' the elements of his or her work." *LaChapelle v. Fenty,* 2011 U.S. Dist. LEXIS 80337, at *12 (S.D.N.Y. Jul. 20, 2011), quoting *Knitwaves,* 71 F.3d at 1004.

Here, the complaint does not contain any allegations as to any particular elements of the rings that are supposedly protected, much less are "substantially similar." LLC apparently (as it never says) complains about functional elements of the rings, *i.e.,* the location of the stone, type of shank, how the prongs hold the main stone, matters which "even when viewed in the aggregate, do not represent plaintiffs' personal expression, but instead mere ideas that may be taken and utilized by a successor without violating the copyright of the original author or designer." *Peter F. Gaito Architecture, LLC,* 602 F.3d at 68. *See Attia v. Soc'y of the N.Y. Hosp.,* 201 F.3d 50, 55 (2d Cir. 1999) ("generalized notions of where to place functional elements" are unprotectable).

Assuming, however, for the sake of argument, the rings have both protectable and unprotectable elements, as shown in the Harout Aff. and the appendix hereto, Harout has not, as a matter of law, misappropriated "the original way" in which he (when he designed for Plaintiff), "selected, coordinated, and arranged" the elements of the diamond rings. Indeed, Plaintiff admits that the rings are different, conceding the designs were "tweak[ed]." Compl.¶49. As

demonstrated on this motion, however, the rings in Ex. 27 not only were <u>not copied</u>, they were intentionally made <u>dissimilar</u>. In fact, when juxtaposed, as they are in the pictures in the appendix, it is obvious that the rings are more than "tweaked," as alleged, but rather, neither copied nor "substantially similar." For this reason, neither the ordinary nor discerning observer could conclude that the protected aspects of the Harout R rings are copied and substantially similar to the rings identified in Ex. 17. The design elements are <u>dissimilar</u> as a matter of law.

As Plaintiff has not alleged and could not establish a copyright violation, its copyright claim should be dismissed as a matter of law. *See Diamond Direct, LLC v. Star Diamond Group, Inc.,* 116 F.Supp.2d 525 (S.D.N.Y. 2000)(no copyright infringement; collection of round stones in center of each ring arranged differently); *Judith Ripka Designs, Ltd. v. Preville,* 935 F. Supp. 237 (S.D.N.Y. 1996)(no copyright infringement; cost of jewelry suggested that average observer would carefully examine each piece prior to making a purchase, the parties' jewelry was comprised largely of functional elements used by many designers); *DBC of N.Y., Inc. v. Merit Diamond Corp.,* 768 F.Supp. 414 (S.D.N.Y. 1991)(no infringement; individual elements of ring designs, such as marquise stones, trillions and knife-edged shank, separately well-known in jewelry trade before creation of rings).

No copyright claim can be based on the wax models Plaintiff alleges were produced by Harout during his employment (Ex. I), as there is no allegation they were ever copyrighted and Harout's own rings were registered first. Harout Aff., ¶29; Exs.26-27.

## II.     <u>Counts II-VII Should Be Dismissed (federal and state trademark)</u>

Counts II -VII of the complaint purport to state claims for trademark infringement, unfair competition, false designation and trade dress infringement under §§1114(1)(a) and 1125(a) of the Lanham Act and under state law for false advertising, trademark infringement and unfair competition. To state a plausible claim, Plaintiff would have to allege <u>facts</u> establishing that its

mark merits protection and that defendants' use of the mark is likely to cause consumer confusion.[5] *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 115 (2d Cir. 2006); *Kuklachev,* 600 F. Supp.2d at 469. In addition, a plaintiff asserting these claims also has to plead non-functionality and "secondary meaning." *PAJ,* 262 F.3d at 115-16; *Telebrands,* 719 F.Supp.2d at 296. These essential allegations are lacking here.

The requisite facts have not been pled. In support of its "confusion" claims, Plaintiff merely "repeats and realleges" <u>every prior allegation</u> (including as to parties, jurisdiction and venue), leaving Defendants mostly to guess the actual basis of each particular claim and against which Defendants such is pled. *See* Compl.¶¶85, 94, 109, 118, 127, 137. To the extent Plaintiff has specified any factual basis for these claims, it complains about:

A.  "[unspecified] Defendants' brochures, as well as specific statements [allegedly] made to [unidentified] potential customers that Defendant Aghjayan is the real "Harout Ritani" (*Id.* ¶¶88, 131);

---

[5] To state a trademark infringement claim under §32(1)(a) of the Lanham Act, the plaintiff must show, "first, that its mark merits protection, and second, that the defendant's use of the mark is likely to cause customer confusion" as to the origin, sponsorship, or affiliation of defendant's goods. *Muniz v. Morillo,* 2008 U.S. Dist. LEXIS at 69163, *12-13 (S.D.N.Y. Sept. 10, 2008). To prevail on a Lanham Act claim of false designation of origin, a plaintiff must demonstrate consumers are likely to be confused as to the source of the service because of the entrance in the marketplace of defendant's mark. *Omicron Capital, LLC v. Omicron Capital, LLC,* 433 F.Supp.2d 382, 389 (S.D.N.Y. 2006) (Sweet, J.). To obtain relief against a false or misleading advertisement under the Lanham Act, a plaintiff must demonstrate that an advertisement is literally false or that the advertisement, though literally true, is likely to mislead or confuse consumers. *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.,* 938 F.2d 1544 (2d Cir. 1991). To establish unfair competition under the Lanham Act, a plaintiff must show that a defendant: (1) made false or misleading factual representations regarding the nature, characteristics, or qualities of plaintiff's goods or services; (2) used the false or misleading representations "in commerce;" (3) made the false or misleading representations in the context of commercial advertising or commercial promotion; and (4) made plaintiff believe that it was likely to be damaged by promotion; and (4) made plaintiff believe that it was likely to be damaged by the false or misleading factual representations. *Id.* To prevail on a claim under N.Y.G.B.L. §§349 and 350, plaintiff must prove that defendant made misrepresentations or omissions that were likely to mislead a reasonable consumer in the plaintiff's circumstances and that as a result plaintiff suffered injury; a plaintiff must charge conduct of defendant that has a broad impact on consumers at large, rather than conduct that pertains to private disputes between the parties. *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256 (2d Cir. 1995); *Solomon v. Bell Atl. Corp.,* 9 A.D.3d 49 (1st Dep't 2004). A claim for unfair competition under New York common law requires that plaintiff prove either actual or a likelihood of confusion as to the origin of the goods and bad faith on the part of the defendant. *LaChapelle,* 2011 N.Y. LEXIS 80337 at *18-19.

B. [in conclusory fashion] Aghjayan's use of the RITANI name and brand in connection with the advertisement and promotion of [unspecified] Defendants' goods and services in "commercial advertisements and/or promotions," which [as to the state false advertising claim] were directed at the public (*Id.* ¶¶110, 119);

C. Defendant Aghjayan's use of the Ritani name and brand in connection with the advertisement and promotion of [unspecified] Defendants' goods and services in "commercial advertisements and/or promotions directed to the public" (*Id.* ¶119); and

D. [in conclusory fashion] using H. Ritani, LLC and H. Ritani Corp., names allegedly confusingly similar to, and having a similar commercial impression as the Ritani trademarks, and selling products through those entities in the same product category and market as Plaintiff, *i.e.,* "the field of diamond jewelry" (*Id.* ¶¶96-98, 130, 139-40), without alleging how, when, or what was sold.

None of these supposed "factual" allegations, however, meets the *Iqbal* standard. All of these factual allegations regarding the use of the names "Ritani Inc." and "Ritani Corp." exclusively concern use of the Ritani name <u>prior</u> to the 2007 Agreement by which Harout and Ritani Corp. agreed not to use "Ritani" or any similar name in connection with a competitive business as long as LLC engaged in the manufacture, sale and distribution of jewelry. Ex.11, ¶5.2. *See* Compl.¶¶11-18, 22, 25-27, 34, 46, 63-64. All allegations of supposed continued uses of these entities are made on "information and belief." While Plaintiff premises its "confusion claims" on the existence of several companies using the "Ritani" name (¶67), it fails to plead, <u>as required</u>, a single <u>fact</u> demonstrating that these "Ritani" entities are being used to compete against Plaintiff such that there could be a plausible threat of confusion. To the contrary, Plaintiff repeatedly contends that it is "Harout R" competing against it in the sale of jewelry, *see, e.g.,* Compl.¶¶62, 65, which has a dissimilar name and a distinctive mark.

Nor do the exhibits annexed to the complaint help Plaintiff. Exhibit 18, Harout R's Facebook page, never even mentions "Ritani." It clearly states that "Designer Harout Aghjayan has launched his <u>new company and brand</u> under the name <u>Harout R</u>." No reader would have any reason to believe Harout R is "Ritani." Similarly Ex. 23, a flyer, uses as its banner, the stylized

name "Harout R" (which is completely dissimilar to Ritani's name and unregistered logo). The only mention of "Ritani" is the *fact* that (emphasis added):

> [Harout was] previously known as Harout Ritani, designer and founder of New York's RITANI'S Fine Jewelry Brand. He is now launching his new company HAROUT R LLC. This collection is the most innovative to date, ... Harout observed that the opportunity for variety was limited and saw a need to introduce something that has not been done before.

No one would conclude that Harout R is LLC, as Harout R is identified as a "new" company.

Exhibit 24, a brochure, also clearly reflects that the origin of goods is "Harout R" and identifies their designer as "Harout R. Aghjayan," *i.e.,* not Ritani. (On page 2 of Ex. 24, it clearly states that Harout R LLC is "new" and a "new brand.") The last two pages (containing Harout's biography) identify him as founding Ritani (true), designing for Tiffany (true), having sold his interest and leaving Ritani in 2009 (true), and being "previously known as Harout Ritani" (again, true, as borne out by his LLC business card). Not only are Harout R's goods <u>not</u> marketed using the Ritani name or logo, these marketing materials could not make it any clearer that Harout is <u>not</u> affiliated with Ritani and that Harout R is a new and separate venture. Harout Aff. ¶24.

Certainly, no trademark claim can be premised on any Defendant's use of the letter "R" in its advertising and promotion of Harout R jewelry, about which Plaintiff complains. Compl.¶36. The 2001 service mark LLC obtained (Ex.16) is for the name "Ritani," for distributorship services in the field of diamond jewelry, which "mark consists of standard characters without claim to any particular font, style, size, or color." The unregistered, unstylized letter R, even if used by LLC, could not be the basis for any infringement claim. *Star Indus., Inc. v. Bacardi & Co. Ltd.,* 412 F.3d 373, 383 (2d Cir. 2005) (unstylized linear representations of letters are not protectable as inherently distinctive); *Coach, Inc. v. Peters*, 386 F.Supp.2d 495 (S.D.N.Y. 2005) (letters of alphabet cannot be copyrighted). As such, the use of the letter "R" in "Harout R"

could not cause confusion as a matter of law. Indeed, the typeface of the two are completely different in size and font style.

In sum, none of these marketing materials could suffice as predicates for any "confusion" claim. To the contrary, they clearly distinguish that the works being sold and distributed by Harout R are NOT made by or designed by Ritani. There is no prohibition against a person or entity *distinguishing* himself or itself from another's trademark. *See Madrigal Audio Labs., Inc. v. Cello, Ltd.,* 799 F.2d 814 (2d Cir. 1986)(well-known audio equipment designer could take advantage of his individual reputation and inform public, notwithstanding his sale of his name, that he was now designing audio equipment for another company that competes against the purchaser of the trade name; no trademark infringement). Indeed, courts routinely **require** competitors to distinguish themselves from one another when injunctive relief against trademark infringement is sought. *See M. Fabrikant & Sons, Ltd. v. Fabrikant Fine Diamonds, Inc.,* 17 F.Supp.2d 249, 255 (S.D.N.Y. 1998) (Sweet, J.) (enjoining defendant from using family name "Fabrikant" "in advertising unless a first name immediately precedes the last name "Fabrikant" – on the same line, and in the same size, color, type style, and conspicuousness"). Thus, clearly there can be no confusion as to Harout's affiliation with LLC based on these exhibits or allegations.

LLC's other allegations of infringement also are legally insufficient. Plaintiff's allegation that Harout identified himself in July 2011 as "Harout Ritani" is, admittedly, "double" hearsay. Compl.¶66 ("Plaintiff's [unidentified] representatives were advised [by unidentified persons] that Defendant Aghjayan was repeatedly identifying himself [to unidentified persons] . . . as 'Harout Ritani.'") Ex. 25, a page from a "flickr" site owned by a non-party, states no more than the simple question underline posted by a non-party, "where is harout ritani now?", with a photograph of

him. This posting is not actionable as to defendants. Ex. 22 consists of a 2011 email in which an alleged customer of Plaintiff's says that Harout approached him "about this" a year earlier. While Plaintiff alleges, relying exclusively on this email, that this Ritani customer was approached about "Defendants' Harout R catalog of jewelry" (Compl.¶61), nowhere does this unsworn email suggest any confusion or infringement. None of these allegations "nudge[s]" Plaintiff's allegations "across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570.

Given the sophistication of the relevant customers, this is particularly so. Plaintiff identifies itself as selling high end jewelry to "high-end" jewelers. Compl.¶¶33, 73; Ex. 5, Sch. 3.18. "Generally, the more sophisticated and careful the average consumer of a product is, the less likely it is that similarities in ... trade marks will result in confusion concerning the source or sponsorship of the product." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.,* 973 F.2d 1033, 1046 (2d Cir. 1992); *see Judith Ripka,* 935 F. Supp. 237. Even if the two trademarks were similar – and they are not – it simply is not plausible that a sophisticated retail jeweler would be confused by the sale of jewelry under the Harout R name – especially given the brochure's text that distinguishes Harout R and states it is unaffiliated with Ritani, and because each ring bears the name "Harout R" on the inside of the shank. Significantly, <u>Plaintiff fails to allege that any customer, in fact, has been confused</u>.

LLC's "confusion" claims further lack plausibility as plaintiff has not and cannot sufficiently plead the requisite use, secondary meaning and non-functionality. LLC claims trade dress infringement, *i.e.,* as to "the design or configuration of the product itself" (*PAJ,* 262 F.3d at 114), with respect to its entire jewelry line, including the supposed "Three-Leaf Trademark." Compl.¶¶35, 69. LLC, however, does not plead that it sold rings with the Three Leaf design. Further, as the Second Circuit found in *PAJ,* a plaintiff alleging trade dress infringement must, in

addition to likelihood of confusion, always allege "secondary meaning," that in "the minds of the public, the primary significance of the mark is to identify the source of the product rather than the product itself." 262 F.3d at 115. While Plaintiff purports to plead such secondary meaning (Compl.¶¶34-43), it offers <u>no facts</u> establishing that such "secondary meaning" exists (as opposed to mere conclusions), justifying a prohibition on the use of the "Harout R" mark in connection with – as Plaintiff would have it – sales to "customers and potential customers <u>in the [entire] field of diamond jewelry</u>." *See PAJ,* 262 F.3d at 115 (even a showing of secondary meaning is insufficient to protect overbroad or generic product designs, "'those that 'refer to the genus of which the particular product is a species'"). Importantly, even if rights to the "Ritani" name were conveyed in 2007, no rights to the name "Harout" ever were.

Furthermore, and just as significant, Plaintiff nowhere offers facts establishing that it seeks to protect "non-functional" elements, which *PAJ* held must be established in connection with a trade dress infringement claim like that alleged by Plaintiff here:

> A product feature is functional, and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article. And in cases involving an aesthetic feature, the dress is also functional if the right to use it exclusively "would put competitors at a significant non-reputational-related disadvantage." Thus, the nonfunctionality requirement "protects competition even at the cost of potential consumer confusion."

> . . . [W]e hold that a plaintiff seeking to protect its trade dress in a line of products <u>must articulate the design elements that compose the trade dress.</u> …[The articulation requirement] applies with equal or greater force to any case in which a plaintiff seeks protection for a line of products. …Thus, the focus on the overall look of a product [or products] <u>does not permit a plaintiff to dispense with *an articulation of the specific elements* which comprise its distinct dress</u>."

*Id.* at 116-17 (citations omitted) (emphasis added) italics in original). The complaint here fails <u>to articulate any specific element, much less any non-functional element</u> that comprises its distinct and protectable trade dress supposedly infringed. Plaintiff's reliance on mere <u>pictures</u> focusing on the "overall look of the products" (Ex. 27), leaving it to Defendants and this Court to

separate functional from non-functional simply does not suffice. At most, LLC complains about the use "through Defendant Companies" of a "reproduction, copy and colorable imitation of" the "Three-Leaf Trademark" (Compl.¶69),but again, relies on nothing but pictures to establish that this is the case (Ex.24), making no effort to establish that what it "points to" as infringement has "secondary meaning" and/or is not a functional element of the rings' design, and thereby protectable. Moreover, as shown in the Harout Aff., ¶¶27,30, his rings, Exs. F-I, are not inspired by a "three-leaf" but rather by an "owl or mask." The two designs are completely different.[6] Also, the jewelry included in Ex. 15 bears absolutely no similarity to those in Exs. 26-27.

Obviously, by means of its trumped-up infringement claims, LLC seeks to expand the scope of the limited and expired non-competition covenant in Ex.12, *i.e.,* to prevent him from competing against LLC entirely. In fact, however, the courts have rightly rejected efforts, like Plaintiff's here, to stifle lawful competition by resort to trademark infringement claims. In *Gen. Outlet Corp. v. Acronite Corp.,* 467 F. Supp. 269 (S.D.N.Y. 1979), plaintiff holder sought injunctive relief to enjoin defendant, a jewelry designer, from using the name "Helen Zellermaier for Acronite" or any mark confusingly similar to plaintiff's mark, "Editions by Helen Z" in connection with the sale of jewelry. Similar to the case at bar, the designer had been under contract with the plaintiff. The designer, who was apparently "known in the trade as Helen Zellermaier and Helen Z, interchangeably," signed a consent for the use of her first name and last initial "Z," as a trademark with ownership in the plaintiff. *Id.* at 270. After her employment with the trademark holder terminated, the defendant designer started working with a new company

---

[6] To the extent LLC seeks protection for the wax models rings containing the "Three-Leaf Trademark" (Ex.26; Ex. I), LLC never alleges that these model rings were ever made or sold by it (Compl.¶72), and, thus, no infringement claim based on these models could possibly lie. *Muniz,* 2008 U.S. Dist. LEXIS 69163, at *13-14 ("party claiming trademark rights must have been the first to actually use the mark in the sale of goods or services"). As noted in the Harout Aff. ¶31, the owners of Plaintiff "disliked" the design and, to his knowledge, never copyrighted it or sold it.

that began manufacturing a line of jewelry of a similar type to that sold by the plaintiff, under the name "Helen Zellermaier for Acronite." Relying on §§ 1114 and 1125 of the Lanham Act, and asserting claims for unfair competition, the plaintiff in *General Outlet* sought injunctive relief, claiming that the designer and the new company infringed its trademark. After a hearing, the injunction was denied on the ground that plaintiff could not establish likelihood of success on the merits, which, according to the court, required it to determine "whether there is a likelihood that prospective purchasers of the goods will be confused as to their origin by the similar marks." *Id.* at 271. In that regard, the court noted (*id.*) (emphasis added):

> I seriously doubt whether <u>wholesale buyers</u> exposed to the conflicting marks, nor <u>the public in general</u>, would be confused as to the source of the jewelry. Goods sold under the label "Helen Zellermaier for Acronite" are clearly identified as to their source. This source is Acronite and not the plaintiff.

The Court also rejected plaintiff's argument that its trademark had achieved secondary meaning, finding that plaintiff's obvious intention to "foreclose for all time the use by Mrs. Zellermaier of her name in connection with fine jewelry" was improper as a matter of law:

> The sweeping injunction [sought] … is in conflict with the well-established tendency of courts to respect an individual's right to build a business under his or her own name. Nor is this a case where defendant has sold her business and goodwill to plaintiff, making a broad injunction tolerable.[7] On this motion all that has been shown is Mrs. Zellermaier's consent to the use of her first name and last initial in connection with the sale of plaintiff's jewelry. <u>Surely this consent does not entitle plaintiff to prohibit all use of Mrs. Zellermaier's full name, especially where, as here, defendants' use has been tailored so that it is not confusingly similar to plaintiff's trademark.</u> (*Id,* internal citations omitted).

Similarly here, Plaintiff seeks, through copyright and trademark law, to deprive Harout of his right to design diamond rings and build a business under his name – a right he never gave up (and was consistent with Plaintiff's agreement that he could compete), nor which Plaintiff could insist he give up based on its own use of the letter R. Indeed, Plaintiff's claim is even weaker

---

[7] No doubt, Plaintiff will contend here that this is such a case where defendant has sold his business and goodwill to plaintiff. Plaintiff is mistaken. *See* discussion *infra,* at Point VI.

than the rejected claim of *Gen. Outlet*, since Harout never conveyed the name or mark of Harout R to Plaintiff. Plaintiff's effort to use the protection afforded trademarks to deprive Harout of his right to build his own business and earn a living should be rejected. *See Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373, 380 (2d Cir. 1997)("granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves").

## III.   Counts VIII and IX Should Be Dismissed (state statutory claims)

Plaintiff also purports to assert claims under New York G.B.L. §§360-I and 349. The eighth cause of action, seeking injunctive relief, alleges Ritani's trademarks are "famous and distinctive," and "Defendants" actions "have diluted the "distinctiveness of the RITANI Trademarks." Compl.¶¶154-55. The ninth claim also seeks an injunction and alleges "Defendants'" acts "constitute consumer-oriented conduct" that has resulted or may result in injury to New York consumers and/or harm to the public. *Id.* ¶163.

Not only is subject matter jurisdiction lacking  as to these claims with respect to two Defendants (*see* discussion, *infra* at Point IX), they are arise from the same facts as Plaintiff's Lanham Act claims, which, as demonstrated above, should be dismissed. Thus, these claims should be dismissed, too. *Lapine v. Seinfeld,* 375 Fed.Appx. 81 (2d Cir. 2010) (absence of similarity defeats state claim of trademark dilution); *Telebrands,* 719 F. Supp.2d at 298-99 (state law unfair competition claims "stand or fall" with federal unfair competition claim).

In addition, a claim under G.B.L.§360-I requires an "allegation that there exists a 'likelihood of confusion in commerce, whereby numerous ordinary [persons] have been, and are likely to be, misled into believing that the [trademark owner] and [alleged infringer] are the same." *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease and Related Disorders Assoc., Inc.,* 2011 U.S. Dist. LEXIS 56282, at *14 (S.D.N.Y. May 25, 2011)(Sweet, J.). Plaintiff has failed to allege a single fact suggesting that any of its customers have been misled by use of

Harout R's mark.  Indeed, Harout *distinguished* himself and it from Plaintiff.

It has been held that "[m]ost ... trade dress infringement claims are deemed to fall outside the ambit of section[ ] 349." *Perkins Sch. for the Blind v. Maxi-Aids, Inc.,* 274 F.Supp.2d 319, 327 (E.D.N.Y. 2003).  Trade dress infringement claims "are not cognizable under [this] statute[ ] unless there is a specific and substantial injury to the public interest over and above ordinary trademark or dilution." *Nat'l Distillers Prods. Co., LLC v. Refreshment Brands, Inc.,* 198 F.Supp.2d 474, 486-87 (S.D.N.Y. 2002). No such injury is alleged here. These claims should be dismissed.

## IV.    Count X Based upon Misappropriation of Trade Secrets Should Be Dismissed

In connection with its tenth claim for common law misappropriation of trade secrets, LLC alleges "[t]he rights and interests of [LLC] in its trade secret jewelry designs, drawings, product development files, customer files and financial information constitute trade secrets as defined by the common law of the State of New York." Comp.¶170.  Expressly pleading such "upon information and belief," LLC vaguely contends Harout misappropriated these unspecified trade secrets "in order to develop, manufacture, produce and market competing products and services, through Defendant Companies" or "[i]n the alternative,"  that he "will inevitably use and/or disclosure [sic] some of all of Plaintiff's trade secrets and/or confidential information in his possession." Compl.¶¶175-76.  This claim fails under the *Iqbal* standard.

New York courts define trade secrets as "any formula, pattern, device or compilation of information which is used in one's business, and which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Ashland Mgmt. v. Janien,* 82 N.Y.2d 395, 407 (1993), *quoting* Restatement of Torts §757,

comment (b).[8]  An essential requisite to legal protection against misappropriation of a trade secret under New York law is the element of secrecy.  *Id.  See N.  Atl.  Instr., Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999).  Here, the complaint is most notable for its failure to articulate, much less support with facts, what Harout supposedly misappropriated, when, how he used or disclosed that information causing Plaintiff injury, or that any of it is truly secret, sensitive or confidential.  *sit-up Ltd. v. IAC/Interactive Corp.,* 2008 U.S. Dist. LEXIS 12017, at*33 (S.D.N.Y. Feb. 20, 2008) (plaintiff must describe "the alleged trade secret with adequate specificity to inform the defendant what it is alleged to have misappropriated").  Plaintiff alleges that Harout's wife – a non-party – attempted to take some unspecified "trade secret designs and confidential product development files" but that she was stopped!  Compl.¶53.  In other words, that she did not "misappropriate."  Plaintiff also alleges, in conclusory fashion, and on information and belief, that Harout made copies of Plaintiff's unidentified "confidential files" on the company's "design servers," used a 3D printing machine, and began to collect and organize "information about [unidentified] specific customer accounts, costs associated with Plaintiff's products, pricing information and Plaintiff's profits margins" and used such "to form Defendant Companies and obtain a competitive edge," and that he "retain[ed] in his possession a substantial part and, upon information and belief, all of the confidential and trade secret design files belonging to Plaintiff." Compl.¶¶47-49, 54.

Furthermore, the copying of a product design already on the market, as a matter of law, cannot give rise to a claim for trade secret misappropriation. *Medinol Ltd. v. Boston Scientific*

---

[8] In determining whether trade secrets have been misappropriated, courts  consider: '(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *Id., quoting* Restatement of Torts§ 757, comment (b).

*Corp.,* 346 F.Supp.2d 575 (S.D.N.Y. 2004). There is no trade secret protection for information "readily available and freely communicated" within the industry or for information regarding pricing data and market strategies. *Zurich Depository Corp. v. Gilenson,* 121 A.D.2d 443, 445 (2d Dep't 1986); *Silipos, Inc. v. Bickel,* 2006 U.S. Dist. LEXIS 54946 (S.D.N.Y. Aug. 8, 2006); *Marietta Corp. v. Fairhurst,* 301 A.D.2d 734 (3d Dep't 2003). Similarly, where an employer's prospective customers' names are readily ascertainable from sources outside its business, they will not be considered trade secrets (*Columbia Ribbon & Carbon Mfg. Co. v. A-1-A Corp.,* 42 N.Y.2d 496, 499 (1977); *Amana Express Int'l, Inc. v. Pier-Air, Int'l, Ltd.,* 211 A.D.2d 606 (2d Dep't 1995)), even when a confidentiality agreement and non-compete was signed. *Howard Sys. Int'l Inc. v. IMI Sys., Inc.,* 192 A.D.2d 371, 373 (1st Dep't 1993). Plaintiff has not alleged that the identity of potential customers is not "readily available and freely communicated" within the industry. *Scott Paper Co. v. Finnegan*, 101 A.D.2d 787, 788 (1st Dep't 1984). Indeed, Plaintiff's customers are listed on its website – by state. Ex. K. Their identities are not trade secrets.

Although well-pleaded facts in a complaint are generally presumed true for a motion to dismiss, conclusory statements devoid of factual support - such as Plaintiff's repeated, but unelaborated and unsupported claims that Harout misappropriated "trade secret and confidential information - "are no more than conclusions" that are not entitled to the presumption of truth. *Iqbal,* 129 S. Ct. at 1950. These allegations are not plausible.

Perhaps most importantly, New York law recognizes that a person cannot wipe clean his memory. *Reed, Roberts Assocs., Inc. v. Strauman,* 40 N.Y.2d 303 (1976); *Sybron Corp. v. Wetzel*, 61 A.D.2d 697 (4th Dep't 1978). By Plaintiff's own admission, Harout was in the jewelry business and a high-end ring designer long before he went to work for Plaintiff in 2002. Compl.¶¶11, 12-13. Plaintiff does not allege that Harout learned *anything* about the jewelry

business from Plaintiff that he did not already know prior to 2002, or that what he supposedly took was not generally known in the jewelry industry. See Harout Aff. ¶¶3-4, 6. Accordingly, this claim should be dismissed.

## V.  Count XI for Common Law Tortious Interference Should Be Dismissed

Plaintiff's eleventh claim for "tortious interference with business relationships" also fails to meet the *Iqbal* pleading standard. A claimant alleging such interference must demonstrate that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means, and (4) the defendant's interference called injury to the relationship." *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir. 2003). Plaintiff must plead the basis on which it claims the "relationship" and the expectation it would yield future business. *See DeSantis v. City of Troy*, 83 Misc.2d 195, 201 (S.Ct. Rensselaer Co. 1975) (must plead that "but for" interference, it would have received contract). Here, Plaintiff expressly permitted Harout to compete and sell diamond jewelry to *anyone* (even LLC's customers) after December 31, 2010. This tortious interference claim is, thus, specious. Built upon one unsupported allegation after another, Plaintiff bootstraps that the "wrongful means" employed by "Defendants" was using designs that "they knew or had reason to know were associated by the trade and consuming public" as Plaintiff's, using trade secrets and/or confidential design information, and using Plaintiff's brand to promote their own jewelry. Compl.¶183. As demonstrated above, none of these vague allegations suffices as a matter of law, and, accordingly, cannot serve as the basis for a plausible tortious interference claim.

This claim fails for other reasons, too. LLC vaguely alleges that Defendant interfered with its customers and potential customers, including "Henne Jewelers and Ackerman Jewelers," but does not plead how. Compl.¶182. Significantly, however, Plaintiff does not allege that, as a

result, those two customers *did not buy* from Ritani, or that an order was canceled or that it had an actual, legitimate expectation as to their further patronage. Thus, the requisite elements of the claim have not been pled. *Kronos, Inc. v. AVX Corp.,* 81 N.Y.2d 90, 97 (1993) (tortious interference claim is not viable "until actual damages are sustained"). Nor is the allegation that some jewelers are selling Harout R rings actionable. Compl.¶70. Further, that Defendants' "acts [supposedly] prevented [unnamed] third parties from entering into extended relationships with Plaintiff" (*Id.*¶184), is so vague as to be implausible on its face. To the extent LLC claims that alleged wrongdoing is Harout's "solicit[ation] … through direct communications and the mass distribution of Defendants' flyers and Harout R catalogs to Plaintiff's customer base," *Id.*¶183, by LLC's own admission, both of these took place in 2011, *i.e.,* after the non-compete expired, and thus, not wrongful. *Id.*¶¶62, 63; *see also* Point VI, *infra*. This claim should be dismissed.

## VI. <u>Count XII Based upon the *Mohawk* Implied Covenant Should Be Dismissed</u>

The twelfth claim is based upon an alleged breach of the "*Mohawk*" covenant, *i.e.,* a seller of goodwill's permanent "'implied covenant' or 'duty to refrain from soliciting former customers, which arises upon the sale of the 'good will' of an established business.'" *Bessemer Trust Co. v. Branin,* 16 N.Y.3d 549, 556 (2011), quoting *Mohawk Maint. Co. v. Kessler,* 52 N.Y.2d 276, 283 (1981). Importantly, this implied covenant applies only to a <u>seller</u> of goodwill and is owed only to its the <u>buyer</u>. *Id.* at 557. But even under *Mohawk,* the seller of goodwill is free to compete with its purchaser and even "'accept[ ] the trade of his former customers, provided that he does not actively <u>solicit</u> such trade.'" *Id., quoting Mohawk,* at 285, n.6 (emphasis added).

Significantly, Harout is not a "seller" of goodwill and certainly not to LLC. Rather, LLC's own Exs.1-3 establish that Harout did not individually contribute any assets or goodwill to Plaintiff; <u>all</u> the goodwill was assigned by <u>Ritani Corp</u>. to <u>LLC</u>. Exs.2-3. Harout was not is a

party to the agreement transferring goodwill and intellectual property. Ex.3. Ex.1 shows the *buyer* of the membership interest in the newly formed LLC were <u>non-parties</u> JKD and FK. Even if Harout were deemed to be seller of goodwill (which he is not), because 5 months after its formation, in May 2003, he transferred his interest in LLC to <u>JKD</u>, that entity is not the plaintiff here. An entirely different entity, LLC, seeks to improperly impose a duty on Harout not to solicit the goodwill of <u>Ritani Corp</u>. *Mohawk* is <u>inapplicable</u> to Harout; LLC has no such claim as to Harout.

No facts are alleged to support a claim that the actual seller, Ritani Corp., has solicited in violation of the *Mohawk* covenant. Without exception, all the allegations against Ritani Corp. with respect to this claim are based "upon information and belief," *See, e.g.,* Compl.¶¶30, 49, 59. To the extent LLC alleges that Tiffany was solicited, as that entity ceased doing business with Plaintiff before the sale of goodwill in 2002, and prior to any alleged solicitation (Harout Aff., ¶6), Tiffany cannot be the subject of a *Mohawk* injunction.

Even if *Mohawk* were applicable, the parties to the sale of a business are free to negotiate and narrow the *Mohawk* implied covenant –which they did here. *See, e.g., Mitel Telecomms. Sys. v. Napolitano,* 226 A.D.2d 165 (1st Dep't 1996)(parties limited duration of non-solicit); *Titus & Donnelly v. Poto,* 205 A.D.2d 475 (1st Dep't 1994)(negotiation of 3-year express covenant abrogates *Mohawk* perpetual covenant); *MGM Court Reporting Serv. v. Greenberg*, 143 A.D.2d 404 (2d Dep't 1988) (forced sale of stock outside *Mohawk*), *aff'd on other grounds*, 74 N.Y.2d 691 (1989)(shareholders divided up customer list for a period of 5 years so *Mohawk* does not apply). Here, LLC expressly negotiated a restrictive covenant for Harout limited to a <u>one-year non-compete</u> in his EAs, Exs.5, 9, which was later modified by Ex.12, which *permitted* Harout to "sell" to all current Ritani customers (listed on its website) after December 31, 2010. The limited

non-compete covenant to which Plaintiff agreed (which placed no restrictions on Harout's solicitation, <u>and</u> allowed him to compete generally and which ended in 2010), modified any "Mohawk" restriction on <u>solicitation</u> that might otherwise have applied. There simply is <u>no</u> perpetual non-solicitation applicable to Harout,[9] and this claim should be dismissed.

Furthermore, the supposedly improper acts pled by LLC do not constitute improper "solicitation." General ads and announcements to the public, and competing with the buyer of the business, are not prohibited. *Bessemer,* 16 N.Y.3d at 557-58. Nowhere in Harout's marketing materials is even the slightest suggestion that he is touting his goods over LLC's. *See USI Ins. Servs. LLC v. Miner,* 2011 U.S. Dist. LEXIS 74623 (S.D.N.Y. Jul. 7, 2011). As shown in the Harout Aff. ¶33, the solicitation complained of at Compl.¶¶62, 63 was a mass mailing sent to all attendees of a tradeshow on a list that Harout purchased.[10] Thus, even if the *Mohawk* covenant were applicable, this claim should nevertheless be dismissed, as such is not "solicitation".

## VII. Count XV Should Be Dismissed Because Preparatory Acts or Actions Taken After Employment Ends Are Not Breaches of Loyalty or Fiduciary Duty

Plaintiff's fifteenth claim purports to allege a "common law breach of the duty of loyalty and breach of fiduciary duty." This claim, too, lacks the requisite plausibility, as the law only restricts an employee of a company while "on company time" and "using company resources" from starting a new business.[11] *Don Buchwald & Assocs., Inc. v. Marber-Rich,* 11 A.D.3d 277, 278 (1st Dep't 2004). Although an employee owes a duty of loyalty to his employer, he may

---

[9] Similarly, the non-competition clause in the Operating Agreement, Ex. 4, expressly applied only to members. Harout ceased being a member in 2003 and Ritani Corp.'s membership ended in 2007. Harout left Plaintiff's employ in 2009, and all restrictions on him ended by December 31, 2010. Ex. 12. No allegations of post-2010 actionable activities have been pled.

[10] Moreover, at most, Harout did assign any goodwill he might personally have in his *own* name; he never gave up the right to use his "personal name as a symbol of his individual reputation." *Madrigal,* 799 F.2d at 825 (factual statement advising customers he had been associated with company to which he sold his name as trade name was not actionable).

[11] As previously demonstrated, Harout ceased being an owner of Plaintiff in 2003, and Ritani Corp. ceased being an owner in 2007, and thus, from that time on, owed no loyalty in such capacity.

secretly incorporate a competitive business prior to his departure and take preparatory steps to start that new business without violating that duty. *Walter Karl, Inc. v. Wood,* 137 A.D.2d 22, 28 (2d Dep't 1988); *see, e.g., Abraham Zion Corp. v. Lebow,* 593 F. Supp. 551 (S.D.N.Y. 1984) (obtaining trademark registration for defendant's name not a violation), *aff'd,* 761 F.2d 93 (2d Cir. 1985); *Tulumello v. Taylor Int'l. Constr. Co., Inc.,* 84 A.D.2d 903 (4th Dep't 1981) (purchasing competing business prior to termination of employment not actionable). A former employee is permitted to prepare to compete during the term of a restrictive covenant in order to begin competing once the covenant expires, as prohibiting a person from taking such steps "during the restricted period would have the effect of extending the term of the covenant." *Stork H&E Turbo Blading, Inc. v. Berry,* 32 Misc.3d 1208(A) at*4, 932 N.Y.S.2d 763 (S.Ct. Tompkins Co. Jun.30, 2011); *see Abraham Zion Corp.,* 593 F.Supp. at 571 ("this right to compete after termination is the right to make preparation prior to termination" to form a competing business). Harout's employment with LLC ended on November 1, 2009, Compl.¶29, thus ending his duty of loyalty (*Constantin Assocs. v. Kapetas,* 17 Misc.3d 1137(A), 851 N.Y.S.2d 68 (S.Ct. N.Y. Co. 2007)), and permitting him to form Amazing Settings and Harout R during the non-compete.[12]

None of the pled activities is actionable. Even if Harout did, as Plaintiff alleges, purchase a 3D printing machine and make arrangements with a factory in China (Compl.¶¶30, 55), none of this is actionable; they are merely preparatory to competing on his own. He registered a domain name, Harout R, after his employment ended (*id.*¶57; Ex. 9). Count XV itself contains no specific allegations as to what conduct set forth in the prior 215 paragraphs supposedly constitutes the breach. If it is Harout's supposed "accessing" Plaintiff's design servers from

---

[12] Grasping at straws, Plaintiff alleges that Harout was the President, Chief Executive Officer, Chief Operating Officer and chief designer for Plaintiff but, in fact, by 2008, Plaintiff stripped Harout of these titles years ago. *See* Harout Aff., ¶15 and Ex. D (business card omits title).

home (Compl.¶47), no allegation is made that he did not have the right to do so in connection with his employment nor is there any allegation that he did so post-employment (as LLC allegedly terminated his access). *Id.* If it was his supposed transfer of confidential files to a flash drive (*id.*), his supposed collection and organization of Plaintiff's "confidential financial and customer files" while still employed," (*id, ¶48*), his supposed removal and retention of "all of the confidential and trade secret design files belonging to Plaintiff" (*id., ¶49*), no <u>factual</u> underpinnings <u>for any</u> of these sweeping legal allegations, are alleged as to what he did or when. To the contrary, each and every one of these allegations is made only "<u>upon information and belief.</u>" These unsupported allegations cannot be the basis of any claim under *Iqbal.*

Plaintiff admits (Compl.¶32) that any restriction on Harout's sale of jewelry to any current customer of Plaintiff lasted <u>only until December 31, 2010</u>. Ex.12. No date of any supposed sale to a "jeweler in Florida" is pled, nor does Plaintiff allege what was sold or that this jeweler was ever a Ritani customer or competed with it, such that any sale was wrongful. Compl.¶60. Ex. 12 expressly states that Plaintiff knew of (and evidently had no problem with) overtures made by Harout to non-Ritani customers. Plaintiff complains about Harout's discussions with Tiffany in July of 2008 (Compl.¶50), but admits that it has no evidence at all that this discussion, was not, as Harout advised, on behalf of his wife, who is also a designer. *Id.*¶51. Lacking any facts to make this allegation remotely plausible, LLC alleges that "based upon information and belief, [Harout's] wife did not have the wherewithal to run a jewelry business without [Harout.]" *Id.* Not content to rely upon his unsupported allegation, LLC alleges "upon information and belief, [Harout] used his wife as an alter ego to set up a jewelry business to compete directly with Plaintiff Ritani, LLC, while still employed in a position of trust." *Id.* Significantly, Plaintiff does not identify even the name of this supposed alter ego; it

could not be Amazing Settings or Harout R, as both were formed <u>after</u> his employment ended. These allegations are the very definition of "implausible."

Finally, this supposed breach is identical to, and, in fact, indistinguishable from, the allegations made in all of the prior causes of action. This duplicative cause of action (which improperly purports to state a tort based on the same allegations as LLC's breach of contract claim, discussed below), should be dismissed.

## VIII. Counts XIII, XIV, XVI and XVII Should Be Dismissed

Plaintiff's thirteenth, fourteenth, sixteenth and seventeenth claims are all brought under state law. The thirteenth claim purports to state a mixed contract and tort claim, denominated "claim for breach of contract and common law noncompetition," the fourteenth claim is for unjust enrichment, the sixteenth claim is for "breach of the implied duty of good faith and fair dealing," and the seventeenth claim seeks imposition of a constructive trust. These claims must be dismissed because they are implausible, not properly pled and/or are duplicative of other causes of action, or a mere remedy, not a separate claim.

LLC's breach of contract claim, like the rest of LLC's complaint, is fraught with legal conclusions not entitled to the assumption of truth. *Iqbal,* 129 S.Ct. at 1949-50. The breach of contract, as alleged by LLC, is Harout and Ritani Corp.'s breach of "the 2007 Membership Interest Purchase Agreement by using the name 'Ritani' in connection with the business and operations of the Defendant Companies, which directly compete with the Plaintiff in the jewelry industry." Compl.¶203; 59, 67. But, as shown above, the allegation that anyone used the name Ritani to compete is baseless; LLC expressly permitted Harout to compete beginning October 15, 2010 and to sell to Ritani customers after December 31, 2010. LLC has alleged no facts even suggesting that Ritani Corp. was used for any purpose after 2002, other than it being a member of LLC until 2007. Further, because LLC is not a party to the allegedly breached 2007

Membership Agreement (Ex. 11), it can bring no claim for its breach nor could one be brought against Harout R or Amazing Settings, also not parties. *Wilkinson v. Cmty. Preservation Corp.*, 2009 N.Y. Misc. LEXIS 4753 (S.Ct. N.Y. Co. Mar. 11, 2009). Finally, an element of a breach of contract claim is damages (*Diesel Props. S.R.Ll. v. Greystone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011)), and yet no damages are pled. *See* Compl.¶205-07. There is no meat on the bones of this claim, which is purportedly asserted against all "Defendants." Compl.¶207. The breach of contract claim simply is not plausible.

LLC's claim for breach of the implied duty of good faith and fair dealing also is fatally flawed. New York law does not recognize a separate claim for breach of that implied duty, if based on the same facts as a breach of contract claim. *See, e.g., L-7 Designs, Inc. v. Old Navy, LLC,* 647 F.3d 419, 434, n.17 (2d Cir. 2011)("breach of [the duty of good faith and fair dealing] is merely a breach of the underlying contract.")(citation omitted). There is no question that LLC's claims alleging breach of contract and of the implied duty are based on the same facts, disregarding what party is actually a party to any agreement. This is just the proverbial plate of spaghetti thrown against the wall in the hope that something will stick.

As pled, the claim for breach of the covenant of good faith and fair dealing makes additional allegations of "breach," but is nothing more than a ploy to avoid the well-established requirement that a plaintiff "identify what provisions of the contract were breached as a result of the acts at issue." *CreditSights, Inc. v. Ciasullo,* 2008 U.S. Dist. LEXIS 91481, at *31 (S.D.N.Y. Sept. 5, 2008). Plaintiff alleges, in shotgun fashion, that "[t]he written agreements between the parties, including but not limited to, the 2002 and 2007 Membership Interest Purchase Agreements, the Contribution Agreement and the '02 and '04 Operating and Employment Agreements (the "Agreements") impose an obligation of good faith and fair dealing on

Defendant Aghjayan and consequently, the Defendant Companies, which operate under his control." Compl.¶224. These vague references to several agreements without identifying any specific provision purportedly breached or when or by whom, and disregarding what parties are in fact parties to any specific contract, are insufficient as a matter of law to state a plausible claim either for breach of contract or breach of the implied covenant of good faith and fair dealing.[13]

Presumably, Plaintiff's claim for "common law noncompetition" is a claim for unfair competition. This claim, however, cannot be combined with allegations for breach of contract (or even stand on its own). "It has long been New York law that 'a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. …This legal duty must sprint from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract.'" *U.S. ex rel. Evergreen Pipeline Constr. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 162 (2d Cir. 1996), *quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,* 70 N.Y.2d 382, 389 (1987). "[N]o claim [for unfair competition] lies where its underlying allegations are merely a restatement, albeit in slightly different language, of the implied contractual obligations asserted in the cause of action for breach of contract." *Orange County Choppers, Inc. v. Olaes Enters., Inc.,* 497 F. Supp. 2d 541, 558 (S.D.N.Y. 2007) (citations omitted). Plaintiff's "noncompetition" claim is expressly based on the same set of allegations as its breach of contract claims. Compl.¶¶198-207. Theree is not even "slightly different language" and are pled to be one and the same. Indeed, this claim is duplicative of the misappropriation claims and should be dismissed on this basis as well. *See Washington v. Kellwood Co.,* 2009 U.S. Dist. LEXIS 32565 (S.D.N.Y. Mar. 24, 2009).

---

[13] Harout advised Plaintiff he would compete once the covenant ended on October 31, 2010. Harout Aff. ¶16. Instead of protesting, LLC agreed to *modify* that covenant by Ex. 12, which acknowledged Harout could compete and solicit customers and defined a "current" customer.

The claim for unjust enrichment is both implausible and duplicative. It is bereft of any additional facts and merely reasserts, in conclusory fashion, the same unsupported allegations in Plaintiff's copyright, trademark and misappropriation of trade secret claims.

The claim for constructive trust suffers from the same fatal defect, as it is nothing but a rehash of other claims. It relies entirely on sweeping allegations of supposed wrongdoing, which, as demonstrated above, are baseless and inherently "implausible." "[I]mposition of a constructive trust is less a cause of action than it is an equitable remedy," requiring, among other things, "a transfer in reliance on that promise." *Bajan Group, Inc. v. Consumers Interstate Corp.*, 28 Misc.3d 1227(A) (S.Ct. Albany Co. Aug. 12, 2010). No such transfer is alleged and, because it is merely a remedy, it cannot stand alone as a claim. This claim, too, should be dismissed.

## IX.    **Diversity Jurisdiction Is Lacking**

Plaintiff alleges that it and defendants Ritani Inc. and Ritani Corp. are all New York corporations. Compl.¶¶2,11. Other than the federal claims for copyright and trademark infringement, subject matter jurisdiction for every one of the remaining fifteen counts, all of which are explicitly pled against these two New York corporations, is based upon diversity, but clearly, <u>there is none</u>. Thus, subject matter jurisdiction in this Court is lacking and dismissal is warranted. Thus, even if this Court found that these state claims were nonetheless plausible, the absence of diversity makes the exercise of supplemental jurisdiction over all of Plaintiff's state law claims inappropriate as to each defendant. *Argentto Sys., Inc. v. Subin Assocs., LLP*, 2011 U.S. Dist. LEXIS 68141, at *7 (S.D.N.Y. Jun. 24, 2011) (Sweet, J.); *Muniz,* 2008 U.S. Dist. LEXIS 69163, at *16.

## Conclusion

The complaint contains vague allegations of wrongdoing without the necessary factual support to make any of its claims "plausible." Furthermore, because the federal claims are not

viable, and subject matter jurisdiction is lacking as to two of the corporate defendants (as to which all the state law claims are pled), the complaint should be dismissed in its entirety. If Defendants prevail, attorneys' fees should be granted pursuant to 17 U.S.C. §505 on the Lanham Act and state law claims based upon the same operative facts, as such claims are objectively unreasonable. *Contractual Obligation Prods., LLC v. AMC Networks, Inc.,* 546 F.Supp.2d 120 (S.D.N.Y. 2008).

Dated: Garden City, New York
      February 6, 2012

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:/s/ *Erica B. Garay*             
    Erica B. Garay
    Lynn M. Brown
    990 Stewart Avenue, Suite 300
    P.O. Box 9194
    Garden City, New York  11530-9194
    egaray@msek.com
    lbrown@msek.com
    *Attorneys for Defendants*