Rory J. Radding (RR 4042)
David I. Greenbaum (DG 6232)
Jennifer L. Dereka (JD 1577)
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, New York 10022
Telephone:  212.308.4411
Facsimile:  212-308-4844
rradding@edwardswildman.com
dgreenbaum@edwardswildman.com
jdereka@edwardswildman.com

*Attorneys for Plaintiff Ritani, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RITANI, LLC,                                         :
                                                     :
                    Plaintiff,                       :
                                                     :      Index No. 11-CV-8928 (RWS)(GWG)
             -against-                               :
                                                     :
HAROUT AGHJAYAN; HAROUT R, LLC; H.                   :
RITANI, INC.; H. RITANI, LLC; H. RITANI,             :
CORP.; and AMAZING SETTINGS, LLP                     :
                                                     :
                    Defendants.                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM IN SUPPORT OF PLAINTIFF RITANI, LLC'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     RELEVANT BACKGROUND FACTS ....................................................... 2

III.    APPLICABLE PRINCIPLES OF LAW ...................................................... 4

        A.      Liberal Pleading Standards of Federal Rule of Civil Procedure 8 ....... 4

        B.      Ritani Can Allege Facts Based Upon Information and Belief ............ 5

        C.      Defendant Aghjayan's Affidavit Should Not Be Considered ............. 6

        D.      Defendants' Motion Conflates the Pleading Standard with the Burden of
                Proof ........................................................................................... 7

        E.      Defendant Aghjayan and His Companies are Liable ...................... 7

IV.     RITANI HAS SUFFICIENTLY PLED EACH OF ITS CLAIMS ................. 9

        A.      Federal Copyright Infringement Claims ...................................... 9

        B.      Federal Trademark Infringement and Unfair Competition Claims ..... 12

        C.      Federal False Advertising Claims .............................................. 17

        D.      Ritani's State Law Claims are Sufficiently Pled and Jurisdictionally
                Proper ......................................................................................... 19

        E.      Plaintiff's Causes of Action Under New York G.B.L. § 349 and § 360-1 ......... 19

        F.      Breach Of Implied Covenant Not To Solicit ............................... 21

        G.      Defendant Aghjayan's Misappropriation of Ritani's Trade Secrets ..... 24

        H.      Tortious Interference With Business Relations ............................ 27

        I.      Implied Covenant of Good Faith and Fair Dealing ....................... 29

        J.      Breach of Contract ................................................................... 30

        K.      State Law Unfair Competition ................................................... 31

        L.      Breach of Fiduciary Duty and Duty of Loyalty ........................... 32

        M.      Unjust Enrichment and Constructive Trust ................................. 34

V.      CONCLUSION ........................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A &G Healthplans v. Nat'l Network Servs.,
   99-cv-2153, 2003 U.S. Dist. LEXIS 3879 (S.D.N.Y. 2003) ................................................. 34

AIM Int'l Trading, L.L.C. v. Valcuine S.P.A., Ibi, L.L.C.,
   2003 U.S. Dist. LEXIS 8594 (S.D.N.Y. May 21, 2003) ...................................................... 28

Alzheimer's Foundation of Am., Inc. v. Alzheimer's Disease and Related Disorders
   Assoc., Inc.,
   796 F.Supp.2d 458 (S.D.N.Y. 2011) (Sweet, J.) ................................................................... 12

American Building Maintenance Co. of New York v. Acme Property Services, Inc.,
   515 F. Supp. 2d 298 (N.D.N.Y. 2007) ................................................................. 25, 33, 34

Arista Records, LLC v. Doe 3,
   604 F.3d 110 (2d Cir. 2010) .......................................................................................... 5, 10

Ashcroft v. Iqbal,
   556 U.S. 662, 129 S.Ct. 1937 (2009) ............................................................................. 5, 27

Ashland Mgmt. Inc. v. Janien,
   82 N.Y.2d 395 (1993) ...................................................................................................... 24, 25

Axelrod & Cherveny Architects, P.C. v. T&S Builders Inc.,
   2008 WL 3211272 (E.D.N.Y. 2008) ................................................................................ 11

Beauchamp v. Fin. Recovery Servs.,
   10 Civ. 4864, 2011 U.S. Dist. LEXIS 25512 (S.D.N.Y. Mar. 11, 2011) ............................... 5

Bell Atl. Corp. v. Twombly,
   550 U.S. 544, 127 S.Ct. 1955 (2007) ............................................................................. 5, 10

Bessemer Trust Co. v. Branin,
   16 N.Y.3d 549 (2011) ..................................................................................................... 21, 24

Boykin v. KeyCorp,
   521 F.3d 202 (2d Cir. 2008) .......................................................................................... 5, 27

Briarpatch Ltd. v. Phoenix Pictures, Inc.,
   373 F.3d 296 (2d Cir. 2004) ............................................................................................... 34

Brinson v. Kulback's & Assoc.,
   744 N.Y.S.2d 621 (4th Dep't 2002) ............................................................... 16, 23, 24

Buchwald & Assocs., v. Marber-Rich et al.,
  782 N.Y.S.2d 725 (1st Dep't 2004)................................................32, 34

Burberry Ltd. v. Euro Moda, Inc.,
  08-CV--5781, 2009 U.S. Dist. LEXIS 53250 (S.D.N.Y. 2009)............................ 8

Capitol Records, Inc. v. Wings Digital Corp.,
  218 F.Supp.2d 280 (E.D.N.Y. 2002) ................................................ 10

Cardiocall, Inc. v. Serling, Inc.,
  492 F. Supp. 2d 139 (E.D.N.Y. 2007) ..............................................28, 29, 32

Carnegie-Mellon Univ. v. Cohill,
  484 U.S. 343 (1988)................................................................ 19

Cartier v. Aaron Faber, Inc.,
  512 F.Supp.2d 165 (S.D.N.Y. 2007) ................................................ 8

Carvel Corp. v. Noonan,
  3 N.Y.3d 182 (2004)................................................................ 28

Catskill Dev., L.L.C. v. Park Place Entm't.,
  547 F.3d 115 (2d Cir. 2008)........................................................ 27

CBS Corp. v. Dumsday,
  702 N.Y.S.2d 248 (1st Dep't 2000)..................................................33, 34

Centaur Comm. v. A/S/M/ Comm., Inc.,
  652 F.Supp. 1105 (S.D.N.Y. 1987) .................................................. 20

Chambers v. Time Warner, Inc.,
  282 F.3d 147 (2d Cir. 2002)........................................................ 7

Chloe v. Designersimports.com USA, Inc.,
  07-CV-1791, 2009 U.S. Dist. LEXIS 42351 (S.D.N.Y. 2009)............................ 8

Colwell & Salmon Communs. v. ArborMed Corp.,
  1:10-CV-01137, 2011 U.S. Dist. LEXIS 67795 ...................................... 35

Cosmas v. Hassett,
  886 F.2d 8 (2d Cir. 1989)........................................................... 6

Counihan v. Allstate Ins. Co.,
  194 F.3d 357 (2d Cir. 1999)........................................................ 34

Covidien AG v. CapitalSource Inc.,
  2008 U.S. Dist. LEXIS 86144 (S.D.N.Y. Oct. 23, 2008)..............................17, 20

David Fox & Sons, Inc. v. King Poultry Co.,
    262 N.Y.S.2d 983 (Sup. Ct. N.Y. Co. 1964), aff'd without opinion, 259 N.Y.S.2d
    1012 (1st Dep't 1965) .................................................................................... 26

DBC of N.Y., Inc. v. Merit Diamond Corp.,
    768 F.Supp. 414 (S.D.N.Y. 1991) ................................................................. 12

De Long Corp. v. Lucas,
    278 F.2d 804 (2nd Cir. 1960) ........................................................................ 30

Deere & Co. v. MTD Prods., Inc.,
    41 F.3d 39 (2d Cir. 1994) ..........................................................................19, 20

Diamond Direct, LLC v. Star Diamond Group, Inc.,
    116 F.Supp.2d 525 (S.D.N.Y. 2000) ............................................................ 12

Dove v. Fordham Univ.,
    56 F.Supp.2d 330 ............................................................................................ 9

Durham Indus., Inc. v. Tomy Corp.,
    630 F.2d 905 (2d Cir. 1980) .......................................................................... 11

Eastman Kodak Co. v. Powers Film Prods., Inc.,
    179 N.Y.S. 325 (4th Dept. 1919) .................................................................. 26

Electro-Miniatures Corp. v. Wendon Co., Inc.,
    771 F.2d 23 (2d Cir. 1985) ............................................................................ 26

Ellis v. Jean,
    No. 10 Civ. 8837, 2011 WL 6368555 (S.D.N.Y. Dec. 16, 2011) ............... 9, 10

EMI Entertainment World, Inc. v. Karen Records, Inc.,
    806 F.Supp.2d 697 (S.D.N.Y. 2011) ........................................................... 7, 8

ESPN, Inc. v. Quicksilver, Inc.,
    586 F.Supp.2d 219 (S.D.N.Y. 2008) .....................................................passim

Faiveley Transp. v. Wabtec Corp.,
    572 F.Supp.2d 400 (S.D.N.Y. 2008) ............................................................ 26

Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,
    499 U.S. 340, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991) .............................10, 12

Fellows v. CitiMortgage, Inc.,
    710 F.Supp.2d 385 (S.D.N.Y. 2010) ............................................................ 29

FMC Corp. v. Taiwan,
    730 F.2d 61 (2d Cir. 1984) (per curiam) ....................................................... 25

Foley v. D'Agostino,
    248 N.Y.S.2d 121 (1st Dep't 1964)................................................................32, 33

Fonte v. Bd. of Managers of Cont'l Towers Condo.,
    848 F.2d 24 (2d Cir. 1988)............................................................................ 6, 7

Friedman v. Wahrsager,
    No. 11 CV 815, 2012 WL 273069 (E.D.N.Y. 2012)........................................ 33

Gaetano Assocs. Ltd. v. Artee Collection, Inc.,
    No. 05-CV-3329, 2006 U.S. Dist. LEXIS 77144 (S.D.N.Y. Oct. 26, 2006)........................ 26

Gary Friedrich Enter., LLC v. Marvel Enter., Inc.,
    No. 08 CV 01533, 2011 WL 3163570 (S.D.N.Y. Jul. 26, 2011)......................... 17

Gen. Outlet Corp. v. Acronite Corp.,
    467 F.Supp. 269 (S.D.N.Y. 1979).................................................................15, 16

Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,
    443 F.2d 1159 (2d Cir. 1971)......................................................................... 8

Gucci Am., Inc. v. Duty Free Apparel, Ltd.,
    315 F.Supp.2d 511, *amended in part,* 328 F.Supp.2d 439 (S.D.N.Y. 2004)...................... 8, 9

Hannex Corp. v. GMI, Inc.,
    140 F.3d 194 (2d Cir. 1998).........................................................................27, 28

Hard Rock Cafe International (USA), Inc. v. Hard Rock Hotel Holdings, LLC, et al.,
    F.Supp.2d, 2011 WL 2945842 (S.D.N.Y. July 11, 2011)................................... 29

Harsco Corp. v. Segui,
    91 F.3d 337 (2d Cir. 1996)........................................................................... 30

In re Bayou Hedge Fund Litigation,
    534 F.Supp.2d 405 (S.D.N.Y. 2007) .............................................................. 4

In re First Cent. Fin. Corp.,
    377 F.3d 209 (2d Cir. 2004).......................................................................... 34

JA Apparel v. Joseph Abboud,
    591 F.Supp. 2d. 306 (S.D.N.Y. 2008) ............................................................ 30

Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co.,
    2009 U.S. Dist. LEXIS 27687 (W.D.N.Y. March 31, 2009)............................... 28

JTH Tax, Inc. v. Gouneh,
    721 F.Supp.2d 132 (N.D.N.Y 2010)...........................................................6, 7, 33

Judith Ripka Designs, Ltd. v. Preville,
935 F.Supp. 237 (S.D.N.Y. 1996) ...................................................................... 12

Keehan v. Keehan,
96 Civ. 2481, 2000 U.S. Dist. LEXIS 5369 (S.D.N.Y. April 25, 2000) ............................... 33

Kelly v. L.L. Cool J.,
145 F.R.D. 32 (S.D.N.Y. 1992)........................................................................... 9

Kittay v. Korff,
08 CV 7421, 2011 U.S. Dist. LEXIS 11681 (S.D.N.Y. Feb. 4, 2011) ................................. 19

Kraft General Foods, Inc. v. Allied Old English, Inc.,
831 F.Supp. 123 (S.D.N.Y. 1993) ....................................................................... 19

Kronos, Inc. v. AVX Corp.,
81 N.Y.2d 90 (1993)....................................................................................... 29

Kuklachev v. Gelfman,
600 F.Supp.2d 437 (E.D.N.Y 2009) ..................................................................... 18

Laro Maint. Corp. v. Culkin,
700 N.Y.S.2d 490 (2d Dep't 1999) ...........................................................26, 32, 33

Levin v. Tiber Holding Corp.,
277 F.3d 243 (2d Cir. 2002)............................................................................... 31

Lindner v. Int'l Business Machines Corp.,
06 Civ. 4751, 2008 U.S. Dist. LEXIS 47599 (S.D.N.Y. June 18, 2008)................................ 5

Lombardi v. Whitehall XII/Hubert Street, LLC.,
04-CIV-6752, 2010 WL 742615 (S.D.N.Y. Mar. 3, 2010).............................................. 12

Louis Vuitton Malletier v. Dooney & Bourke, Inc.,
454 F.3d 108 (2d Cir. 2006).........................................................................12, 17

Louis Vuitton v. Dooney & Bourke, Inc.,
340 F. Supp.2d 415 (S.D.N.Y. 2004) .................................................................... 17

Luft v. Crown Publishers, Inc.,
772 F.Supp. 1378 (S.D.N.Y. 1991) ....................................................................... 8

M. Fabrikant & Sons, Ltd. v. Fabrikant Fine Diamonds, Inc.,
17 F.Supp.2d 249 (S.D.N.Y 1998) (Sweet, J.)......................................................... 15

Madrigal Audio Labs., Inc. v. Cello, Ltd.,
799 F.2d 814 (2d Cir. 1986).............................................................................. 16

Maurizio v. Goldsmith,
    230 F.3d 518 (2d Cir. 2000) ................................................................. 19

Max Impact, L.L.C. v. Sherwood Group, Inc.,
    No. 09 Civ. 902, 2011 WL 507600 (S.D.N.Y. Feb 14, 2011) ............................ 18

McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.,
    938 F.2d 1544 (2d Cir. 1991) ................................................................. 14

Medinol Ltd. v. Boston Scientific Corp.,
    346 F.Supp.2d 575 (S.D.N.Y. 2004) ....................................................... 25

Medtech Prods. Inc. v. Dentek Oral Care, Inc.,
    596 F.Supp.2d 778 (S.D.N.Y. 2008) ....................................................... 26

Merck & Co., Inc. v. Mediplan Health Consulting, Inc.,
    425 F.Supp.2d 402 (S.D.N.Y. 2006) ...................................................13, 14

Mohawk Maint. Co. v. Kessler et al.,
    52 N.Y.2d 276 (1981) ...................................................................passim

N. Atl. Instruments, Inc. v. Haber,
    188 F.3d 38 (2d Cir. 1999)................................................................24, 25

Nat'l Basketball Ass'n v. Motorola, Inc.,
    105 F.3d 841 (2d Cir. 1997) ................................................................. 18

NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,
    87 N.Y.2d 614 (1996) ........................................................................ 27

Oktyabr, Inc. v. Trilini Imports,
    CV-05-5359, 2007 U.S. Dist. LEXIS 23733 (E.D.N.Y. Mar. 29, 2007).........................20, 29

Paddington Corp. v. Attiki Importers & Distribs., Inc.,
    996 F.2d 577 (2d Cir. 1993)................................................................. 15

Penrose Computer Marketgroup, Inc. v. Camin,
    682 F. Supp. 2d 202 (N.D.N.Y 2010) ...................................................33, 34

Perrin & Nissen Ltd v. SAS Group Inc.,
    No. 06 Civ. 13089, 2009 WL 855693 (S.D.N.Y. Mar. 27, 2009)......................... 18

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,
    602 F.3d 57 (2d Cir. 2010)................................................................... 11

Phansalkar v. Andersen Weinroth & Co., L.P.,
    344 F.3d 184 (2d Cir. 2003) ................................................................. 32

Plunket v. Doyle,
    No. 99-Civ-11006, 2001 WL 175252 (S.D.N.Y. Feb. 22, 2001) ......................................... 10

Polaroid Corp. v. Polarad Elec. Corp.,
    287 F.2d 492 (2d Cir. 1961) .................................................................................................. 15

Quality Serv. Group v. LJMJR Corp.,
    No. 10 Civ 9090, 2011 WL 5570107 (S.D.N.Y. Nov. 16, 2011) ....................................13, 15

R.F.M.A.S., Inc. v. Mimi So et al.,
    619 F.Supp.2d 39 (S.D.N.Y. 2009) ....................................................................................... 11

Reading Int'l, Inc. v. Oaktree Capital Mgmt., LLC,
    317 F.Supp.2d 301 (S.D.N.Y. 2003) ..................................................................................... 28

Roy Exp. Co. Establishment v. Columbia Broad. Sys., Inc.,
    672 F.2d 1095 (2d Cir. 1982) ................................................................................................ 32

S.C. Johnson & Son, Inc. v. Clorox Co.,
    241 F.3d 232 (2d Cir. 2001) .................................................................................................. 18

Sawabeh Info. Services Co. v. Brody, F.Supp.2d, 2011 WL 6382701 (S.D.N.Y. Dec. 16,
    2011) ...................................................................................................................................... 31

SD Prot., Inc. v. Del Rio,
    498 F.Supp.2d 576 (E.D.N.Y. 2007) ..................................................................................... 26

Silipos, Inc. v. Bickel,
    2006 U.S. Dist. LEXIS 54946 (S.D.N.Y. Aug. 8, 2006) ....................................................... 26

sit-up Ltd. v. IAC/Interactive Corp.,
    2008 U.S. Dist LEXIS 12017 (S.D.N.Y. Feb, 20, 2008) ...................................................26, 27

Softel, Inc. v. Dragon Med. & Scientific Commc'ns., Inc.,
    118 F.3d 955 (2d Cir. 1997) .................................................................................................. 24

Sygma Photo News, Inc. v. High Soc. Magazine, Inc.,
    778 F.2d 89 (2d Cir. 1985) ...................................................................................................... 7

Telebrands Corp. v. Del Labs, Inc.,
    719 F.Supp.2d 283 (S.D.N.Y. 2010) ..................................................................................... 16

The Name LLC v. Arias,
    No. 10 Civ. 3212, 2010 WL 4642456 (S.D.N.Y. Nov. 16, 2010) .......................................... 13

Thyroff v. Nationwide Mut. Ins. Co.,
    460 F.3d 400 (2d Cir. 2006) .................................................................................................. 29

Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.,
    220 F.Supp.2d 289 (S.D.N.Y. 2002) ................................................................. 13

USI Ins. Servs. LLC v. Miner,
    10-Civ-8162, 2011 U.S. Dist. LEXIS 74623 (S.D.N.Y. Jul. 7, 2011) ............................21, 24

Villager Pond, Inc. v. Town of Darien,
    56 F.3d 375 (2d Cir. 1995)........................................................................... 5

Vt. Microsystems, Inc. v. Autodesk, Inc.,
    88 F.3d 142 (2d Cir. 1996)........................................................................ 25

W. Elec. Co. v. Brenner,
    392 N.Y.S.2d 409 (1977)......................................................................... 32

Weindling Int'l Corp. v. Kobi Katz, Inc.,
    No. 00CIV2022, 2000 WL 1458788 (S.D.N.Y. Sep. 29, 2000) ........................... 12

Weiss/Watson, Inc. v. Lange,
    1990 U.S. Dist. LEXIS 3065 (S.D.N.Y. Mar. 20, 1990) ................................... 33

Wilmoth v. Sandor,
    686 N.Y.S.2d 388 (1st Dept. 1999) ............................................................ 34

World Auto Parts, Inc. v. Labenski,
    629 N.Y.S.2d 896 (4th Dept. 1995)........................................................30, 31

Yurman Design, Inc. v. PAJ, Inc.,
    262 F.3d 101 (2d Cir. 2001)....................................................................16, 17

Zion Corp. v. Lebow,
    593 F. Supp. 551 (S.D.N.Y. 1984) ............................................................. 32

**Statutes**

15 U.S.C. § 1114 .................................................................................... 13

15 U.S.C. § 1125(a) ................................................................................ 12

28 U.S.C. § 1331 .................................................................................... 19

28 U.S.C. § 1367 .................................................................................... 19

Section 43(a) of the Lanham Act (15 U.S.C. § 1125) ........................................13, 17

New York G.B.L. § 349................................................................................19, 20

New York G.B.L. § 360-1 ................................................................................................... 19

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................4, 7, 10

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 7

Fed. R. Civ. P. 56 ............................................................................................................ 6

Fed. R. Civ. P. (b)(6) ...................................................................................................... 6

**Other Authorities**

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1224, at 300-
301 (3d ed. 2004)............................................................................................................. 5

I.   **PRELIMINARY STATEMENT**

Defendants' motion to dismiss is built upon faulty legal arguments, disputes as to the accuracy of facts that must be accepted as true and the utter disregard for well-established precedent, which makes clear the distinction between the standard for <u>pleading</u> a cause of action with that of <u>proving</u> entitlement to relief on that same claim.

Defendants' motion attempts to paint Defendant Aghjayan as the hardworking victim and Plaintiff Ritani as the evil wrongdoer.  In doing so, Defendants wrongly accuse Ritani of seeking to take away Defendant Aghjayan's livelihood by preventing him from lawfully competing against Ritani.  Nothing could be further from the truth.  Plaintiff Ritani has no interest in interfering with Defendant Aghjayan's right to compete <u>fairly</u> in the marketplace.  However, that is not what happened here.  Rather, after mistakenly placing their full trust and confidence in Defendant Aghjayan – following the sale of his assets and goodwill in H. Ritani Corp. to Plaintiff – Plaintiff Ritani wants to protect what is left of its multimillion dollar investment by, among other things, stopping Defendants from infringing Plaintiff's copyrights and trademarks, preventing the misappropriation of Plaintiff's trade secrets and confidential information, thwarting all acts of unfair competition and permanently restraining Defendants from soliciting their former customers arising out of the sale of the goodwill of H. Ritani Corp.

Consequently, Defendants motion, which claims that Plaintiff's 51 page, 241 count Complaint is deficient as to <u>all</u> seventeen causes of action is simply insupportable.  Rather, as discussed in detail below, accepting all factual allegations in the Complaint as true, as the Court must at this stage, Plaintiff has stated a claim for relief on each of these counts.  Accordingly, Defendants' motion to dismiss, as well as their request for attorney fees should be denied in all respects.

II.     **RELEVANT BACKGROUND FACTS**

Plaintiff Ritani, LLC ("Ritani") is a highly successful designer, manufacturer and distributor of high end designer jewelry offered for sale under the world famous RITANI brand. (Complaint, Dkt. 1, ¶ 33).  Ritani was formed back in 2002 as a result of a series of transactions emanating from Defendant Aghjayan and H. Ritani, Corp.'s sale of the business consisting of the right, title, interest and goodwill of H. Ritani, Corp – for which Defendant Aghjayan was the sole shareholder – to a newly formed entity, Plaintiff Ritani, LLC, owned jointly by Defendants Aghjayan and H. Ritani, Corp., Julius Klein Diamonds and For Krunch, LLC, for the benefit of Ritani.  (Id. at ¶¶ 13-14).

Upon formation of the partnership, Ritani transitioned from H. Ritani, Corp.'s prior use of the H. RITANI brand to the RITANI brand alone.  (Dkt. 1, ¶ 34).  Today the RITANI brand is synonymous with luxury and high-quality craftsmanship and consumers and the trade instantly identify Ritani as the source of all jewelry bearing the RITANI name and marks.  Id.  Ritani has a number of Registered Copyrights, including but not limited to, Registration Nos. VA 1-774-361, VA 1-774-363 and VA 1-774-364 (the three representative copyrighted designs attached to the Complaint), as well as a number of trademarks, including the trademark RITANI and the Three-Leaf Trademark.  (Dkt. 1, ¶¶ 35, 40, 42 and Exs. 13, 16, 17).

After Defendant Aghjayan joined the company in 2002, Ritani entered into two employment agreements with Defendant Aghjayan, both of which contain provisions protecting Ritani's trade secrets and confidential information, as well as a non-compete clause.  (Dkt. 1, Exs. 5 and 9).  Specifically, in 2002, Defendant Aghjayan executed an Employment Agreement with Ritani appointing him Chief Executive Officer and President.  (Id. at ¶ 19 and Ex. 5).  Thereafter, in 2004, the parties entered into a second Employment Agreement, whereby Defendant Aghjayan agreed to continue on as Ritani's President and Chief Executive Officer and

take on additional responsibilities as Ritani's Chief Operating Officer, as well as supervise and assist Ritani in product design and marketing until October 31, 2009.  (Id. at ¶ 23 and Ex. 9).  Both Agreements required Defendant Aghjayan to render "exclusive services as Chief Executive Officer" for Ritani and to perform such services "to further the business and affairs of Employer."  (Id. at Ex. 5 at § 1(b); Ex. 9 at ¶1(c) and (d)).  Defendant Aghjayan was also precluded from disclosing any trade secret and/or confidential information during the term of his agreement and at all times thereafter for any purpose other than for the sole benefit of Ritani. (Dkt. 1, ¶¶ 20, 23-24 and Exs. 5 and 9).  Moreover, Defendant Aghjayan also was prevented from competing with Ritani during his employment and up until the modified agreement date of October 14, 2010.  (Id.; Dkt., 1 ¶¶ 31-32 and Ex. 12).

On November 1, 2009, Defendant Aghjayan resigned from his employment at Ritani. (Dkt. 1, ¶ 29).  Pursuant to the '04 Employment Agreement, Defendant Aghjayan was obligated not to compete with Plaintiff in the jewelry industry until October 31, 2010 – one year following the date of his resignation.  (Id. and Ex. 9, ¶6).  Prior to the expiration of his non-compete term, Defendant Aghjayan approached Ritani seeking an amendment to the non-compete provision of the '04 Employment Agreement.  (Id. at ¶ 31).  Subsequently, on October 20, 2010, Defendant Aghjayan entered into a letter agreement ("Letter Agreement") with Ritani (Dkt. 1, Ex. 12) amending the blanket non-compete provision in the '04 Employment Agreement to end two weeks early, on October 14, 2010.  (Id.; Dkt. 1, ¶ 32).  Plaintiff agreed to the modification of the non-compete portion of the agreement to end the partnership with Defendant Aghjayan on good terms and in return for Defendant Aghjayan's agreement not to sell jewelry to any current Ritani customer through December 31, 2010 and to refrain from attending the January/February 2011 Centurian Show.  Id.  In addition, while Plaintiff understood that Defendant Aghjayan had

engaged in casual conversations with a few potential non-Ritani customers, it was Plaintiff's understanding from Defendant Aghjayan that these discussions pertained to non-competing products, such as door knobs, castings and findings, and were in no way related to Plaintiff's business." Id. Significantly, nowhere in the 2010 Letter Agreement does it permit Defendant Aghjayan to solicit Ritani's customers. Id.

From 2002 on, following Defendant Aghjayan's sale of rights, title and interest of H. Ritani Corp., including accompanying goodwill, to Ritani, Defendants have engaged in a pattern of behavior that inter alia damages the goodwill transferred to Ritani in connection with that sale. (Dkt. 1, ¶ 11). Specifically, while employed as Ritani's President, Chief Executive Officer and chief designer, Defendant Aghjayan took advantage of his position to access and subsequently use Ritani trade secrets and other confidential and/or proprietary information, as well as Ritani's trademarks and copyrighted jewelry designs, to establish and operate Harout R, LLC; H. Ritani, LLC; H. Ritani, Inc.; and Amazing Settings, LLP and to continue to operate H. Ritani, Corp. and H. Ritani, LLC (collectively "Defendant Companies"), to directly compete with and solicit customers from Ritani. Id. Defendant Aghjayan is the active motivating force behind each of Defendant Companies. Id. Defendants' conduct has resulted in significant harm to the business reputation and goodwill of Ritani and has damaged its business relations with its customers and prospective customers. Id. As a result of this harm, Ritani filed the current lawsuit against Defendant Aghjayan and the Defendant Companies.

## III.  APPLICABLE PRINCIPLES OF LAW

### A.  Liberal Pleading Standards of Federal Rule of Civil Procedure 8

"The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff." In re Bayou Hedge Fund Litigation, 534 F.Supp.2d 405, 413 (S.D.N.Y. 2007). In the context of a motion to dismiss, the Court must accept all factual elements of the Complaint as

true and is "required to read a complaint generously, drawing all reasonable inferences from its allegations in favor of the plaintiff." ESPN, Inc. v. Quiksilver, Inc., 586 F.Supp.2d 219, 224 (S.D.N.Y. 2008). To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995).

**B.      Ritani Can Allege Facts Based Upon Information and Belief**

The Twombly standard "does not prevent a plaintiff from 'pleading facts alleged upon information and belief' where the facts are peculiarly within the possession and control of the defendant, see, e.g., Boykin v. KeyCorp, 521 F.3d 202, 215 (2d Cir. 2008), or where the belief is based on factual information that makes the inference of culpability plausible." Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")); see also Beauchamp v. Fin. Recovery Servs., 10 Civ. 4864, 2011 U.S. Dist. LEXIS 25512, at *4, 10, n. 35 (S.D.N.Y. Mar. 11, 2011); Lindner v. Int'l Business Machines Corp., 06 Civ. 4751, 2008 U.S. Dist. LEXIS 47599, at *16-17 (S.D.N.Y. June 18, 2008); and 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1224, at 300-301 (3d ed. 2004).

Ritani has more than satisfied its pleading obligations in this case. Ritani's Complaint is replete with facts describing the specific details associated with a considerable number of acts performed by Defendant Aghjayan – as the active and motivating force behind Defendant

Companies – in support of Ritani's claims.  In particular, Ritani's allegations "based on information and belief" relate to Defendant Aghjayan's mental state, his private conversations with third parties and the intimate details associated with his misappropriation and use of Ritani's confidential and trade secret information – the facts of which are "peculiarly within the possession and knowledge" of Defendant Aghjayan.  Accepting all factual allegations in the Complaint as true, including but not limited to, Defendant Aghjayan's access to Ritani's trade secret and confidential information, his contractual obligations and fiduciary duty not to use and disclose such information for his own benefit, Defendants' development and sale of competing jewelry designs, which replicate Ritani's protected trademarks and copyrights, misleading statements made in Defendants' marketing and promotional materials and Defendant Aghjayan's direct solicitation of former customers following his sale of goodwill, taken together, permit a reasonable inference that Defendant Aghjayan and his Defendant Companies are liable for the misconduct alleged.  (See Dkt. 1, ¶¶ 44-45, 47-50, 61, 65, 67, 69-72, 88, 131 as examples).

## C.    Defendant Aghjayan's Affidavit Should Not Be Considered

In deciding a motion to dismiss, a district court is limited to "consideration of the facts alleged on the face of the complaint and to any documents attached as exhibits or incorporated by reference." JTH Tax, Inc. v. Gouneh, 721 F.Supp.2d 132, 136 (N.D.N.Y 2010) (refusing to consider declarations and exhibits offered by the defendant in support of its motion to dismiss) (citing Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989)).  "[W]here material outside the complaint is presented in support of a Rule 12(b)(6) motion," the court can either "exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." Id.  (citing Fonte v. Bd. of Managers of Cont'l Towers Condo., 848 F.2d 24, 25 (2d Cir. 1988).  Consideration of extraneous material is "at odds with the liberal

pleading standard" of Rule 8, which only requires that the complaint contain "a short and plain statement" showing entitlement to relief.  Chambers v. Time Warner, Inc., 282 F.3d 147, 154-55 (2d Cir. 2002) (District Court erred in considering documents that were neither part of nor referenced in the complaint and were not relied upon by plaintiff in drafting the complaint).

Defendant Aghjayan's Affidavit and exhibits are extraneous to the Complaint.  Thus, these materials and all statements relying upon them should not be considered in ruling on Defendants' motion.  Fonte, 848 F.2d at 25; JTH Tax, Inc., 721 F.Supp.2d at 136.[1]

**D.    Defendants' Motion Conflates the Pleading Standard with the Burden of Proof**

Defendants' Motion consistently, and incorrectly, confuses the standard for pleading a cause of action with the requirements for proving entitlement to relief.  (See Defendants' Brief, Dkt. 12 at pp. 6, 10-12, 16-17 as examples).  In doing so, Defendants attempt to subject Ritani to a heightened pleading standard, which Federal Rule of Civil Procedure 8(a)(2) simply does not require in the context of a motion to dismiss.   In contrasting the difference between the pleading standard on a motion to dismiss with the level of proof necessary to sustain summary judgment or obtain a preliminary injunction the Court in ESPN, Inc., 586 F.Supp.2d at 229 recognized:

> No such [proof] obligation rests on Quiksilver at this stage; since it has not moved for a preliminary injunction or for summary judgment, it has no obligation to *prove* anything. The test on a motion directed at a pleading is much less stringent: do the allegations of the [claims], read most favorably to the pleader, state a claim for relief?

**E.    Defendant Aghjayan and His Companies are Liable**

All individuals and corporations "who participate in, exercise control over, or benefit from the infringement are jointly and severally liable as copyright infringers." EMI Entertainment World, Inc. v. Karen Records, Inc., 806 F.Supp.2d 697, 709 (S.D.N.Y. 2011) (quoting Sygma Photo News, Inc. v. High Soc. Magazine, Inc., 778 F.2d 89, 92 (2d Cir. 1985)).

---

[1]  Should the Court decide to consider Defendant Aghjayan's affidavit and exhibits, Plaintiff respectfully requests attendant discovery and the opportunity to provide supporting materials in response.

"One may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." Id. (quoting Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)). "Likewise a company president who supervises the selection, manufacture, distribution and sale of infringing [merchandise] is jointly and severally liable for damages caused by the infringement." Id. (quoting Luft v. Crown Publishers, Inc., 772 F.Supp. 1378, 1379 (S.D.N.Y. 1991).

Similarly, "[u]nder the Lanham Act, a corporate officer may be held personally liable for trademark infringement and unfair competition if the officer is a moving, active conscious force behind [the defendant corporation's] infringement." Chloe v. Designersimports.com USA, Inc., 07-CV-1791, 2009 U.S. Dist. LEXIS 42351, at *34 (S.D.N.Y. 2009) (quoting Cartier v. Aaron Faber, Inc., 512 F.Supp.2d 165, 170 (S.D.N.Y. 2007); Burberry Ltd. v. Euro Moda, Inc., 08-CV--5781, 2009 U.S. Dist. LEXIS 53250, at *50-53 (S.D.N.Y. 2009); Gucci Am., Inc. v. Duty Free Apparel, Ltd., 315 F.Supp.2d 511, 520, 526, amended in part, 328 F.Supp.2d 439 (S.D.N.Y. 2004) ("Because [individual] made all of the decisions for [corporation] as to what merchandise to offer for sale, he is liable individually to the same extent as the corporation.").

Ritani has sufficiently pled the intimate personal involvement and domination that Defendant Aghjayan has over each of the Defendant Companies, as well as the active and conscious role he played – on behalf of these Defendants – in the conduct alleged to constitute copyright infringement, trademark infringement, unfair competition, and other violations of New York state law.[2]  Specifically, it is alleged that each of the Defendant Companies is wholly owned by Defendant Aghjayan.  (Dkt. 1, ¶¶ 4-8).  The Complaint also alleges that Defendant Aghjayan took advantage of his position at Ritani to access and use Ritani's trademarks,

---

[2]  As for the contract claims, the Complaint alleges that Defendant Aghjayan breached his Employment Agreements with Ritani. (Dkt. 1, ¶ 201).  No such allegations were made against any other parties.

copyrighted jewelry designs, trade secrets and other confidential and/or proprietary information, to establish and operate Defendant Companies, to unfairly compete with and solicit customers from Ritani.  (Id. at ¶¶ 11, 30, 48, 49, 53, 59, 63, 69, 236).[3]

Defendants' motion admits that Defendants Harout R and Amazing Settings "design, manufacture and sell designer rings."  (Dkt. 12 at p. 5, n. 4).  Defendant Aghjayan as a corporate officer of these companies is intimately involved in the selection, manufacture, distribution and sale of products on their behalf.  (Dkt. 1, Exs. 20-21).  Because Defendant Aghjayan exercised control over Defendant Companies, who are alleged to have reaped the benefits of his wrongful conduct, liability collectively falls on Defendant Aghjayan individually and his Defendant Companies.[4]

## IV.    RITANI HAS SUFFICIENTLY PLED EACH OF ITS CLAIMS

## A.    Federal Copyright Infringement Claims

A complaint alleging copyright infringement must state:  1) which specific original works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright."  Ellis v. Jean, No. 10 Civ. 8837, 2011 WL 6368555 at *3 (S.D.N.Y. Dec. 16, 2011) (citing Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992)).

---

[3]  Dove v. Fordham Univ., 56 F.Supp.2d 330, cited by Defendants, is clearly inapposite.  (Dkt. 12, at p. 8).  In Dove, the Complaint listed 8 individuals in the caption, but made no reference to these defendants in the body of the Complaint.  This clearly differs from the detailed allegations made against each Defendant here.

[4]  Defendants H. Ritani, LLC and H. Ritani, Corp. are listed as active companies by the New York Secretary of State, with Defendant Aghjayan as their officer.  The continued existence of these companies with the Ritani name, in and of itself, breaches the 2007 Membership Agreement and is likely to cause confusion among consumers.  Defendants fall short of denying this fact.  Exactly what these companies are currently doing is peculiarly within their knowledge and a factual question to be determined during discovery.

Copyright infringement claims need not be pled with particularity.  Ellis, 2011 WL 6368555 at *2 (quoting Twombly, 127 S.Ct. at 555 (Rule 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds upon which it rests."); Capitol Records, Inc. v. Wings Digital Corp., 218 F.Supp.2d 280, 284 (E.D.N.Y. 2002); Plunket v. Doyle, No. 99-Civ-11006, 2001 WL 175252 at *6 (S.D.N.Y. Feb. 22, 2001) (plaintiff need not specify each infringing act, as "discovery is likely to provide many of the details of the allegedly infringing acts and much of this information may be exclusively in defendant's control").

Defendants do not refute that Plaintiff has sufficiently pled the first three (3) elements of a copyright claim.  Plaintiff identified representative specific works that are the subject of the copyright claim, Reg Nos. VA 1-774-361, VA 1-774-363, and VA 1-774-364 and claimed ownership and offered proof of registration. (Dkt. 1, ¶¶ 42, 78, 79 and Exs. 17, 27).  Defendants only contend that Plaintiff has not pled the fourth element – by what acts during what time the defendant infringed the copyright.  (Dkt. 12, p. 9).  Defendants' motion misrepresents Plaintiff's allegations by omitting details from paragraphs 70 and 71 of the Complaint, which set forth the acts of infringement with specificity.  Id.  Plaintiff sufficiently alleged by what acts and during what time Defendants infringed Plaintiff's copyrights. (Dkt. 1, ¶¶ 70, 71, 81 and Ex. 27).

Defendants then contend that Plaintiff's infringement case fails as a matter of law, but only under a narrow, inapplicable exception.  The elements necessary to establish copyright infringement are well settled.  "To establish infringement of copyright, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Arista, 604 F.3d at 117 (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S.Ct. 1282 (1991)).  Substantial similarity is typically a question of fact.

Durham Indus., Inc. v. Tomy Corp., 630 F.2d 905, 911 (2d Cir. 1980).  Only "in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law [based on the pleadings], 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010).

To support their contention that the limited Gaito exception applies, and that there is no substantial similarity as a matter of law, Defendants offer the conclusory statement that "[u]nder either of [the] tests [identified in Gaito], the requisite substantial similarity is lacking here as a matter of law."  (Dkt. 12 at 10).  Defendants have tried to shoehorn the present case into the narrow holding in Gaito, which concerns a completely different fact-pattern relating to copying of functional and conceptual aspects of architectural drawings – the number of parking spaces in a plan and other "unprotectible concepts and ideas." 602 F.3d at 60-61, 69.[5]  Here, the aesthetic aspects of a ring design represent the expression of ideas rather than ideas alone, and the Gaito exception cannot apply.

Defendants are also incorrect in their claim that Plaintiff must specifically allege the manner in which the works at issue are substantially similar.  (Dkt. 12 at 11).  See Axelrod & Cherveny Architects, P.C. v. T&S Builders Inc., 05-CIV-5573, 2008 WL 3211272, *13 (E.D.N.Y. Aug. 6, 2008) ("A court must consider similarity in light of 'the total concept and feel' of the work.... '[t]he factfinder must look at the work as a whole without dissection.'")

---

[5] Defendants summarily define "functional elements of the [Plaintiff's] rings, i.e., the location of the stone, type of shank, how the prongs hold the main stone." (Dkt. 12 at 11).  It is not settled that the location of a stone on a ring, type and shape of a shank, and even shape of the prongs, can be considered entirely functional and unprotectible.  In jewelry design "it is the arrangement and selection of common elements that give rise to [] copyrightability." R.F.M.A.S., Inc. v. Mimi So et al., 619 F.Supp.2d 39, 67 (S.D.N.Y. 2009)(refusing to rule-out copyright infringement as a matter of law).

(emphasis added).  Nor is it proper to approach the question of substantial similarity, as the Defendants have, by looking at a few alleged differences in the designs.[6]  See, e.g., Lombardi v. Whitehall XII/Hubert Street, LLC., 04-CIV-6752, 2010 WL 742615, *16 (S.D.N.Y. Mar. 3, 2010) ("the element by element approach to the substantial similarity analysis employed by the Defendants is flawed...the sum of work is greater than its constituent parts...").

Defendants weakly parry that should it be found that Ritani's works have protectable elements, "Harout has not, as a matter of law, misappropriated 'the original way' in which he (when he designed for Plaintiff), 'selected, coordinated, and arranged' the elements of the diamond rings."  (Dkt. 12 at 11).  Saying that it is settled "as a matter of law" does not make it so.[7]  When conclusory statements are stripped away, there are facts in dispute in this case that legitimately raise issues of whether Defendants' ring designs are substantially similar to the ring designs of the Plaintiff, and whether Defendants' copying created derivative works of Plaintiff's original designs.

**B.     Federal Trademark Infringement and Unfair Competition Claims**

"In order to prevail under 15 U.S.C. § 1125(a), a plaintiff must show that it owns a mark deserving of protection, and that the mark is used in such a way as to create a 'likelihood of confusion' as to the source or sponsorship of the defendant's goods or services."  Alzheimer's Foundation of Am., Inc. v. Alzheimer's Disease and Related Disorders Assoc., Inc., 796 F.Supp.2d 458, 465 (S.D.N.Y. 2011) (Sweet, J.) (citing Louis Vuitton v. Dooney & Bourke, Inc.,

---

[6] It is also impermissible to look at Defendant Aghjayan's affidavit in making this determination.

[7] Defendants' cite three cases that are distinguishable or irrelevant.  (Dkt. 12 at 12).  In Diamond Direct, LLC v. Star Diamond Group, Inc., 116 F.Supp.2d 525 (S.D.N.Y. 2000), the copyright claim only extended to the arrangement of the central cluster of stones, meaning that a different arrangement necessarily was found to be not substantially similar.  Id. at 528, 530.  In Judith Ripka Designs, Ltd. v. Preville, 935 F.Supp. 237 (S.D.N.Y. 1996), the copyright claim was not decided as a matter of law, but after a ten-day trial.  DBC of N.Y., Inc. v. Merit Diamond Corp., 768 F.Supp. 414 (S.D.N.Y. 1991) was decided prior to Feist, and its holding on the issue of copyright protection for jewelry has been questioned by this Court.  See e.g., Weindling Int'l Corp. v. Kobi Katz, Inc., No. 00CIV2022, 2000 WL 1458788 at *4 (S.D.N.Y. Sep. 29, 2000).

454 F.3d 108, 115 (2d Cir. 2006)).  "It is well settled that the standards for false designation of

origin claims under Section 43(a) of the Lanham Act (15 U.S.C. § 1125) are the same as for

trademark infringement claims under Section 32 (15 U.S.C. § 1114)."  The Name LLC v. Arias,

No. 10 Civ. 3212, 2010 WL 4642456 at *4 (S.D.N.Y. Nov. 16, 2010) (quoting Twentieth

Century Fox v. Marvel Enters., Inc., 220 F.Supp.2d 289, 297 (S.D.N.Y. 2002)).

      "Likelihood of confusion is 'a fact-intensive analysis that ordinarily does not lend itself

to a motion to dismiss.'"  The Name, 2010 WL 4642456 at *5; see also Merck & Co., Inc. v.

Mediplan Health Consulting, Inc., 425 F.Supp.2d 402, 412 (S.D.N.Y. 2006).  Courts have

specifically refused to dismiss infringement claims where a likelihood of confusion analysis

would be necessary on the pleadings.  The Name, 2010 WL 4642456 at *5; see also Quality

Serv. Group v. LJMJR Corp., No. 10 Civ. 9090, 2011 WL 5570107, at *6-7 (S.D.N.Y. Nov. 16,

2011).

      Defendants' motion and critique of Ritani's trademark claims is fatally flawed.

Defendants cherry-pick portions of four (4) sentences from Ritani's Complaint in an attempt to

prove that Ritani has failed to sufficiently plead its federal and state trademark claims.  (Dkt. 12

pp. 13-14).  Defendants completely ignore the remainder of Ritani's 51 page, 241 count

Complaint, which sets forth the bases for its trademark and unfair competition claims, including

Defendant Aghjayan's usage – through Defendant Companies – of the Ritani name, the Ritani

Brand and the Ritani Trademarks in specific jewelry designs, brochures, advertisements and

promotional materials enumerated throughout the Complaint.

      Specifically, Ritani's Complaint alleges ownership of a registration in the RITANI mark

and offers proof in the form of a registration certificate.  (Dkt. 1, ¶ 40 and Ex. 16).  Ritani has

also alleged common-law rights in the Three-Leaf Trademark based on ten years of use and

offered documentary evidence demonstrating that use.  (Id. at ¶ 35, 38 and 41 and Exs. 14 and

15).  The Complaint makes further allegations that Defendant Aghjayan used the RITANI

trademark and Three-Leaf Trademark in connection with his sale of jewelry and provides

examples of that use in his flier and brochure, circulated on behalf of Harout R.  (Id. at ¶ 69 and

Exs. 23 and 24).  With respect to Ritani's unfair competition claims, it is alleged that these

usages of the Ritani Trademarks, as well as Defendant Aghjayan's use of the name "Ritani" in

his marketing materials in connection with the sale of goods and services, without the consent of

Ritani, constitutes a false designation of origin, false or misleading description of fact, or false or

misleading representation in commerce" [8]  (Id. at ¶ 95 and Exs. 23 and 24).  Last, Ritani's

Complaint alleges that these uses are likely to cause confusion and damages.  (Id. at ¶¶ 65, 69,

87, 95, 101-107).

       In addition, Defendants consistently and impermissibly invoke a de facto fair-use defense

as justification for dismissing Plaintiff's properly pled trademark and unfair competition claims.

For example, Defendants repeatedly argue that they have a right to use the name Harout R and

that statements containing the RITANI name and mark are factually true.[9]  (Dkt. 12 at 14-15).

However, the fair use defense is just that - a defense – and thus, is an inappropriate basis for a

motion to dismiss.  Merck & Co., 425 F.Supp.2d at 412 ("the classic fair use defense fails, at

---

[8]  Plaintiff's claims for unfair competition under the Lanham Act evoke similar principles as its trademark
infringement and false designation of origin claims.  To establish unfair competition under the Lanham Act, a
plaintiff must show that a defendant: (1) made false or misleading factual representations regarding the nature,
characteristics, or qualities of plaintiffs goods or services; (2) used the false or misleading representations "in
commerce;" (3) made the false or misleading representations in the context of commercial advertising or
commercial promotion; and (4) made plaintiff believe that it was likely to be damaged by promotion.  McNeil-
P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544 (2d Cir. 1991).  Thus, the analysis discussed in this section
is likewise applicable to these claims.

[9]  Here, and throughout Defendants' motion, Defendants attempt to re-frame the issue as one of potential confusion
between the RITANI and HAROUT R marks, rather than potential confusion resulting from Defendants' continuing
improper use of the RITANI name and trademarks.  Defendants' attempts to redraft the Complaint to suit their
personalized needs cannot form the basis for granting their motion.

least at this stage [i.e., on a Motion to Dismiss], where the only question is the sufficiency of the pleadings.").

Defendants' arguments that Ritani's marketing materials do not show "confusion" and that "Plaintiff fails to allege that any customer, in fact, has been confused" should be rejected outright, for they seek to impose a standard of proof clearly improper at the pleading stage.[10] (Dkt. 12, pp. 16-17); Quality Serv. Group, 2011 WL 5570107, at *6-7.

Also, the specific case law cited in Defendants' motion is inapposite. For example, the facts and circumstances in Gen. Outlet Corp. v. Acronite Corp., 467 F.Supp. 269 (S.D.N.Y. 1979) are readily distinguishable from the case at hand. (Dkt. 12, pp. 19-21). Namely, unlike Ms. Zellermaier, Defendant Aghjayan sold his business and goodwill to Ritani LLC and expressly contracted not to use the name RITANI, or any similar name, in any competing business. (See Mohawk Section F). Accordingly, his inability to use RITANI is exactly the result Defendant Aghjayan bargained for. Further, Defendants' memorandum repeatedly obscures two key issues that distinguish Gen. Outlet. First, Ritani is not seeking to enjoin Defendant Aghjayan from selling competing goods for another company under a mark that contains his personal name.[11] Rather, it is undisputed that Defendant Aghjayan's true name is Harout Aghjayan, not Harout Ritani or Harout R. (Dkt. 1, ¶ 65; Dkt. 11, Affidavit of Harout

---

[10] In reality, to prevail on a trademark infringement claim, evidence of actual confusion is not required. Rather, it is but one of eight factors that courts consider in determining whether a party has proven a likelihood of confusion. Polaroid Corp. v. Polarad Elec. Corp., 287 F.2d 492, 495 (2d Cir. 1961). Moreover, Defendants' reference to "sophistication of relevant customers" (Dkt. 12, p. 17) is another Polaroid factor considered in proving, not pleading, likelihood of confusion. In fact, sophistication has been determined in some circumstances to increase the likelihood of confusion. Paddington Corp. v. Attiki Importers & Distribs., Inc., 996 F.2d 577, 587 (2d Cir. 1993).

[11] Similarly, in M. Fabrikant & Sons, Ltd. v. Fabrikant Fine Diamonds, Inc., 17 F.Supp.2d 249, 255 (S.D.N.Y 1998) (Sweet, J.), (Dkt. 12, p. 16), defendant was using his own actual surname and evidenced a long, good-faith family history of using the name in the jewelry business. In contrast, Defendant Aghjayan wishes to retain the ability to use a made-up name the rights to which he conveyed to Ritani for no small consideration.

Aghjayan).[12]  Second, Defendant Aghjayan is afforded no protection for his attempt to mislead

consumers as to his continuing affiliation with Ritani by the "tendency of courts to respect an

individual's right to build a business under his or her own name" in that "Harout R" is not

Defendant Harout Levon Aghjayan's "own name."  Gen. Outlet, 467 F.Supp. at 271.  Finally,

and at the very least, the procedural posture of Gen. Outlet differs, as that case involved a motion

for preliminary injunction, not a motion to dismiss.  ESPN, Inc., 586 F.Supp.2d at 228-29.

   Madrigal Audio Labs., Inc. v. Cello, Ltd., 799 F.2d 814 (2d Cir. 1986) also fails to lend

support for Defendants' claims.  (Dkt. 12 at 16).  Madrigal – another preliminary injunction case

– stands for the proposition that an individual can contract away his right to use a personal name,

even as a symbol of individual reputation, depending upon the precise terms of the sale.  Id.  As

stated in Madrigal, "[a]n individual may not keep for himself the essential thing he sold, and also

keep the price he got for it by selling the right to use his personal name as a trade name, then

advertising his connection with another company in such a way as to arrogate to himself the

trade reputation for which he received valuable consideration."  Id. at 824.  A determination of

false designation of origin requires a fact-intensive inquiry into the post-sale actions of that

individual, such as Defendant Aghjayan.  Id.  Such an inquiry is not the proper subject of a

motion to dismiss.  Here, unlike Madrigal, Ritani is not Defendant Aghjayan's personal name,

but a coined word he specifically created for use as a trademark and trade name, which he

subsequently broadly contracted away to Ritani.  (Dkt. 1, ¶ 26).  Madrigal simply does not apply.

   Next, Defendants claim that Telebrands Corp. v. Del Labs, Inc., 719 F.Supp.2d 283,

299 (S.D.N.Y. 2010) and Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 115-116 (2d Cir.

2001) require that non-functionality and secondary meaning be pled for all federal and state law

---

[12]  Defendants' reliance upon a business card that Defendant Aghjayan created for himself while President and CEO
of Ritani has no bearing on this issue.  At the very least, this raises a factual dispute.  Brinson v. Kulback's &
Assoc., 744 N.Y.S.2d 621, 623 (4th Dep't 2002).

trademark claims.  (Dkt. 12. at pp. 17-19).  Neither case stands for such a broad proposition and Defendants' statements to the contrary are disingenuous at best.  Rather, these cases, along with the pleading standard cited by Defendants, apply <u>only</u> to claims for <u>trade dress</u> infringement – an important distinction in our case.  <u>Id.</u>; <u>See also Louis Vuitton</u>, 454 F.3d at 115-16 ("Plaintiff does not seek to protect the overall look of its handbags, that is, its trade dress, but rather the narrower trademark it has established in its colored pattern"); <u>Covidien AG v. CapitalSource Inc.</u>, 2008 U.S. Dist. LEXIS 86144, at *2-4 (S.D.N.Y. Oct. 23, 2008) (denying motion to dismiss where plaintiff alleged that its "design element within their mark is 'a distinctive symbol' which the public recognizes," and that defendants' "use of a similar mark is likely to cause confusion").  <u>Id.</u>

Defendants incorrectly assert that Ritani is claiming trade dress infringement with respect to the design or configuration of Ritani's entire jewelry line, including the Three-Leaf Trademark.  (Dkt. 12 at pp. 17-18).  A review of the Complaint shows that Ritani did not – and does not now - allege a cause of action for trade dress infringement.  (Dkt. 1).  Rather, Plaintiff is asserting a claim for trademark infringement and unfair competition with respect to its Three-Leaf *mark* by Defendant Aghjayan's incorporation of this mark into his own trade dress.  (Dkt. 1, ¶¶ 87, 95).  As such, Defendants' "trade dress" arguments should be rejected outright.  See also <u>Gary Friedrich Enter., LLC v. Marvel Enter., Inc.</u>, No. 08 CV 01533, 2011 WL 3163570 at *2 (S.D.N.Y. Jul. 26, 2011)[13]

**C.  Federal False Advertising Claims**

To establish a claim for false advertising under section 43(a) of the Lanham Act, a plaintiff must demonstrate that the statement at issue is false, by proving either that "'(1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true,

---

[13]Because "the elements necessary to prevail on common law causes of action for trademark infringement mirror the Lanham Act claims," Plaintiff also states a claim for trademark infringement under New York law.  <u>Louis Vuitton v. Dooney & Bourke, Inc.</u>, 340 F. Supp.2d 415, 436 (S.D.N.Y. 2004).

it is likely to deceive or confuse customers.'" S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d

232, 238 (2d Cir. 2001) (quoting Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 855 (2d

Cir. 1997)).  "It is also well-settled that, in addition to proving falsity, the plaintiff must also

show that the defendants misrepresented an 'inherent quality or characteristic' of the product."

Id.  See Perrin & Nissen Ltd v. SAS Group Inc., No. 06 Civ. 13089, 2009 WL 855693, at *9

(S.D.N.Y. Mar. 27, 2009); see also Max Impact, L.L.C. v. Sherwood Group, Inc., No. 09 Civ.

902, 2011 WL 507600, at *6 (S.D.N.Y. Feb 14, 2011).

Plaintiff alleges that Defendant Aghjayan has, in his promotional and advertising efforts,

identified himself to potential customers as "Harout Ritani," advertised himself as formerly

known as "Harout Ritani," and described himself as the "Real Ritani."  (Dkt. 1, ¶¶ 65, 66, 69, 88,

131).  It is also alleged that Defendant Aghjayan's name is and has always been Harout [Levon]

Aghjayan.  (Id. at ¶¶ 65).  As such, Defendants' statements are literally false.  Plaintiff further

alleges that Defendant Aghjayan's continuing usage of the RITANI trademark and name,

including in his companies' names, is implicitly false in that it is likely to deceive or confuse

consumers into believing that there is an on-going association between Ritani, LLC and

Aghjayan.  Id.  Allegations of this nature have been found sufficient to adequately state a claim

for false advertising for implicit falsity.  Kuklachev v. Gelfman, 600 F.Supp.2d 437, 469-471

(E.D.N.Y 2009).  Moreover, Defendants' attack on Ritani's allegations that Harout has identified

himself to customers as "Harout Ritani" at a trade show in July of 2011, on hearsay grounds, has

absolutely no merit.  (Dkt. 12 at p. 16).  On a motion to dismiss, the Court must accept as true all

factual statements in the complaint "whether the statements...might constitute inadmissible

hearsay when relied upon for the truth of the matters asserted is simply irrelevant." <u>Kittay v. Korff</u>, 08 CV 7421, 2011 U.S. Dist. LEXIS 11681, at *15 (S.D.N.Y. Feb. 4, 2011).[14]

**D.    Ritani's State Law Claims are Sufficiently Pled and Jurisdictionally Proper**

Ritani's inclusion of federal trademark and copyright claims gives the Court federal subject matter jurisdiction of all claims, including supplemental jurisdiction of its related state law claims.  28 U.S.C. §§ 1331, 1367; <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 (1988).  As discussed in detail above, Ritani has sufficiently pled claims under the Lanham Act and the federal copyright statute, and consequently, neither Ritani's federal claims nor its related state law claims, should be dismissed on jurisdictional grounds.

**E.    Plaintiff's Causes of Action Under New York G.B.L. § 349 and § 360-1**

<u>New York G.B.L.</u> § 360-1 was enacted to "protect against the unauthorized use of marks that impairs the goodwill and value of plaintiff's mark."  <u>ESPN, Inc.</u>, 586 F.Supp.2d at 228. Under New York state law for dilution, the trademark does not have to be "famous" or "celebrated," but only requires a showing that the mark is inherently distinctive or acquired secondary meaning.  <u>Id.</u>  (citing <u>Kraft General Foods, Inc. v. Allied Old English, Inc.</u>, 831 F.Supp. 123, 134 (S.D.N.Y. 1993)).  Dilution has been identified as either blurring or tarnishment.  <u>Deere & Co. v. MTD Prods., Inc.</u>, 41 F.3d 39, 42-43 (2d Cir. 1994).

Plaintiff has repeatedly pled that 1) Ritani is the owner of the right, title and interest in and to a federally registered trademark for RITANI services; 2) the RITANI trademarks are distinctive and extensively advertised and sold to consumers; 3) Plaintiff's use of the RITANI trademarks predates use by Defendant; and 4) the RITANI trademarks are "intimately associated

---

[14]  To prevail on a claim for false advertising under New York law, the moving party must show that:  "(1) the [non-moving party's] deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the [moving party] has been injured as a result."  <u>Maurizio v. Goldsmith</u>, 230 F.3d 518, 521-22 (2d Cir. 2000). Defendants' motion should be denied with respect to Ritani's state law claim, for the same reasons as Ritani's federal claims.

with its goods and services serving to indicate source" and are "distinguished thereby from the trademarks of others." (Dkt. 1, ¶¶ 34-41, 128, 154, 156).

The Complaint also alleges that Defendant Aghjayan's use of the RITANI Trademarks – through Defendant Companies –in their jewelry designs; the maintenance and continued registration of Defendants H. Ritani, Corp., H. Ritani, LLC and Ritani, Inc.; in Defendants' advertisements, brochures and solicitations to Ritani customers; and through representations made by Defendant Aghjayan to the industry that he is "formerly known as Harout Ritani" or is the "real Harout Ritani" has resulted in *inter alia* trademark infringement and unfair competition. (Id. at ¶¶ 65-69, 87-89, 95-96, 130-132, 155).  Moreover, the commission of these acts by Defendants is likely to cause confusion, mistake, or deceive consumers as to the affiliation, connection, or association of Defendants and dilute the distinctiveness of the RITANI Trademarks.  Id.  These allegations are sufficient to state a claim that Defendants have blurred Ritani's trademarks resulting in the possibility that their marks will lose their "ability to serve as a unique identifier of plaintiff's product."  Oktyabr, Inc. v. Trilini Imports, CV-05-5359, 2007 U.S. Dist. LEXIS 23733, at *39-41 (E.D.N.Y. Mar. 29, 2007); see also ESPN, Inc., 586 F.Supp.2d at 228-29 (motion to dismiss trademark dilution claims denied); Covidien, 2008 U.S. Dist. LEXIS 86144, at *5 (plaintiffs' characterization of their mark as "strong" and "distinctive" sufficient to support claim for trademark dilution); [15]

---

[15] As for Ritani's claims that Defendants violated New York G.B.L. § 349, predatory conduct in the form of defendant's deliberate copying of plaintiff's trademark coupled with alleged likelihood of confusion have been found sufficient to establish a cause of action for unfair and deceptive business acts and practices.  Centaur Comm. v. A/S/M/ Comm., Inc., 652 F.Supp. 1105, 1125 (S.D.N.Y. 1987).

## F.      Breach Of Implied Covenant Not To Solicit

Under the Mohawk doctrine, the seller of a business has a legal duty to permanently refrain from the solicitation of former customers arising out of the sale of the goodwill of an established business – regardless of the presence of a restrictive covenant not to compete. Mohawk Maint. Co. v. Kessler et al., 52 N.Y.2d 276, 283-85 (1981).  The implied covenant not to solicit prevents a seller from "taking affirmative steps" to communicate directly with its former customers.  Bessemer Trust Co. v. Branin, 16 N.Y.3d 549, 557-58 (2011).  For example, a seller "may not send targeted mailings," "make individualized telephone calls to former customers informing them of his new business," or "specifically aim advertisements at the seller's former customers."  Id. at 558.  Moreover, a seller's touting of his new business venture is solicitation "even if a former client contacted him first."  USI Ins. Servs. LLC v. Miner, 10-Civ-8162, 2011 U.S. Dist. LEXIS 74623, at *40-46 (S.D.N.Y. Jul. 7, 2011) (email to Defendant's former clients and personal contacts describing accomplishments and attributes of new company and its commitment to providing exceptional service was a targeted improper solicitation).

Defendants' argument questioning which parties are bound by the relevant agreements transferring the goodwill at issue is a red-herring.  (Dkt. 12 at pp. 26-27).  Despite Defendants' assertions to the contrary, Defendant Aghjayan was not only a party and signatory to the Membership Interest Purchase Agreement (Membership Agreement), but he is specifically referred to as the "Seller."  (Dkt. 1, ¶ 15 and Ex. 1).  More importantly, the Membership Agreement describes H. Ritani Corp. as being wholly owned by Defendant Aghjayan.  (Ex. 1, Recital B).  In addition, Schedule 3.13 specifically provides for the sale and contribution of H. Ritani Corp.'s intellectual property rights, including but not limited to, all of the "goodwill associated with the business of [H.] Ritani [Corp.]."  (Id. at ¶¶ 3.12 and 3.13 and attached

Schedules).  While Ritani LLC is not listed in the first paragraph of the Membership Agreement, that is not surprising, as Ritani LLC was formed as a direct result of this agreement, to receive the benefit of the assets and goodwill transferred by Defendants Aghjayan and H. Ritani Corp. (Dkt. 1, Ex. 1, at Recital B).

On that same day, Ritani and Defendants Aghjayan and H. Ritani Corp. were all parties to the Contribution Agreement, which confirmed Defendant Aghjayan and H. Ritani Corp.'s sale of the "Contributed Assets" including the trademark RITANI and other trademarks, copyrighted Ritani jewelry designs, and "[a]ll of the goodwill associated with the business of [H.] Ritani [Corp.]" to Ritani.  (Dkt. 1, ¶ 16 and Ex. 2).  This agreement similarly describes Defendant Aghjayan as the "sole shareholder of Ritani."  (Ex. 2, p. 1).  Consequently, Defendant Aghjayan was the active force behind H. Ritani Corp. and the motivating factor in the sale of his company and its associated goodwill to Ritani for consideration.  Defendant Aghjayan finally sold off his remaining interests in 2007.  (Dkt. 1, ¶ 25).  Thus, Defendants' attempts to circumvent the implied covenant of non-solicitation by claiming not to be the seller of goodwill, after it reaped the rewards of such sale, should be rejected.

The facts of <u>Mohawk</u> are strikingly similar to those present here and expressly contradict the argument espoused by Defendants.  Namely, in <u>Mohawk</u>, Defendant Kessler was the controlling shareholder in Mohawk when the business and accompanying goodwill was transferred to plaintiff's predecessor.  <u>Id.</u> at 279.  Following the sale, Defendant Kessler remained in Mohawk's employ until he voluntarily resigned and formed a new rival business named Sure-Way Maintenance Services ("Sure-Way").  <u>Id.</u> at 280.  Thereafter, Plaintiff obtained information indicating "that Kessler may have approached at least one of his former customers in an effort to lure its patronage away from Mohawk."  <u>Id.</u>  A lawsuit was subsequently filed against

both Kessler, as the controlling shareholder, and thus, <u>seller</u> of his former company, and his <u>new</u>

company Sure-Way.  <u>Mohawk</u>, 52 N.Y.2d at 279-80.  The Court permanently enjoined <u>both</u>

Defendants from soliciting the business of Defendant Kessler's former customers, despite the

fact that Sure-Way was not in existence at the time of the sale.  <u>Id.</u> at 286.  Likewise, Defendant

Aghjayan was the seller of the goodwill of H. Ritani Corp and his improper solicitations on

behalf of Defendant Companies expose all Defendants to liability.

      Defendants also impermissibly attempt to blur the line between a covenant not to

compete and a seller's implied duty not to solicit former customers.  Dkt. 12 at pp. 27-28.  Here,

the letter agreement entered into between Plaintiff Ritani and Defendant Aghjayan modified the

<u>non-compete</u> provision of the Employment Agreement, and in no way addressed, much less

narrowed Mohawk's implied duty of <u>non-solicitation</u>.  (Dkt. 1, Ex. 12).  In fact, <u>Mohawk</u>

rejected a similar attempt by the defendant to limit the implied duty of non-solicitation based

upon the terms of a restrictive covenant because it "fails to take into account the important

distinction" between the two causes of action.  <u>Mohawk</u>, 52 N.Y.2d at 283.  Here, Defendants'

attempts to equate "sales" with "solicitation" is completely meritless.  The Agreement in

question does not permit Defendant Aghjayan to solicit Plaintiff's customers, for it does not even

mention "solicitation."  (Dkt. 1, Ex. 12).  At the very least, the Agreement's interpretation is a

question of fact, not properly resolved on a motion to dismiss.  <u>Brinson</u>, 744 N.Y.S.2d at 623.

      Finally, Ritani's Complaint alleges as an example, that Defendant Aghjayan, as the sole

shareholder and seller of H. Ritani, Corp., actively solicited his former clients by physically

approaching John G. Henne in order to promote his Harout R jewelry line and lure his patronage

away from Ritani.  (Dkt. 1 ¶¶ 61-62).  In addition, Defendant Aghjayan actively participated in

the targeted mailing of his Harout R brochure to his former customers encouraging them to call

to schedule an appointment and informing them that his catalog will be mailed to them shortly. Id.  Because such conduct rises to the level of solicitation as described in Mohawk, Bessemer and USI, Ritani's allegations state a claim that Defendants Aghjayan and Harout R breached their implied duty not to solicit and reduce business goodwill.

**G.      Defendant Aghjayan's Misappropriation of Ritani's Trade Secrets**

"A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it."  Softel, Inc. v. Dragon Med. & Scientific Commc'ns., Inc., 118 F.3d 955, 968 (2d Cir. 1997) (citations omitted).  To recover under New York law, a plaintiff must show that it possessed a trade secret and that defendants used the trade secret in breach of an agreement, confidential relationship or duty or by improper means of discovery.  N. Atl. Instruments, Inc. v. Haber, 188 F.3d 38, 44 (2d Cir. 1999) (list containing identities and preferences of plaintiff's clients was a protectable trade secret).  Whether information is secret is "generally a question of fact" inappropriate for a motion to dismiss.  Ashland Mgmt. Inc. v. Janien, 82 N.Y.2d 395, 407 (1993).

Ritani's Complaint alleges that many of its jewelry designs, as well as its computer-aided design ("CAD") files, drawings, product development files, customer files and financial information constitute valuable confidential information and trade secrets.  (Dkt 1. ¶¶ 44, 170, 173).  Contrary to Defendants' assertions, Ritani is not alleging that its customer list itself is a trade secret, but that the particular information associated with its customer accounts – the product development and customer files – is entitled to trade secret protection and that such

information was misappropriated by Defendant Aghjayan in order to obtain a competitive edge and undercut Ritani in the market. (Id. ¶ 48, 170).[16]

Nor is Ritani claiming trade secret protection for any product designs that are readily available and visible to the public, as in Medinol Ltd. v. Boston Scientific Corp., 346 F.Supp.2d 575 (S.D.N.Y. 2004).[17] Rather, the Ritani design files and drawings were created using CAD software, which involves the use and adjustment of vectors and polygons in the software's memory to create and subsequently rebuild jewelry drawings without the need to reconstruct the design from scratch. (Dkt. 1 ¶ 44); See Vt. Microsystems, Inc. v. Autodesk, Inc., 88 F.3d 142, 144 (2d Cir. 1996) (explaining CAD software). These CAD files contain confidential, proprietary and/or trade secret information and are used to design, create, modify and produce wax models of jewelry designs. (Dkt. 1 ¶¶ 44, 54).[18] In fact, the representative two wax models currently identified were never made public by Ritani. Rather, they were misappropriated from Ritani by Defendant Aghjayan and copyrighted for the benefit of Defendant Aghjayan and Defendant Companies. (Id. ¶¶ 28, 44, 72).

Significantly, Courts have found that "information detailing the characteristics and nature of customer specifications and preferences may be eligible for trade secret protection." Am. Bldg. Maint. Co. of N.Y. v. Acme Prop. Servs., Inc., 515 F. Supp. 2d 298, 308 (N.D.N.Y. 2007);

---

[16] Even if Ritani were asserting that Defendant Aghjayan misappropriated its customer lists, it would have a sufficient basis for doing so as "[n]umerous cases applying New York law have held that where . . . it would be difficult to duplicate a customer list because it reflected individual customer preferences, trade secret protection should apply." N. Atl. Instruments, 188 F.3d at 46 (citing FMC Corp. v. Taiwan, 730 F.2d 61, 63 (2d Cir. 1984) (per curiam).

[17] Medinol does not support Defendants. In Medinol, the Court determined that Plaintiff's product design was not a trade secret on a motion for summary judgment after "extensive discovery" and a detailed comparison between the alleged trade secret and the publicly available product. Id. at 581. No such discovery or comparison has yet to be done here.

[18] While Defendants' motion correctly notes that Ritani never alleges that it made or sold these model rings, they mistake the import of that fact in that it supports Plaintiff's claim for trade secret misappropriation. (Dkt. 12 at p. 19, n. 6). Further, Ritani's ownership of the Three-Leaf Trademark based on ten years of use is entirely separate from the wax model rings submitted by Defendant Aghjayan to Ritani shortly before his termination from Ritani.

David Fox & Sons, Inc. v. King Poultry Co., 262 N.Y.S.2d 983, 987 (Sup. Ct. N.Y. Co. 1964),

aff'd without opinion, 259 N.Y.S.2d 1012 (1st Dep't 1965).  Likewise, a company's

manufacturing drawings, as well as financial information including a company's pricing, billing

methods and marketing and selling practices have also been found to be trade secrets.[19]  Electro-

Miniatures Corp. v. Wendon Co., Inc., 771 F.2d 23, 26 (2d Cir. 1985); Faiveley Transp. v.

Wabtec Corp., 572 F.Supp.2d 400, 404 (S.D.N.Y. 2008) (specification containing dimensions,

tolerances, surface finishes, material selection and special instructions for manufacture, testing

and assembly was trade secret);  Laro Maint. Corp. v. Culkin, 700 N.Y.S.2d 490, 491 (2d Dep't

1999).

        Defendants reliance on sit-up Ltd. v. IAC/Interactive Corp., 2008 U.S. Dist LEXIS

12017, at *23 (S.D.N.Y. Feb, 20, 2008) in seeking to require Plaintiff to plead its trade secrets

with specificity is completely misplaced.  sit-up discusses the standard of proof required on a

motion for summary judgment – not a motion to dismiss.  Id.  Moreover, an entire section of the

Court's Opinion focuses on Plaintiff's repeated failure to specifically identify its trade secrets

after two years of discovery and numerous requests from the Court.  Id. at 23-26.

        Rather, numerous cases hold that the level of specificity demanded by Defendants is not

necessary on a motion to dismiss.[20]  Likewise, Plaintiff's complaint provides sufficient details

including specific categories of trade secrets for which Plaintiff is entitled to protection and the

---

[19]  Defendants incorrectly rely upon Silipos, Inc. v. Bickel, 2006 U.S. Dist. LEXIS 54946 (S.D.N.Y. Aug. 8, 2006) for the broad proposition that pricing data and market strategies are not trade secrets.  (Dkt. 15 at p. 24).  The Court in Silipos, however, expressly limited its trade secret findings as to the reasonableness of a restrictive covenant, noting that its findings were not dispositive of Plaintiff's trade secret misappropriation claims, which require application of a different standard.  Id. at *15, n. 6.

[20]  Medtech Prods. Inc. v. Dentek Oral Care, Inc., 596 F.Supp.2d 778 (S.D.N.Y. 2008) (general categorization of the misappropriated trade secrets sufficient to defeat motion to dismiss); SD Prot., Inc. v. Del Rio, 498 F.Supp.2d 576 (E.D.N.Y. 2007) (denying motion to dismiss since plaintiff "has no obligation to reveal those secrets in the Complaint simply to prove that they exist") (citing Eastman Kodak Co. v. Powers Film Prods., Inc., 179 N.Y.S. 325 (4th Dept. 1919)); and Gaetano Assocs. Ltd. v. Artee Collection, Inc., No. 05-CV-3329, 2006 U.S. Dist. LEXIS 77144, at *2 (S.D.N.Y. Oct. 26, 2006).

extensive measures undertaken by Ritani to maintain the secrecy of this information.  (Dkt. 1, ¶¶ 44, 45, 170, 173).  Moreover, as alleged by Plaintiff, Defendant Aghjayan was involved in a scheme to collect and remove Ritani's trade secret and confidential files and to use such files for the creation and benefit of Defendant Companies so they could develop, manufacture, produce and market competing products and services, which resulted in substantial profits and gains to the Defendants to the detriment of Ritani.  (Id. at ¶¶ 44-55, 175, 177-79).

Plaintiff's use of the words "on information and belief" does not require dismissal of its complaint.  See, e.g., Boykin, 521 F.3d at 215; Iqbal, 129 S. Ct. at 1949.  Here, the precise details as to the specific information that Defendant Aghjayan misappropriated and what exactly he did with this information is peculiarly within the possession and control of Defendant Aghjayan and will be uncovered during the discovery process.  The allegations in the Complaint (see ¶¶ 28, 44, 47-49, 53-55, 71-72, 138, 183, 185) make the inference that Defendant Aghjayan misappropriated Plaintiff's trade secrets more than plausible.

## H.   Tortious Interference With Business Relations

To state a claim for tortious interference with business relations, four conditions must be met: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't., 547 F.3d 115, 132 (2d Cir. 2008).  Proof of the existence of a valid contract, that plaintiff would have been a party to a future contract or that the prospective relationship is expected to be reduced to a formal, binding contract is not required to state a claim.  Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir. 1998) (citing NBT Bancorp Inc. v. Fleet/Norstar Fin. Grp. Inc., 87 N.Y.2d 614, 621 (1996)).  Rather, recovery is available when a defendant tortiously interferes with "a continuing business or other customary relationship"

including "interferences with . . . the opportunity of selling or buying . . . chattels or services, and any other relations leading to potentially profitable contracts." Id.

The wrongful means element has been defined as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure" and includes commission of a "crime or an independent tort." Id. at 206; Carvel Corp. v. Noonan, 3 N.Y.3d 182, 189 (2004); see also AIM Int'l Trading, L.L.C. v. Valcucine S.P.A., Ibi, L.L.C., 2003 U.S. Dist. LEXIS 8594, at *25-26 (S.D.N.Y. May 21, 2003). Significantly, the knowing use of trade secret or other confidential information has been held to constitute tortious conduct necessary to state a claim for relief. Cardiocall, Inc. v. Serling, Inc., 492 F. Supp.2d 139, 153 (E.D.N.Y. 2007).

First, the Complaint identifies Henne Jewelers, Ackerman Jewelers and Robbin, Bros. as representative examples of third party retailers with which Plaintiff has had business relationships. (Dkt, 1 ¶¶ 73, 182). See Reading Int'l, Inc. v. Oaktree Capital Mgmt., LLC, 317 F.Supp.2d 301, 335 (S.D.N.Y. 2003) (denying motion to dismiss where plaintiff identified at least one specific business relationship); Jim Mazz Auto, Inc. v. Progressive Cas. Ins. Co., 2009 U.S. Dist. LEXIS 27687, at *3-4 (W.D.N.Y. March 31, 2009) (same). Second, as the former President, Chief Executive Officer and chief designer for Ritani, Defendant Aghjayan had direct knowledge of these relationships and his conduct shows a deliberate and malicious plan to interfere with such relationships. (Id. at ¶¶ 11, 61, 182). Third, Defendant Aghjayan's conduct, including but not limited to, improper solicitation of Ritani's customers, misappropriation of Ritani's trade secrets, the infringement of Ritani's trademarks and copyright designs and misrepresentations made to third parties constitute independent torts satisfying the wrongful means element of this cause of action. (Id. at ¶¶ 44, 47-49, 53-55, 71-72, 138, 183, 185);

Cardiocall, Inc., 492 F. Supp. 2d 153.[21]  While Defendants' motion brushes these allegations

aside, Plaintiff certainly never permitted Defendant Aghjayan to improperly solicit its customers

nor did it authorize Defendants' to use its trade secrets, copyright protected designs and

trademarks to unfairly compete with Plaintiff in the marketplace.  Fourth, Plaintiff has alleged

that Defendants' acts have caused injury to these relationships by "denying business to and

diverting business from Plaintiff, which Plaintiff would have otherwise had and from which it

would have derived a profit."  (Dkt. 1, ¶¶ 186-185).  Namely, Defendants' wrongful conduct led

to the sale of goods using Ritani's intellectual property protected designs and trade secrets to

Helzbergs, Ackerman, Robbin, Bros. and others thereby resulting in substantial profits to

defendants that Ritani would otherwise have made absent Defendants' tortious conduct.

Oktyabr, Inc., 2007 U.S. Dist. LEXIS 23733, at *43 (allegation that plaintiff "sustained damages

in a sum to be determined at a trial" was sufficient to make out fourth element).[22]

## I.  Implied Covenant of Good Faith and Fair Dealing

Every contract governed by New York law "implies a covenant of good faith and fair

dealing 'pursuant to which neither party to a contract shall do anything which has the effect of

destroying or injuring the right of the other party to receive the fruits of the contract.'"  Fellows

v. CitiMortgage, Inc., 710 F.Supp.2d 385, 407 (S.D.N.Y. 2010) (quoting Thyroff v. Nationwide

Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006)).  A claimed breach of the implied covenant of

good faith can survive a motion to dismiss if it is based on allegations different from those

underlying the accompanying breach of contract claim.  Hard Rock Cafe Int'l, (USA), Inc. v.

---

[21]  More specifically, see Complaint (Dkt. 1, ¶¶ 59, 61, 70, 71).

[22]Defendants' reliance on Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 97 (1993) is misplaced.  Kronos does not stand for the proposition that proof of "actual damages" must be pled in a Complaint, but rather that the statute of limitations does not run on a tortious interference claim until actual damages are sustained.

Hard Rock Hotel Holdings, LLC, et al., F.Supp.2d, 2011 WL 2945842 (S.D.N.Y. July 11, 2011) ("conduct that subvert[ed] the contract's purpose without violating its express terms.").

      Here, Plaintiff alleges that Defendant Aghjayan infringed Ritani's trademarks and copyrights, breached the implied covenant of good faith and fair dealing, and improperly solicited Ritani's customers.  (Dkt, 1 ¶ 226).  No provisions in the contracts cover these torts.

**J.**      **Breach of Contract**[23]

      Breach of contract under New York law requires: (1) the existence of an agreement; (2) adequate performance of the contract by plaintiff; (3) breach of contract by defendant; and (4) damages.  Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).  With respect to a covenant not to compete, courts have held that certain activities done in preparation to compete constitute breaches of a non-compete provision in an employment agreement.  De Long Corp. v. Lucas, 278 F.2d 804, 808-09 (2nd Cir. 1960) (defendant's development and engineering of devices during two year non-compete went beyond planning stages and constituted "exactly the kind of head start" the agreement was intended to prevent); JA Apparel v. Joseph Abboud, 591 F.Supp. 2d. 306, 342-343 (S.D.N.Y. 2008) (activities during the restricted period breached non-compete agreement); see also World Auto Parts, Inc. v. Labenski, 629 N.Y.S.2d 896 (4th Dept. 1995).

      Plaintiff properly pled its breach of contract claim.  First, the Complaint alleges the existence of several valid agreements entered into between Defendant Aghjayan and Plaintiff Ritani including the 2002 and 2004 Employment Agreements and the 2010 Letter Agreement, as well as the 2007 Membership Agreement between Defendants Aghjayan and H. Ritani Corp. and

---

[23]  Plaintiff's reference to a claim for common law noncompetition was meant to illustrate one of the specific sections of the agreement breached by Defendant Aghjayan and does not seek to claim an independent tort.  (Dkt. 1, p. 40; Dkt. 12, p. 31)

Plaintiff Ritani.  (Dkt. 1, ¶¶ 200-202).[24]  Second, Plaintiff has performed its obligations under these contracts.  (Id. at ¶ 204).  Third, Plaintiff has pled that Defendant Aghjayan has breached certain specific contractual obligations by failing to render exclusive services on behalf of Plaintiff, by improperly using Plaintiff's trade secrets and confidential information for the benefit of Defendant Companies and by violating the terms of the non-compete by preparing to, offering and/or selling Defendants' jewelry products to customers in competition with Plaintiff."[25] (Dkt 1, ¶¶ 54-56, 59-61, 65, 201, 203; Ex. 5 at ¶1(b); Ex. 9 at ¶6; Ex. 11).  With respect to Defendants Aghjayan and H. Ritani Corp., the Complaint provides that these Defendants breached Section 5.2 of the 2007 Membership Agreement by using the name "Ritani" in connection with the business and operations of Defendant Companies, which directly compete with Plaintiff in the jewelry industry.  (Id. at ¶¶ 65, 203).  Last, Plaintiff states a claim for damages as a result of the aforementioned breaches.  (Id. at ¶¶ 205, 207); Sawabeh Info. Servs. Co. v. Brody, 2011 WL 6382701, at *13 (S.D.N.Y. Dec. 16, 2011) (plaintiffs are not required to plead damages with specificity).

## K.     State Law Unfair Competition

When unfair competition invokes a misappropriation theory, the claim "usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the

---

[24] Defendants characterization of the 2007 Membership Agreement as not including Ritani, LLC is simply incorrect.  Not only does the Recital state that the agreement relates to the deadlock with respect to the continuing operation and membership interest of Ritani, LLC (the "Company"), but it is specifically "Acknowledged and Agreed to" by Ritani, LLC.  (Dkt. 1, Ex. 11, pp. 1, 8).  Most significantly, Section 5.2, the specific provision at issue, provides that the "Ritani Parties" – expressly defined as "Harout Aghjayan" and "H. Ritani Corp" – agree that Ritani, LLC will maintain the right, title and interest in the name Ritani and that they cannot directly or indirectly use the name Ritani, or any similar name, in conjunction with any business that is competitive with the business of Ritani, LLC.  Accordingly, Plaintiff Ritani, LLC was at least an intended beneficiary of the contract.  Levin v. Tiber Holding Corp., 277 F.3d 243, 249 (2d Cir. 2002).

[25] Defendants' argument that Ritani LLC permitted Defendant Aghjayan to compete beginning on October 15, 2010 completely misses the point.  While Plaintiff agreed to shorten Defendant Aghjayan's non-compete period, Plaintiff did so believing Defendant Aghjayan's assurances that he would not enter into the competing jewelry field.  (Dkt. 1, ¶ 32).  Regardless, Plaintiff never authorized Defendant Aghjayan to unfairly compete through the use of Plaintiff's trade secret and confidential information.

same property." <u>Roy Exp. Co. Establishment v. Columbia Broad. Sys., Inc.</u>, 672 F.2d 1095,

1105 (2d Cir. 1982); <u>See</u> <u>Laro Maint. Corp.</u>, 700 N.Y.S.2d at 491 (defendants engaged in unfair

competition through use of Plaintiff's trade secrets). "Where employees, during the period of

their employment, and a corporation formed by them, engage in and carry out a conspiracy to

compete with the employer in violation of the duties of loyalty owing by the employees, said

conduct constitutes actionable unfair competition." <u>Foley</u>, 248 N.Y.S.2d at 130; <u>Cardiocall, Inc.</u>,

492 F. Supp. at 139.

Here, Ritani alleges that Defendant Aghjayan acted in bad faith by misappropriating

Ritani's confidential information and trade secrets, including its CAD files, specifications,

product development and customer files and financial information, breaching his duty of loyalty

and unfairly competing with Ritani by using Ritani's trade secret and confidential information to

set up Defendant Companies to compete in the jewelry industry.  (Dkt. 1, ¶¶ 44, 71, 138)

Plaintiff's have also alleged likelihood of confusion as a result of such actions.  <u>Id.</u> at 138.

## L.    Breach of Fiduciary Duty and Duty of Loyalty

An employee has a duty of loyalty to his employer, which prohibits him "from acting in

any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost

good faith and loyalty in the performance of his duties." <u>Phansalkar v. Andersen Weinroth &</u>

<u>Co., L.P.</u>, 344 F.3d 184, 200 (2d Cir. 2003) (quoting <u>W. Elec. Co. v. Brenner</u>, 392 N.Y.S.2d 409

(1977)).  An employee is not free to create a competing business prior to leaving his employment

through the "improper use of the employer's time, facilities or <u>proprietary secrets</u>." Don

<u>Buchwald & Assocs., v. Marber-Rich et al.</u>, 782 N.Y.S.2d 725, 727 (1st Dep't 2004) (emphasis

added)[26]

---

[26] None of the cases cited by Defendants involve impermissible preparations to compete through the use of trade secrets or confidential information.  <u>See</u> <u>e.g.</u>, <u>Zion Corp. v. Lebow</u>, 593 F. Supp. 551, 572 (S.D.N.Y. 1984).

Moreover, officers and directors owe their corporation "undivided loyalty" and shall discharge their duties in good faith.  Keehan v. Keehan, 96 Civ. 2481, 2000 U.S. Dist. LEXIS 5369, *13 (S.D.N.Y. April 25, 2000); Foley v. D'Agostino, 248 N.Y.S.2d 121, 128 (1st Dep't 1964).  As such, they must not engage "in the promotion of personal interests which are incompatible with the superior interests of their corporation."  Id.; see also Weiss/Watson, Inc. v. Lange, 1990 U.S. Dist. LEXIS 3065, at *6-7 (S.D.N.Y. Mar. 20, 1990) (officer worked on a proposal for her own benefit while still employed by plaintiff); Am. Bldg. Maint. Co. of N.Y., 515 F. Supp. 2d at 312-313 (allegations that Defendants negotiated with plaintiff's current and prospective clients for purposes of establishing a competing business during employment with plaintiff withstood motion to dismiss); CBS Corp. v. Dumsday, 702 N.Y.S.2d 248, 251 (1st Dep't 2000) (motion to dismiss denied when plaintiff claimed defendants breached their fiduciary duty, while employed by plaintiff, when they planned, and later formed, a competing company, which obtained a contract from plaintiff's customer using employer's confidential information); see also Laro Maint. Corp., 700 N.Y.S.2d at 492.  This duty "exists as well after the employment is terminated as during its continuance."  Penrose Computer Marketgroup, Inc. v. Camin, 682 F. Supp. 2d 202, 215 (N.D.N.Y 2010).

Beginning in 2002, Defendant Aghjayan was an officer and director of Ritani and was intimately involved in Ritani's product design and marketing up until the moment he left the company on October 31, 2009.  (Dkt. 1, ¶¶ 11, 19, 23, 47, 54, 217, 233).[27]  Plaintiff's Complaint sufficiently pleads that Defendant Aghjayan breached his duty of loyalty and that he effectively used Defendant companies to assist him in doing so, including but not limited to Defendant Aghjayan's purchase of a 3-Dimensional printing machine of the same type used by Plaintiff in

---

[27] While Defendant Aghjayan contends he no longer owed Ritani a duty of loyalty, such claims are meritless since they are based on an extraneous affidavit; and raise a factual inquiry.  (Dkt. 12, n. 11 and 12).  JTH Tax, Inc., 721 F.Supp.2d at 136; Friedman v. Wahrsager, No. 11 CV 815, 2012 WL 273069 at *4-5, n. 6 (E.D.N.Y. 2012)

its manufacture of jewelry.  (Dkt, 1 ¶ 54).  While Defendant Aghjayan assured Plaintiff that his

3D machine was purchased to build door knobs, two months prior to leaving Ritani, Defendant

Aghjayan printed wax models of Ritani's confidential jewelry designs using this machine.  Id.

Defendant Aghjayan then took Plaintiff's trade secret and confidential jewelry designs, formed

Defendant Companies to compete with Ritani, and copyrighted these designs for the benefit of

his new companies.  Id.  Ritani also alleges that Defendant Aghjayan promoted his interests and

those of his wife over Ritani – while serving as its President, CEO and CFO – through his

business negotiations with Ritani's former client Tiffany.  (Id. at ¶¶ 50-51).  There are additional

examples.  (See Dkt. 1, ¶¶ 46-55).  Conduct of this nature is clearly not within the duty of loyalty

and fiduciary duty required of a company's employee, much less, its officer and director.

Buchwald & Associates, 782 N.Y.S.2d at 727; CBS Corp, 702 N.Y.S.2d at 251; Am. Bldg.

Maint. Co. of N.Y., 515 F. Supp. 2d at 312-313.

## M.    Unjust Enrichment and Constructive Trust

Unjust enrichment requires that: (1) defendant was enriched, (2) the enrichment was at

the plaintiff's expense, and (3) equity and good conscience militate against permitting defendant

to retain what plaintiff is seeking to recover.  Briarpatch Ltd. v. Phoenix Pictures, Inc., 373 F.3d

296, 306 (2d Cir. 2004).  Courts will also consider whether defendant's conduct was tortious or

fraudulent.  Am. Bldg. Maint. Co. of N.Y., 515 F. Supp. 2d at 313; see also A &G Healthplans v.

Nat'l Network Servs., 99-cv-2153, 2003 U.S. Dist. LEXIS 3879, at *5 (S.D.N.Y. 2003)[28]

Claims for unjust enrichment and constructive trust "may be plead[ed] in the alternative where [a

party] challenges the validity of the contract."  Wilmoth v. Sandor, 686 N.Y.S.2d 388, 390 (1st

---

[28]   A party seeking to impose a constructive trust must meet four elements:  "(1) a confidential or fiduciary
relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and
(4) unjust enrichment."  In re First Cent. Fin. Corp., 377 F.3d 209, 212 (2d Cir. 2004); Counihan v. Allstate Ins. Co.,
194 F.3d 357, 362 (2d Cir. 1999).

Dept. 1999) (unjust enrichment claims may survive where there is "a bona fide dispute as to the existence or application of a contract"); see also Colwell & Salmon Communs. v. ArborMed Corp., 1:10-CV-01137, 2011 U.S. Dist. LEXIS 67795, at *11-12.

Defendants challenge the application of the contract.  (Dkt. 12, pp. 31-32).  Here, Ritani alleges that Defendants, through Defendant Aghjayan, were engaged in detrimental tortious conduct via the reproduction and use of Ritani trade secrets and/or confidential information, RITANI Trademarks and Ritani Designs to develop, market and sell competing products for substantial profit.  (Dkt, 1 ¶ 210).  Id.  All Defendants could be subject to a constructive trust. Colwell, 2011 U.S. Dist. LEXIS 67795, at *11-12.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiff Ritani, LLC respectfully requests that the Court deny Defendants' Motion to Dismiss in its entirety, disregard Defendant Aghjayan's affidavit as improper evidence on a motion to dismiss and deny Defendants' request for attorneys fees.  If the Court grants Defendants' motion to dismiss on any of Ritani's counts, Ritani will move to amend its Complaint.  In the alternative, should the Court decide to consider Defendant Aghjayan's affidavit and accompanying exhibits, Ritani respectfully requests attendant discovery and the opportunity to provide supporting materials in response.

Dated:  New York, New York             EDWARDS WILDMAN PALMER LLP
        February 21, 2012

                                       By:     _/s/ Rory J. Radding_____
                                       Rory J. Radding (RR 4042)
                                       David I. Greenbaum (DG 6232)
                                       Jennifer L. Dereka (JD 1577)
                                       EDWARDS WILDMAN PALMER LLP
                                       750 Lexington Avenue
                                       New York, New York 10022
                                       Telephone:  212.308.4411

                                       *Attorneys for Plaintiff Ritani, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2012 a true and correct copy of the foregoing

MEMORANDUM IN SUPPORT OF PLAINTIFF RITANI, LLC'S OPPOSITION TO

DEFENDANTS' MOTION TO DISMISS COMPLAINT was served upon counsel for the

Defendants listed below (by e-mail, electronic filing, First Class Mail):

> Erica B. Garay, Esq.
> Lynn M. Brown, Esq.
> egaray@msek.com
> lbrown@msek.com
> Meyer, Suozzi, English & Klein, P.C.
> 990 Stewart Avenue, Suite 300
> P.O. Box 9194
> Garden City, New York  11530-9194

> _/s/  Rory J. Radding_
> Rory J. Radding
> EDWARDS WILDMAN PALMER LLP
> 750 Lexington Avenue
> New York, New York 10022
> Telephone:  212.308.4411
> E-mail:  rradding@edwardswildman.com