# EXHIBIT 1

Rory J. Radding (RR 4042)
David I. Greenbaum (DG 6232)
Jennifer L. Dereka (JD 1577)
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, New York 10022
212.308.4411

*Attorneys for Plaintiff Ritani, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| RITANI, LLC,<br><br>               Plaintiff,<br><br>    -against-<br><br>HAROUT AGHJAYAN; SHAWNDRIA<br>AGHJAYAN; HAROUT R, LLC; H. RITANI,<br>LLC; H. RITANI, CORP.; and AMAZING<br>SETTINGS, LLP<br><br>               Defendants. | Index No. 11-CV-8928 (RWS)(GWG)<br><br>**AMENDED COMPLAINT (PROPOSED)**<br><br>FILED ELECTRONICALLY |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff Ritani, LLC, complaining of Defendants Harout Aghjayan; Shawndria

Aghjayan; Harout R, LLC; H. Ritani, LLC; H. Ritani, Corp.; and Amazing Settings, LLP, by

Edwards Wildman Palmer LLP, its attorneys, respectfully alleges:

## NATURE OF THE ACTION

1.      This is an action for: (a) copyright infringement in violation of 17 U.S.C. §§ 101

and 501, et seq.; (b) federal trademark infringement under Section 43 of the Lanham Act, 15

U.S.C. § 1114(a), et seq.; (c) unfair competition, false designation of origin and false and

misleading representations in commerce in violation of Section 43 of the Lanham Act, 15 U.S.C.

§ 1125(a); (d) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (e) false advertising

under the common law; (f) common law trademark infringement; (g) common law unfair

competition; (h) trademark dilution under the laws of the State of New York; (i) deceptive acts and practices under the laws of the State of New York; (j) common law misappropriation of trade secrets; (k) tortious interference with business advantage; (l) breach of the implied covenant not to solicit and reduce business goodwill under New York State Law; (m) breach of contract; and (n) breach of fiduciary duty and the duty of loyalty.

## THE PARTIES

2.      Plaintiff Ritani, LLC is a corporation of the State of New York, with offices at 30 Dr. Martin Luther King Jr. Blvd., White Plains, New York 10601.  Ritani, LLC is a highly successful designer, manufacturer and distributor of high-end jewelry.

3.      Defendant Harout Aghjayan (hereafter "Defendant Aghjayan") is an individual having, upon information and belief, a residence at 101 Carlson Court, Closter, NJ 07624, and is the conscious and actual force behind, and is directly responsible for, the wrongful acts set forth herein.

4.      Defendant Shawndria Aghjayan (hereafter "Shawndria") is an individual having, upon information and belief, a residence at 101 Carlson Court, Closter, NJ 07624, and has aided and abetted Defendant Aghjayan in the wrongful acts set forth herein.

5.      Defendant Harout R, LLC (hereafter "Harout R"), is a corporation of the State of New Jersey, with offices at 101 Carlson Court, Closter, NJ 07624.  Defendant Harout R is a designer, manufacturer and distributor of jewelry, and, upon information and belief, is wholly owned by Defendant Aghjayan.

6.      Defendant Amazing Settings LLP (hereafter "Amazing Settings") is a corporation of the State of New Jersey, with offices at 101 Carlson Court, Closter, NJ 07624.  Based upon information and belief, Defendant Amazing Settings is a designer, manufacturer and distributor

of jewelry. Defendant Amazing Settings is, upon information and belief, wholly owned by Defendant Aghjayan.

7.     Defendant H. Ritani, Corp. is a corporation of the State of New York which, upon information and belief, has offices at 115 River Road, Suite 110, Edgewater, NJ 07020. Defendant H. Ritani Corp. is, upon information and belief, wholly owned by Defendant Aghjayan.

8.     Defendant H. Ritani, LLC was a corporation of the State of Delaware and is now listed as inactive by the Secretary of State of Delaware and is presently listed by Hoovers as incorporated in the State of New York. Upon information and belief, H. Ritani, LLC's principal place of business is 101 Carlson Court, Closter, NJ 07624. Defendant H. Ritani, LLC is, upon information and belief, wholly owned by Defendant Aghjayan.

## JURISDICTION AND VENUE

9.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1332, 1338(a) and (b); 15 U.S.C. §§ 1114, 1116 - 1118, 1121, and 1125(a) and (c) and 17 U.S.C. §§ 101 and 501 et seq. in that this is an action, inter alia, for trademark infringement and copyright infringement.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 in that this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## BACKGROUND FACTS

11.     Defendant Aghjayan founded and wholly owned Defendant H. Ritani, Corp. in 1996 to manufacture and distribute high-end jewelry under the trademark RITANI. In 2002, Defendant Aghjayan sold the business of H. Ritani, Corp., including all the assets and the goodwill, to Plaintiff Ritani, LLC. From 2002 on, following that sale, Defendants have engaged

in a pattern of behavior that <u>inter alia</u> damages the goodwill transferred to Plaintiff in connection with that sale. Specifically, while employed as Plaintiff's President, Chief Executive Officer and chief designer, Defendant Aghjayan, with the help of his wife, Defendant Shawndria Aghjayan, took advantage of his position to access, disclose and subsequently use Ritani, LLC's trade secrets and other confidential and/or proprietary information, as well as Plaintiff's trademarks and copyrighted jewelry designs, to establish and operate Harout R, LLC; H. Ritani, LLC; and Amazing Settings, LLP and to continue to operate H. Ritani, Corp. and H. Ritani, LLC (collectively "Defendant Companies"), to directly compete with and solicit customers from Plaintiff Ritani, LLC. This conduct by Defendants has resulted in significant harm to the business reputation and goodwill of Plaintiff Ritani, LLC and has damaged its business relations with its customers and prospective customers.

12.     Defendant Aghjayan, with the help of his accomplice, Defendant Shawndria Aghjayan, was able to obtain the benefit of these wrongful acts through Defendant Companies. Defendant Aghjayan had intimate personal involvement and domination over each of the Defendant Companies, and played an active and conscious role, on behalf of these Defendants, in the copyright infringement, trademark infringement, unfair competition and state law violations alleged herein. For example, Defendant Aghjayan, as a corporate officer of Amazing Settings and Harout R, is intimately involved in the creation, selection, manufacture, distribution and sale of jewelry products on their behalf. Similarly, Defendant Aghjayan wholly owns H. Ritani Corp. and H. Ritani, LLC, and therefore, is responsible for retaining the active status of each company, despite the existence of an agreement expressly prohibiting him from using the Ritani name. Together these Defendants have collectively reaped the benefits of the wrongful conduct alleged herein.

## CREATION AND OPERATION OF PLAINTIFF RITANI, LLC

13.     On information and belief, in 1996 Defendant Aghjayan, through his wholly owned corporation H. Ritani, Corp., began doing business as a manufacturer and distributor of high-end designer jewelry sold under the trademark RITANI.

14.     In or about March of 2002, Defendant Aghjayan and H. Ritani Corp. needed an infusion of cash and managerial support and entered into negotiations with Julius Klein Diamonds, LLC ("JK" or "Klein Group") and For Krunch, LLC ("Krunch") for the sale of all of H. Ritani, Corp.'s assets.

15.     On March 26, 2002, Defendant Aghjayan, H. Ritani, Corp, the Klein Group and Krunch executed a series of five agreements for valuable consideration.  By these Agreements, Defendants Aghjayan and H. Ritani, Corp. agreed to sell the business consisting of all of the right, title and interest in and to the assets of H. Ritani, Corp., including all of its copyrights, trademark rights and all other intellectual property rights, as well as goodwill, to a newly formed entity, Plaintiff Ritani, LLC, owned jointly by Defendants Aghjayan and H. Ritani, Corp., the Klein Group and Krunch.

16.     As part of the formation of Ritani, LLC, the parties entered into a "Membership Interest Purchase Agreement" dated March 26, 2002. (**Exhibit 1**). Defendant Aghjayan was a party and signatory to the Membership Agreement and is specifically referred to as the "Seller." *Id.*   Plaintiff Ritani LLC was formed as a direct result of this agreement to receive the benefit of the assets and goodwill transferred by Defendants Aghjayan and H. Ritani Corp. (Exhibit 1, at Recital B).  Specifically, under this contract, Defendant Aghjayan sold to Plaintiff Ritani, LLC, for the aggregate purchase price of $2,628,000 (*Id.* at Section 1.1) his 44% membership interest

in Ritani, LLC, as well as all right, title and interest in and to the intellectual property of H. Ritani, Corp., the trademark RITANI and other trademarks, copyrighted Ritani jewelry designs, the "[d]esign, concept and content of the Ritani website" and "all of the goodwill associated with the business of [H.] Ritani [Corp.]."  (*Id.* at ¶¶ 3.12 and 3.13 and attached Schedules).

17.     On that same date, Defendants Aghjayan and H. Ritani, Corp. and Plaintiff Ritani, LLC also entered into a "Contribution Agreement" (**Exhibit 2**), whereby H. Ritani, Corp. and its sole shareholder, Defendant Aghjayan, confirmed their sale of the "Contributed Assets" to Plaintiff Ritani, LLC in exchange for H. Ritani Corp.'s receipt of a membership interest in the newly formed company.  As with the Membership Agreement, the Contribution Agreement recited Defendants' assignment of intellectual property, including the trademark RITANI and other trademarks, copyrighted Ritani jewelry designs, and "[a]ll of the goodwill associated with the business of [H.] Ritani [Corp.]." (*Id.* at Schedule 1).

18.     On March 26, 2002, Defendant H. Ritani, Corp. and Plaintiff Ritani, LLC also executed an "Assignment and Assumption Agreement" (**Exhibit 3**) confirming H. Ritani, Corp.'s sale, transfer and assignment of all of its right, title and interest in and to the properties listed in the Contribution Agreement to Plaintiff Ritani, LLC for Plaintiff's "own use and benefit forever from the date hereof."  *Id*. at ¶2.

19.     Also, on March 26, 2002, JK, Krunch, and Defendants Aghjayan and H. Ritani, Corp. entered into an Operating Agreement (the "'02 Operating Agreement") (**Exhibit 4**), which inter alia recited the Profit/Loss percentage of each of the members of Ritani, LLC as follows: JK 10%; Krunch 5.0%; Defendant Aghjayan 44% and H. Ritani, Corp. 41%.  (**Exhibit 4** at Exhibit B).  In addition, JK and H. Ritani, Corp. each possessed 50% voting rights.  *Id.* at Exhibit C.  The '02 Operating Agreement also references Klein's agreement to pay Defendant

Aghjayan a purchase price for his 44% interest in Ritani, LLC in accordance with the terms of the Membership Interest Purchase Agreement. *Id*. at p. 4.

20. The terms of the '02 Operating Agreement also required Defendant Aghjayan to concurrently execute an employment agreement appointing him Chief Executive Officer and President of Plaintiff Ritani, LLC. (see § 4.2.1). Accordingly, on that same date, Defendant Aghjayan entered into an "Employment Agreement" (the "'02 Employment Agreement") (**Exhibit 5**) with Plaintiff Ritani, LLC, which stated his duty to render "exclusive services as Chief Executive Officer" for Ritani, LLC and to perform such services "to further the business and affairs of Employer." *Id.* at § 1(b).

21. Specifically, Paragraph 6 of the '02 Employment Agreement precluded Defendant Aghjayan from disclosing any Confidential Information, including but not limited to, trade secret information, even if it was "conceived, originated, discovered or developed" by Defendant Aghjayan. (**Exhibit 5**). The Agreement further stated that Defendant Aghjayan could not "use, license, sell, convey or otherwise exploit any Confidential Information, or any portion thereof, during the Employment Term hereof and at all times thereafter for any purpose other than solely for the benefit of Employer." *Id.* As part of the '02 Employment Agreement, Defendant Aghjayan also was prevented from competing with Ritani, LLC during his Employment Term and for one year thereafter. *Id.* at ¶6(b).

22. The '02 Operating Agreement was amended on December 16, 2002 to reflect a change in voting power. (**Exhibit 6**). In addition, a Second Amendment was entered into on May 30, 2003 to show a change in the Profit/Loss Percentages as follows: [H.] Ritani, Corp. 41%, JK 40% and Krunch 19%. (**Exhibit 7**).

23. Subsequently, on November 1, 2004, JK, Krunch, and Defendant H. Ritani, Corp.,

by Defendant Aghjayan, entered into an "Amended and Restated Operating Agreement" ("the '04 Operating Agreement") (**Exhibit 8**), which reflected, among other things, a change in the Profit/Loss Percentages of JK and H. Ritani, Corp., changes in the management of Ritani, LLC and changes to the business agreement of the members since the '02 Operating Agreement. By the terms of the '04 Operating Agreement, JK's ownership was increased to 55%, H. Ritani, Corp.'s interest was reduced to 26% and Krunch's interest remained at 19%. *Id.* at Exhibit B.

24. On November 1, 2004, Defendant Aghjayan also entered into a new "Employment Agreement" ("'04 Employment Agreement") and a "Consulting Agreement" with Ritani, LLC. (collectively **Exhibit 9**). By the terms of his Employment Agreement, Defendant Aghjayan agreed to continue to render "exclusive business services" to Ritani, LLC's as its President and Chief Executive Officer and to take on additional responsibilities as Ritani, LLC's Chief Operating Officer, as well as to supervise and assist Ritani, LLC in product design and marketing until October 31, 2009. *Id.* at ¶1(c) and (d). Defendant Aghjayan was also obligated to "actively and aggressively pursue overseas manufacturing opportunities" on behalf of Ritani, "in order to reduce its costs and increase its capacity." *Id.* at § 1(d). Also, he was obligated by an October 15, 2007 letter addendum to the Employment Agreement to keep Ritani's business relationship with a company called "Blue Nile" confidential. (**Exhibit 9**).

25. With respect to the Consulting Agreement, H. Ritani, Corp., through Defendant Aghjayan, agreed to be a Consultant for Ritani, LLC, and to provide such services including, without limitation, designs for Ritani, LLC's jewelry lines. *Id.* at ¶1. The Consulting Agreement was to remain in effect through August 31, 2009 with an automatic one year renewal provision that continues until Defendant Aghjayan is no longer with Ritani, LLC or the Agreement is terminated by written notice. *Id.* at ¶3.

26.     With respect to the treatment of Confidential Information, the '04 Employment Agreement provides the same terms and conditions as the '02 Employment Agreement (**Exhibit 5**), including a non-compete clause, which extended through Defendant Aghjayan's Employment Term plus one year thereafter, and the reiteration of Defendant's duty not to disclose Plaintiff's confidential information.  (**Exhibit 9** at ¶6).  Specifically, under the '04 Employment Agreement, Defendant Aghjayan was prohibited from using any Confidential Information, even if conceived or developed, in whole or in part by Defendant Aghjayan, for any purpose other than for the sole benefit of Ritani, LLC – both during and at all times following his employment.  *Id.*  In addition, the non-compete clause prevented Harout from "tak[ing] a position where such Confidential Information may be used adversely" to Ritani's best interests and from "seek[ing] to divert the Company's business or opportunity to a third party."  (**Exhibit 9** at ¶6(b)(i), (iii)).

27.     Thereafter, on August 29, 2007, Defendant H. Ritani, Corp., by its owner Defendant Aghjayan, assigned, via an Assignment Agreement (**Exhibit 10**), its entire remaining membership interest in Plaintiff Ritani, LLC to JK.  As a result, Defendant H. Ritani, Corp., and thus Defendant Aghjayan,  transferred to JK all of its right, title and interest in the capital and profits of Ritani, LLC, including all of its voting and management rights.

28.     On August 29, 2007, the 2002 Membership Interest Purchase Agreement was also amended to, among other things, confirm JK's purchase of all of H. Ritani, Corp's membership interest in Ritani, LLC.  (**Exhibit 11**).  In addition, Section 5.2 of the 2007 Amendment entitled "Rights to the 'Ritani' Name" states that Plaintiff Ritani, LLC "shall maintain all right, title and interest in the name 'Ritani,' or any other similar name, together with the goodwill of the business connected with and symbolized by such name."  This section also provides that Defendants Aghjayan and H. Ritani, Corp. "shall not, directly or indirectly, use the name

'Ritani,' or any other similar name, in connection with any business or operation conducted by them anywhere in the world that is competitive, directly or indirectly," with the business of Plaintiff Ritani, LLC for so long as Plaintiff "continues to engage in the manufacture, distribution and/or sale of jewelry." *Id.*

29.     The total purchase price of Defendants Aghjayan and H. Ritani, Corp.'s assets and interests by JK was several million dollars.

30.     During the last two months of Defendant Aghjayan's employment with Plaintiff Ritani, LLC, Defendant Aghjayan disclosed Ritani LLC's trade secrets and/or confidential design files to his partner in a competing jewelry business in order to have him create ring designs for Plaintiff and produce them as wax models, without the knowledge or consent of Ritani LLC.

31.     On November 1, 2009, following six months of contract negotiations to secure Harout's services, first in a continued full time capacity, and in the alternative, should such negotiations fail, as a design consultant, Defendant Aghjayan resigned from his employment at Plaintiff Ritani, LLC.  Pursuant to the '04 Employment Agreement, Defendant Aghjayan was obligated not to compete with Plaintiff in the jewelry industry until October 31, 2010 – one year following the date of his resignation.  (**Exhibit 9** at ¶6).

32.     However, beginning in 2008 and continuing into 2010, while employed and following his departure from Plaintiff Ritani, LLC, and while the non-compete provision remained in effect, Defendant Aghjayan was involved in the design, creation and manufacture of custom bridal engagement rings and wedding bands in China for the sole purpose of having a competing business in the United States.  In order to sell those jewelry products to U.S. customers, he formally established two companies – Defendant Amazing Settings on November

9, 2009 and Defendant Harout R, LLC on September 13, 2010. Defendant Aghjayan has also continued to maintain the active registration of Defendants H. Ritani, LLC and H. Ritani, Corp. in furtherance of his jewelry business. In addition, back in February of 2009, Defendant Aghjayan with his new partner purchased a factory in China and continues to use his 3D printing machine, purchased in late 2008, to produce jewelry products. Through Defendant Aghjayan's establishment and operation of Defendant Companies, Defendants have and continue to compete with Plaintiff Ritani, LLC by advertising, marketing and selling jewelry protected by Plaintiff's intellectual property rights, and to solicit jewelry orders from former H. Ritani, Corp. and Ritani, LLC customers without the consent of Plaintiff.

33.     In addition, prior to the expiration of his non-compete term, Defendant Aghjayan approached Plaintiff Ritani, LLC seeking an amendment to the non-compete provision of the '04 Employment Agreement. During the two month negotiation, Defendant Aghjayan expressed a sense of urgency to shorten the non-compete period, due to production in his China facility, of what Plaintiff believed to be large quantities of non-competitive jewelry findings and castings. However, in reality, Defendant Aghjayan was anxious to end his competitive restriction so that he could deliver finished jewelry products, which he had already manufactured and offered for sale and/or sold to a number of United States companies during the non-compete period, including but not limited to, Helzberg Diamonds ("Helzberg").

34.     Subsequently, on October 20, 2010, Defendant Aghjayan entered into a letter agreement ("Letter Agreement") with Plaintiff Ritani, LLC (**Exhibit 12**) amending the blanket non-compete provision in the '04 Employment Agreement to end two weeks early, on October 14, 2010. Believing Defendant Aghjayan's assurances that he would not enter into the competing jewelry field, Plaintiff Ritani, LLC agreed to grant Defendant Aghjayan's request.

Plaintiff did so in order to end the partnership with Defendant Aghjayan on good terms and in return for Defendant Aghjayan's agreement not to sell jewelry to any current Ritani, LLC customer through December 31, 2010 and to refrain from attending the January/February 2011 Centurion Show. *Id.* In addition, while Plaintiff understood that Defendant Aghjayan had engaged in casual conversations with a few potential non-Ritani customers, it was Plaintiff's belief that these discussions pertained to non-competing products, such as castings and findings, and were in no way related to Plaintiff's business.

### INTELLECTUAL PROPERTY RIGHTS OF PLAINTIFF RITANI, LLC

35. Plaintiff Ritani, LLC is a highly successful designer, manufacturer and distributor of high end designer jewelry offered for sale under the world famous RITANI brand.

36. Upon its formation in 2002, Plaintiff Ritani, LLC acquired all rights, title, and interest in and to the business, assets and goodwill of its predecessor H. Ritani, Corp., including all rights to the trademark RITANI and its jewelry designs as well as its customers. Immediately upon formation of the partnership, Ritani, LLC transitioned from H. Ritani, Corp.'s prior use of the H. RITANI brand to the RITANI brand alone. Today the RITANI brand is synonymous with luxury and high-quality craftsmanship and consumers and the trade instantly identify Plaintiff Ritani, LLC as the source of all jewelry bearing the RITANI name and marks.

37. Further, starting around 2002, and continuously thereafter, Plaintiff Ritani, LLC created and began using, promoting and selling jewelry with a distinctive three-leaf design (the "Three-Leaf Trademark"). (**Exhibit 13**). The Three-Leaf Trademark is prominently displayed on Ritani, LLC's warranty cards that accompany its jewelry, on its jewelry display cases at the point-of-sale, on advertisements and brochures, as well as on all of Plaintiff's letterhead, sales orders, tee-shirts, stationary, business cards and shipping envelopes. (See examples at

**Exhibit 14**).  The Three-Leaf Trademark is also a principal feature of Ritani's ICON jewelry line. (**Exhibit 15**).

38.     From January 2008 to the present, Plaintiff Ritani, LLC has also used an **R** as a favicon on the Ritani, LLC website in order to identify the RITANI brand to all customers and prospective customers that view Ritani, LLC's products on-line.[1]

39.     From the very beginning of the introduction of Plaintiff's trademarks RITANI and the Three-Leaf Trademark (collectively, the "RITANI Trademarks"), Plaintiff Ritani, LLC has caused its trademarks to be extensively advertised in the United States by means of its website, magazines, sales to the trade, and sales to consumers.

40.     Plaintiff Ritani, LLC's trademarks are intimately associated with its goods and services, serving to indicate source, and its goods and services are known by the RITANI Trademarks and are distinguished thereby from the trademarks of others.

41.     Plaintiff Ritani, LLC has continuously used the RITANI Trademarks in commerce in the United States from the introduction of these trademarks until the present.

42.     Plaintiff Ritani, LLC is the sole and exclusive owner in the United States of the RITANI Trademarks for jewelry.  Ritani, LLC is also the owner of the right, title and interest in and to federally registered trademark No. 3,024,747 for RITANI services in the field of diamond jewelry.  (**Exhibit 16**).

43.     As a result of Plaintiff Ritani, LLC's offering of its goods, the trade and public have come to know the RITANI Trademarks to represent high end designer jewelry of the highest quality, and to rely upon the goodwill and business that Plaintiff Ritani, LLC has

---

[1] A trademark identifier that comes up at the left of a domain name address bar when one goes to a website. See: http://www.ritani.com/.

established under the RITANI Trademarks.

44.     In addition to its trademark rights, Ritani, LLC also has authored, as works for hire, works comprising unique jewelry designs and has caused many of its works to be registered under the Copyright Act of the United States (1976 as amended).  For example, Plaintiff Ritani, LLC has secured the exclusive rights and privileges in and to the copyrights of several works including, but not limited to, Registration Nos. VA 1-774-361, VA 1-774-363 and VA 1-774-364. (**Exhibit 17**), as well as VA 1-774-362 and VAu 1-074-079. (**Exhibit 28**).

45.     Due to the quality, attractiveness and uniqueness of its high end jewelry designs, Plaintiff Ritani, LLC has realized great financial success in its sales of products bearing the RITANI name with estimated sales of over $125 million dollars over the past nine (9) years in the United States alone.

46.     Because Plaintiff Ritani, LLC's exclusive designs are essential to Ritani, LLC, it has instituted procedures to maintain the secrecy of all of its confidential, proprietary and trade secret designs, drawings and product development files.  For example, since its inception, Plaintiff Ritani, LLC uses computer-aided design ("CAD") files containing confidential, proprietary and/or trade secret information to design, create, modify and produce wax models of its new and innovative jewelry designs.  These CAD drawings contain numerous confidential designs, including, but not limited to, Perfect Match, a design element used to create and enable the engagement and wedding band to fit up against each other without a gap.

47.     Accordingly, to prevent its designs, drawings and product files from being publicly disseminated, Ritani, LLC makes all employees and contractors sign confidentiality agreements before being provided with access to confidential and trade secret information and requires all individuals receiving such information to protect its secrecy by logging off of their

computers every evening.  In addition, Plaintiff Ritani, LLC keeps its hard copy files under lock and key, and stores all of its electronic design files on a secure server designated for design only, which is only accessible with its own key.

**DEFENDANTS' WRONGFUL ACTS**

48.	Following Defendants Aghjayan and H. Ritani, Corp.'s sale to Plaintiff of their rights, title and interest in and to the assets and all the goodwill of H. Ritani Corp., including its customers, and while Defendant Aghjayan was still employed by Plaintiff, Defendant Aghjayan engaged in efforts to directly compete with, and solicit customers from, Plaintiff Ritani, LLC by using confidential information, trade secrets and/or intellectual property belonging to Plaintiff for Defendants' own personal benefit.  Defendant Aghjayan directed such conduct even though he owed a duty of utmost good faith and complete and undivided loyalty to Plaintiff, its goodwill and reputation, as well as being expressly bound by the terms of his Employment Agreement to refrain from engaging in such competitive activities.

49.	Defendant Aghjayan began his scheme within a few short years after the transfer of all interest and goodwill to Plaintiff Ritani, LLC and while in his position as Chief Executive Officer, Chief Operating Officer and President of Plaintiff Ritani, LLC.  Starting in 2005, Defendant Aghjayan began working from home on a regular basis, accessing Ritani, LLC's design servers remotely from his home.  After Plaintiff Ritani, LLC became suspicious as to Defendant Aghjayan's motives and actions, his home access to these servers was removed in August of 2008.  Thereafter, until his resignation on November 1, 2009, Defendant Aghjayan improperly transferred Ritani LLC's files outside the company by making copies of Plaintiff Ritani, LLC's confidential files located on the company's design server, transferring them onto a flash drive and removing the flash drive to his home or by e-mailing the files to his home

computer, to Defendant Shawndria Aghjayan's home computer or to other third parties. Upon

Defendant Aghjayan's resignation, none of the files accessed or copied were returned to Ritani,

LLC.

50. Defendant Aghjayan was also privy to Plaintiff's confidential financial and

customer files while employed at Plaintiff Ritani, LLC, including information about specific

customer accounts, costs associated with Plaintiff's products, pricing information and Plaintiff's

profit margins. Defendant Aghjayan began to collect and organize this information while at

Ritani, LLC and subsequently used these materials to form Defendant Companies and obtain a

competitive edge, which enabled Defendants to undercut Plaintiff in the market.

51. As a result of his position of confidence and trust, Defendant Aghjayan was able

to remove and retain in his possession a substantial part of the confidential and trade secret

design files belonging to Plaintiff. Despite Defendant Aghjayan's Employment Agreement

preventing his use, conveyance and exploitation of Plaintiff's trade secrets and confidential

information, Defendant Aghjayan has used such files to enable Defendant Companies to unfairly

compete with Plaintiff Ritani, LLC. In doing so, Defendants have saved a significant amount of

time and money, for example, by "tweaking" Plaintiff's designs, rather than undertaking the slow

process of legitimately building their jewelry designs from scratch.

52. In furtherance of Defendant Aghjayan's plan to compete with Plaintiff Ritani,

LLC, while still employed at Ritani, LLC, Defendant Aghjayan approached Alex Khatchadorian

("Mr. Khatchadorian") at a 2007 trade show in Hong Kong in order to discuss a potential

business partnership involving the manufacture of custom bridal engagement rings and wedding

bands in China for sale in the United States. Such discussions were renewed the following year

at the 2008 Trade Show.

53.     In addition, Defendant Aghjayan began discussions in July of 2008 with Tiffany & Co. ("Tiffany"), a former customer of Defendant H. Ritani, Corp.  Upon information and belief, Defendant Aghjayan entered into business negotiations with Tiffany, at that time, to discuss Defendant Aghjayan's design and manufacture of jewelry for Tiffany in his individual capacity.

54.     Upon learning of these negotiations with Tiffany, Plaintiff Ritani, LLC confronted Defendant Aghjayan who admitted to such negotiations.  However, Defendant Aghjayan claimed that such negotiations were not for him, but for his wife, Defendant Shawndria Aghjayan, who worked in the graphics department at Plaintiff Ritani, LLC.  Defendant Aghjayan claimed that his wife wished to leave Plaintiff Ritani, LLC in order to form a company to design and manufacture bridal jewelry for Tiffany as an outside contractor.  However, Defendant Aghjayan's wife did not have the wherewithal to run a jewelry business without Defendant Aghjayan.  Rather, Defendant Aghjayan used Defendant Shawndria Aghjayan as a cover during his negotiations with Tiffany, as he did in his dealings with Mr. Khatchadorian two months later, where Shawndria served as Defendant Aghjayan's alter ego to set up a jewelry business to directly compete with Plaintiff Ritani, LLC, while he was still employed in a position of trust at Ritani, LLC.

55.     Such negotiations with Tiffany were just one example of Defendant Aghjayan's overall scheme to capitalize on his personal loyalties with his former customers to unfairly compete with Plaintiff, both while actively occupying a position of trust at Plaintiff Ritani, LLC, and after he ultimately withdrew from the company.  Defendant Aghjayan did so despite his fiduciary duty and the existence of a non-compete clause in his Employment Agreements.

56.     In fact, in August of 2008, shortly after Plaintiff confronted Defendant Aghjayan

about his discussions with Tiffany, Defendant Shawndria Aghjayan resigned from Plaintiff Ritani, LLC. As the facts bore out, upon her departure from Plaintiff's facility, Defendant Shawndria Aghjayan was caught attempting to remove four boxes containing Plaintiff Ritani, LLC's trade secret designs and confidential product development files, which included design and customer files. Defendant Aghjayan's wife, at Defendant Aghjayan's behest, was attempting to remove these files in order to aid her husband in his efforts to use Plaintiff's confidential and/or trade secret information to establish and operate Defendant Companies in competition with Plaintiff Ritani, LLC.

57.     By September of 2008, Defendant Aghjayan had decided to move forward with the business plan he discussed with Mr. Khatchadorian back in 2007. During a two hour breakfast meeting in late September 2008, Defendant Aghjayan and his partner, Mr. Khatchadorian, agreed to create a full service bridal jewelry company that would sketch jewelry designs, produce jewelry pieces, as well as offer to sell and sell finished jewelry products for the sole purpose of directly competing with Ritani in the sale of wedding rings and bands to customers in the United States. Defendant Aghjayan started the business preparations in 2008, even though he was still working for Ritani LLC, due to the length of time it takes to organize a competing business. In doing so, over the next several years, Defendant Aghjayan repeatedly disclosed Ritani's confidential and trade secret information to Mr. Khatchadorian, a third party unrelated to Ritani LLC, and used such information to further the business interests of Defendant Companies to the detriment of Ritani LLC.

58.     During the September 2008 meeting, Defendant Aghjayan provided Mr. Khatchadorian with his Ritani business card, which included the Ritani Three-Leaf Trademark. (**Exhibit 29**). Because Defendant Aghjayan's business endeavor opened himself up to liability

from Ritani LLC, Defendant Aghjayan's Ritani LLC e-mail address was crossed out on the front of the card and replaced with AGHJAYAN@GMAIL.com.  In written communications with Mr. Khatchadorian, Defendant Aghjayan sent all emails either from his personal email account, or under his wife Defendant Shawndria Aghjayan's name, and used the letter "H" or the nickname "Parev" instead of his real identity.  In a further effort to maintain the secrecy of his plan, Mr. Khatchadorian and Defendant Aghjayan did not speak directly during the day, but instead discussed all business matters on cell phones or home phones during the evening hours.

59.     Defendant Aghjayan and Mr. Khatchadorian immediately started working together to manufacture custom bridal engagement rings and wedding bands in China for sale to customers in the United States.  To do so, they would eventually need to create a Chinese company and factory to manufacture jewelry designs and several U.S. companies to promote and sell their products in the United States.  Their initial plan was to begin selling in the United States within six months of their September 2008 start date, but they were unable to do so.

60.     Beginning in September 2008, Defendant Aghjayan worked under his wife, Defendant Shawndria Aghjayan's, name, so he could hide the fact that he was involved in forming a jewelry business to compete with Ritani, while still working for the company. Specifically, Defendant Aghjayan used Defendant Shawndria Aghjayan as his alter ego by having her set up his China company to manufacture jewelry designs on Defendant Aghjayan's behalf.  Defendant Aghjayan also used Defendant Shawndria Aghjayan as a subterfuge to send Mr. Khatchadorian Ritani's confidential and/or trade secret CAD CAM drawings, and other confidential design drawings, created by Defendant Aghjayan while at Ritani.  In doing so, Defendant Shawndria Aghjayan aided and abetted Defendant Aghjayan in furtherance of his improper scheme to breach his fiduciary duties and steal Ritani's trade secrets and confidential

information.  This pattern of behavior is consistent with Defendant Shawndria Aghjayan's August 29, 2008 attempt to take boxes of Ritani product development files from Ritani LLC's offices following her resignation from the company.

61.     Despite Defendant Shawndria Aghjayan's involvement, Defendant Aghjayan was Mr. Khatchadorian's sole partner and the decision maker for the business venture, including the types of designs created and the particular employees hired.  By the end of November 2008, it had become obvious that Defendant Shawndria Aghjayan did not have the knowledge of the jewelry industry nor of the simple design styles and techniques necessary to effectively develop a business.  Therefore, from November 20, 2008 on, all of the important emails came from Defendant Aghjayan under the code word "Parev" and some were even addressed to "Parev Harout aghpar" or "Parev, AG."  (See examples at **Exhibit 30**).  In addition, from the very beginning of their relationship until around August of 2010, Defendant Aghjayan elaborated on his emails through nightly telephone calls with Mr. Khatchadorian during which time they discussed their company and its jewelry designs.

62.     Over the next several months, Defendant Aghjayan continued to establish a means to compete with Plaintiff Ritani, LLC, despite being Plaintiff's President, Chief Executive Officer and Chief Operating Officer.  In December of 2008, Plaintiff Ritani, LLC became aware that Defendant Aghjayan had purchased a 3-Dimensional ("3D") printing machine of the same type used by Plaintiff in its manufacture of jewelry.  While Defendant Aghjayan claimed that he had acquired the machine for his personal use, 3D printing machines are commonly used in the industry to make jewelry.  When confronted with this fact, Defendant Aghjayan represented that he was going to use the 3D printing machine to go into business making doorknobs (notwithstanding his contract to perform all services for Plaintiff).  (See **Exhibit 5** at ¶1(b)).

Defendant Aghjayan even brought Plaintiff Ritani, LLC several samples of doorknobs as evidence of his intention. However, two months prior to leaving Plaintiff Ritani, LLC, Defendant Aghjayan printed wax models of jewelry designs for Ritani, LLC using the 3D printing machine. Thereafter, Defendant Aghjayan used this 3D printing machine to print Plaintiff Ritani, LLC's trade secret and/or confidential information in order to produce Ritani jewelry designs and designs derived therefrom for use in competing with Plaintiff in the jewelry business.

63.     In fact, beginning in late October or early November of 2008, Defendant Aghjayan began to email Mr. Khatchadorian design "concepts" in the form of CAD CAM drawings that Defendant Aghjayan had created while employed as Ritani LLC's President and chief designer. (**Exhibit 31**). Upon receipt, his China designers worked on the files by changing the size and shape of the center stones and emailed the finished drawings back to Defendant Aghjayan in the United States. Defendant Aghjayan would then use the 3D printing machine in his basement to print a wax model of the jewelry pieces, compare them to his original specifications and email Mr. Khatchadorian with any additional design changes or improvements that were needed. Once any required changes were complete, the file was returned to Defendant Aghjayan in the United States so he could re-print the wax model. This back and forth process would continue until Defendant Aghjayan approved the final design.

64.     Specifically, from approximately October of 2008 until the middle of 2009, Defendant Aghjayan, either personally or under Defendant Shawndria Aghjayan's name, emailed Mr. Khatchadorian CAD CAM files for 84 designs, which were assigned Style Nos. 100 through 200, with 16 empty designs. Upon receiving the .jcd files for these 84 styles, the China workers changed the heads on each piece by changing the size and/or shape of the center stone directly on

the CAD/CAM files, while leaving the remaining portions unmodified. During Defendant

Aghjayan's employment with Ritani LLC, as well as during his non-compete period, the China

factory also designed hundreds of other jewelry designs indicated as Style Nos. 201-400, based

upon pictures of "concepts" that Defendant Aghjayan emailed to Mr. Khatchadorian and

sketches made by the China workers, at that time, from which the final designs were made. It

also was Defendant Aghjayan's common practice to swap designs or to change head settings

with other shanks in order to create "new" designs, which allowed them to create more than 200

styles just by swapping styles indicated as Style Nos. 401. Ultimately these designs were

showcased in jewelry catalogs and displayed on either the Amazing Settings or Harout R website,

after these companies were formed in November 2009 and May 2010 respectively.

65.  As an example, in a November 21, 2008 email entitled "New Ring," Defendant

Aghjayan sent Mr. Khatchadorian a CAD CAM drawing of design Style 1300, which appears to

be almost identical to Ritani Design 1R-3950, a trade secret design created at Ritani just 4 days

earlier.  (**Exhibit 32**).  Similarly, in the March 3, 2009 email entitled "I Changed the Top Head

of 135 that I spoke to you," Defendant Aghjayan sent Mr. Khatchadorian another Ritani

confidential and trade secret file created on February 16, 2009, which matches Ritani's Endless

Love ring design, Style Nos. 1R 8034. (**Exhibit 33**).  Significantly, Defendant Aghjayan's

current jewelry line contains a number of jewelry pieces that copy Ritani's Endless Love design,

including but not limited to, Style Nos. 1r162, 1r413 and 1r414 (**Exhibit 34**), as well as Style

Nos. 1r123, 1r411, 1r530 and 1r532.

66.  Shortly after the Chinese New Year in February of 2009, and while still employed

as President of Ritani, Defendant Aghjayan and Alex Khatchadorian began preparations for the

formal start of their Chinese company, which was to be named Harout and Alexan Jewelry and

Gems. The China company was created solely to sell finished bridal jewelry products to customers in the United States. At that time, the business moved into a factory in China, where they began the process of manufacturing a silver sample jewelry line to use as a representative sample for sale in the United States. By at least August of 2009, some silver samples were made, but after February 2010 the Hong Kong or China factory was making weekly shipments of the silver sample line to Defendant Aghjayan's personal residence in New Jersey. While Defendant Aghjayan began to prepare the registration papers for Harout and Alexan Jewelry and Gems in July of 2009, and although their business activity was high, as a formality, Defendant Aghjayan did not want to sign the final papers until his contract with Ritani LLC expired in November of 2009. Defendant Aghjayan and Alex Khatchadorian obtained a license for Harout and Alexan Jewelry and Gems by the end of 2009.

67. Defendant Aghjayan admitted to Plaintiff in early 2010 that he had purchased a factory in China, but claimed that it was to manufacture jewelry findings and castings – a business Plaintiff Ritani, LLC has never been involved in – and showed Plaintiff pictures of such facility. Defendant Aghjayan claimed that he would not be manufacturing finished jewelry or branded products at his China facility, but would instead produce findings and castings, which would be sold via catalog. Despite Defendant Aghjayan's assurances to the contrary, Defendant Aghjayan actually purchased the China factory to prepare for his entry into the United States marketplace in order to compete with Plaintiff in the manufacturing, production and sale of finished and branded jewelry products, both before and after his resignation from Ritani, LLC in 2009.

68. Throughout 2009, Defendant Aghjayan, while employed by Ritani, continued to run his new business and to create and send confidential and trade secret design drawings,

specifically created for Ritani LLC, to third parties. For example, in March of 2009, Defendant Aghjayan sent Mr. Khatchadorian a file of Ritani LLC's "Perfect Match" design and had verbal communications with Mr. Khatchadorian with respect to CAD CAM drawings showing the precise measurements and details necessary to create this design feature, as well as the concept behind its creation. Defendant Aghjayan considered "Perfect Match" to be an extremely important feature that must be utilized in every ring design and was marketed as such. (**Exhibit 35**). The concept behind the creation of "Perfect Match," a registered Trademark of Ritani LLC, was unique at the time of Defendant Aghjayan's disclosure, as were the measurements and techniques that needed to be used in order to enable the two rings to match up perfectly, which Ritani LLC considered proprietary and confidential. Therefore, Defendant Aghjayan's disclosure of this information to Mr. Khatchadorian in 2009, and the subsequent implementation of this feature into all of Harout R and Amazing Settings' jewelry designs, violates Ritani LLC's intellectual property rights.

69. In addition, on June 21, 2009, Defendant Aghjayan sent Mr. Khatchadorian an email entitled "I made this design for R," which included a design drawing very similar to Ritani LLC's floral design style number 1R-3953, with instructions to take the Ritani LLC design and use it as a concept to create similar designs for their new business. (**Exhibit 36**).

70. During the first half of 2009, Defendant Aghjayan also had discussions about his new business venture, while attending the February 2009 Centurion show and the May 30, 2009 Las Vegas trade show on behalf of Ritani LLC. (**Exhibits 37-38**). For example, at the May 2009 Las Vegas show, Defendant Aghjayan secretly met with at least one software company to discuss setting up a software program for his business venture, in order to give his business a head start to compete with Ritani. (**Exhibit 38**).

71. Moreover, beginning on September 1, 2009 and continuing until his employment ended on October 31, 2009, Defendant Aghjayan was permitted to work from home to develop and approve CAD CAM designs and produce wax models for Ritani LLC, based upon representations to Ritani LLC that he could complete his projects at home. During this time, Defendant Aghjayan emailed Mr. Khatchadorian a number of Ritani LLC's confidential and trade secret design drawings and asked for his assistance in making these designs for Ritani, without Ritani LLC's consent, because Defendant Aghjayan was too busy building designs for his companies, Amazing Settings and Harout R, to fulfill his design obligations to Ritani LLC.

72. Specifically, between September 4 and September 26, 2009, Defendant Aghjayan sent Mr. Khatchadorian five separate emails with the subject names "R," "R Styles," "R Rings," "For R No 6 Rit" and "RIT 12." (**Exhibits 39-43**). Similarly, Defendant Aghjayan sent Mr. Khatchadorian emails entitled "RIT" and "95D-H For Ritani" on October 20 and 22, 2009 respectively. (**Exhibits 44-45**), The "R" in each of these subject lines stands for Ritani, while "H" was an abbreviation for Harout. Each of these emails attach .jcd drawings of Ritani LLC designs, including designs incorporating the Ritani Three-Leaf Trademark. Prior to his departure from Ritani LLC, Defendant Aghjayan provided Ritani LLC with a box of the wax models that were created from these files, which Ritani LLC never commercialized. Rather, Defendant Aghjayan improperly took these Ritani LLC confidential and trade secret design files, and created either identical or slightly "tweaked" rings for sale to United States customers through Defendants Amazing Settings and Harout R.

73. In fact, most of Defendant Aghjayan's current product line was created while he was president of Ritani in 2008-2009 and has been used to compete with Ritani LLC for sale in the United States market. On September 24, 2009, Defendant Aghjayan sent Mr. Khatchadorian

an email with subject matter – "R Rings" – with 7 CAD CAM files that copy Ritani's logo rings. (**Exhibit 41**).  After Alex completed his work on these designs, he sent them back to Defendant Aghjayan, who printed them out with his 3-D wax printing machine.  Defendant Aghjayan then provided Ritani with the wax models for all 7 jewelry designs attached to the September 24, 2009 email, including without limitation, Ritani Style EM-2.  The Wax Model Design of EM-2 that Harout provided to Ritani, LLC is identical to the EM-2 Ritani Drawing sent to China, which is nearly identical to Harout Style Nos. 1r452 and 1r496. (**Exhibit 46**).  As another example, the CAD CAM file attached to Defendant Aghjayan's September 13, 2009 email entitled "R Styles," which includes an attachment entitled "4" is identical to a wax model that Defendant Aghjayan provided to Ritani, LLC, which matches Style 1r294 in Defendant Aghjayan's current jewelry line, while a slight "tweak" was made to Harout Style No. 1r188. (**Exhibit 47**).  In addition, Defendant Aghjayan's current style numbers 1r478 and 1r333 are derived from Ritani's "12 Rit Solitaire" Drawing (and identical wax model) that Defendant Aghjayan emailed to Mr. Khatchadorian on September 26, 2009 with the subject "RIT 12." (**Exhibit 48**).  Moreover, Harout's Style Nos. 1r406 and 1r444G are identical to the "Rit Flower 1" design, a design which was part of Ritani LLC's copyrighted sketch book, and was attached to the October 20, 2009 email that Defendant Aghjayan sent to Mr. Khatchadorian with the subject "RIT."  (**See Exhibits 28 and 49**).  Further, on October 22, 2009,  Defendant Aghjayan sent Mr. Khatchadorian an email entitled "95D-H" attaching an image of a ring drawing titled "R95D-A-h," which can be found in Harout's style number 1r515. (**Exhibit 50**).  Similarly, Ritani Style 1R98D-A-H is derived from Harout's style number 1r310.  (**Exhibit 51**).  Defendant Aghjayan disclosed these confidential and trade secret CAD CAM drawings to Mr. Khatchadorian, without Ritani LLC's consent, and Ritani LLC has never commercialized these rings.  Thus, they

remained trade secrets until they were improperly disclosed by Defendant Aghjayan and used by Defendants Amazing Settings and Harout R to make rings that were offered for sale in the United States.

74.     In addition, throughout 2009 and up until the time he left Ritani LLC, Defendant Aghjayan and Ritani LLC were involved in negotiations to secure Defendant Aghjayan's services first, in a continued full time capacity, and in the alternative, should such negotiations fail, as a design consultant.  Unbeknownst to Ritani LLC, Defendant Aghjayan was engaged in these discussions, even though he had already been in business with Mr. Khatchadorian to sell competing jewelry designs in the United States since September of 2008.

75.     Defendant Aghjayan's bad conduct continued after his November 1, 2009 resignation from Plaintiff Ritani, LLC, and during the one-year period when the non-compete provision remained in effect.  By November 9, 2009, Defendant Aghjayan had officially formed Amazing Settings in the United States for the purpose of selling jewelry designs manufactured by Defendant Aghjayan's China company to the United States market in competition with Plaintiff Ritani, LLC – just one week after his resignation from Ritani, LLC.  (**Exhibit 20**).  A few days later, Defendant Aghjayan sent Mr. Khatchadorian the first beginning pages for the Amazing Settings website, including pictures of Ritani LLC designs, which took between four to six months to prepare.  (**Exhibit 52**).  Thereafter, around May 20, 2010, the Amazing Settings website first went up on the internet, which from start to finish took approximately one year to complete.  The Amazing Settings website contains a number of the 84 designs from the CAD CAM drawings Defendant Aghjayan created and emailed to Mr. Khatchadorian between October of 2008 and the middle of 2009, as well as designs Style Nos. 201-400, which are based on pictures of "concepts" that Defendant Aghjayan sent to Mr. Khatchadorian, and sketches made at

that time by employees in China, either during his employment with Ritani LLC or within the first year following his departure.

76. Defendant Aghjayan's plan was to start distributing his designs through Amazing Settings until he made enough money to advertise his brand name, which became "Harout R." The "R" in "Harout R" stands for Ritani and was chosen by Defendant Aghjayan to capitalize on the belief that everyone knew him as Harout Ritani, and that no one would recognize the name Harout alone.

77. Within the first year of leaving Ritani, LLC, Defendant Aghjayan founded the entity Harout R to compete with Plaintiff in the jewelry industry. (**Exhibit 18**). In addition to promoting the fact that Harout R was established in January of 2010, Defendant Aghjayan's 2011 Facebook page states: "Designer Harout Aghjayan has launched his new company and brand under the name HAROUT R..." *Id.* Defendant Aghjayan's Facebook page also describes his bridal jewelry collections and provides a website (http://www.haroutr.com) where his followers can view and purchase his jewelry. *Id*.

78. In July 2010, Defendant Aghjayan obtained a registration for the underlying domain name, *haroutr.com*, (**Exhibit 19**) despite his knowledge that the '04 Employment Agreement prevented him from competing with Plaintiff Ritani, LLC until November 1, 2010 and from "seek[ing] to divert the Company's business or opportunity to a third party." (**Exhibit 9**).

79. Defendant Aghjayan established Harout R and registered the underlying domain name *haroutr.com*, during the non-compete period in furtherance of his plan to compete with Plaintiff Ritani, LLC.

80.    Thereafter, on September 13, 2010, during his non-compete period, less than one year after he left his position at Ritani, LLC, and almost one year after forming Amazing Settings, Defendant Aghjayan formally formed Defendant Harout R LLC. (**Exhibit 21**).  Harout R would be the public face of the company because the trade knew him as Harout Ritani.  The use of Amazing Settings would not have the same public impact.  Harout R shares the same factory, the same employees and the same designs as Amazing Settings in China and the United States.  In addition, as with Amazing Settings, the Harout R website has a number of the original Ritani 84 designs that Defendant Aghjayan created and sent to Mr. Khatchadorian between late 2008 and mid-2009, as well as Style Nos. 201-400, which were based on pictures of "concepts" that Defendant Aghjayan sent to Mr. Khatchadorian, and sketches made by the China employees at that time, either during his employment with Ritani or within the first year following his departure.

81.    Based upon information and belief, during that same time period, Defendant Aghjayan was also continuing to operate Defendants H. Ritani LLC, and H. Ritani, Corp in violation of Section 5.2 of the 2007 Membership Interest Purchase Agreement that he not use the name "Ritani."  (**Exhibit 11**).

82.    In 2010, Defendant Aghjayan, through Defendant Companies, Amazing Settings and Harout R, further violated the non-compete provision in Defendant Aghjayan's agreement by engaging in business negotiations with Ritani LLC's customers and potential customers.  For example, in early 2010, Defendant Aghjayan was working heavily on developing his customer connections in the United States and hoped to "meet important clients" when he attended the June 2010 Las Vegas trade show.  (**Exhibit 53**).  In fact, during his one-year non-compete period, Defendant Aghjayan specifically targeted and solicited at least Helzberg, QVC, Blue Nile,

Tiffany, Robbins Bros. and Michael Hill for business, because they were all Ritani customers or Ritani potential customers. Defendant Aghjayan was and still is soliciting Ritani LLC's customers and advertising, marketing, offering to sell and selling bridal jewelry collections using Plaintiff Ritani, LLC's trade secrets and/or confidential information, RITANI Trademarks, Ritani copyrighted designs and designs derived therefrom.

83. In addition, prior to the expiration of the non-compete clause in his Employment Agreement, Defendant Aghjayan manufactured and produced finished jewelry products using his China facility and offered for sale and/or sold them to companies in the United States, including but not limited to, Helzberg Diamonds ("Helzberg"). Based upon information and belief, Defendant Aghjayan's sales commitments, which Plaintiff believed were for non-competing goods or at least to non-Ritani LLC customers, prompted Defendant Aghjayan to seek Plaintiff's approval to shorten the length of the non-compete provision to October 14, 2010.

84. Defendant Aghjayan contacted Helzberg prior to February of 2010 to set up an appointment to discuss his bridal line. During the next several months, Defendant Aghjayan traveled to Helzberg on multiple occasions to show them catalogs, pictures and his silver samples to try to get Helzberg to place an order with Harout's U.S. Company, Amazing Settings. Following Defendant Aghjayan's visit, Helzberg selected approximately 65 styles that they were interested in, and by March of 2010, Defendant Aghjayan was receiving silver pieces from his China factory for Helzberg in the United States. Defendant Aghjayan did so despite the fact that he knew that Ritani LLC had been trying to sign Helzberg on as a customer for the past six months.

85. Prior to the February 2010 contact with Defendant Aghjayan, Helzberg met with Ritani LLC in January 2010 to discuss entering into a business arrangement for the purchase of

engagement rings and wedding bands.  Following, a very positive meeting with Helzberg in New York City in January of 2010 and in Kansas City on February 11, 2010, the business negotiations with Helzberg abruptly terminated.  The breakdown of Ritani LLC's discussions coincides with Defendant Aghjayan's extensive series of contacts and meetings with Helzberg during his non-compete period in early 2010.  Namely, following Defendant Aghjayan's departure from Ritani LLC, Defendant Aghjayan actively interfered with Plaintiff's business relationship with Helzberg by initiating negotiations with Helzberg, on his own behalf, for the benefit of Amazing Settings, and subsequently Harout R.

86.     Helzberg, who was aware of the contractual restrictions placed on Defendant Aghjayan, had become nervous about doing business with Defendant Aghjayan during his non-compete period.  Despite being bound by his non-compete, Harout's continuous solicitation of Helzberg during that time period ultimately led to orders totaling $2.8 million.  But for Defendant Aghjayan's actions beginning in 2008 and continuing into 2010, it is likely that Ritani LLC would have signed Helzberg on as a customer and obtained the $2.8 million initial contract and ongoing business.

87.     Moreover, dating back to Defendant Aghjayan's 2008 discussions with Tiffany, and continuing to the present, Defendant Aghjayan has consistently and actively engaged in the solicitation of Plaintiff Ritani, LLC's former customers.  For example, at least as early as the June 2010 Las Vegas show, and during the one year non-compete period, Defendant Aghjayan approached at least one other former customer in an effort to lure its patronage away from Plaintiff Ritani, LLC.  Plaintiff Ritani, LLC was informed of this solicitation through the receipt of a May 17, 2011 e-mail from its customer, John G. Henne at Henne Jewelers, which states that he was approached by Defendant Aghjayan with respect to Defendants' Harout R catalog of

jewelry at the June 2010 Las Vegas show. (**Exhibit 22**). As a result of this solicitation, Defendant Aghjayan actively interfered with Plaintiff's business relationship with Henne Jewelers, thereby impairing Plaintiff's goodwill, in addition to violating the non-compete provision of his contract.

88. In 2010, Defendant Aghjayan, through Amazing Settings and Harout R, also actively solicited at least Plaintiff Ritani, LLC's former customers QVC, Blue Nile and Robbins Bros. With respect to Blue Nile, Defendant Aghjayan was aware that Ritani LLC had already had active business dealings with Blue Nile, which were secret and covered by a non-disclosure agreement ("NDA") (**Exhibit 9**). Nonetheless, Defendant Aghjayan disclosed to Mr. Khatchadorian his knowledge of Ritani LLC's active business dealings with Blue Nile, including the details surrounding the relationship between Ritani LLC, Julius Klein Diamonds and Blue Nile, and used this information to his business advantage in breach of his non-disclosure agreement and in interference with Plaintiff's business relationship with Blue Nile.

89. By at least April of 2010, Defendant Aghjayan also initiated contact with Ritani LLC's customer, QVC. Defendant Aghjayan scheduled several meetings to show QVC his silver sample production line in an effort to negotiate a business arrangement with them. Defendant Aghjayan was aware that QVC was a Ritani LLC customer. Following Defendant Aghjayan's initial meeting with QVC, he had his designers start designing CAD CAM drawings of rings for QVC based upon "sketches named Rita," which were designed in June of 2009 while Defendant Aghjayan was still working for Ritani LLC. (**Exhibit 54**). In May of 2010, Defendant Aghjayan stopped rendering pieces for QVC, due to QVC's concern that Defendant Aghjayan would not be able to sell them designs in the United States in 2010.

90.     Defendant Aghjayan's active solicitation of Plaintiff Ritani's customers continued in November of 2010, when Defendant Aghjayan sent an email to Mr. Khatchadorian that he was traveling everywhere to try to open United States accounts, including Seattle, California, Virginia and Washington.  (**Exhibit 55**).  Significantly, Ritani LLC has key accounts in each of these states including Blue Nile and EE Robbins in Seattle, Robbins Bros. in California and Fink & Mervis in Virginia/Washington.

91.     Defendant Aghjayan's improper solicitation caused Ritani LLC significant financial harm.  For example, Defendant Aghjayan knew that Blue Nile and Robbins Bros. were two of Ritani LLC's biggest customers when Defendant Aghjayan sold the remainder of his membership interest in Ritani LLC to Julius Klein Diamonds.  Thereafter, he solicited them and as a result of Defendant Aghjayan's targeted solicitation of Blue Nile, Ritani LLC's 2011 sales to Blue Nile were down $1.1 million from 2010 and the six month sales projections for 2012 show a drop in sales of $1.9 million from 2011.  Similarly, with respect to Robbins Brothers, Ritani LLC's 2011 sales were down $447,197 or $76.0% from 2010.  In total, Ritani LLC's sales to retail customers that Defendant Aghjayan now sells to, declined 37.17% between 2010 and 2011 and an additional 30.63% when you take into account January through April of 2012 sales figures.

92.     Defendants were involved in further acts of solicitation in the 2011 time frame. For example, in 2011, Defendant Aghjayan mailed out around 7,000 competitive flyers directly to all of Plaintiff Ritani, LLC's customers. In this flyer, Defendant Aghjayan announced the formation of his new competitive entity Harout R LLC, touted his Harout R brand of jewelry, encouraged potential customers to call to schedule an appointment to see his new jewelry line and informed recipients that his catalog will be mailed to them shortly.  (**Exhibit 23**).

93.    In May of 2011, Defendant Aghjayan circulated a Harout R catalog directly to Plaintiff's customer base.  (**Exhibit 24**).  Plaintiff Ritani, LLC had built upon the H. Ritani, Corp. customers it acquired and worked hard over the years to develop an impressive list of customers. As a result of these targeted mailings to customers of Plaintiff Ritani, LLC by Defendant Aghjayan, Defendant Aghjayan attempted to capitalize upon the customers personal loyalties to him in an effort to recapture their patronage.

94.    Defendants did so despite the fact that Defendants Aghjayan and H. Ritani, Corp., as sellers of their ownership, business and all goodwill to Plaintiff, have a permanent duty to refrain from engaging in any acts that impair the value of the "goodwill" transferred to Plaintiff including a duty to refrain indefinitely from soliciting former customers and any attempts to regain their business.

95.    The same Harout R flyer and catalog that Defendants actively distributed in mass to Plaintiff's customer base (**Exhibits 23 and 24** respectively), also contain information that is likely to cause confusion as to Defendants' association with Plaintiff's famous RITANI brand. For example, the aforementioned Harout R brochures specifically associate Defendant Aghjayan with Ritani, by emphasizing the "R" in Harout R, which stands for Ritani, as well as the inclusion of a statement whereby Defendant Aghjayan claims that he was "previously known as Harout Ritani." *Id.*  In fact, Defendant Aghjayan's name was never "Harout Ritani," it was and still is Harout Aghjayan.  However, due to the success of the RITANI name, Defendant Aghjayan made all efforts to inextricably bind his name and persona with RITANI in order to capitalize on the popularity of the RITANI name and trademark.

96.    Defendant Aghjayan continues to make similar representations to potential consumers to this day, including at the July 2011 national jewelry show in Las Vegas, Nevada.

While attending this show, Plaintiff's representatives were advised that Defendant Aghjayan was repeatedly identifying himself to trade show participants as "Harout Ritani" and was advising potential customers that he was the real "Ritani" and that he had left Plaintiff Ritani, LLC.

97.     Defendants' representations to the jewelry industry, through Defendant Aghjayan's targeted mailings, direct statements and the maintenance of several companies using the "Ritani" mark and name, were made despite the fact that Section 5.2 of the 2007 Membership Interest Purchase Agreement (**Exhibit 11**) prevented Defendants from using the name "Ritani" in connection with any business or operation that directly or indirectly competes with the business of Plaintiff. Such representations are likely to create confusion, mistake or to deceive potential customers as to Defendants' affiliation, connection and relationship with Plaintiff Ritani, LLC and their ownership of the RITANI brand designs.

98.     In addition, in February of 2011, Defendant Shawndria Aghjayan, referring to herself as Shawndria Ritani, continued her efforts to assist her husband in his plans to compete with Ritani, LLC by posting, on her Flickr page, a picture of Defendant Aghjayan selling jewelry, along with a question asking "Where is Harout Ritani now?" (**Exhibit 25**). These representations are also contrary to the 2007 Membership Interest Purchase Agreement and are false, misleading and/or likely to create confusion among the industry and customers as to the origin of Plaintiff's designs, as well as Defendants' affiliation and connection with Plaintiff's RITANI name and brand. (**Exhibit 11** at Section 5.2).

99.     In 2011, Defendant Aghjayan, through Defendant Companies, also began to use a reproduction, copy, and colorable imitation of Plaintiff Ritani, LLC's Three-Leaf Trademark in Defendants' Harout R jewelry line as an identifier of origin of Defendants' goods, in a manner likely to cause confusion, mistake, or to deceive consumers as to the source or origin of

Defendants' goods. For example, Defendants' ring designs within its Harout R catalog incorporate source indicating elements that are confusingly similar to Plaintiff's Three-Leaf Trademark, as well the specific style numbers listed in paragraphs 72-73 above. (**Exhibit 24 - cover**).

100. Defendants have also used Plaintiff's copyright protected designs to create their design portfolio. In April of 2011, Plaintiff was informed that Defendants were selling their Harout R line of jewelry at Helzberg Diamonds, a jewelry store chain with an online store at www.helzberg.com. Helzberg's top executives were former executives of Ritani customers dating back prior to Plaintiff's 2002 acquisition of H. Ritani, Corp. and lasting up until a few years ago. Upon learning of this, Plaintiff Ritani, LLC searched the Helzberg's website and discovered that several pieces of jewelry, which were virtual copies of Plaintiff's styles and designs, appeared on the website under the Harout R brand, including without limitation, current Harout R Style Nos. 1r109 and 1pc109. (**Exhibits 28 and 56**). Defendant Aghjayan was able to create these designs by using Plaintiff Ritani, LLC's copyrighted designs, facilitated by the trade secrets that he took from Plaintiff Ritani, LLC, and subsequently using them to compete with Plaintiff in the jewelry industry.

101. In May of 2011, Harout R's online catalog also included pieces of jewelry that were virtual copies of and substantially similar to the copyrighted jewelry designs created and sold by Ritani, LLC (the "Ritani Designs"), as well as other confidential designs that Defendant Aghjayan was privy to through his fiduciary relationship with Plaintiff. (**Exhibit 24**). Defendant Aghjayan created these designs by using Plaintiff Ritani, LLC's confidential and/or trade secret CAD files and other design files, which he copied, emailed or downloaded from Plaintiff's servers during his employment at Ritani, LLC.

102.     Under the name Harout R, Defendants also offered for sale and sold rings substantially similar to the wax model rings that Defendant Aghjayan produced for Plaintiff Ritani, LLC during the last two months of his employment at Plaintiff Ritani, LLC, as further discussed above in Paragraphs 71-73.  (See for example Ritani, LLC photograph of wax model and Harout R Style No. 1R452G at **Exhibit 26** and **Exhibits 46-51**).

103.     Defendants' copies of the Ritani Designs are being sold and displayed as Harout R designs on the website of a number of Plaintiff Ritani, LLC's customers, including but not limited to, Robbin, Bros. and Ackerman Jewelers.  In addition, after using Plaintiff's copyrighted designs, Defendants actually sought copyright registrations on several of these copied works.

104.     As a result of the collective actions of Defendants, spanning over the past five years, Defendants have used Plaintiff Ritani, LLC's full panoply of intellectual property rights to Defendants' own benefit to compete with, and solicit customers from, Plaintiff Ritani, LLC to the detriment of Plaintiff's business reputation and goodwill.

<u>**COUNT I**</u>

**Copyright Infringement**
**Against Defendant Aghjayan and Defendants Amazing Settings and Harout R**

105.     This is a claim for relief from copyright infringement and arises out of the occurrences as set forth herein above and hereinafter and is pursuant to 17 U.S.C. §§ 101 and 501 et seq.

106.     Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶105 as though fully set forth herein.

107.     Plaintiff Ritani, LLC is the author of copyrighted works of jewelry designs.

108.     Plaintiff has been complying, in all respects, with the Act of 1976 and all other laws governing copyrights, and secured the exclusive rights and privileges in and to the

copyright of said works and received from the Register of Copyrights Certificate of Registration Nos. VA 1-774-361, VA 1-774-363 and VA 1-774-364, (**See Exhibit 17),** as well as VA 1-774-362 and VAu 1-074-079. (**Exhibit 28**).

109.    Plaintiff has always been and still is the sole proprietor of all right, title, and interest in and to the copyrights in said works.

110.    Defendants were and are in possession of copies of Plaintiff's works.

111.    Beginning prior to May 2011 and continuing until the present date, Defendants have infringed Plaintiff's copyrights in these works, and others, by making copies or substantial copies of the works and selling the copies or substantial copies of the works by identifying them as original designs by Defendants. (See example comparisons attached as **Exhibits 27, 49 and 56**).

112.    Defendants have knowingly and willfully copied the works.

113.    Defendants have been copying, selling, and/or otherwise marketing the works and have thereby been engaging in copyright infringement against Plaintiff, causing Plaintiff irreparable damage, for which there is no adequate remedy at law.

## COUNT II

**Federal Trademark Infringement**
**Lanham Act §32, 15 U.S.C. § 1114**
**Against All Defendants**

114.    This is a count for trademark infringement under the Trademark Laws of the United States, 15 U.S.C. § 1114(1)(a).

115.    Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶114 as though fully set forth herein.

116.    Plaintiff Ritani, LLC is the owner of the right, title and interest in and to federally

registered trademark No. 3,024,747 for RITANI services in the field of diamond jewelry.
(**Exhibit 16**).

117.   Defendants' use of RITANI in connection with the provision of services to customers and potential customers in the field of diamond jewelry, without Plaintiff's consent, is likely to confuse and deceive the public into believing that Defendants and their goods or services are associated or affiliated with Plaintiff, or are sponsored or endorsed by Plaintiff.

118.   Defendants' activities described above, including but not limited to, their attempts to inextricably bind their name and persona with Ritani through the use of the company name and brand "Harout R," where the "R" stands for Ritani, language contained within Defendants' brochures and flyers including that Defendant Aghjayan was "previously known as Harout Ritani," the use of the name "Ritani" in Defendant Companies H. Ritani LLC and H. Ritani, Corp., Defendant Shawndria Aghjayan's posting of a Flickr page with a picture of Defendant Aghjayan selling jewelry with the question "Where is Harout Ritani now?," as well as specific statements made to customers and potential customers that Defendant Aghjayan is the real "Harout Ritani," done in order to capitalize on the belief that everyone knew Defendant Aghjayan as Harout Ritani, and that no one would recognize the name Harout alone, constitute infringement of Plaintiff's rights in its RITANI service mark under 15 U.S.C. § 1114.

119.   Defendants had actual notice of Plaintiff's trademark rights, yet have knowingly and intentionally adopted, used, and expanded their use of the RITANI service mark causing confusion, mistake, and deception.

120.   Upon information and belief, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

121.   Upon information and belief, Defendants intend to continue their infringing acts,

and will continue to willfully infringe the Plaintiff's trademark, unless restrained by this Court.

122.   Plaintiff Ritani, LLC has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT III

**Unfair Competition, False Designation of Origin and False and Misleading
Representations in Commerce Under the Lanham Act
Against All Defendants**

123.   This is a count for unfair competition, false designation of origin and false and misleading representations in commerce under the Trademark Laws of the United States, 15 U.S.C. § 1125(a).

124.   Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶123 as though fully set forth herein.

125.   Plaintiff Ritani, LLC is a highly successful designer, manufacturer and distributor of high end designer jewelry offered for sale under the world famous RITANI brand.

126.   Plaintiff Ritani, LLC is the owner of the right, title and interest in and to federally registered trademark No. 3,024,747 for RITANI services in the field of diamond jewelry. (**Exhibit 16**).

127.   Plaintiff Ritani LLC has also established rights in the Three-Leaf Trademark through the use, promotion and sale of jewelry with the distinctive three-leaf design, which is prominently displayed on Ritani, LLC's warranty cards that accompany its jewelry, on its jewelry display cases at the point-of-sale, on advertisements and brochures, as well as on all of Plaintiff's letterhead, sales orders, tee-shirts, stationary, business cards and shipping envelopes.

128.   Defendants' activities described above, including but not limited to, Defendants' use of the RITANI Trade Name, RITANI Trademarks and the RITANI brand in connection with

their sale of goods and services, without the consent of Plaintiff, including without limitation, Defendants' attempts to inextricably bind their name and persona with Ritani through the use of the company name and brand "Harout R," where the "R" stands for Ritani, language contained within Defendants' brochures and flyers including that Defendant Aghjayan was "previously known as Harout Ritani," Defendant Shawndria Aghjayan's posting of a Flickr page with a picture of Defendant Aghjayan selling jewelry with the question "Where is Harout Ritani now?," Defendants' offer for sale and sale of designs containing the Ritani Three-Leaf Trademark, as well as specific statements made to customers and potential customers that Defendant Aghjayan is the real "Harout Ritani," done in order to capitalize on the belief that everyone knew Defendant Aghjayan as Harout Ritani, and that no one would recognize the name Harout alone, constitute a false designation of origin, false or misleading description of fact, or false or misleading representation in commerce that is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services and/or activities by Plaintiff.

129.    In addition, the corporate names of the active companies Defendants H. Ritani, LLC and H. Ritani, Corp. are confusingly similar to and have a similar commercial impression to the RITANI Trade Name, RITANI Trademarks and the RITANI brand.

130.    Defendant Aghjayan, through Defendants H. Ritani, LLC and H. Ritani, Corp., uses the name "Ritani" to sell products in the same product category and market as Plaintiff Ritani, LLC and to the same customers who are likely to purchase Plaintiff Ritani, LLC's products.

131.    Defendant Aghjayan's use of the corporate names of Defendants H. Ritani, LLC and H. Ritani, Corp. is likely to confuse customers that Defendants' products are related to,

sponsored by, associated with or emanate from Plaintiff Ritani, LLC.

132. Defendant Aghjayan continues to retain the active status of and operate Defendants H. Ritani, LLC and H. Ritani, Corp., despite the existence of an agreement expressly prohibiting him from using the Ritani name, for the purpose of trading on the goodwill and reputation carefully cultivated by Plaintiff Ritani, LLC for its RITANI Trade Name, RITANI Trademarks and RITANI brand.

133. At all relevant times, Defendants knew, should have known, or had reason to know of Plaintiff Ritani, LLC's rights in the RITANI Trade Name, RITANI Trademarks and the RITANI brand.

134. Defendants have nonetheless willfully undertaken their aforementioned actions in contravention of Plaintiff Ritani, LLC's rights, by adopting and using a trade name and trademark that is similar or identical to the RITANI Trade Name, RITANI Trademarks and RITANI brand, and falsely suggesting a connection to Plaintiff.

135. Plaintiff Ritani, LLC has not authorized or licensed Defendants to use Plaintiff's RITANI Trade Name, RITANI Trademarks and/or RITANI brand.

136. Plaintiff Ritani, LLC has no control over Defendants' use of Plaintiff's RITANI Trade Name, RITANI Trademarks and/or RITANI brand, nor over the quality of goods and services Defendants provide. Such uncontrolled use places Plaintiff's marks, reputation, and goodwill at risk of serious injury.

137. Defendants' activities described above constitute unfair competition, false or misleading designations of origin, false or misleading descriptions of fact and/or false or misleading representations in commerce in violation of Section 32 of the Lanham Act 15 U.S.C. § 1125(a).

138.  Upon information and belief, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

139.  Upon information and belief, Defendants intend to continue their infringing acts, and will continue to willfully infringe Plaintiff's RITANI Trade Name, RITANI Trademarks and RITANI brand, unless restrained by this Court.

140.  Plaintiff Ritani, LLC has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

### COUNT IV

**False Advertising Under the Lanham Act**
**Against All Defendants**

141.  This is a count for false advertising under the Lanham Act, 15 U.S.C. § 1125(a).

142.  Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶141 as though fully set forth herein.

143.  Beginning at the time when Defendant Aghjayan established Defendant Companies to compete in the jewelry business, as described herein, Defendants made and continue to make false and/or materially misleading representations of fact about their jewelry products in commercial advertisements and/or promotions, including but not limited to, that the designs are Defendants' designs when, in fact, the designs are copied and/or derived from Plaintiffs' designs, and Defendant Aghjayan's use of Plaintiff's RITANI name and brand in connection with the advertisement and promotion of Defendants' goods and services in commerce, including without limitation, language contained within Defendants' brochures and flyers that Defendant Aghjayan was "previously known as Harout Ritani," Defendant Shawndria Aghjayan's posting of a Flickr page with a picture of Defendant Aghjayan selling jewelry with the question "Where is Harout Ritani now?," the use of the name "Ritani" in

Defendant Companies H. Ritani LLC and H. Ritani, Corp., as well as specific statements made to customers and potential customers that Defendant Aghjayan is the real "Harout Ritani," done in order to capitalize on the belief that everyone knew Defendant Aghjayan as Harout Ritani, and that no one would recognize the name Harout alone.

144. The aforesaid acts of Defendants constitute false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a).

145. Defendants' false and/or misleading representations have and are likely to continue to deceive or confuse consumers and potential customers in a manner likely to influence their purchasing decisions.

146. Defendants' false and misleading representations have and are likely to continue to cause injury to Plaintiff Ritani, LLC.

147. Upon information and belief, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

148. Upon information and belief, Defendants intend to continue their conduct, unless restrained by this Court.

149. Plaintiff Ritani, LLC has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT V

### State Law False Advertising (N.Y.G.B.L § 350)
### Against All Defendants

150. This is a count for false advertising under the Laws of the State of New York (N.Y.G.B.L § 350).

151. Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶150 as though fully set forth herein.

152.    Beginning at the time when Defendant Aghjayan established Defendant Companies to compete in the jewelry business, as described herein, Defendants made and continue to make false and/or materially misleading representations of fact about their jewelry products in commercial advertisements and/or promotions directed to the public, including but not limited to, that the designs are Defendants' designs when, in fact, the designs are copied and/or derived from Plaintiffs' designs and Defendant Aghjayan's use of Plaintiff's RITANI name and brand in connection with the advertisement and promotion of Defendants' goods and services, including without limitation, language contained within Defendants' brochures and flyers that Defendant Aghjayan was "previously known as Harout Ritani," Defendant Shawndria Aghjayan's posting of a Flickr page with a picture of Defendant Aghjayan selling jewelry with the question "Where is Harout Ritani now?," the use of the name "Ritani" in Defendant Companies H. Ritani LLC and H. Ritani, Corp., as well as specific statements made to customers and potential customers that Defendant Aghjayan is the real "Harout Ritani," done in order to capitalize on the belief that everyone knew Defendant Aghjayan as Harout Ritani, and that no one would recognize the name Harout alone.

153.    The aforesaid acts of Defendants constitute consumer-oriented conduct that has affected the public interest of New York and has resulted and/or may result in injury to consumers in New York and/or harm to the public.

154.    By the acts described herein, Defendants have willfully engaged in false advertising in violation of the common law of the State of New York (N.Y.G.B.L § 350).

155.    Defendants' false and/or misleading representations in advertising have and are likely to continue to deceive consumers and cause injury to Plaintiff Ritani, LLC.

156.    Upon information and belief, Defendants have made and will make substantial

profits and gains to which they are not in law or equity entitled.

157. Upon information and belief, Defendants intend to continue their conduct, unless restrained by this Court.

158. Plaintiff Ritani, LLC has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT VI

### Common Law Trademark Infringement
### Against All Defendants

159. This claim for relief arises under the common law of the State of New York and arises out of the same occurrences and transactions set forth herein above.

160. Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶159 as though fully set forth herein.

161. Plaintiff Ritani, LLC owns all right, title, and interest in and to the RITANI Trademarks, including all common law rights in such marks, and such marks are distinctive.

162. Plaintiff Ritani, LLC is also the owner of the right, title and interest in and to federally registered trademark No. 3,024,747 for RITANI services in the field of diamond jewelry.  (**Exhibit 16**).

163. Defendants' activities described above, including but not limited to, Defendants' use of RITANI in connection with the provision of services to customers and potential customers in the field of diamond jewelry, without Plaintiff's consent, is likely to confuse and deceive the public into believing that Defendants and their goods or services are associated or affiliated with Plaintiff, or are sponsored or endorsed by Plaintiff.

164. Defendants' activities described above, including but not limited to, their attempts to inextricably bind their name and persona with Ritani through the use of the company name

and brand "Harout R," where the "R" stands for Ritani, through language contained within Defendants' brochures and flyers including that Defendant Aghjayan was "previously known as Harout Ritani," the use of the name "Ritani" in Defendant Companies H. Ritani LLC and H. Ritani, Corp., Defendant Shawndria Aghjayan's posting of a Flickr page with a picture of Defendant Aghjayan selling jewelry with the question "Where is Harout Ritani now?", as well as specific statements made to potential customers that Defendant Aghjayan is the real "Harout Ritani" done in order to capitalize on the belief that everyone knew Defendant Aghjayan as Harout Ritani, and that no one would recognize the name Harout alone, constitute trademark infringement in violation of the common law of the State of New York.

165.    Defendants had actual notice of Plaintiff's trademark rights, yet have knowingly and intentionally adopted, used, and expanded their use of the RITANI service mark causing confusion, mistake, and deception.

166.    Upon information and belief, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

167.    Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this Court.

168.    Plaintiff Ritani, LLC has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

### COUNT VII

**Common Law Unfair Competition
Against All Defendants**

169.    This claim for relief arises under the common law of the State of New York and arises out of the same occurrences and transactions set forth herein above.

170.    Plaintiff repeats and realleges each and every allegation contained in ¶1 through

¶169 as though fully set forth herein.

171.  Defendants' activities described above, including but not limited to, Defendants' use of the RITANI Trade Name, RITANI Trademarks and the RITANI brand in connection with their sale of goods and services, without the consent of Plaintiff, as well as Defendant Aghjayan and Defendant Shawndria Aghjayan's, theft of Plaintiff's trade secrets and confidential information, including Ritani LLC's CAD files, specifications and product development and customer files, for use in forming Defendant Companies to compete with Plaintiff Ritani LLC, in violation of Defendant Aghjayan's duty of loyalty constitute false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations in commerce that are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' goods, services and/or activities by Plaintiff.

172.  In addition, the corporate names of the active companies Defendants H. Ritani, LLC and H. Ritani, Corp. are confusingly similar to and have a similar commercial impression to the RITANI Trade Name, RITANI Trademarks and the RITANI brand.

173.  Defendant Aghjayan, through Defendants H. Ritani, LLC and H. Ritani, Corp., uses the name "Ritani" to sell products in the same product category and market as Plaintiff Ritani, LLC and to the same customers who are likely to purchase Plaintiff Ritani, LLC's products.

174.  Defendant Aghjayan's use of the corporate names of Defendants H. Ritani, LLC and H. Ritani, Corp. is likely to confuse customers that Defendants' products are related to, sponsored by, associated with or emanate from Plaintiff Ritani, LLC.

175.  Defendant Aghjayan continues to retain the  active status and operate Defendants

H. Ritani, LLC and H. Ritani, Corp. despite the existence of an agreement expressly prohibiting him from using the Ritani name, for the purpose of trading on the goodwill and reputation carefully cultivated by Plaintiff Ritani, LLC for its RITANI Trade Name, RITANI Trademarks and RITANI brand.

176. At all relevant times, Defendants knew, should have known, or had reason to know of Plaintiff Ritani, LLC's rights in the RITANI Trade Name, RITANI Trademarks and the RITANI brand, as well as the intellectual property rights associated with Ritani LLC's trade secrets and confidential and proprietary information.

177. Defendants have nonetheless willfully undertaken the aforementioned actions in bad faith in contravention of Plaintiff Ritani, LLC's rights by, among other things, adopting and using a trade name and trademark that is similar or identical to the RITANI Trade Name, RITANI Trademarks and RITANI brand, and falsely suggesting a connection to Plaintiff, as well as Defendant Aghjayan and Defendant Shawndria Aghjayan's theft of Plaintiff's trade secrets and confidential information, for use in forming Defendant Companies to compete with Plaintiff Ritani LLC, in violation of Defendant Aghjayan's duty of loyalty.

178. Plaintiff Ritani, LLC has not authorized or licensed Defendants to use Plaintiff's RITANI Trade Name, RITANI Trademarks and/or RITANI brand or Plaintiff's trade secrets or proprietary and confidential information.

179. Plaintiff Ritani, LLC has no control over Defendants' use of Plaintiff's RITANI Trade Name, RITANI Trademarks and/or RITANI brand, or Plaintiff's trade secrets or confidential or proprietary information, nor over the quality of goods and services Defendants provide. Such uncontrolled use places Plaintiff's marks, reputation, and goodwill at risk of serious injury.

180. The aforesaid acts of Defendants constitute unfair competition in violation of the common law of the State of New York.

181. Upon information and belief, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

182. Upon information and belief, Defendants intend to continue their willfully anticompetitive acts unless restrained by this Court.

183. Plaintiff Ritani, LLC has and will suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT VIII

### State Trademark Dilution (N.Y. G.B.L. § 360-l)
### Against All Defendants

184. This claim for relief arises under the common law and the Trademark Dilution Laws of the State of New York (General Business Law 360-1) and arises out of the same occurrences and transactions set forth herein above.

185. Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶184 as though fully set forth herein.

186. Plaintiff Ritani, LLC is the exclusive owner of the RITANI Trademarks throughout the United States, including the State of New York, and the Ritani Trademarks are intimately associated with Plaintiff's goods and services serving to indicate source.

187. Through prominent, long and continuous use in commerce, including commerce within the State of New York, Plaintiff Ritani, LLC's trademarks have become and continue to be famous and distinctive.

188. By the acts described herein, including but not limited to, Defendants promotion and use of Plaintiff's RITANI Trademarks in conjunction with Defendants' goods and services

in Defendants' advertisements and brochures, the maintenance and continued registration of Defendants H. Ritani Corp. and H. Ritani LLC and the representations made by Defendant Aghjayan to customers and potential customers that he is "formerly known as Harout Ritani" or the real "Harout Ritani," Defendants have diluted the distinctiveness of the RITANI Trademarks by diminishing the capacity of the RITANI Trademarks to identify and distinguish Plaintiff's goods and services.

189. Defendants began making commercial use of Plaintiff's RITANI Trademarks in conjunction with Defendants' goods and services after Plaintiff's RITANI Trademarks had become famous and distinctive.

190. By the acts described herein, Defendants are likely to cause confusion, mistake or to deceive customers as to their affiliation, connection or association with Plaintiff and have caused a likelihood of harm to Plaintiff's business reputation in violation of New York General Business Law § 360-1.

191. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

192. Upon information and belief, Defendants intend to continue their willfully infringing acts unless restrained by this Court.

193. Plaintiff Ritani, LLC has and will suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT IX

### Common Law Misappropriation of Trade Secrets
### Against All Defendants

194. This claim for relief is for common law misappropriation of trade secrets and is based upon the same acts and conduct alleged herein.

195. Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶194 as if fully set forth herein.

196. The rights and interests of Plaintiff Ritani, LLC in its trade secret jewelry designs, drawings, product development files, customer files and financial information constitute trade secrets as defined by the common law of the State of New York.

197. Plaintiff Ritani, LLC owns all of the rights, title and interest in and to the trade secrets that Defendants used and continue to use in the design and development of their jewelry.

198. Because of Plaintiff Ritani, LLC's reliance on the confidentiality provisions in Defendant Aghjayan's '02 and '04 Employment Agreements, Plaintiff provided Defendant Aghjayan with access to and knowledge of Plaintiff's trade secrets.

199. Such trade secrets were and are primary assets of Plaintiff Ritani, LLC and have actual and potential independent economic value for Plaintiff. Plaintiff has carefully guarded its trade secret information and has taken reasonable steps to maintain its secrecy. There has been no disclosure of the trade secret information by Plaintiff.

200. Defendant Aghjayan had knowledge that Plaintiff regarded the trade secret information as trade secrets and his legal obligation and duty, by virtue of the '02 and '04 Employment Agreements, to preserve the confidentiality of Plaintiff's trade secrets and to limit their use.

201. Defendant Aghjayan knowingly, willfully and maliciously violated his Employment Agreements and breached Plaintiff's confidence, with the assistance of Defendant Shawndria Aghjayan, by misappropriating and using Plaintiff's trade secrets in order to develop, manufacture, produce and market competing products and services, through Defendant Companies, including without limitation, disclosing Ritani LLC's trade secrets and confidential

design files to his partner, Mr. Khatchadorian, without Plaintiff's consent, in order to have him create ring designs for Plaintiff, which were later misappropriated for sale by Defendant Companies, creating and sending confidential and trade secret design drawings, specifically created for Ritani LLC, to third parties while employed by Ritani LLC; and improperly taking Ritani LLC's confidential and trade secret design files, and creating either identical or slightly "tweaked" rings for sale to United States customers through Defendants Amazing Settings and Harout R, as specifically enumerated above.

202. By the acts described herein, Defendant Shawndria Aghjayan aided and abetted Defendant Aghjayan in his misappropriation of Ritani LLC's trade secrets and confidential information, by acting as a subterfuge to send to Mr. Khatchadorian Ritani's confidential and trade secret CAD CAM drawings, and other confidential design drawings, created by Defendant Aghjayan while at Ritani, for sale to the United States through Defendant Companies, Amazing Settings and Harout R.

203. In the alternative, on information and belief, through Defendant Aghjayan's ownership of, and his worked performed for, Defendant Companies, Defendant Aghjayan will inevitably use and/or disclosure some or all of Plaintiff's trade secrets and/or confidential information in his possession.

204. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

205. Upon information and belief, Defendants intend to continue to misappropriate Plaintiff's trade secrets unless restrained by this Court.

206. Plaintiff Ritani, LLC has and will suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT X

### Tortious Interference With Business Relationships Under New York Law
### Against Defendant Aghjayan and Defendant Companies

207.   This claim for relief is for tortious interference with business relationships under the Laws of the State of New York and is based upon the same acts and conduct alleged herein.

208.   Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶207 as if fully set forth herein.

209.   By the acts described herein, Defendants have interfered with Plaintiff's existing and prospective business relationships with its customers and potential customers, including but not limited to, Helzberg, Blue Nile, Robbins Bros., Henne Jewelers and Ackerman Jewelers.

210.   Defendants, with full knowledge of Plaintiff Ritani, LLC's business relationships, intentionally interfered with those relationships by inter alia making works which infringe the Ritani Designs, selling designs that they knew or had reason to know were associated by the trade and consuming public as Ritani Designs, using Plaintiff's trade secrets and/or confidential design information to develop Defendants' jewelry designs, using the RITANI Trade Name and/or RITANI brand in promoting its jewelry business and designs, engaging in business discussions with customers or potential customers while Defendant Aghjayan was employed by Ritani as an officer and designer and during Defendant Aghjayan's non-compete period and by directly targeting and soliciting customers through direct communications and the mass distribution of Defendants' flyers and Harout R catalogs to Plaintiff's customer base, as specified above.

211.   The unlawful and improper acts of Defendants, as described above, also prevented third parties from entering into extended relationships with Plaintiff.

212.   For example, Defendant Aghjayan was aware of the fact that Ritani LLC had been engaged in business negotiations with Helzberg, and had already had active business dealings with Blue Nile, prior to Defendant Aghjayan's contact with them on behalf of Amazing Settings and Harout R.

213.   By the acts described herein, Defendant Aghjayan disclosed to Mr. Khatchadorian his knowledge of Ritani LLC's active business dealings with Blue Nile, including the details surrounding the relationship between Ritani LLC, Julius Klein Diamonds and Blue Nile, and used this information to his business advantage in breach of his non-disclosure agreement and in interference with Plaintiff's business relationship with Blue Nile.

214.   By the acts described herein, Defendant Aghjayan contacted Helzberg to seek their business, despite the fact that he was aware that Ritani LLC was trying to sign Helzberg on as a customer for the past six months.

215.   Defendant Aghjayan actively interfered with Plaintiff's business relationships with Helzberg and Blue Nile by using confidential information that he learned about Ritani LLC's prior business dealings with them, in his negotiations with Helzberg and Blue Nile, for the benefit of Amazing Settings, and subsequently Harout R.

216.   Defendant Aghjayan acted with a wrongful purpose by actively soliciting Helzberg and Blue Nile's business away from Ritani LLC during his non-compete period. Defendant Aghjayan's conduct was motivated solely by malice and/or to inflict injury on Plaintiff by unlawful means.

217.   As a direct and proximate result of Defendants unlawful and improper acts and conduct, Defendants have and continue to injure Plaintiff Ritani, LLC by denying business to and diverting business from Plaintiff, which Plaintiff would have otherwise had and from which

it would have derived a profit, including without limitation, the breakdown of negotiations between Ritani LLC and Helzberg, which resulted in Helzberg's placement of $2.8 million worth of orders with Defendant Companies, as well Ritani LLC's loss of over $1 million in sales from Blue Nile to Defendant Companies.

218.   But for Defendant Aghjayan's actions beginning in 2008 and continuing into 2010, it is likely that Ritani LLC would have obtained the financial benefit of Defendants' initial contract with Helzberg, plus Defendants' ongoing business from Helzberg and Blue Nile.

219.   By their acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

220.   Upon information and belief, Defendants intend to continue to interfere with Plaintiff's business relationships unless restrained by this Court.

221.   Plaintiff Ritani, LLC has and will suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT XI

**Breach Of Implied Covenant Not To Solicit And
Reduce Business Goodwill Under New York State Law
Against Defendant Aghjayan and Defendant H. Ritani, Corp.**

222.   This claim for relief is for breach of the implied covenant not to solicit business and reduce business goodwill under the laws of the State of New York and is based upon the same acts and conduct alleged herein.

223.   Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶222 as if fully set forth herein.

224.   Defendants Aghjayan and H. Ritani, Corp., as sellers of their ownership and business to Plaintiff Ritani, LLC, have a permanent legal duty to refrain from engaging in any

acts that impair the "goodwill" that Defendants transferred to Plaintiff.

225. This duty requires Defendants to refrain from soliciting former customers and attempting to regain their business after having transferred the goodwill.

226. By the acts described herein, Defendants, through Defendant Aghjayan, have solicited former customers, including without limitation, Blue Nile, QVC and Robbins Bros., and breached Defendants Aghjayan and H. Ritani Corp.'s implied covenant not to solicit former customers and their duty not to reduce Plaintiff Ritani, LLC's business goodwill.

227. As a result of Defendant Aghjayan's active solicitation of Ritani LLC's former customers, Ritani LLC suffered significant financial harm, including at least $1.0 million in lost sales from Blue Nile and at least over $400,000 in lost sales from Robbins Bros.

228. Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

229. Upon information and belief, Defendants intend to continue their conduct unless restrained by this Court.

230. Plaintiff Ritani, LLC has and will suffer irreparable harm, for which there is no adequate remedy at law.

**COUNT XII**

**Breach of Contract
Against Defendant Aghjayan, Defendant Shawndria Aghjayan
and Defendant H. Ritani Corp.**

231. This claim is for relief from breach of contract under the Laws of the State of New York and is based upon the acts set forth herein.

232. Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶231 as if fully set forth herein.

233. By the acts described herein, Defendant Aghjayan entered into valid and enforceable contracts with Plaintiff Ritani, LLC, by and through, their execution of the 2002 Employment Agreement, 2004 Employment Agreement and the 2010 Letter Agreement.

234. By the acts described herein, Defendant Aghjayan breached the provisions in his '04 Employment Agreement requiring him to "render exclusive services" to Ritani LLC, "to further the business and affairs of Employer," and to "actively and aggressively pursue overseas manufacturing opportunities," by running a China company and using his China facility to manufacture jewelry products for sale into the United States. **Exhibit 9** at §§ 1 (b), (c) and (d).

235. By the acts described herein, Defendant Aghjayan also breached the confidentiality and non-compete clause of the '04 Employment Agreement, which prevented Harout from "tak[ing] a position where such Confidential Information may be used adversely" to Ritani's best interests and from "seek[ing] to divert the Company's business or opportunity to a third party." (**Exhibit 9** at ¶6(b)(i), (iii)).

236. By the acts described herein, Defendant Aghjayan breached his '02 and '04 Employment Agreements and the 2010 Letter Agreement with Plaintiff Ritani, LLC, by actively interfering with Plaintiff's business relationships, preparing to, offering for and/or selling Defendants' jewelry products to customers in competition with Plaintiff, and by failing to protect the confidentiality of Plaintiff's trade secrets and/or confidential information through, among other things, the use and exploitation of such information for the benefit of Defendants and by using such information to form and operate Defendant Companies to unfairly compete with Plaintiff Ritani, LLC, in violation of the non-compete provision of these Agreements.

237. By the acts described herein, Defendants Aghjayan and H. Ritani, Corp. entered into a valid and enforceable contract with Plaintiff Ritani, LLC, by and through, their execution

of the 2007 Membership Interest Purchase Agreement.

238.   By the acts described herein, Defendants Aghjayan and H. Ritani, Corp. breached the 2007 Membership Interest Purchase Agreement by using the name "Ritani" in connection with the business and operations of Defendant Companies, which directly compete with the Plaintiff in the jewelry industry.

239.   Plaintiff Ritani, LLC performed its duties and obligations as set forth in the Agreements between the parties, including the 2002 Employment Agreement, 2004 Employment Agreement, 2007 Membership Interest Purchase Agreement and the 2010 Letter Agreement.

240.   By the acts described herein, Defendant Shawndria Aghjayan aided and abetted Defendant Aghjayan in breaching his contractual obligations, including the non-compete and confidentiality provisions of the '04 Employment Agreement, by acting as Defendant Aghjayan's alter ego in setting up his China company to manufacture jewelry designs for sale in the United States on Defendant Aghjayan's behalf and by using her email account to send Mr. Khatchadorian Ritani's confidential and trade secret CAD CAM drawings, and other confidential design drawings, created by Defendant Aghjayan while at Ritani.

241.   Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

242.   Upon information and belief, Defendants intend to continue their conduct unless restrained by this Court.

243.   As a direct and proximate result of Defendants' breaches, Plaintiff Ritani, LLC has and will suffer irreparable harm, for which there is no adequate remedy at law.

## COUNT XIII

### Common Law Breach of the Duty of Loyalty and Breach of Fiduciary Duty
### Against Defendant Aghjayan and Defendant Shawndria Aghjayan

244.    This claim is for relief from breach of the fiduciary duty and duty of loyalty under the common law of the State of New York and is based upon the acts set forth herein.

245.    Plaintiff repeats and realleges each and every allegation contained in ¶1 through ¶244 as if fully set forth herein.

246.    As the President, Chief Executive Officer, Chief Operating Officer and chief designer for Plaintiff Ritani, LLC, Defendant Aghjayan owed a duty of utmost good faith and complete and undivided loyalty to the Plaintiff, its goodwill and reputation.

247.    By the acts described herein, Defendant Aghjayan breached these duties, by among other things, taking advantage of his relationship of trust and confidence, and his access to Plaintiff's trade secrets and/or confidential information and protected intellectual property, to establish and operate Defendant Companies, solicit Plaintiff's customers and to market, promote and sell jewelry designs to directly compete with Plaintiff Ritani, LLC in the jewelry industry.

248.    By the acts described herein, during the 2008-2011 time period Defendant Aghjayan, while President of Ritani LLC, engaged in the following activities in breach of his fiduciary duty and duty of loyalty, including without limitation, partnering with a third party, Mr. Khatchadorian, to manufacture custom bridal engagement rings and wedding bands in China for the sole purpose of having a competing business to sell such jewelry in the United States; diverting Ritani's business opportunities to a third party by providing Mr. Khatchadorian with jewelry designs prepared by Defendant Aghjayan while employed by Plaintiff for the use and benefit of their Defendant Companies; pursuing overseas manufacturing opportunities in China to further the business affairs of another; disclosing Ritani LLC's confidential and/or trade

secret CAD CAM drawings and design files to a third party; and using Ritani LLC's confidential and/or trade secret designs to form a business and create jewelry styles to compete with Ritani LLC in the United States market through Amazing Settings and Harout R.

249. By the acts described herein, Defendant Shawndria Aghjayan aided and abetted Defendant Aghjayan in breaching his fiduciary duty and duty of loyalty to Plaintiff Ritani LLC, including without limitation, acting as Defendant Aghjayan's alter ego by setting up his China company to manufacture jewelry designs on Defendant Aghjayan's behalf for sale to the United States and by sending Mr. Khatchadorian Ritani's confidential and trade secret CAD CAM drawings, and other confidential design drawings, created by Defendant Aghjayan while at Ritani.

250. Upon information and belief, by their acts, Defendants have made and will make substantial profits and gains to which they are not in law or equity entitled.

251. Upon information and belief, unless Defendants are restrained from their wrongful conduct, Defendants will continue to cause injury to the business and business reputation of Plaintiff Ritani, LLC.

252. As a direct and proximate result of Defendants breaches, as herein alleged, Plaintiff Ritani, LLC has been irreparably harmed and incurred significant damages in terms of lost profits and business opportunities, and other damages for which Defendants are liable in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ritani, LLC demands judgment jointly and severally against Defendants Harout Aghjayan; Shawndria Aghjayan; Harout R, LLC; H. Ritani, LLC; H. Ritani, Corp. and Amazing Settings as follows:

1.     Finding that (i) Defendants have violated the Copyright Laws of the United States of America (17 U.S.C. §§ 101 and 501, et seq.); (ii) Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c)); (iii) Defendants have engaged in deceptive acts and practices and false advertising under New York General Business Law § 350; (iv) Defendants have diluted the RITANI Trademarks in violation of New York General Business Law § 360-1; (v) Defendants have engaged in trademark infringement, unfair competition, misappropriation of trade secrets, tortious interference with business advantage, breach of the implied covenant not to solicit and reduce business goodwill, breach of contract, and breach of fiduciary duty and the duty of loyalty; and (vi) Defendants have been unjustly enriched in violation of New York common law, which requires the formation of a constructive trust.

2.     Granting an injunction and permanently restraining and enjoining Defendants, their officers, agents, employees and attorneys, and all those persons or entities in active concert or participation with them, from:

(a)     manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale or selling any products which bear the RITANI Trademarks, or any other mark substantially or confusingly similar thereto, and engaging in any other activity constituting an infringement of any of Plaintiff's rights in the RITANI Trademarks, or any other trademark owned by Plaintiff Ritani, LLC;

(b)     manufacturing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale or selling any products which infringe the Ritani Designs, or are

substantially or confusingly similar thereto, and engaging in any other activity constituting an infringement of any of the Ritani Designs owned by Plaintiff Ritani, LLC;

(c)     manufacturing, importing, advertising, marketing, promoting, supplying, distributing, using, offering for sale or selling any products which embody or contain Plaintiff's trade secrets and/or other confidential or proprietary information of Plaintiff Ritani, LLC or any designs or products that were designed, created and/or manufactured by any of the Defendants while Defendant Aghjayan was employed by Plaintiff Ritani LLC, or during his one year non-compete period, or any products that embody or contain any such designs or products;

(d)     using in any manner the name "Ritani" in connection with the manufacture, sale, promotion and distribution of Defendants' jewelry products and/or the operation of the business of Defendants;

(e)     engaging in any other activity constituting unfair competition with Plaintiff, further interference with Plaintiff's business relations or any other acts and practices that deceive the public and/or the trade;

(f)     breaching Defendants' implied covenant not to solicit customers from and reduce the business goodwill of Plaintiff Ritani, LLC and from breaching the fiduciary duty and duty of loyalty; and

(g)     engaging in any activity that will cause the distinctiveness of the RITANI Trademarks to be diluted.

3.     Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product at issue in this case that has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for

sale or sold by Defendants, has been authorized by Plaintiff, or is related to or associated in any way with Plaintiff or its products.

4.    Directing that Defendants account to and pay over to Plaintiff Ritani, LLC all profits realized by their wrongful acts in accordance with the Copyright Laws of the United States of America (17 U.S.C. § 504).

5.    At its election, awarding Plaintiff Ritani, LLC statutory damages, including damages for willful conduct, in accordance with the Copyright Laws of the United States of America (17 U.S.C. § 504).

6.    Awarding Plaintiff Ritani, LLC its actual damages in accordance with the Copyright Laws of the United States of America (17 U.S.C. § 504).

7.    Awarding Plaintiff Ritani, LLC its costs and attorney's fees to the full extent provided for by the Copyright Laws of the United States of America (17 U.S.C. § 505).

8.    An injunction preventing Defendants from engaging in any activity constituting an infringement of any of Plaintiff's rights in the RITANI Trademarks, or any other trademark owned by Plaintiff Ritani, LLC, and to prevent any acts of unfair competition or false or misleading designations of origin under 15 U.S.C. §1125 in accordance with Section 35 of the Lanham Act (15 U.S.C. §1116).

9.    Awarding Plaintiff Ritani, LLC its costs and attorney's fees and investigatory fees and expenses to the full extent provided for by Section 35 of the Lanham Act (15 U.S.C. § 1117).

10.    Awarding Plaintiff Ritani, LLC injunctive relief, actual damages, exemplary damages, punitive damages, lost profits and/or attorneys' fees for Defendants' misappropriation of Plaintiff Ritani, LLC's trade secrets.

11.     Awarding Plaintiff Ritani, LLC a reasonable royalty for Defendants' use of Plaintiff's trade secrets.

12.     Awarding Plaintiff Ritani, LLC damages in the form of restitution for Defendants' unjust enrichment resulting from their conduct.

13.     Granting Plaintiff Ritani, LLC's request that a constructive trust in favor of Plaintiff be imposed upon the unjust benefits received, and rights acquired, by Defendants from any customers or potential customers of Plaintiff as a result of Defendants' breach of contract, breach of fiduciary duty and/or tortious interference with Plaintiff's business relationships, upon any consideration that Defendants have received in the sale of jewelry based on the copyrighted designs, including derivative works thereto, and upon any rights arising out of the derivative works based on the copyrighted designs.

14.     Directing that Defendants account to Plaintiff for all gains, profits, and advantages derived from Defendants' wrongful acts, including but not limited to, Defendants tortious interference with business advantage; breach of the implied covenant not to solicit and reduce business goodwill; breach of contract; and breach of fiduciary duty and the duty of loyalty; and that Plaintiff recover from Defendants damages in a sum not presently known but to be determined at trial.

15.     Requiring Defendants to deliver to Plaintiff for destruction or other disposition all remaining inventory of all products that infringe the Ritani Designs and/or Ritani Trademarks, or that use the RITANI Trade Name and/or RITANI brand, including all advertising, promotional and marketing materials, as well as all means of making the same, and to issue corrective advertising and public notices as to the origin of the Ritani Designs and RITANI Trademarks and to ameliorate the false and misleading information that Defendants have promulgated.

16.     Requiring Defendants to remove from their website at domain name

*www.haroutr.com* all advertising, promotional, and marketing materials and information bearing

or incorporating the Ritani Trade Name, Ritani Designs, Ritani Trademarks and/or the Ritani

brand.

17.     Directing a change in the name of Defendants H. Ritani, LLC and H. Ritani,

Corp. to another and dissimilar name not employing the word "Ritani."

18.     Awarding Plaintiff Ritani, LLC pre-judgment interest on any monetary award

made part of the judgment against Defendants.

19.     Awarding Plaintiff Ritani, LLC such additional and further relief as the Court

deems just and proper.


Dated:  New York, New York          EDWARDS WILDMAN PALMER LLP
        May 30, 2011

                         By:    _____
                                Rory J. Radding (RR 4042)
                                David I. Greenbaum (DG 6232)
                                Jennifer L. Dereka (JD 1577)
                                EDWARDS WILDMAN PALMER LLP
                                750 Lexington Avenue
                                New York, New York 10022
                                212.308.4411

                                *Attorneys for Plaintiff Ritani, LLC*