UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

RITANI, LLC,

                        Plaintiff,                11 CIV. 8928

   -against-                            OPINION

HAROUT AGHJAYAN; HAROUT R, LLC;
H. RITANI, INC.; H. RITANI, LLC;
H. RITANI, CORP.; and AMAZING
SETTINGS, LLP,

                       Defendants.

------------------------------------------X

A P P E A R A N C E S :

                  Attorneys for Plaintiff

                  EDWARDS WILDMAN PALMER LLP
                  750 Lexington Avenue
                  New York, NY  10022
                  By:  Rory J. Radding, Esq.
                      David I. Greenbaum, Esq.
                      Jennifer L. Dereka, Esq.

                  Attorneys for Defendants

                  MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                  990 Stewart Avenue, Suite 300
                  P.O. Box 9194
                  Garden City, NY  11530-9194
                  By:  Erica B. Garay, Esq.
                      Lynn M. Brown, Esq.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/20/12

**Sweet, D. J.**


Defendants Harout Aghjayan ("Aghjayan" or the
"Defendant"), Harout R, LLC ("Harout R"), H. Ritani, Inc. ("HR
Inc."), H. Ritani, LLC ("HR LLC"), H. Ritani, Corp. ("HR Corp.")
and Amazing Settings, LLP ("Amazing Settings") (collectively,
the "Defendants") have moved pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure to dismiss the
complaint (the "Initial Complaint" or "IC") of plaintiff Ritani,
LLC ("Ritani" or the "Plaintiff") alleging numerous acts of
misconduct by the Defendants, including, but not limited to,
copyright and trademark infringement, misappropriation of trade
secrets, breach of fiduciary duty, and breach of contract and
unfair competition (the "Motion to Dismiss").


While the Motion to Dismiss was sub judice, the
Plaintiff moved pursuant to Rule 15(a)(2) of the Federal Rules
of Civil Procedure to amend the complaint ("Motion to Amend")
and for leave to file their proposed amended complaint (the
"Amended Complaint" or "AC").  The Defendants did not oppose the
filing of the Amended Complaint, but referred the Court to the
Defendant's Motion to Dismiss the Initial Complaint, the
transcripts of the hearing on the Plaintiff's motion for a

1

preliminary injunction, and the Court's June 11, 2012 ruling
(the "June 11, 2012 Opinion").

        Based on the conclusions set forth below, the
Defendants' Motion to Dismiss is granted in part and denied in
part and the Plaintiff's motion to amend is granted.

## I. Prior Proceedings

        The Plaintiff filed its Initial Complaint on December
7, 2011 against the Defendant and his companies (the "Defendants
Companies"), alleging (1) federal copyright infringement
pursuant to 17 U.S.C. §§ 101 and 501 et seq.; (2) federal
trademark infringement under the Lanham Act, 15 U.S.C. §
1114(1)(a); (3) unfair competition, false designation of origin
and false and misleading representations in commerce under the
Lanham Act, 15 U.S.C. § 1125(a); (4) false advertising under the
Lanham Act, 15 U.S.C. § 1125(a); (5) state false advertising
under N.Y.G.B.L. § 350; (6) common law trademark infringement
under state law; (7) state unfair competition; (8) state
trademark dilution under N.Y.G.B.L. § 360-1; (9) deceptive
practices under N.Y.G.B.L § 349; (10) common law
misappropriation of trade secrets; (11) tortious interference

2

with business relationships under state law; (12) breach of implied covenant not to solicit business and reduce goodwill under state law; (13) breach of contract and common law non-competition; (14) unjust enrichment; (15) common law breach of the duty of loyalty and breach of fiduciary duty; (16) breach of the implied duty of good faith and fair dealing; and (17) imposition of a constructive trust.

Invoking Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, the Defendants moved to dismiss the entirety of the Initial Complaint on February 6, 2012.

The Motion to Dismiss was heard and marked fully submitted on March 15, 2012.

On May 30, 2012, the Plaintiff filed a motion seeking preliminary injunctive relief due to the alleged irreparable harm caused by the culmination of the Defendants' conduct. On June 11, 2012, the Court issued an opinion from the bench, denying the Plaintiff's motion for a preliminary injunction for failure to establish a prima facie case.

On May 30, 2012, the Plaintiff concurrently made a motion to amend the Initial Complaint and for leave to file the Amended Complaint.  The proposed Amended Complaint seeks to add certain factual details, to add a new Defendant, Aghjayan's wife, Shawndria Aghjayan ("Mrs. Aghjayan"), to remove HRI as a defendant, and to remove certain state causes of action.  The proposed Amended Complaint alleges the following causes of action against all Defendants, unless otherwise specified:  (1) federal copyright infringement pursuant to 17 U.S.C. §§ 101 and 501 et seq., against Aghjayan, Amazing Settings and Harout R (Count I); (2) federal trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) (Count II); (3) unfair competition, false designation of origin and false and misleading representations in commerce under the Lanham Act, 15 U.S.C. § 1125(a) (Count III); (4) false advertising under the Lanham Act, 15 U.S.C. § 1125(a) (Count IV); (5) state false advertising under N.Y.G.B.L. § 350 (Count V); (6) common law trademark infringement under state law (Count VI); (7) state unfair competition (Count VII); (8) state trademark dilution under N.Y.G.B.L. § 360-1 (Count VIII); (9) common law misappropriation of trade secrets (Count IX); (10) tortious interference with business relationships under state law against Aghjayan and his companies (Count X); (11) breach of implied covenant not to

4

solicit business and reduce goodwill under state law against Aghjayan and HR Corp. (Count XI); (12) breach of contract and common law non-competition against Aghjayan, Mrs. Aghjayan and HR Corp. (Count XII); and (13) common law breach of the duty of loyalty and breach of fiduciary duty against Aghjayan and Mrs. Aghjayan (Count XIII).

The Motion to Amend was heard and marked fully submitted on June 27, 2012.

## II.  **Facts**

The facts are taken from the Amended Complaint[1] and the affidavits submitted by the parties and are not in dispute except as noted below.

Ritani is corporation of the State of New York and a successful designer, manufacturer and distributor of high-end designer jewelry.

---

[1] As the Plaintiff's Motion to Amend is still sub judice and the Defendants have not opposed the filing of the Amended Complaint, the Amended Complaint is the currently operative complaint in the instant matter.  Thus, the facts in the Amended Complaint are accepted as true at this stage of the litigation.  In addition, because the Defendants referred the Court to their Motion to Dismiss the Initial Complaint in its response to the Plaintiff's Motion to Amend, the Court applies those arguments in this opinion.

Aghjayan and Mrs. Aghjayan are individuals residing in
the State of New Jersey.  The Amended Complaint alleges that the
following companies are wholly owned by Aghjayan:  (1) Harout R
is a corporation of the State of New Jersey with offices in that
state and is a designer, manufacturer and distributor of
jewelry; (2) HR LLC is a corporation of the State of Delaware
and is now listed as inactive by the Secretary of the State of
Delaware.  HR LLC is presently listed by Hoovers as incorporated
in the State of New York and has a principal place of business
in the State of New Jersey; (3) HR Corp. is a corporation of the
State of New York which has offices in New Jersey; and (4)
Amazing Settings is a corporation of the State of New Jersey
with offices in that state and is a designer, manufacturer and
distributor of jewelry.  The Amended Complaint alleges that
Aghjayan had an "intimate personal involvement and domination
over each of the Defendant Companies, and played an active and
conscious role, on behalf of these Defendants."

In 1996, Aghjayan founded and wholly owned HR Corp.,
which manufactured and distributed high-end jewelry under the
trademark Ritani.  By March 2002, Aghjayan, needing an infusion
of cash and managerial support, entered into negotiations with

6

Julius Klein Diamonds, LLC ("JK") and For Krunch, LLC ("Krunch") for the sale of all of HR Corp.'s assets.

On March 26, 2002, Aghjayan, HR Corp., JK and Krunch executed a series of five agreements.  By these agreements, Aghjayan and HR Corp. agreed to sell the business consisting of all of the rights, titles and interests in and the assets of HR Corp., including all of its copyrights, trademark rights, and all other intellectual property rights, as well as good will, to the newly formed entity, Ritani.  Ritani was to be owned jointly by Aghjayan, HR Corp, JK and Krunch.

The first agreement entered into by the parties was a "Membership Interest Purchase Agreement" dated March 26, 2002. Under this contract, Aghjayan sold his 44% membership interest in Ritani, as well as all rights, titles and interests in and to the intellectual property of HR Corp., the trademark Ritani and other trademarks, copyrighted Ritani jewelry designs, the "[d]esign, concept and content of the Ritani website" and "all of the good will associated with the business of [HR Corp]" to Ritani for the aggregate purchase price of $2,628,000.

7

The second agreement was a "Contribution Agreement" whereby HR Corp. and Aghjayan confirmed their sale of the "Contributed Assets" to Ritani in exchange for HR Corp.'s receipt of a membership interest in the newly formed company. As with the Membership Agreement, the Contribution Agreement similarly recited the Defendants' assignment of intellectual property to Ritani.

The third agreement was an "Assignment and Assumption Agreement" confirming HR Corp.'s sale, transfer and assignment of all of its right, title and interest in and to the properties listed in the Contribution Agreement to Ritani for Ritani's "own use and benefit forever from the date hereof."

JK, Krunch, HR Corp., and Aghjayan also entered into an Operating Agreement (the "2002 Operating Agreement") which recited the profit/ loss percentages for each of the members of the newly formed company, as follows: JK 10%; Krunch 5%; Aghjayan 44%; and HR Corp. 41%.  In addition, JK and HR Corp. each possessed 50% voting rights.

The terms of the 2002 Operating Agreement required Aghjayan to concurrently execute an employment agreement (the

"2002 Employment Agreement") appointing him Chief Executive
Officer ("CEO") and President of Ritani.  Aghjayan entered into
the 2002 Employment Agreement, which states that he had a duty
to render "exclusive services as Chief Executive Officer" for
Ritani and to perform such services "to further the business and
affairs of Employer."  The 2002 Employment Agreement also
precluded Aghjayan from disclosing any confidential information,
including but not limited to, trade secret information, even if
it was "conceived, originated, discovered or developed" by
Aghjayan.  It also stated that Aghjayan could not "use, license,
sell, convey or otherwise exploit any Confidential Information,
or any portion thereof, during the Employment Term hereof and at
all times thereafter for any purpose other than solely for the
benefit of Employer."  As part of the 2002 Employment Agreement,
Aghjayan was also prevented from competing with Ritani during
his employment term and for one year thereafter.

On December 16, 2002, the 2002 Operating Agreement was
amended to reflect a change in voting power.  In addition, a
Second Amendment was entered into on May 30, 2003 to show a
change in the profit/ loss percentages, as follows: HR Corp.
41%; JK 40%; and Krunch 19%.

On November 1, 2004, JK, Krunch and HR Corp., by Aghjayan, entered into an "Amended and Restated Operating Agreement (the "2004 Operating Agreement"), which reflected, among other things, a change in the profit/ loss percentages of JK and HR Corp., changes in the management of Ritani, and changes to the business agreement of the members since the 2002 Operating Agreement.

That day, Aghjayan also entered into a new employment agreement ("2004 Employment Agreement") and a consulting agreement (the "Consulting Agreement") with Ritani. By the terms of the 2004 Employment Agreement, Aghjayan agreed to continue to render "exclusive business services" to Ritani as its CEO and President, to take on additional responsibilities as Ritani's Chief Operating Officer ("COO") and to supervise and assist Ritani in product design and marketing until October 31, 2009. Aghjayan was also obligated to "actively and aggressively pursue overseas manufacturing opportunities" on behalf of Ritani, "in order to reduce its costs and increase its capacity." In addition, the 2004 Employment Agreement included a non-compete clause which prevented Aghjayan from "tak[ing] a position where such Confidential Information may be used

adversely" to Ritani's best interests and from "seek[ing] to divert the Company's business or opportunity to a third party."

With respect to the Consulting Agreement, HR Corp., through Aghjayan, agreed to act as a consultant for Ritani, and to provide such services including designs for Ritani's jewelry line.  The Consulting Agreement was to remain in effect through August 31, 2009 with an automatic one year renewal provision that would continue until Aghjayan was no longer with Ritani or until the agreement was terminated with written notice.

On August 29, 2007, HR Corp., by its owner Aghjayan, assigned via an assignment agreement (the "Assignment Agreement"), its entire remaining membership interest in Ritani to JK, including all of its right, title, and interest in the capital and profits of Ritani.  The same day, the 2002 Membership Interest Purchase Agreement was also amended to confirm JK's purchase of all of HR Corp.'s membership interest in Ritani.  The 2007 amendment to the agreement included a section entitled "Rights to the 'Ritani' Name," which stated that Ritani "shall maintain all right, title and interest in the name 'Ritani,' or any other similar name, together with the

11

goodwill of the business connected with and symbolized by such
name."

In addition, on October 15, 2007, Aghjayan signed a
letter addendum to his 2004 Employment Agreement agreeing to
keep confidential Ritani's business relationship with a company
named "Blue Nile."

Upon formation of the partnership, Ritani transitioned
from HR Corp.'s prior use of the H. Ritani brand to the Ritani
brand alone which is alleged to be synonymous with luxury and
high-quality craftsmanship and to which consumers and the trade
identify as the source of all jewelry bearing the Ritani name
and marks.  Ritani has a number of Registered Copyrights,
including but not limited to, Registration Nos. VA 1-774-361, VA
1-774,363, VA 1-774-364, VA 1-774-362 and VAu 1-074-079 (the
representative copyrighted designs attached to the Initial and
Amended Complaints), as well as a number of trademarks,
including the trademark Ritani and a distinctive three-leaf
design (the "Three-Leaf Trademark) (collectively the "Ritani
Trademarks").

12

According to Ritani, the Ritani Trademarks are intimately associated with its goods and services and its exclusive designs are essential to Ritani.  Thus, the company has instituted procedures to maintain the secrecy of all of its confidential, proprietary and trade secret designs, drawings and product development files.  For example, Ritani uses computer-aided design ("CAD") and computer-aided manufacturing ("CAM") files containing confidential, proprietary, and trade secret information to design, create, modify and produce wax models of new jewelry designs.  These CAD/CAM drawings contain numerous confidential designs, including, but not limited to, "Perfect Match," a design element used by Ritani to create and enable the engagement ring and wedding band to fit or flush up against each other without a gap.  Ritani compels all employees and contractors to sign confidentiality agreements, installs log off measures on employees' computers, keeps its hard copies under lock and key and stores all electronic design files on a secure server designated for design only, which is accessible with its own key only.

On November 1, 2009, after several months of unsuccessful contract negotiations, Aghjayan resigned from his employment at Ritani.  Pursuant to the 2004 Employment

13

Agreement, Aghjayan was obligated not to compete with Ritani in the jewelry industry until October 31, 2010.

According to the Amended Complaint, during the last two months of Aghjayan's employment with Ritani, he disclosed trade secrets and sent confidential design files to his new business partner Alex Khatchadorian ("Khatchadorian") in order to create ring designs and produce them as wax models for Ritani, without the knowledge or consent of Ritani. The Amended Complaint also alleges that Aghjayan used Mrs. Aghjayan as a subterfuge to send Ritani's confidential and trade secret CAD/CAM drawings to Khatchadorian. More specifically, the Amended Complaint alleges that, until his resignation, Aghjayan improperly transferred Ritani files outside the company by making copies to a flash drive or by emailing the files to his home computer, to Mrs. Aghjayan's computer or to other third parties. These removed files included confidential and trade secret design files belonging to Ritani, which Plaintiff contends Aghjayan "tweaked" to save time and money, rather than undertake the slow process of building jewelry designs from scratch.

14

In addition, according to Ritani, in late 2008, Aghjayan purchased a 3-Dimensional ("3D") printing machine which Aghjayan claimed to use to go into the business of making doorknobs but was actually used to make jewelry.  In February 2009, Aghjayan and Khatchadorian purchased a factory in China (the "Chinese Factory") to produce jewelry products.  Ritani contends that the scheme involved Aghjayan first emailing Khatchadorian designs in the form of CAD/CAM drawings that Aghjayan created while he was employed at Ritani.  Next, the Chinese Factory designers would change the size and shape of the center stones and email the finished drawings back to Aghjayan in the U.S.  Aghjayan would then use the 3D printing machine to print a wax model of the jewelry pieces and email Khatchadorian with any additional design changes.  Finally, once all the required changes were made, the file was returned to Aghjayan in the U.S. so that he could re-print the wax model for final design.

More specifically, the Amended Complaint states that Aghjayan emailed Khatchadorian CAD/CAM files for 84 designs and that swapping the design features allowed Aghjayan to create more than 200 styles.  Between September 4, 2009 and September 26, 2009, Aghjayan sent Khatchadorian five separate emails with

the subject names "R," "R Styles," "R Rings," "For R No 6 Rit"
and "RIT 12," and emails entitled "RIT" and "95D-H For Ritani"
on October 20 and 22, 2009.  These emails contained .jcd
drawings of Ritani LLC designs, including designs incorporating
the Ritani Three-Leaf Trademark.[2]

---

[2] As examples, paragraph 73 of the Amended Complaint states:

"On September 24, 2009, Defendant Aghjayan sent Mr. Khatchadorian an email
with subject matter – "R Rings" – with 7 CAD CAM files that copy Ritani's
logo rings. (Exhibit 41).  After Alex completed his work on these designs, he
sent them back to Defendant Aghjayan, who printed them out with his 3-D wax
printing machine. Defendant Aghjayan then provided Ritani with the wax models
for all 7 jewelry designs attached to the September 24, 2009 email, including
without limitation, Ritani Style EM-2.  The Wax Model Design of EM-2 that
Harout provided to Ritani, LLC is identical to the EM-2 Ritani Drawing sent
to China, which is nearly identical to Harout Style Nos. 1r452 and 1r496.
(Exhibit 46).  As another example, the CAD CAM file attached to Defendant
Aghjayan's September 13, 2009 email entitled "R Styles," which includes an
attachment entitled "4" is identical to a wax model that Defendant Aghjayan
provided to Ritani, LLC, which matches Style 1r294 in Defendant Aghjayan's
current jewelry line, while a slight "tweak" was made to Harout Style No.
1r188. (Exhibit 47). In addition, Defendant Aghjayan's current style numbers
1r478 and 1r333 are derived from Ritani's "12 Rit Solitaire" Drawing (and
identical wax model) that Defendant Aghjayan emailed to Mr. Khatchadorian on
September 26, 2009 with the subject "RIT 12." (Exhibit 48).  Moreover,
Harout's Style Nos. 1r406 and 1r444G are identical to the "Rit Flower 1"
design, a design which was part of Ritani LLC's copyrighted sketch book, and
was attached to the October 20, 2009 email that Defendant Aghjayan sent to
Mr. Khatchadorian with the subject "RIT." (See Exhibits 28 and 49). Further,
on October 22, 2009, Defendant Aghjayan sent Mr. Khatchadorian an email
entitled "95D-H" attaching an image of a ring drawing titled "R95D-A-h,"
which can be found in Harout's style number 1r515. (Exhibit 50). Similarly,
Ritani Style 1R98D-A-H is derived from Harout's style number 1r310. (Exhibit
51). Defendant Aghjayan disclosed these confidential and trade secret CAD CAM
drawings to Mr. Khatchadorian, without Ritani LLC's consent, and Ritani LLC
has never commercialized these rings. Thus, they remained trade secrets until
they were improperly disclosed by Defendant Aghjayan and used by Defendants
Amazing Settings and Harout R to make rings that were offered for sale in the
United States."

In addition, Aghjayan sent Khatchadorian a file of
Ritani's "Perfect Match" design and had verbal exchanges about
the precise measurements and details necessary to create the
design feature.  According to Ritani, the concept behind
"Perfect Match," a registered trademark of Ritani, was unique at
the time of Aghjayan's disclosure, as were the measurements and
techniques needed to be used in order to enable the two rings to
match up perfectly, which Ritani considered proprietary and
confidential.  Ritani also contends that the Chinese Factory
manufactured a silver samples jewelry line, which was to be used
as a representative sample for sale in the U.S.  After February
2010, the Chinese Factory allegedly made weekly shipments of the
silver sample line to Aghjayan's New Jersey residence.

Prior to the expiration of his non-compete term,
Aghjayan approached Ritani seeking an amendment to the provision
of his 2004 Employment Agreement.  According to Ritani, Aghjayan
was anxious to end his competitive restriction so that he could
deliver finished jewelry products, which he allegedly already
manufactured and offered for sale or sold to a number of U.S.
companies during the non-compete period, including Helzberg
Diamonds ("Helzberg").  In addition, Aghjayan began negotiations

17

with Tiffany & Co. ("Tiffany"), a former customer of HR Corp.,
in July of 2008. According to Aghjayan, the negotiations were
for his wife, Mrs. Aghjayan, who hoped to leave Ritani's
graphics department to form her own company designing and
manufacturing bridal jewelry. Plaintiff contends, however, that
Mrs. Aghjayan acted as a cover and alter ego for Aghjayan during
the negotiations with Tiffany, so that he and Khatchadorian
could compete with Ritani, while Aghjayan was still employed in
a position of trust at Ritani.

Aghjayan established two companies, Amazing Settings
on November 9, 2009 and Harout R on September 13, 2010 for the
purposes of selling jewelry. According to the Amended
Complaint, on May 20, 2010, the Amazing Settings website went
up, which contained a number of the 84 designs from the CAD/CAM
drawings emailed between Aghjayan and Khatchadorian. Harout R
was formed to be the public face of the newly formed company
because the trade knew Aghjayan as Harout Ritani. According to
Ritani, Harout R shares the same factory, employees, and designs
as Amazing Settings in China and the U.S. Harout R's website
similarly has a number of the 84 designs emailed between
Aghjayan and Khatchadorian. The Amended Complaint also alleges
that, prior to his departure from Ritani, Aghjayan provided

Ritani with a box of the wax models that he created, which
Ritani never commercialized.  Aghjayan improperly took these
Ritani confidential and trade secret design files, and created
either identical or slightly "tweaked" rings for sale to U.S.
customers through Defendants Amazing Settings and Harout R.

On October 20, 2010, Aghjayan entered in a letter
agreement ("Letter Agreement") with Ritani amending the blanket
non-compete provision to end two weeks earlier, on October 14,
2010.  Ritani agreed to the modification of the non-compete
portion of the agreement to end the partnership with Aghjayan on
good terms and in return for Aghjayan's agreement not to sell
jewelry to any current Ritani customer through December 31, 2010
and to refrain from attending a January/February 2011 trade
show, the Centurion Show.  While Ritani understood that Aghjayan
had engaged in casual conversation with a few potential non-
Ritani customers, Ritani understood from Aghjayan that these
discussions pertained to non-competing products, such as
castings and findings.

The Amended Complaint alleges, however, that Amazing
Settings and Harout R further violated Aghjayan's non-compete
provision by engaging in business negotiations and targeting

19

companies such as Helzberg, Tiffany, QVC, Blue Nile, Robbins
Bros. and Michael Hill for business.  For example, Aghjayan met
with Helzberg on multiple occasions to show them catalogs,
pictures, and his silver samples to try to get Helzberg to place
an order, during Aghjayan's non-compete period.  Ritani had
accounts with Blue Nile and Robbins Bros. in several states,
which Aghjayan solicited.  The Amended Complaint also alleges
that Aghjayan continued to maintain the active registration of
HR LLC and HR Corp. in furtherance of his jewelry business.

        The Amended Complaint alleges that the Defendants were
involved in further acts of solicitation in 2011.  Aghjayan
allegedly mailed out around 7,000 competitive flyers and
catalogs directly to all of Ritani's customers announcing the
formation of Harout R.  Ritani contends that the Harout R flyers
and catalogs also contained information that is likely to cause
confusion as to Aghjayan and Harout R's association with the
Ritani brand.  For example, the Harout R brochures associate
Aghjayan with Ritani, by emphasizing that the "R" in Harout R
stands for Ritani, as well as the inclusion of a statement
whereby Aghjayan claims that he was "previously known as Harout
Ritani."  Ritani alleges that specific statements were also made
to customers and potential customers that Aghjayan is the real

"Harout Ritani."  The Amended Complaint also states that, in
February 2011, Mrs. Aghjayan referred to herself as Shawndria
Ritani, and posted on her Flickr page, a picture of Aghjayan
selling jewelry, along with a question asking "Where is Harout
Ritani now?"

In addition, Ritani alleges that, in 2011, Aghjayan,
through the Defendant Companies, began to use a reproduction,
copy, and colorable imitation of the Three-Leaf Trademark in his
Harout R jewelry line in a manner likely to cause confusion to
consumers as to the origin of the goods.  In April of 2011,
Harout R's jewelry line began selling on an online store of
Helzberg's.  Ritani contends that current Harout R Style Nos.
1r109 and 1pc109 were virtual copies of Ritani's styles and
designs.  In addition, the Amended Complaint alleges that, in
May 2011, Harout R's online catalogs included pieces of jewelry
that were virtual copies of and substantially similar to
Ritani's copyrighted jewelry designs as well as other designs
created by Aghjayan through the use of Ritani's confidential and
trade secret CAD files.  Lastly, Ritani contends that after
using its' copyrighted designs, the Defendants sought copyright
registrations on several of the allegedly copied works.

## III. **The Applicable Standards**

Rule 12(b)(1) and 12(b)(6) Standards

A facially sufficient complaint may be "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. See Thomson v. Gaskill, 314 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed. 951 (1942) (citations omitted). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. See Makarova, 201 F.3d at 113.

"[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citations omitted). As such, a court may rely on evidence outside of the pleadings, including declarations submitted in support of the

motion and the records attached to these declarations.  See
Makarova, 201 F.3d at 113 ("In resolving a motion to dismiss . .
. under Rule 12(b)(1), a district court . . . may refer to
evidence outside the pleadings.").

     In considering a motion to dismiss pursuant to Rule
12(b)(6), the Court construes the complaint liberally, accepting
all factual allegations as true and drawing all reasonable
inferences in the plaintiff's favor.  Mills v. Polar Molecular
Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  The issue "is not
whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claims."
Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.
1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36, 94 S.
Ct. 1683, 40 L. Ed. 2d 90 (1974)).

     To survive dismissal, "a complaint must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'"  Ashcroft v. Iqbal,
556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.
Ct. 1955, 167 L. Ed. 2d 929 (2007)).  Plaintiffs must allege
sufficient facts to "nudge[ ] their claims across the line from

23

conceivable to plausible." Twombly, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Cohen v. Stevanovich, 772 F. Supp. 2d 416, 423 (S.D.N.Y. 2010). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678. (quoting Twombly, 550 U.S. at 555).

Furthermore, allegations in a complaint must be complete enough to enable a reader to understand how each defendant was personally involved in the wrongdoing plaintiff is alleging. Onwuka v. NYC Taxi Limousine Comm'n, No. 10-5399(SLT)(LB); 2012 WL 34090, at *4-5 (E.D.N.Y. Jan. 6, 2012). "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" Dove v. Fordham Univ., 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (quoting Morabito v. Blum, 528 F. Supp. 252, 262 (S.D.N.Y. 1981)).

Rule 15(a) Standard

          The standard governing motions to amend is a
"permissive" one that is informed by a "strong preference for
resolving disputes on the merits."  See Williams v. Citigroup
Inc., 659 F.3d 208, 212-13 (2d Cir. 2011) (citing New York v.
Green, 420 F.3d 99, 104 (2d Cir. 2005)); see also Pangburn v.
Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (referring to the
"relaxed standard" for motions to amend).  Rule 15(a) provides
that leave to amend shall be "freely give[n] . . . when justice
so requires."  Fed. R. Civ. P. 15(a)(2).  "If the underlying
facts or circumstances relied upon by a plaintiff may be a
proper subject of relief, he ought to be afforded an opportunity
to test his claim on the merits."  Williams, 659 F.3d at 213
(quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L.
Ed. 2d 222 (1962)).


          However, "[a] district court has discretion to deny
leave for good reason, including futility, bad faith, undue
delay, or undue prejudice to the opposing party."  McCarthy v.
Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007); see
also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626
F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on

25

grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact.").   In addition, an amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).  Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

## IV.  Discussion

### A) The Federal Copyright Claim is Dismissed As to All Defendants - Count I

To withstand a motion to dismiss pursuant to Rule 12(b)(6), a claim of copyright infringement must meet the pleading requirements of Rule 8.  Fed. R. Civ. P. 8; see Franklin Elec. Publishers, Inc. v. Unisonic Prods. Corp., 763 F. Supp. 1, 4 (S.D.N.Y. 1991).  In order to comply with Rule 8, a complaint alleging copyright infringement must state:  "[1] which specific original works are the subject of the claim, [2] that plaintiff owns the copyright, [3] that the works have been registered in accordance with the copyright statute[,] and [4] by what acts and during what time defendant has infringed the copyright."  Id.; Kelly v. L.L. Cool J., 145 F.R.D. 32, 36 (S.D.N.Y. 1992)

26

"[A]t this stage of the litigation, a plaintiff need only give the opposing party fair notice of what the plaintiff's claim is and the grounds on which it rests." Capitol Records, Inc. v. Wings Digital Corp., 218 F. Supp. 2d 280, 284 (E.D.N.Y. 2002) (internal citation omitted). "Neither Twombly nor Iqbal requires a plaintiff in a copyright infringement action to plead specific evidence or extra facts beyond what is needed to make the claim plausible." Ellis v. Jean, No. 10-8837(LMM), 2011 WL 6368555, at *4 (S.D.N.Y. Dec. 16, 2011). Thus, "[o]nce there has been notice of the claim, factual and evidentiary issues . . . should be developed during discovery." Capitol Records, 218 F. Supp. 2d at 284; Plunket v. Doyle, No. 99-11006, 2001 WL 175252, at *6 (S.D.N.Y. Feb. 22, 2001) (stating that plaintiff need not specify each infringing act, as "discovery is likely to provide many of the details of the allegedly infringing acts and much of this information may be exclusively in defendants' control.").

Here, the Defendants do not refute that the Plaintiff has sufficiently pled the first three elements of a copyright claim. In the Amended Complaint, the Plaintiff has identified, claimed ownership over and offered proof of registration of representative specific works that are the subject of the

27

copyright claim, Registration Nos. VA 1-774-361, VA 1-774,363,
VA 1-774-364, VA 1-774-362 and VAu 1-074-079. (AC ¶ 108). The
Defendants contend, however, that the Plaintiff has not pled any
specific actions or facts as to the fourth element sufficient to
show support "Plaintiff's claim that any defendant used
protected aspects of those copyrighted collections in creating
that portfolio." (Def. Memo at 9).

Piecing together the revised allegations in the
Amended Complaint, the Plaintiff has not met its burden as to
Aghjayan, Harout R or Amazing Settings. First, the Initial and
Amended Complaints state that "[a]s a result of the collective
actions of Defendants, spanning over the past five years,
Defendants have used Plaintiff Ritani, LLC's full panoply of
intellectual property rights to Defendants' own benefit to
compete with, and solicit customers from, Plaintiff Ritani, LLC
to the detriment of Plaintiff's business reputation and
goodwill." (IC ¶ 74; AC ¶ 104). They also state that
"Defendants have also used Plaintiff's copyright protected
designs to create their design portfolio." (IC ¶ 70; AC ¶ 100).
No facts are alleged in the Initial Complaint, however,
identifying which Defendants allegedly created that portfolio or
any facts supporting Plaintiff's claim that any defendant used

28

protected aspects of those copyrighted collections in creating

that portfolio. Telebrands Corp. v. Del Labs., Inc., 719 F.

Supp. 2d 283, 295-96 (S.D.N.Y. 2010).


        While the pleadings in the Amended Complaint are more

detailed and therefore a closer call, the requisite

specifications as to what acts and what time the specifically

listed copyrights were infringed has still not been met.  See

Calloway v. Marvel Entertainment Group, 1983 WL 1141 (S.D.N.Y.

June 20, 1983) (concluding that a federal copyright claim must

be dismissed if the "complaint fails to specify the dates on

which the alleged infringement(s) occurred.").  Here, there are

no facts alleged in the Amended Complaint as to how or when

Amazing Settings violated any of the listed copyrights.  As to

Aghjayan and Harout R, the Amended Complaint describes how

Aghjayan emailed various styles on September 4 through the 26,

2009 and on October 20 and 22, 2009 to Khatchadorian.  (AC ¶

73).  There are no allegations, however, as to whether any of

the listed registered copyrights were violated.  The Amended

Complaint only states that an October 20, 2009 email attached

certain Harout R styles that were identical to the "'Rit Flower

1' design, a design which was part of Ritani LLC's copyrighted

sketch book." (AC ¶ 73).  Moreover, the rest of the Amended

Complaint summarily assumes or makes the legal conclusion that a copyright violation has been established. (See AC ¶¶ 82; 100; 101; 103).

Post-Iqbal, the courts in this Circuit considering motions to dismiss copyright claims have held that a plaintiff with a valid copyright must allege that "(1) defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." LaChapelle v. Fenty, 812 F. Supp. 2d 434, 438 (S.D.N.Y. 2011). Thus, even assuming Aghjayan copied Ritani's work, the failure to plead facts regarding how the rings are "substantially similar," including identifying the protectable elements of the works as part of its claim, will result in the dismissal of the copyright claim.

While the question of substantial similarity is typically a question of fact, "in certain circumstances, it is entirely appropriate for a district court to resolve that question as a matter of law, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly

instructed, could find that the two works are substantially
similar." Peter F. Gaito Architecture, LLC v. Simone Dev.
Corp., 602 F.3d 57, 63 (2d Cir. 2010). Thus "where . . . the
works in question are attached to a plaintiff's complaint, it is
entirely appropriate for the district court to consider the
similarity between those works in connection with a motion to
dismiss, because the court has before it all that is necessary
in order to make such an evaluation." Id. at 64.

     In copyright infringement cases concerning jewelry
designs, one of two tests have been used to determine whether an
alleged copy is substantially similar so as to violate copyright
law: (1) the "ordinary observer" test or (2) the "discerning
observer" test. "The ordinary observer test asks 'whether the
ordinary observer, unless he set out to detect the disparities
[between the two works], would be disposed to overlook them, and
regard their aesthetic appeal as the same.'" Yurman Design,
Inc. v. Golden Treasure Imps., Inc., 275 F. Supp. 2d 506, 516
(S.D.N.Y. 2003), quoting Folio Impressions, Inc. v. Byer Cal.,
937 F.2d 759, 765 (2d Cir. 1991). If "an average lay observer
would recognize [ ] the alleged copy as having been appropriated
from the copyrighted work, then the two products are
substantially similar." Knitwaves, Inc. v. Lollytogs Ltd., 71

31

F.3d 996, 1002 (2d Cir. 1995).  "The fact-finder must examine
the works for their total concept and feel."  Yurman Design,
Inc. v. PAJ, Inc., 262 F.3d 101, 111 (2d Cir. 2001).


        However, "[w]hen a work contains both protectable and
unprotectable elements, the inspection must be more discerning"
and the "discerning observer" test applies.  Golden Treasure,
275 F. Supp. 2d at 516.  When applying this test, a court "must
attempt to extract the unprotectable elements from [its]
consideration and ask whether the protectable elements, standing
alone, are substantially similar."  Id., quoting Knitwaves, 71
F.3d at 1008.  "This more discerning test does not change the
degree of similarity required, only what elements of the works
are being compared."  Id.  "Ultimately the inquiry focuses upon
whether the alleged infringer has misappropriated 'the original
way in which the author has selected, coordinated, and arranged'
the elements of his or her work."  LaChapelle, 812 F. Supp. 2d
at 442, quoting Knitwaves, 71 F.3d at 1004.


        "Copyright protection does not extend to functional
element of Plaintiff's jewelry. . .  Protection thus cannot
extend to the 'idea' or the 'concept' which lies behind
Plaintiff's jewelry, but only to the expressions of those ideas

                              32

contained in the disputed pieces themselves." Judith Ripka
Designs, Ltd. v. Preville, 935 F. Supp. 237, 247 (S.D.N.Y.
1996). Functional elements of the rings, such as the location
of the stone, type of shank, how the prongs hold the main stone
are matters which "even when viewed in the aggregate, do not
represent plaintiffs' personal expression, but instead mere
ideas that may be taken and utilized by a successor without
violating the copyright of the original author or designer."
Gaito, 602 F.3d at 68-69; see also Attia v. Soc'y of the N.Y.
Hosp., 201 F.3d 50, 55 (2d Cir. 1999) (stating that "generalized
notions of where to place functional elements, . . . what
methods of construction and principles of engineering to rely
on, these are 'ideas' that may be taken and utilized by a
successor without violating" copyright.).

        Here, neither the Initial nor Amended Complaint
contains any allegations as to any particular elements of the
rings that are claimed to be protected, or that the expressions
or the elements are "substantially similar."  The Amended
Complaint merely states that Amazing Settings and Harout R's
websites contained a number of the 84 designs emailed between
Aghjayan and Khatchadorian.  Specifically, it alleges that
Harout R's online catalog "included pieces of jewelry that were

33

virtual copies of and substantially similar to the copyrighted jewelry designs sold by Ritani," (AC ¶ 101) and that Harout R "also offered for sale and sold rings substantially similar to the wax model rings that Defendant Aghjayan produced for Plaintiff Ritani, LLC during the last two months of his employment" at Ritani (AC ¶ 102).

Assuming, the rings have both protectable and unprotectable elements, the Plaintiff has admitted that the rings are different, conceding the designs were "tweak[ed]." (AC ¶¶ 72, 201).  No allegations have been set forth in the Amended Complaint to establish substantial similarity.  In addition, courts in this district have held that rings are not substantial similar, even when they "bear clear similarities." Diamond Direct, LLC v. Star Diamond Group, Inc., 116 F. Supp. 2d 525, 530 (holding that "the admitted similarity of the rings in question is attributable only to the design idea they share; [but that] each ring expresses the idea differently."); Judith Ripka, 935 F. Supp. at 248 (S.D.N.Y. 1996) (finding no copyright infringement where the jewelry produced by both parties was "largely comprised of functional elements" and where the cost suggested "that the average observer would carefully examine each piece prior to making a purchase.").

34

In addition, no copyright claim can be based on the wax models the Plaintiff alleges were produced by Aghjayan during his employment.  There is no allegation in the Amended Complaint that they were ever copyrighted.

Because the Plaintiff has not alleged a copyright violation, its copyright claim is dismissed.

B) The Lanham Act Claims Are Dismissed in Part and Retained in Part - Counts II Through IV

Count II through IV of the Amended Complaint alleges claims of federal trademark infringement, unfair competition, false designation of origin and false and misleading representations in commerce, and false advertising under Section 32 and 43(a) of the Lanham Act.  15 U.S.C. §§ 1114, 1125(a).

The Lanham Act "serves to protect the holders of trademarks from the promotion and sale of competing products likely to confuse consumers as to their source." Philip Morris USA Inc. v. U.S. Sun Star Trading, Inc., 2010 WL 2133937, at *4 (E.D.N.Y. Mar. 11, 2010).  Section 32 of the Lanham Act prohibits trademark infringement and provides in relevant part:

35

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale ... of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;

shall be liable in a civil action . . . .

15 U.S.C. § 1114(a)(1).

Section 43(a) of the Lanham Act, and unfair competition law in general, prohibits a person from using "any word, term, name, symbol, or device, or any combination thereof . . . which is likely to cause confusion  . . . as to the origin, sponsorship or approval of his or her goods . . . ." 15 U.S.C. § 1125(a).  In general, "Section 43(a) prohibits misrepresentations as to the source of a product in primarily two types of activities:  (1) false designation or 'passing off' in which 'A' sells its product under 'B's' name; and (2) false representation or false advertising." Kuklachev v. Gelfman, 600 F. Supp. 2d 437, 469 (E.D.N.Y. 2009).

To have standing for a false advertising claim under Section 43 of the Lanham Act, "a plaintiff must be a competitor of the defendant and allege a competitive injury." Telecom Int'l Am., Ltd. v. AT&T Corp., 280 F.3d 175, 197 (2d Cir. 2001).

36

More specifically, the aggrieved party must demonstrate "a reasonable interest to be protected against the advertiser's false or misleading claims, and a reasonable basis for believing that this interest is likely to be damaged by the false or misleading advertising." Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, 380 F.3d 126, 130 (2d Cir. 2004). To obtain relief against a false or misleading advertisement, "a plaintiff must demonstrate by a preponderance of the evidence that an advertisement is literally false or that the advertisement, though literally true, is likely to mislead or confuse consumers." McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1548-49 (2d Cir. 1991).

The elements required to succeed on claims brought under Section 32 and Section 43(a) of the Lanham Act are substantially similar. Accordingly, both claims will be analyzed together here.

"In order to prevail in an action for trademark infringement, . . . a party must establish under the two-prong test of Gruner + Jahr USA Publ'g v. Meredith Corp., 991 F.2d 1072 (2d Cir. 1993), (1) that it possesses a valid, legally protectable trademark and (2) that the junior user's mark is

37

likely to cause confusion as to the origin or sponsorship of the product at issue. Virgin Enter. v. Nawab, 335 f.3d 141, 146 (2d Cir. 2003) (citing Gruner, 991 F.2d at 1074 (2d Cir. 1993)).

"To be valid and protectable, a mark must be capable of distinguishing the products it marks from those of others." Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc., 192 F.3d 337, 344 (2d Cir. 1999). In this Circuit, marks are classified from least to most distinctive in the following categories: generic, descriptive, suggestive, arbitrary or fanciful. Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976). A mark's distinctiveness determines its level of protection. At one end, "[g]eneric marks are not protectable." Lane Capital, 192 F.3d at 344. While at the other, "[f]anciful, arbitrary, and suggestive marks are deemed inherently distinctive" and so "will be automatically protected." Id. "Alternatively, even if not inherently distinctive, the mark may be distinctive by virtue of having acquired a 'secondary meaning' in the minds of consumers." Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 381 (2d Cir. 2005).

38

In addition, "[a] certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (i.e., protectable), that the registrant owns the mark, and that the registrant has the exclusive right to use the mark in commerce." Lane Capital, 192 F.3d at 345. Thus, "when a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of [the] mark's protectibility by a preponderance of the evidence." Id. (internal citations omitted).

Here, Ritani offers the certificate of registration as prima facie evidence of ownership in the Ritani mark. Ritani also alleges and offers evidence demonstrating that it holds common law rights in the Three-Leaf Trademark based on ten years of use. The Three-Leaf Trademark has been displayed on Ritani's warranty cards, jewelry display cases at the point-of-sale, on advertisements and brochures, as well as on all letterhead, sales orders, t-shirts, business cards and shipping envelopes. (AC ¶ 127). Thus, Ritani has shown that it possesses a valid, legally protectable trademark in the Ritani mark and the Three-Leaf Trademark.

39

Defendants argue that "[i]n support of its 'confusion' claims, Plaintiff merely 'repeats and realleges' every prior allegation (including as to parties, jurisdiction and venue) leaving Defendants mostly to guess the actual basis of each particular claim and against which Defendants such is pled." (Def. Memo at 13 (citing IC ¶¶ 85, 94, 109, 118, 127, 137)). Defendants contend that, to the extent that the Plaintiff has specified any factual basis for these claims, it has alleged:

> A.   Defendants' brochures, as well as specific statements made to potential customers that Defendant Aghjayan is the real "Harout Ritani" (IC ¶¶ 88, 131);
>
> B.   Aghjayan's use of the RITANI name and brand in connection with the advertisement and promotion of Defendants' goods and services in "commercial advertisements and/or promotions," which were directed at the public (Id. ¶¶ 110, 119);
>
> C.   Defendant Aghjayan's use of the Ritani name and brand in connection with the advertisement and promotion of Defendants' goods and services in "commercial advertisements and/or promotions directed to the public" (Id. ¶ 119); and
>
> D.   Using H. Ritani, LLC and H. Ritani Corp., names allegedly confusingly similar to, and having a similar commercial impression as the Ritani trademarks, and selling products through those entities in the same product category and market as Plaintiff, i.e., "the field of diamond jewelry" (Id. ¶¶ 96-98, 130, 139-40).

40

The Defendants argue that the Plaintiff premises its "confusion claims" on the existence of several companies using the "Ritani" name (Id. ¶ 67), but that it fails to plead facts to demonstrate that these "Ritani" entities are being used to compete against Plaintiff in a manner to constitute a plausible threat of confusion.  Instead, according to the Defendants, the Plaintiff contends that it is "Harout R" competing against it in the sale of jewelry, (see, e.g., Id. ¶¶ 62, 65), which the Defendants maintain, has a dissimilar name and a distinctive mark.

In contrast, the Plaintiff contend that the Defendants' activities "inextricably bind their name and persona with Ritani through the use of the company name and brand 'Harout R,' where the 'R' stands for Ritani, language contained within Defendants' brochures, and flyers including that Defendant Aghjayan was 'previously known as Harout Ritani,' the use of the name 'Ritani' in Defendant Companies H. Ritani LLC and H. Ritani Corp., Defendant Shawndria Aghjayan's posting of a Flickr page with a picture of Defendant Aghjayan selling jewelry with the question 'Where is Harout Ritani now?,' as well as specific statements made to customers and potential customers that Defendant Aghjayan is the real 'Harout Ritani.'"  (AC ¶

41

118).  In addition, the Defendant Companies are alleged to have
begun "to use a reproduction, copy, and colorable imitation" of
the Three-Leaf Trademark in the Harout R jewelry line.  (AC ¶
99).

        In this Circuit, it is well-established that the eight
factors set forth in Polaroid Corp. v. Polarad Elects. Corp.,
287 F.2d 492 (2d Cir. 1961) control the analysis of whether
there is a likelihood of confusion in trademark infringement
cases.[3]  However, courts have refused to dismiss infringement
claims where a likelihood of confusion analysis would be
necessary on the pleadings.  See The Name LLC v. Arias, No. 10-
3212(RMB), 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010)
(holding that the "[l]ikelihood of confusion is a fact-intensive
analysis that ordinarily does not lend itself to a motion to
dismiss.") (internal quotation marks and citation omitted); see
also Merck & Co., Inv. v. Mediplan Health Consulting, 425 F.
Supp. 2d 402, 412 (S.D.N.Y. 2006) (citing Cooper v. Parsky, 140
F.3d 433, 440 (2d Cir. 1998) (stating that "[t]he task of the
court in ruling on a Rule 12(b)(6) motion is merely to assess

---

[3] These factors include (1) the strength of his mark, (2) the degree of
similarity between the two marks, (3) the proximity of the products, (4) the
likelihood that the prior owner will bridge the gap, (5) actual confusion,
(6) the reciprocal of defendant's good faith in adopting its own mark, (7)
the quality of defendant's product, and (8) the sophistication of the buyers.
Id. at 495.

the legal feasibility of the complaint, not to assay the weight

of the evidence which might be offered in support thereof);

Google Inc. v. Am. Blind & Wallpaper Factory, No. 03-05349(JF),

2005 WL 832398, at *6 (N.D. Cal. Mar. 30, 2005) (noting that it

would be "inappropriate" to make factual findings and draw legal

conclusions, "particularly with regard to likelihood of

confusion," on a motion to dismiss without benefit of a full

factual records.).


    According to the Amended Complaint, "Aghjayan

continues to retain the active status and operate" his

companies, HR LLC and HR Corp., "despite the existence of an

agreement expressly prohibiting from using the Ritani name."

(AC ¶ 132). When names are the same, courts have found that the

similarity of the marks is likely to cause confusion. See

Cadbury Beverage, Inc. v. Cott Corp., 73 F.3d 474, 479-80 (2d

Cir. 1996). The Amended Complaint alleges that "the corporate

names of the active companies Defendants H. Ritani, LLC and H.

Ritani, Corp. are confusingly similar to and have a similar

commercial impression to the RITANI Trade Name, RITANI

Trademarks and the RITANI brand," (AC ¶ 129) and that Aghjayan

continues to make "targeted mailings, direct statements" and

"representations to the jewelry industry" using the Ritani mark

43

(Id. ¶ 97).  Having determined that these marks are identical
and therefore likely to cause consumer confusion in the jewelry
industry, the Lanham Act claims, as to HR LLC and HR Corp., and
Aghjayan as the companies' alleged owner, are adequately pled.

As for Harout R, Ritani alleges that the 'R' in the
company's name and brand stand for 'Ritani.'  (Id. ¶¶ 118, 128).
The obtained trademark by Ritani, however, is for the name
"Ritani" for distributorship services in the field of diamonds.
The unregistered, unstylized letter R, is not so similar to the
Ritani mark to cause confusion.  In fact, "[c]ommon basic shapes
or letters are, as a matter of law, not inherently distinctive."
Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 382 (2d
Cir. 2005) (stating that unlike stylized shapes or letter which
may qualify, unstylized linear representations of letters are
not protectable).  As such, the use of the letter "R" in "Harout
R" is insufficient to allege the existence of the likelihood of
confusion.

The Amended Complaint, however, also alleges other
facts.  The appropriate inquiry at this stage in the litigation
is whether the Amended Complaint adequately alleges likelihood
of confusion as to Harout R.   Here, Plaintiff has alleged that

44

the marketing materials were "actively distributed in mass to
Plaintiff's customer base," and "also contain[ed] information
that is likely to cause confusion as to Defendants' association
with Plaintiff famous RITANI brand."  (AC ¶ 95).  The Amended
Complaint also alleges that Aghjayan "repeatedly identified
himself to trade show participants as 'Harout Ritani'" and
"advising potential customers that he was the real 'Ritani'"
(Id. ¶ 96); that Mrs. Aghjayan's reference to her husband as
"Harout Ritani" was "false, misleading and/or likely to create
confusion among the industry and customers as to the origin of
Plaintiff's design, as well as Defendants' affiliation and
connection with Plaintiff's RITANI name and brand;" (Id. ¶ 98).
And that Harout R's jewelry line copies and reproduces the
Three-Leaf Trademark "as an identifier of origin of Defendants'
goods, in a manner likely to cause confusion, mistake, or to
deceive consumers as to the source or origin of Defendants'
goods."  (Id. ¶ 99).


     The Defendants nonetheless argue that the flyer
identifies Harout R as a new company and only mentions Ritani
when describing Aghjayan's previous association with the
company.  (Def. Memo at 14) (citing Ex. 23).  In relevant part,
the flyer states:

45

> [Aghjayan was] previously known as Harout Ritani,
> designer and founder of New York's RITANI'S Fine
> Jewelry Brand.  He is now launching his new company
> HAROUT R LLC.  This collection is the most innovative
> to date, ... Harout observed that the opportunity for
> variety was limited and saw a need to introduce
> something that has not been done before.

Similarly, the Defendants argue that Harout R.'s brochure, also reflects that the origin of goods as Harout R and identifies the company's designer as Harout R. Aghjayan.  (Id. at 15).  The brochure describes Harout R. as a "new brand" and includes Aghjayan's biography.  The biography identifies Aghjayan as the founder of Ritani, states that he previously designed for Tiffany, describes that he sold his interest and left Ritani in 2009 and identifies that he was "previously known as Harout Ritani."  (Id.).  Defendants contend that "[n]ot only are Harout R's goods not marketed using the Ritani name or logo, these marking materials could not make it any clearer that Harout is not affiliated with Ritani and that Harout R is a new and separate venture."  (Id.).  They argue that the marketing materials distinguish that the works are being sold and distributed by Harout R and that there are no prohibitions against an entity from distinguishing himself from another trademark.  In essence, the Defendants urge that the use of the

46

Ritani mark constitutes fair use because it was used in a descriptive sense.

A court can consider whether fair use applies on a motion to dismiss. Kelly-Brown v. Winfrey, No. 11-7875, 2012 WL 701262, at *2 n.1 (S.D.N.Y. Mar. 6, 2012). "[F]air use permits others to use a protected mark to describe aspects of their own goods." Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc., 16 F.3d 65, 73 (2d Cir. 1999). This defense preserves the "public's right to use descriptive words . . . in their ordinary descriptive sense . . . over the exclusivity claims of the trademark owner." Car-Freshener Corp. v. S.C. Johnson & Son, Inc., 70 F.3d 267, 269 (2d Cir. 1995). The fair use defense requires that the Defendants show that their use of the phrase was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." EMI Catalogue P'Ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 64 (2d Cir. 2000). To determine good or bad faith, a court considers whether a "defendant in adopting its mark intended to capitalize on plaintiff's good will;" and "the overall context in which the mark appear and the totality of factors that could cause consumer confusion." Id. at 66.

47

Even assuming Aghjayan can show that Harout R's marketing materials and Mrs. Aghjayan used the Ritani mark as descriptive, the Amended Complaint also alleges that Aghjayan "repeatedly identified himself to trade show participants as 'Harout Ritani'" and "advising potential customers that he was the real 'Ritani.'" (AC ¶ 96).  Accepting the alleged facts as true, Aghjayan's comments are not free from ambiguity and may potentially cause consumer confusion.

In addition, the Defendants argue that Ritani has not pled that it sold rings with the Three-Leaf design.  However, at this stage, where the only question is the sufficiency of the pleadings, Ritani need not assert such a claim.

Taken together, the Plaintiff has alleged sufficient facts to adequately plead claims against Aghjayan, HR LLC, HR Corp. and Harout R under the Lanham Act.  As discussed, the facts pled in the Amended Complaint sufficiently allege that consumer confusion may have been caused by these Defendants. Accordingly, the motion to dismiss Counts II through IV against Aghjayan, HR LLC, HR Corp. and Harout R is denied.

Lastly, the Amended Complaint is devoid of any facts
sufficient to raise allegation as to Lanham Act claims against
Mrs. Aghjayan or Amazing Settings.  Accordingly, the Defendants'
motion to dismiss Counts II through IV as to Amazing Settings is
granted.[4]

### C) The State Claims Are Dismissed in Part and Retained in Part – Counts V Through VIII

Counts V through VIII of the Amended Complaint alleges
claims of false advertising, trademark infringement, unfair
competition, and trademark dilution under state law.  These
claims arise from the same set of facts as the Lanham Act
claims, which, as set forth above, are inadequately pled as to
Mrs. Aghjayan and Amazing Settings.  Accordingly, the motion to
dismiss as to Amazing Settings is granted and the discussion
below as to Counts V through VIII applies only to Aghjayan,
Harout R, HR LLC, and HR Corp.

As to Count VI and VII of the Amended Complaint, the
elements of a cause of action for New York common law
infringement and for unfair competition mirror the requirements

---

[4] There is no motion to dismiss any claims against Mrs. Aghjayan, as the
Defendants have made no such motion.

of claims stated under the Lanham Act and similarly require that
a party demonstrate a valid, protectable mark and a likelihood
of confusion between the marks of the alleged infringer and the
charging party.  See ESPN, Inc. v. Quiksilver, Inc., 586 F.
Supp. 2d 219 (S.D.N.Y. 2008); see e.g., Tiffany (NJ) Inc. v.
eBay, 600 F.3d 93, 102 n.6 (2d Cir. 2010).  As the Plaintiff has
sufficiently pled the federal claims against certain defendants,
it has necessarily done so under common law.  Accordingly, the
motion to dismiss Counts VI and VII is denied as to Aghjayan, HR
LLC, HR Corp. and Harout R.


          Section 350 of the N.Y. Gen. Bus. Law prohibits false
advertising.  See N.Y. Gen. Bus. Law § 350 ("False advertising
in the conduct of any business, trade or commerce or in the
furnishing of any service in this state is hereby declared
unlawful.").  To prevail in a cause of action for false
advertising, a "plaintiff must prove that the defendant made
misrepresentations or omissions that were likely to mislead a
reasonable consumer in the plaintiff's circumstances . . . and
that as a result the plaintiff suffered injury."  Solomon v.
Bell Atl. Corp., 9 A.D.3d 49, 55, 777 N.Y.S.2d 50 (App. Div. 1st
Dep't 2004).  Unlike a federal false advertising claim, in which
a plaintiff "can demonstrate that it has the potential for a

50

commercial or competitive injury, . . . or in other words, that
the false designation of defendant's product is likely to cause
plaintiff to suffer a loss in sales," actual injury must be
demonstrated.  Havana Club Holding, S.A. v. Galleon, S.A., 62 F.
Supp. 2d 1085, 1097 (S.D.N.Y. 1999).   In addition, because
these provisions were intended to be consumer protection
statutes, see Teller v. Bill Hayes, Ltd., 213 A.D.2d 141, 630
N.Y.S.2d 769, 772 (2nd Dep't 1995), a plaintiff bringing a
charge under these provisions must allege conduct that is
consumer-oriented, Oswego Laborers' Local 214 Pension Fund v.
Marine Midland Bank, N.A., 85 N.Y.2d 20, 623 N.Y.S.2d 529, 532,
647 N.E.2d 741 (1995).   A party thus does not state a claim
under the state statute absent an allegation that the
defendant's conduct harms consumers or causes injury to the
public interest. Franklin Elec. Publishers, Inc. v. Unisonic
Prods. Corp., 763 F. Supp. 1, 5 (S.D.N.Y. 1991).


     Under Count V, the Plaintiff has alleged that
consumers have and are likely to continue to be deceived by
Aghjayan and Harout R's marketing materials.  Such materials may
be likely to mislead a consumer in ordinary circumstances into
believing that Aghjayan or Harout R was associated with Ritani.
However, there are no sufficient allegations describing what

51

specific injuries the Plaintiff or the public suffered as a direct result of the Defendants' alleged wrongdoing. The Amended Complaint merely alleges that the Plaintiff "has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law," (AC ¶ 158) and that the conduct "has affected the public interest of New York and has resulted and /or may result in injury to consumers in New York and/or harm to the public." (AC ¶ 152). There is no causal link between the Defendants' actions and any injury suffered by the Plaintiff or any specific injury that affects the public. See Biosafe-One, Inc. v. Hawks, 639 F. Supp. 2d 358, 367 (S.D.N.Y. 2009) (stating that to prevail on a Section 350 claim, there requires "proof of a causal connection between some injury to plaintiffs and some mispresentation made by defendants.") (internal quotation marks and citations omitted).

Accordingly, unlike the false advertising claim under Section 43 of the Lanham Act, the state false advertising claims are dismissed as to all Defendants.

As to Count VIII, under N.Y. Gen. Bus. Law § 360-l, a "[l]ikelihood of dilution of the distinctive quality of a mark or trade mark shall be a ground for injunctive relief . . .

notwithstanding the absence of competition between the parties or the absences of confusion as to the source of goods or services." N.Y. Gen. Bus. Law § 360-l. To prove a dilution claim under New York law, a "[p]laintiff must establish: (1) ownership of a distinctive mark and (2) a likelihood of dilution. Pfizer, Inc. v. Y2K Shipping & Trading, Inc., No. 00-5304, 2004 WL 896952, at *8 (E.D.N.Y. Mar., 26, 2004). Dilution occurs by "either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey." Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 42-43 (2d Cir. 1994).

Plaintiff has alleged exclusive ownership of the Ritani Trademarks, and that such trademarks are "intimately associated with Plaintiff's goods and services serving to indicate source." (AC ¶ 186). The Amended Complaint further alleged that "Defendants are likely to cause confusion, mistake or to deceive customers as to their affiliation, connection or association with Plaintiff and have caused a likelihood of harm to Plaintiff's business reputation . . . ." and that Defendants have "diluted the distinctiveness of the RITANI Trademarks." (AC ¶¶ 188, 190).

53

Accepting these allegations as true, the Court finds that the Plaintiff has plausibly suggested that Harout R's marketing materials, Aghjayan's maintenance and continued registration of HR Corp. and HR LLC, and certain representations made by Aghjayan to customers may dilute the Plaintiff's business name and reputations.

As a result, the motion to dismiss the state trademark dilution claim is denied as to Aghjayan, Harout R, HR Corp. and HR LLC.

D) <u>The Misappropriation of Trade Secrets Claim Against the Defendants Other than Aghjayan and Mrs. Aghjayan Is Dismissed - Count IX</u>

New York courts define trade secrets as "any formula, pattern, device or compilation of information which is used in one's business, and which gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it." <u>Softel, Inc. v. Dragon Med. & Scientific Commc'ns., Inc.</u>, 118 F.3d 955, 968 (2d Cir. 1997) (citations omitted). "[I]t is not simply information as to single or ephemeral events in the conduct of the business; rather it is a process or device for continuous use in the operation of the business." <u>Id.</u> (internal quotation marks and citation omitted). To recover under New

York law, a plaintiff must show that it possessed a trade secret
and that defendants used the trade secret in breach of an
agreement, confidential relationship or duty or by improper
means of discovery.  N. Atl. Instruments, Inc. v. Haber, 188
F.3d 38, 44 (2d Cir. 1999) (finding that a list containing
identities and preferences of plaintiff's clients was a
protectable trade secret).

        Ritani has alleged that many of its jewelry designs,
as well as its CAD files, drawings, product development files,
customer files and financial information constitute valuable
confidential information and trade secrets.  (AC ¶¶ 196, 199).
In addition, particular information associated with Ritani's
customer accounts, the product development and customer files,
is also alleged to be entitled to trade secret protection, which
was misappropriated by Aghjayan in order to obtain a competitive
edge and undercut Ritani in the market.  (Id. ¶ 50, 196).

        According to the allegations in the Amended Complaint,
the Ritani design files and drawings were created using CAD
software, which involves the use and adjustment of vectors and
polygons in the software's memory to create and subsequently
rebuild jewelry drawings without the need to reconstruct the

design from scratch. (Id. ¶ 46).  These CAD files are alleged to contain confidential, proprietary and trade secret information used to design, create, modify and produce wax models of jewelry designs (Id. ¶¶ 46, 71) which were misappropriated from Ritani by Aghjayan and copyrighted for the benefit of Aghjayan and the Defendant Companies. (Id. ¶¶ 30, 46, 71, 72, 73).

The Amended Complaint provides sufficient details including specific categories of trade secrets for which the Plaintiff is entitled to protection and the extensive measures undertaken by Ritani to maintain the secrecy of this information (Id. ¶¶ 46, 47).  It also alleges that Aghjayan, with the assistance of Mrs. Aghjayan, was involved in a scheme to collect and remove Ritani's trade secret and confidential files and to use such files for the creation and benefit of the Defendant Companies so that they could develop, manufacture, produce and market competing products and services, to the detriment of Ritani.  (Id. at ¶¶ 46-51, 201-204).

In addition, the precise details as to the specific information that Aghjayan misappropriated and what exactly he did with this information is peculiarly within the possession and control of Aghjayan and will be uncovered during the

discovery process.  The allegations in the Amended Complaint make the inference that Aghjayan, along with Mrs. Aghjayan, misappropriated Plaintiff's trade secrets more than plausible.

However, aside from Aghjayan and Mrs. Aghjayan, the Amended Complaint fails to set forth any allegations as to the use of the alleged trade secrets by the remaining corporate defendants.  Individual defendants, corporate or otherwise, are entitled to notice of the misappropriations for which Ritani seeks to hold them liable.  The allegation of control by Aghjayan is insufficient.  See generally Onwuka, 2012 WL 34090, at *4-5; Dove, 56 F. Supp. 2d at 335; In re Cross Media Marketing Corp. Secs. Litig., 314 F. Supp. 2d 256, 264-66 (S.D.N.Y. 2004).  As set forth above, the wrongdoing of each defendant must be delineated and therefore the motion to dismiss the misappropriation of the trade secret claim is granted to all Defendants, with the exception of Aghjayan and Mrs. Aghjayan.

E) The Tortious Interference Claim Is Dismissed – Count X

In Count X, the Plaintiff has alleged that the Defendants' conduct amounts to tortuous interference with a business relationship.  Defendant seeks dismissal of this cause

57

of action because Defendants' conduct, as alleged by Plaintiffs, is impermissibly vague to make out the elements of the tort.

To state a claim for tortious interference with business relationships under New York law a plaintiff must allege:  "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008).  "The defendant's interference must be direct:  the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." B&M Linen, Corp. v. Kannegeisser, USA, Corp., 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010).  Thus, the Plaintiff must plead the basis on which it claims the "relationship" and the expectation it would yield future business.  See DeSantis v. City of Troy, 83 Misc. 2d 195, 201 (N.Y. Sup. 1975) (stating that the pleading must show that "but for" interference, it would have received contract).

Here, Ritani has alleged that Aghjayan interfered with its customers and potential customers, including "Helzberg, Blue Nile, Robbins Bros., Henne Jewelers and Ackerman Jewelers." (AC ¶ 182). The Amended Complaint states that Aghjayan and "actively interfered with Plaintiff's business relationships" (Id. ¶ 215), and acted "with a wrongful purpose . . . motivated solely by malice and/ or to inflict injury on Plaintiff by unlawful means." (Id. ¶ 216). In addition, the Amended Complaint states that Aghjayan's actions led to "the breakdown of negotiations between Ritani LLC and Helzberg, which resulted in Helzberg's placement of $2.8 million worth of orders with Defendant Companies," and that but for Aghjayan's actions, "it is likely that Ritani LLC would have obtained the financial benefit of Defendants' initial contract with Helzberg, plus Defendants' ongoing business from Helzberg and Blue Nile." (Id. ¶¶ 217, 218).

Ritani has not alleged that, as a result of Aghjayan's actions, that any of these customers did not buy from Ritani, or that any order was canceled or that it had an actual, legitimate expectation as to their further patronage. Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 97 (1993) (tortious interference claim is not viable "until actual damages are sustained"). Instead, the

59

allegation states that Helzberg and Blue Nile placed orders with the Defendant Companies and that "it is likely" that Ritani might have benefited from the initial contract.  The allegations that Aghjayan met with potential customers or that some jewelers are now selling Harout R rings are not in and of themselves actionable.

The Plaintiff has also not plead sufficient facts to show that Aghjayan acted "with a wrongful purpose  . . . motivated solely by malice and/ or to inflict injury" to Ritani. In starting his new business ventures, Aghjayan set up meetings with vendors that he was familiar with and with whom he had previous relationships with.  Ritani has not pled any specific facts as to business relationships with a specific jeweler that was interfered with and successfully harmed by Aghjayan's actions so that orders or business was lost due to those actions.

Accordingly, the tortuous interference claim is dismissed.

F) The Breach Of An Implied Covenant Of Non-Solicitation Is
   Dismissed - Count XI

Count XI alleges a claim for a breach of the implied covenant not to solicit business and reduce business goodwill. This covenant is based on a seller of goodwill's permanent implied covenant or "duty to refrain from soliciting former customers, which arises upon the sale of the 'good will' of an established business." Bessemer Trust Co. v. Branin, 16 N.Y.3d 549, 556 (2011) (quoting Mohawk Maint. Co. v. Kessler, 52 N.Y.2d 276, 283 (1981)). Usually, the seller of goodwill is free to compete with its purchaser and even "accept[ ] the trade of his former customers, provided that he does not actively solicit such trade." Id.

Here, Aghjayan is not a "seller" of goodwill. He did not individually contribute any assets or goodwill to which Aghjayan was not a party. The goodwill was assigned by Ritani Corp. to Ritani by an agreement transferring goodwill and intellectual property to which Aghjayan was not a party. (See Ex. 3). The buyer of the membership interest in the newly formed company were non-parties, JK and Krunch. In May 2003, five months after its formation of Ritani, Aghjayan transferred his interest to JK.

61

No facts are alleged to support a claim that the
actual seller, Ritani Corp., has solicited in violation of the
covenant.  Moreover, even if Mohawk were applicable, the parties
to the sale of a business are free to negotiate and narrow the
Mohawk implied covenant.  See, e.g., Mitel Telecomms. Sys. v.
Napolitano, 226 A.D.2d 165 (1st Dep't 1996) (parties limited
duration of non-solicit); Titus & Donnelly v. Poto, 205 A.D.2d
475 (1st Dep't 1994) (negotiation of 3-year express covenant
abrogates Mohawk perpetual covenant); MGM Court Reporting Servo
v. Greenberg, 143 A.D.2d 404 (2d Dep't 1988) (forced sale of
stock outside Mohawk), aff'd on other grounds, 74 N.Y.2d 691
(1989) (shareholders divided up customer list for a period of 5
years so Mohawk does not apply).

Here, Ritani negotiated a restrictive covenant for
Aghjayan limited to a one-year non-compete, (Exs. 5, 9), which
was later modified, (Ex. 12), and permitted Aghjayan to sell to
all current Ritani customers, listed on its website, after
December 31, 2010.  The limited non-compete covenant, to which
Ritani agreed, placed no restrictions on Aghjayan's solicitation
of potential customers, and allowed him to compete generally,
thereby modifying any Mohawk restriction on solicitation that
might otherwise have applied.  In addition, the Operating

62

Agreement expressly applied only to members and Aghjayan ceased

being a member in 2003 and Ritani Corp.'s membership ended in

2007.  Because Aghjayan left Plaintiff's employ in 2009, and all

restrictions on him ended by December 31, 2010, no allegations

of post-2010 actionable activities have been pled.


        In addition, the acts pled by Ritani do not constitute

improper "solicitation."  General ads and announcements to the

public, and competing with the buyer of the business, are not

prohibited.  Bessemer, 16 N.Y.3d at 557-58.  Nowhere in the

marketing materials is there a suggestion that he is touting his

goods over Ritani's.  See USI Ins. Servs. LLC v. Miner, 801 F.

Supp. 2d 175 (S.D.N.Y. 2011).  Moreover, "advertising to the

general public should not be considered solicitation, so long as

such advertisements were not specifically aimed at the seller's

former clients."  Id. at 192.  Here, the Amended Complaint

states that Aghjayan's active solicitation of Ritani's former

clients caused significant financial harm. (AC ¶ 227).  However,

the facts demonstrate that Aghjayan sent out over 7,000 of his

marketing materials to potential customers.  Such broad

advertising of a new business venture is permissible, even in

the same industry.  USI, 801 F. Supp. 2d at 192.


                            63

In addition, Aghjayan's non-compete was also amended, permitting him to "sell[], supply[] and consign[]" jewelry to any current Ritani customer after December 31, 2010 and to non-Ritani customers after October 14, 2010.   Solicitation was not excluded in the agreement.   Thus, even if the <u>Mohawk</u> covenant were applicable, this claim should nevertheless be dismissed.

Accordingly, the implied contract of non-solicitation claim is dismissed as the allegation of its violation is insufficient.

G) <u>The Breach Of Contract Against the Defendants Other than Aghjayan Is Dismissed – Count XII</u>

Breach of contract under New York law requires:   (1) the existence of an agreement; (2) adequate performance of the contact by plaintiff; (3) breach of contract by defendant; and (4) damages.   <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996).   With respect to a covenant not to compete, courts have held that certain activities done in preparation to compete constitute breaches of a non-compete provision in an employment agreement.   <u>See e.g.</u>, <u>De Long Corp. v. Lucas</u>, 278 F.2d 804, 808-09 (2d Cir.  1960) (defendant's development and engineering of devices during a two year non-compete went beyond planning

64

stages and constituted "exactly the kind of head start" the
agreement intended to prevent).

Here, the Plaintiff has properly pled its breach of
contract claim against Aghjayan.   The Amended Complaint alleges
the existence of several valid agreements entered into between
Aghjayan and Ritani, including the 2002 and 2004 Employment
Agreements and the 2010 Letter Agreement, as well as the 2007
Membership Agreement between Aghjayan and HR Corp. and Ritani.
Second, Plaintiff has performed its obligations under the
aforementioned contracts.   Third, the Plaintiff has pled that
Aghjayan has breached certain specific contractual obligations
by failing to render exclusive services on behalf of the
Plaintiff, by improperly using the Plaintiff's trade secrets and
confidential information for the benefit of the Defendant
Companies and by violating the terms of the non-compete by
preparing to sell jewelry products to customers in competition
with the Plaintiff.   (AC ¶ 236, 240).   As to Mrs. Aghjayan, the
Amended Complaint only states that she "aided and abetted
Defendant Aghjayan in breaching his contractual obligations"
with no allegations as to her own breach of contract.   (Id. ¶
240).   Finally, Ritani has pled damages as a result of
Aghjayan's breaches.

65

Accordingly, the Plaintiff has sufficiently pled facts to set forth a claim of breach of contract against Aghjayan, but have not sufficiently stated facts as to any other defendants.

### H) The Breach Of Fiduciary Duty And Loyalty Claim Are Retained Against Aghjayan and Mrs. Aghjayan – Count XIII

Under New York law, an employee is obligated to be loyal to his employer and prohibits him "from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003).

In addition, officers and directors owe their corporation a duty of loyalty and must discharge their duties in good faith. Foley v. D'Agostino, 248 N.Y.S.2d 121, 128 (1st Dep't 1964) (stating that "[t]hey may not assume and engage in the promotion of personal interests which are incompatible with the superior interests of their corporation."). A claim for breach of fiduciary duty requires: (1) the existence of a fiduciary duty between the parties; (2) a breach of that duty; (3) the defendant's knowing participation in that breach; and

66

(4) damages resulting from that breach. Pension Committee of the University of Montreal Pension Plan v. Banc of America Securities, 446 F. Supp. 2d 163, 195-96 (S.D.N.Y. 2006).

Beginning in 2002, Aghjayan was an officer and director of Ritani and intimately involved in the company's product design and marketing until he left the company on October 31, 2009.  The Amended Complaint sufficiently pleads that Aghjayan breached his fiduciary duty and duty of loyalty through several acts, including:  "partnering with a third party, Mr. Khatchadorian, to manufacture custom bridal engagement rings and wedding bands in China for the sole purpose of having a competing business to sell such jewelry in the United States; diverting Ritani's business opportunities to a third party by providing Mr. Khatchadorian with jewelry designs prepared by Defendant Aghjayan while employed by Plaintiff for the use and benefit of their Defendant Companies; pursuing overseas manufacturing opportunities in China to further the business affairs of another; disclosing Ritani LLC's confidential and/or trade secret CAD CAM drawings and design files to a third party; and using Ritani LLC's confidential and/or trade secret designs to form a business and create

67

jewelry styles to compete with Ritani LLC in the United States market through Amazing Settings and Harout R."  (AC ¶ 248).

As to Mrs. Aghjayan, the Amended Complaint alleges that, during her employment at Ritani, she aided and abetted her husband by acting as his "alter ego by setting up his China company to manufacture jewelry designs on Defendant Aghjayan's behalf for sale to the United States and by sending Mr. Khatchadorian Ritani's confidential and trade secret CAD CAM drawings, and other confidential design drawings, created by Defendant Aghjayan while at Ritani."  (Id. ¶ 249).

The Defendants argue that the purchase of the 3-D printing machine and Chinese Factory were merely preparatory. They contend that a former employee is permitted to prepare to compete during the term of a restrictive covenant and may take steps to start a competitive business.  (Def. Memo at 29). However, the cited cases only refer to obtaining trademark registration and purchasing a competing business.  (Id.) (citing Abraham Zion Corp. v. Lebow, 593 F. Supp 551 (S.D.N.Y. 1984); Tulumello v. Taylor Int'l Constr. Co., Inc., 84 A.D.2d 903 (4th Dep't 1981).

New York courts have also found defendants similarly situated to Aghjayan and Mrs. Aghjayan liable for breaches of loyalty and fiduciary duties. See Am. Bldg. Maint. Co. of NY v. Acme Property Servs., 515 F. Supp. 2d 298, 312-13 (N.D.N.Y. 2007) (finding that allegations that defendants negotiated with plaintiff's current and prospective clients for purposes of establishing a competing business during employment with plaintiff withstood motion to dismiss); CBS Corp. v. Dumsday, 702 N.Y.S.2d 248, 251 (1st Dep't 2000) (denying a motion to dismiss when the plaintiff claimed defendants breached their fiduciary duty, while employed by plaintiff, when they planned and later formed, a competing company using employer's confidential information).

In addition, "New York courts generally avoid dismissing a claim of breach of fiduciary duty . . . because it usually involved a question of fact:  whether someone reposed trust and confidence in another who thereby gains a resulting superiority or influence." Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, 261 F.R.D. 13, 26 (S.D.N.Y. 2009); see also Abercrombie v. Andrew Coll., 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006) (holding that whether a fiduciary duty exists "normally depends on the facts of a particular relationship,

69

[and[ therefore a claim alleging the existence of a fiduciary duty is not subject to dismissal.").

Accordingly, the Amended Complaint alleges sufficient facts to adequately plead the breach of the duty of loyalty and fiduciary duty as to Aghjayan and Mrs. Aghjayan, and the Defendants' motion to dismiss is denied.

## V. **Leave Is Granted to File an Amended Complaint Subject to this Opinion**

According to Ritani, the Motion to Amend will accomplish three things:  "1) add significant factual details recently learned, which further substantiate the magnitude and extent of Defendants' wrongdoing through the misappropriation of Ritani's confidential and trade secret information, as well as Defendant Aghjayan's breach of his contractual and fiduciary duties; 2) add Defendant Aghjayan's wife, Shawndria Aghjayan, as a party due to her role as an accomplice in Defendant Aghjayan's improper disclosure and use of Ritani's confidential information and trade secrets; and 3) remove two state causes of action and shift two others to remedies for requested relief."  (Pl. Reply in Motion For Leave at 2).

70

The Defendants have not challenged the proposed Amended Complaint, and instead referred the Court to their Motion to Dismiss the Initial Complaint, the transcripts of the hearing on Plaintiff's motion for a preliminary injunction and the June 11, 2012 Opinion.  They have not made any arguments as to the existence of undue delay or prejudice, instead the Defendants effectively argue that the requested amendment would be futile by referencing the above documents in response.

Considering the permissive standard for motions to amend and the lack of opposition from the Defendants, the Plaintiff's motion is granted.  However, due to the unusual procedural posture in this case and the Defendants' reply to refer to their arguments from their Motion to Dismiss the Initial Complaint to the Amended Complaint, the Motion to Amend is granted subject to the causes of action dismissed in this Opinion, because they are considered futile.

VI.  **Conclusion**

Based upon the conclusions set forth above, the Defendants' motion to dismiss the claims in Counts I, V, X, XI are granted; Counts II-IV, VI-VII and VIII are denied as to

71

Aghjayan, HR LLC, HR Corp. and Harout R; Counts IX and XIII are denied as to Aghjayan and Mrs. Aghjayan; and Count XII is denied as to Aghjayan.  The Motion to Amend is granted subject to the causes of action dismissed in this Opinion.

The Plaintiff is granted leave to replead within 20 days.

It is so ordered.

New York, NY
July /8 , 2012

_____

ROBERT W. SWEET
U.S.D.J.

72