MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Telephone:  (516) 741-6565
Facsimile:  (516) 741-6706
Erica B. Garay, Esq.
Lynn M. Brown, Esq.
egaray@msek.com
lbrown@msek.com

*Attorneys for Defendants and Counterclaim Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

RITANI, LLC,

               Plaintiff,

      -against-

HAROUT AGHJAYAN; SHAWNDRIA
AGHJAYAN; HAROUT R, LLC;  H. RITANI,
LLC; H. RITANI, CORP.; and AMAZING
SETTINGS, LLP,

            Defendants.

------------------------------------- X

HAROUT R, LLC,

      Defendant-Counterclaim Plaintiff,

      -against-

RITANI, LLC,

      Plaintiff-Counterclaim Defendant,

      -and-

JULIUS KLEIN DIAMONDS, LLC,

     Additional Defendant on the Counterclaim.

------------------------------------- X

Index No. 11-CV-8928 (RWS)(GWG)

**HAROUT AGHJAYAN'S MEMORANDUM
OF LAW IN SUPPORT OF HIS MOTION
TO DISMISS PLAINTIFF'S CLAIMS FOR
TORTIOUS INTERFERENCE WITH
PROSPECTIVE ADVANTAGE (COUNT
IX) AND MISAPPROPRIATION OF
TRADE SECRETS (COUNT VII) IN
PLAINTIFF'S FIRST AMENDED
COMPLAINT**

AMAZING SETTINGS, LLP,                              :
                                                   :
   Defendant-Counterclaim Plaintiff,     :
                                                   :
    -against-                         :
RITANI, LLC,                                        :
                                                   :
   Plaintiff-Counterclaim Defendant,      :
                                                   :
    -and-                             :
                                                   :
JULIUS KLEIN DIAMONDS, LLC,                         :
                                                   :
  Additional Defendant on the Counterclaim.   :
                                                   :
-------------------------------------- X
H. RITANI, CORP.,                                   :
                                                   :
   Defendant-Counterclaim Plaintiff,     :
                                                   :
    -against-                         :
RITANI, LLC,                                        :
                                                   :
   Plaintiff-Counterclaim Defendant,      :
                                                   :
    -and-                             :
                                                   :
JULIUS KLEIN DIAMONDS, LLC,                         :
ABRAHAM D. KLEIN, and JOSEPH                        :
MANBER,                                             :
                                                   :
  Additional Defendants on the Counterclaims. :
-------------------------------------- X
SHAWNDRIA AGHJAYAN,                                 :
                                                   :
   Defendant-Counterclaim Plaintiff,     :
                                                   :
    -against-                         :
RITANI, LLC,                                        :
                                                   :
   Plaintiff-Counterclaim Defendant,      :
                                                   :
    -and-                             :
                                                   :
JULIUS KLEIN DIAMONDS, LLC, ,                       :
                                                   :
  Additional Defendants on the Counterclaims. :
                                                   :
-------------------------------------- X

# TABLE OF CONTENTS

Page

Table of Authorities.................................................................................................ii

Preliminary Statement ............................................................................................1

Facts Relevant to this Motion.................................................................................2

The Original Complaint and the First Proposed Amendment................................2

The July Order........................................................................................................4

The First Amended Complaint ...............................................................................6

Argument.................................................................................................................7

I.      This Court's Previous Finding of Futility Is Law of the Case
        and Bars Ritani's Claim Against Harout for Tortious Interference.......................7

II.     Ritani's Claim for Tortious Interference Should Be Dismissed..............................8

        A.      The Standard on this Motion ...........................................................8

        B.      No Plausible Tortious Interference Claim is Pled ...................................10

III.    Plaintiff's Misappropriation Claim Against Harout Fails
        to State a Claim ..........................................................................................15

        A.      The First Amended  Complaint Merely Repeats the
                Allegations That This Court Already Held Did Not State
                A Plausible Claim ....................................................................15

        B.      Ritani Has Failed to Plead Facts Establishing
                that It Possessed "Trade Secrets"................................................16

Conclusion ............................................................................................................19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

C<small>ASES</small>

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................................8, 9, 14, 16

*Ashland Mgmt. Inc. v. Janien,* 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 917 (1993),
    *cert. denied,* 523 U.S. 1020, 118 S. Ct. 1300 (1998)..............................................................16

*B&M Linen, Corp. v. Kannegiesser, USA, Corp.,*
    679 F. Supp. 2d 484-85 (S.D.N.Y. 2010) ...............................................................................14

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................................................8, 9

*Bennie v. Munn,*
    No. 4:11CV3089, 2012 WL 1574453 (D. Neb. May 3, 2012)...................................................8

*Carvel Corp. v. Noonan,*
    350 F.3d 6 (2d Cir. 2003) ................................................................................................10, 12

*Cohen v. Stevanovich,*
    722 F. Supp.2d 416 (S.D.N.Y. 2010) .......................................................................................9

*DeSantis v. City of Troy,*
    83 Misc. 2d 195 (N.Y. Sup. Ct. Rensselaer Co. 1975)..........................................................10

*Haesler v. Novartis Consumer Health, Inc.,*
    Civil Action No. 05-372 (JAG), 2006 WL 2689830 (D.N.J. Sept. 18, 2006)..........................8

*Harris v. Mills,*
    572 F.3d 66 (2d Cir. 2009) ......................................................................................................9

*In re Crude Oil Commodity Litig,*
    Master File No. 06 Civ. 6677 (NRB) 2007 WL 2589482 (S.D.N.Y. Sept. 7, 2007) ...............8

*North Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43 (2d Cir. 1999) .........................................16

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,*
    813 F. Supp. 2d 489 (S.D.N.Y. 2011) ...................................................................................10

*Ritani v. Aghjayan,*
    No. 11 Civ. 8928 (RWS), 2012 WL 2979058 (S.D.N.Y. July 20, 2012)......................*Passim*

*Softel, Inc. v. Dragon Med. and Scientific Commc'ns, Inc.,* 118 F.3d 955,
    968 (2d Cir. 1997) .................................................................................................................16

*Sterling Interiors Grp., Inc. v. Haworth, Inc.,*
    No. 94 Civ. 9216 (CSH), 1996 WL 426379 (S.D.N.Y. July 30, 1996).......................10, 12, 13

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council,*
    857 F.2d 55 (2d Cir. 1988) .................................................................................................10

**STATUTES**

Fed. R. Civ. P. 7 ................................................................................................................2

Fed. R. Civ. P. 12(b)(6) .................................................................................................1, 9

**OTHER AUTHORITIES**

Restatement of Torts § 757............................................................................................16

**Preliminary Statement**

Defendant Harout Aghjayan ["Harout"] submits this Memorandum of Law in support of his motion, pursuant to this Court's Order dated September 28, 2012 (Dkt. 76) and Fed. R. Civ. P. 12(b)(6), to dismiss Count IX of the First Amended Complaint (Dkt. 54), in which Plaintiff Ritani, LLC ["Ritani"] seeks to hold him liable for tortious interference with business relationships under New York law, on the ground that this claim is barred by law of the case and not plausible.[1]  This Court correctly dismissed this claim as previously alleged against all Defendants, including Harout, in Ritani's original complaint and its first proposed amended complaint (Dkt. 1 and 16-2, respectively) in its Opinion filed July 20, 2012 [the "July Order"][2], deeming it "futile."  2012 WL 2979058 at *26.  Despite this explicit finding of "futility" and the Court's Order expressly denying Ritani the right to replead specific causes of action that it had dismissed (stating twice, in the July Order, that leave to serve an amended complaint was granted "subject to the causes of action dismissed in this Opinion" (*id.*)), Ritani flouted the Court's Order by including this cause of action in its First Amended Complaint.  Clearly, however, such is barred by the doctrine of law of the case.

Even if the July Order did not preclude Ritani from repleading this claim against Harout, the new tortious interference claim should be dismissed because it suffers from the identical infirmities that led to the Court's earlier finding of futility.  Despite the addition of new allegations regarding Blue Nile and Robbins Bros., Ritani still has failed to plead "the basis on which it claims the 'relationship' and the expectation it would yield future business" (2012 WL 2979058 at  21), despite this Court's admonition in the July Order that without such allegations

---

[1]  A copy of the original Complaint is found on the Court's docket as Dkt.1; the first proposed amendment was an exhibit to Ritani's motion to amend (Dkt 16-2).  The First Amendment Complaint, which is the subject of this motion, is Dkt. 54.

[2]  Reported as *Ritani, LLC v. Aghjayan,* No. 11 CIV 8928, 2012 WL 2979058  (S.D.N.Y. July 20, 2012)(Sweet, J.).

no plausible claim was pled.   Because the claim as repled still does not meet the standard of "plausibility," Harout's motion to dismiss should be granted.[3]

## Facts Relevant to this Motion

### The Original Complaint and the First Proposed Amendment

Plaintiff filed this action on December 7, 2011 against Harout, H. Ritani, Corp., H. Ritani, LLC, Amazing Settings, LLP, Harout R, LLC and an entity called "H. Ritani, Inc."    Among other things, Ritani alleged that Defendants had tortiously interfered with Ritani's relationships with two customers, Henne Jewelers and Ackerman Jewelers (Dkt. 1, ¶182).   Defendants moved to dismiss the complaint in its entirety.    That motion was fully briefed and orally argued on March 15, 2012.

While the motion to dismiss was *sub judice*, Ritani met and de-briefed Alexan Khatchadorian ["Alexan"], whom this Court described on the record in its decision denying Ritani's motion for a preliminary injunction as Harout's "turncoat partner."  Tr. 404.  On May 30, 2012, the very date that it moved for a temporary restraining order and preliminary injunction (both denied by this Court), Ritani moved for leave to amend the Complaint.  Dkt. 16.  In connection with that motion to amend, and pursuant to Fed. R. Civ. P. 7, Ritani provided the Court and Defendants with its proposed amended pleading [the "First Proposed Amendment"]. Dkt. 16-2.  Both the original complaint and the First Proposed Amendment asserted a claim against Harout and the Defendant Companies for tortious interference with business relationships under New York law (referred to as Count X in the July Order).  The amendment was sought after Alexan allegedly had provided copies of thousands of emails along with attached CAD-

---

[3] We are cognizant that this Court sustained a "misappropriation of trade secret" claim against Harout in its July Order.  However, for the same reasons as set forth in the accompanying motions to dismiss of Shawndria Aghjayan and Amazing Settings, LLP and Harout R, LLC, we believe no plausible claim has been stated against Harout, because Ritani has failed to plead facts demonstrating what Harout is alleged to have misappropriated and that such were actually "trade secrets" and used.  *See* Point III.

CAM files of rings. In June 2012, this Court held an evidentiary hearing on the application for injunctive relief regarding trade secrets and trademarks, which motion was denied by the Court's decision of June 11, 2012.

In the First Proposed Amendment, among other things, Ritani removed the words "upon information and belief" from several allegations, and added allegations of tortious interference with respect to different "customers," *i.e.,* Helzberg, Blue Nile and Robbins Bros.    Ritani contended that, in addition to the wrongdoing alleged in the original Complaint: Harout engaged in business discussions with these  additional "customers" while still employed by Ritani as an officer and its chief designer and during the period of his non-compete; Harout knew of Ritani's discussions with Helzberg and of the business dealings with Blue Nile; he disclosed [unspecified] "details" regarding the relationship between Ritani, Julius Klein Diamonds, LLC ["JKD"] and Blue Nile to Alexan, which information he allegedly used in some unstated way to "his business advantage;" and that Harout acted with a wrongful purpose by "actively soliciting Helzberg and Blue Nile's business away from Ritani, LLC during his non-compete period."  First Proposed Amendment, ¶¶210, 212-16.  Ritani further alleged that as a result of these activities, Ritani was damaged, including by "the breakdown of negotiations between Ritani LLC and Helzberg, which resulted in Helzberg's placement of $2.8 million worth of orders with Defendant Companies, as well as Ritani LLC's loss of over $1 million in sales from Blue Nile to Defendant Companies."  *Id.,* ¶217.    Ritani alleged that, "[b]ut for [Harout's] actions beginning in 2008 and continuing into 2010, <u>it is likely that Ritani LLC would have obtained the financial benefit of Defendants' initial contract with Helzberg, plus Defendants' ongoing business from Helzberg and Blue Nile.</u>"    *Id.,* ¶218 (emphasis added).

On June 27, 2012, Defendants responded to the motion for leave to amend by stating, "in response to the motion of May 29, 2012 of Plaintiff for leave to amend its complaint, the Court is respectfully referred to Defendants' motion to dismiss the original complaint (Docket Nos. 10-12 and 15) and the transcripts of the hearing on Plaintiff's motion for a preliminary injunction (Docket Nos. 40, 42, and 44) and the Court's decision of June 11, 2012."   Defendants continued, "If leave of Court to amend is granted, Defendants expressly reserve their right to raise defenses to the amended complaint, by way of motion or answer (including without prejudice by moving to dismiss the amended complaint), *inter alia,* for failure to state a claim, statute of limitations, and lack of subject matter jurisdiction."   Dkt. 47.

**The July Order**

In July 2012, after considering the allegations contained in both the original Complaint and the First Proposed Amendment, the Court issued its July Order granting, in part, Defendants' motion to dismiss. With respect to Plaintiff's application to amend the complaint, the Court stated the standard for leave to amend, as follows (2012 WL 2979058 at *9; emphasis added):

> "A district court has discretion to deny leave [to amend] for good reason, including futility, bad faith undue delay, or undue prejudice to the opposing party."   *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007); *see also AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.,* 626 F.3d 699, 726 (2d Cir. 2010) ("Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact).   In addition, an amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6).   *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991).

The Court expressly held that the claims it dismissed were "considered futile," accordingly, it granted Ritani leave to amend, but "subject to the causes of action dismissed in this Opinion."   *Id.* at *26.

Among the dismissed claims (and, thus, deemed futile), was the tortious interference claim. This Court characterized Ritani's allegations of tortious interference as set forth in its Original and First Proposed Amendment, as follows (at *21):

> Here, Ritani has alleged that Aghjayan interfered with its customers and potential customers, including "Helzberg, Blue Nile, Robbins Bros., Henne Jewelers and Ackerman Jewelers." (AC ¶ 182). The Amended Complaint states that Aghjayan and "actively interfered with Plaintiffs business relationships" (*Id.* ¶ 215, 371 N.Y.S.2d 310), and acted "with a wrongful purpose ... motivated solely by malice and/ or to inflict injury on Plaintiff by unlawful means." (*Id.* ¶ 216, 371 N.Y.S.2d 310), In addition, the Amended Complaint states that Aghjayan's actions led to "the breakdown of negotiations between Ritani LLC and Helzberg, which resulted in Helzberg's placement of $2.8 million worth of orders with Defendant Companies," and that but for Aghjayan's actions, "it is likely that Ritani LLC would have obtained the financial benefit of Defendants' initial contract with Helzberg, plus Defendants' ongoing business from Helzberg and Blue Nile." (*Id.* ¶11 217, 218, 371 N.Y.S.2d 310).

This Court held that these allegations failed to state a plausible tortious interference claim against any of the Defendants, including Harout, because "<u>Ritani has not alleged that, as a result of Aghjayan's actions, that any of these customers did not buy from Ritani, or that any order was canceled or that it had an actual, legitimate expectation as to their further patronage.</u>" *Id.* at *22 (emphasis added). Rather, "the allegation states that Helzberg and Blue Nile placed orders with the Defendant Companies and that "it is likely" that Ritani might have benefited from the initial contract." *Id.* This Court held, "[t]he allegations that Aghjayan met with potential customers or that some jewelers are now selling Harout R rings are not in and of themselves actionable." *Id.*

The Court concluded that the allegations also were insufficient because Ritani failed to plead facts showing Harout's malice, or any facts regarding relationships with any particular customer that was interfered with or harmed by Harout's actions, as follows (*id.*; emphasis added):

> <u>The Plaintiff has also not plead sufficient facts to show that Aghjayan acted "with a wrongful purpose ... motivated solely by malice and/ or to inflict injury" to Ritani.</u> In starting his new business ventures, Aghjayan set up meetings with

vendors that he was familiar with and with whom he had previous relationships with. <u>Ritani has not pled any specific facts as to business relationships with a specific jeweler that was interfered with and successfully harmed by Aghjayan's actions so that orders or business was lost due to those actions</u>.

**<u>The First Amended Complaint</u>**

Flouting the July Order, Ritani subsequently filed the "First Amended Complaint," which pleading was not consistent with that ruling (and differed from its proposed amendment), as Count IX thereof purports to assert a claim for tortious interference with business relationships against Harout.   When Defendants objected, Ritani's counsel asked the Court by letter, dated August 16, 2012, to consider the filed pleading as a "second" motion for leave to amend, characterizing the First Amended Complaint as an attempt to "replead" and cure the "deficiencies Your Honor found in the proposed Amended Complaint."   The Court apparently gave Ritani leave to amend, but ordered that Defendants could move to dismiss the First Amended Complaint on "any applicable grounds."  Dkt. 76.

Several grounds exist for dismissal.   Not only is this claim barred by law of the case, Ritani's newest version of the tortious inference claim <u>repeats virtually the same allegations</u> as were found wanting in the dismissed count.   Ritani has made some new allegations relating solely to Helzberg and Blue Nile (and nothing further about the any other "customers"), from which it concludes, <u>exactly as it had previously in the dismissed count</u>, that Harout has and continues to injure Ritani "by denying business to and diverting business from Plaintiff, which Plaintiff would have otherwise had and from which it would have derived a profit, including, without limitation, the breakdown of negotiations between Ritani and Helzberg, which resulted in Helzberg's placement of at least $2.8 million worth of orders with Defendant Companies, as well as Ritani's loss of $1 million in sales from Blue Nile to Defendant Companies."  *Id.* ¶218. In support of its new allegations, and despite this Court's admonition as to what had to be alleged

to state a plausible claim, Ritani points to no order that was actually placed and then canceled by reason of Harout's supposed activities, or any communication between Harout and either Helzberg and Blue Nile that supposedly cost Ritani this business.   Ritani also has not pled any facts to show that Harout acted with a wrongful purpose, motivated solely by malice and/or to inflict injury to Ritani, thus failing to plead such tortious interference claim.   As this Court previously found, this claim remains futile and should be dismissed.

## Argument

## I.

### This Court's Previous Finding of Futility Is Law of the Case and Bars Ritani's Claim Against Harout for Tortious Interference

In the July Order, this Court dismissed the claim for tortious interference against all the Defendants, including Harout, because: (1) Ritani had not alleged that, as a result of Harout's actions,  any of these customers did not buy from Ritani, or that any order was canceled or that Ritani  had an actual, legitimate expectation as to their further patronage; (2)  the allegations that Harout met with potential customers or that some jewelers are now selling Harout R rings are not in and of themselves actionable; (3) Ritani had not pled sufficient facts to show that Harout acted with a wrongful purpose motivated solely by malice and/or to inflict injury to Ritani; and (4) Ritani has not pled any specific facts as to business relationships with a specific jeweler that was interfered with and successfully harmed by Aghjayan's actions so that orders or business was lost due to those actions.  2012 WL 2979058 at *22.   Finding the claim to be futile, the Court denied leave to amend, as follows (*id.* at *26; citations omitted; emphasis added):

> Considering the permissive standard for motions to amend and the lack of opposition from the Defendants, the Plaintiff's motion [for leave to amend] is granted.  However, due to the procedural posture of this case and the Defendants' reply to refer to their arguments from their Motion to Dismiss the Initial Complaint to the Amended Complaint, <u>the Motion to Amend is granted subject to the causes of action dismissed in this Opinion, because they are considered futile</u>.

7

The July Order, expressly limiting leave to replead "subject to the causes of action dismissed in" the July Order, <u>denied Ritani the right to replead the dismissed claims</u>, including the claim for tortious interference.  *Id.*  This repled claim must be dismissed pursuant to law of the case.  *See Haesler v. Novartis Consumer Health, Inc.*, Civil Action No. 05-372 (JAG), 2006 WL 2689830 at *7 (D.N.J. Sept. 18, 2006) (counts in fourth amended complaint that were identical to counts in second amended complaint that had been dismissed for failure to state a claim upon which relief could be granted, were futile and had to be dismissed under law of the case doctrine); *see also Bennie v. Munn*, No. 4:11CV3089, 2012 WL 1574453 at *2 (D. Neb. May 3, 2012) (where motion to dismiss constitutional claim was granted, proposed amendment would not survive a motion to dismiss and was futile under law of the case doctrine).

Furthermore, the matters set forth in the "new" allegations of tortious interference contained in paragraphs ¶¶212-24 of the Amended Complaint concerning the supposedly lost sales to Blue Nile and Helzberg were known to Ritani before, at least, it proffered the First Proposed Amendment that was the subject of the July Order.  To permit them now "would be condoning a strategy whereby plaintiffs 'hedge their bets by holding such evidence back in the hopes of having another bite at the proverbial apple.'"  *In re Crude Oil Commodity Litig,* Master File No. 06 Civ. 6677 (NRB) 2007 WL 2589482 at *4 (S.D.N.Y. Sept. 7, 2007).  In light of the prior motion practice <u>leading to this Court's express finding of futility</u>, this Court should "exercise its discretion more exactingly" (*id.*), and dismiss the "new" tortious interference claim against Harout on the basis of law of the case.

**II.**

<u>**Ritani's Claim for Tortious Interference Should Be Dismissed**</u>

**A.**    <u>**The Standard on this Motion**</u>

Under the now well-established *Iqbal/Twombly* standard, a complaint should be

dismissed if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 663, 129 S. Ct. 1937, 1940 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). Plaintiffs must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Cohen v. Stevanovich,* 722 F. Supp. 2d 416, 423 (S.D.N.Y. 2010), *citing Iqbal,* 129 S. Ct. at 1949. Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678, *quoting Twombly,* 550 U.S. at 555.

The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "First, although `a court must accept as true all of the allegations contained in a complaint,' that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id., quoting Iqbal,* 129 S. Ct. at 1949. "'Second, only a complaint that states a plausible claim for relief survives a motion to dismiss' and '[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id., quoting Iqbal,* 129 S. Ct. at 1950.

Judged by this standard, the motion to dismiss should be granted. As demonstrated below, Ritani's supposedly "improved" allegations as to Harout's supposed "interference" are, in fact, no better than the ones previously held by this Court to be insufficient to state a plausible claim.

9

Ritani still has failed to plead facts showing "the basis on which it claims the 'relationship' and the expectation it would yield future business," despite this Court's admonition in the July Order that such, plus facts to show that Harout "acted `with a wrongful purpose . . . motivated solely by malice and/or to inflict injury' to Ritani," had to pled to make the claim plausible.  2012 WL 2979058 at *22,  This Court properly deemed this cause of action "futile" and denied Ritani leave to replead this claim.

**B.**     <u>**No Plausible Tortious Interference Claim is Pled**</u>

To state a claim for tortious interference with business relations under New York law, a plaintiff must allege that (a) the plaintiff had existing business relations with a third party; (b) the defendant, knowing of that relationship, interfered with it; (c) the defendant acted with the sole purpose of harming the plaintiff or by using dishonest, unfair or improper means; and (d) there was resulting injury to the business relationship.  *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir. 2003); *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council,* 857 F.2d 55, 74 (2d Cir. 1988)("must demonstrate that the defendant interfered with business relations *existing between* a plaintiff and a third party.")(emphasis added); *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC,* 813 F. Supp. 2d 489, 533 (S.D.N.Y. 2011);  *Sterling Interiors Grp., Inc. v. Haworth, Inc.,* No. 94 Civ. 9216 (CSH), 1996 WL 426379 at *25 (S.D.N.Y. Jul. 30, 1996) ("The cause of action for interference with prospective business dealings . . . is designed to address situations . . . [where] there was an *ongoing business relationship* between the plaintiff and a third party, but no existing contractual arrangement.") (emphasis added).  A plaintiff must plead the basis on which it claims the "relationship" and the expectation it would yield future business. *See DeSantis v. City of Troy*, 83 Misc.2d 195, 201 (N.Y. Sup. Ct. Rensselaer Co. 1975)(must plead that "but for" interference, it would have received contract).

No such claim is stated with respect to either of the two "customers" that are the subject of Ritani's new allegations, Helzberg and Blue Nile.[4]  First Amended Complaint, ¶210.  To the contrary, Plaintiff has failed to plead a plausible claim with respect to either of these "customers," despite the new allegations regarding them in the First Amended Complaint.

In the July Order, this Court held that no plausible tortious interference claim was stated because "Ritani has not alleged that, as a result of [Harout's] actions, that any of these customers did not buy from Ritani, or that any order was canceled or that it had an actual, legitimate expectation as to their future patronage."  2012 WL 2979058 at *22.  As demonstrated above, the

---

[4] In the First Proposed Amendment, and in paragraph 208 of its First Amended Complaint, Ritani alleges that Harout tortiously interfered with two additional "customers," Robbins Bros. and Henne Jewelers.  Regarding Henne Jewelers, Ritani , however, continues to allege only as follows:  "at least as early as the June 2010 Las Vegas show, and during the one year non-compete period, Defendant Aghjayan approached at least one other *former* customer in an effort to lure its patronage away from Ritani.  Ritani was informed of this solicitation through the receipt of a May 17, <u>2011</u> email from its customer, John G. Henne at Henne Jewelers, which states that he was approached by Defendant Aghjayan with respect to Defendants' [sic] Harout R catalog of jewelry at the June 2010 Las Vegas show.   As a result of this solicitation, Defendant Aghjayan actively interfered with Plaintiff's business relationship with Henne Jewelers, thereby impairing Plaintiff's goodwill, in addition to violating the non-compete provision of his contract."   First Amended Complaint, ¶87 (emphasis added).    Apart from whether Harout could have shown anyone a Harout R catalog at the June 2010 Las Vegas show (as Alexan testified, this Court found, and Harout has sworn under oath in a prior  affidavit that no catalogs then existed (Tr. 228, 410-11; Affidavit of Harout Aghjayan, sworn to September 10, 2012 ("Harout Aff."), ¶10)(Dkt. 72)), these allegations fall woefully short of stating a tortious interference claim.

Plaintiff has not alleged that there was any existing "business relationship" between itself and Henne (to the contrary, it concedes Henne simply was a former customer (First Amended Complaint, ¶87)), that Harout knew of that supposed relationship, or any facts showing that, assuming for the sake of argument, Harout showed Henne a Harout R catalog, that this injured any supposed  "relationship."  Nor does Plaintiff proffer any facts suggesting that Henne Jewelers failed to do anything, including failing to buy jewelry from Ritani, by reason of anything Harout allegedly did.

Even less is pled with respect to Robbins Bros.  Plaintiff alleges no more than the fact that in November 2010, *i.e.,* after his non-compete ended with respect to non-Ritani customers (customers not on its website) and one month before his non-compete ended with respect to Ritani customers like Robbins Bros., Harout traveled to California, where <u>Robbins Bros. is located</u>.   First Amended Complaint, ¶90.  Plaintiff does not allege a single fact connecting anything Harout might have done or said to Robbins Bros.  during that trip or proof of same – as nothing specific is alleged in that regard at all – or suggesting that because Robbins Bros. was one of the recipients of 7,000 flyers and a Harout R catalogue in 2011 (First Amended Complaint, ¶¶92-93), Ritani's sales to this customer declined.  Importantly, Plaintiff does not allege that during a trip to California in late 2010, Harout told Robbins Bros. not to do business with Ritani.  He did not.  Affidavit of Harout Aghjayan sworn to September 10, 2012 ["Harout Aff."] (Dkt. 72).

new allegations as to Helzberg and Blue Nile do not cure these deficiencies. Thus, based upon law of the case, the supposedly "amended" claims for tortuous interference should be dismissed.

As to Helzberg, Plaintiff continues to fail to allege any facts to support its contention that in late 2009 or 2010, Harout "was aware that Ritani was in final discussions with Helzberg." *Id.* ¶¶84, 212. As Ritani itself has pled, Harout left Ritani's employ on October 31, 2009 and had been working from home in September-October 2009. *Id.* ¶49. Significantly absent from the First Amended Complaint are any allegations of any meetings attended by Harout or conversations with him regarding Helzberg, or any other basis for Harout having knowledge of Plaintiff's supposed intentions with Helzberg to support this claim. Since Harout admittedly was no longer working at the Ritani office, he could not have heard of this even around the office. *Id.* ¶31.

Indeed, Ritani concedes that it had no actual relationship with Helzberg at all. The supposed prior "relationship" is nothing more than the coincidence that "Helzberg's top executives were former executives of Ritani customers dating back prior to Plaintiff's 2002 acquisition of H. Ritani, Corp. and lasting up until a few years ago." *Id.* ¶100. While Ritani alleges that it had a "very positive meeting" with Helzberg in January and February 2010 (long after Harout left), those meetings admittedly were "to discuss <u>entering into a business arrangement</u> [with Ritani] for the purchase of engagement rings and wedding bands." *Id.* ¶85 (emphasis added). Thus, there was no "business relations existing between Plaintiff and a third party" as required by *Carvel, supra.* There was no "ongoing business relationship" that was interefered with. *Sterling Interiors, supra.* Even if Helzberg's buyer informed Ritani that he wanted to do business with it in the future, as alleged in the First Amended Complaint (*id.* ¶213), such is insufficient to be actionable. Such "puffery" is so vague and inconclusive to support a

plausible claim for tortuous interference. <u>Ritani does not allege that any orders were actually placed by Helzberg, then canceled</u>. Thus, there was no tangible expectation of an order or business. Thus, these allegations fail to state a claim.

Nor does Ritani allege that it was advised by Helzberg that it did not ultimately buy from Ritani by reason of anything Harout said or did. The "abrupt[ ]" cessation of Helzberg's talks with Ritani could have been for any reason, and Ritani's "new" allegation (*id.* ¶213) that this "coincides" with Harout's meetings with Helzberg in 2010 (when, as Alexan testified in the preliminary injunction hearing, Harout had no existing rings to sell (Tr. at 229-30)), is patently insufficient to state a plausible claim. The failure to connect the dots requires dismissal.

With respect to Blue Nile, Ritani also fails to allege facts to establish that its alleged loss of sales were because of anything Harout did that was wrongful, rather than Ritani's mere "say so." Desperate to allege malice, Ritani contends that Harout actively went after the Blue Nile business because he knew that Blue Nile was one of Ritani's biggest customers when Harout sold his interest in 2007 to JKD. First Amended Complaint, ¶91. Yet it is undeniable that Ritani's Joseph Manber admitted under oath at the preliminary injunction hearing that Harout was first told about Ritani's relationship with Blue Nile in October 2007, <u>months after</u> H. Ritani Corp. sold its interest to JKD. Tr. at 83-84. Thus, this supposed "fact" alleged to show that Harout acted with a wrongful purpose is nothing of the kind.

Furthermore, not a single fact is alleged to support the contention that "as a result of Defendant Aghjayan's targeted solicitation of Blue Nile, Ritani's sales to Blue Nile" declined. First Amended Complaint, ¶91. Nor are any facts pled to support Ritani's allegation that Harout used Ritani's Confidential Information "to his advantage in his negotiations" with Blue Nile *Id.* ¶216. Indeed, Ritani never alleges any facts from which it could be concluded that Blue Nile's

supposed failure to place a single order with Ritani (*id.* ¶215) resulted from anything improper done <u>by Harout</u>, including, as Ritani alleges, his knowing use of Ritani's [unspecified] trade secrets and confidential information." *Id.* ¶217.

Ritani merely alleges, "[u]pon information and belief, Defendant Aghjayan convinced Helzberg not to do business with Ritani" (*id.* ¶219), and "[b]ut for Defendant Aghjayan's interference, Blue Nile would have placed launching orders in 2010 with Ritani and would have purchased all of Ritani's Designs from its true owner Ritani, and not Defendant Aghjayan and Defendant Companies" (*id.* ¶224), without any facts to support them. These are the very allegations that this Court found did not state a claim. 2012 WL 297905 at *21-22.

Like its predecessor pleadings, the First Amended Complaint also fails to contain sufficient allegations that Harout acted "with a wrongful purpose . . . motivated solely by malice" or wrongful means directed at the third-party. *Id.* Instead, Ritani conclusorily parrots some elements of the cause of action. Without "meat on the bones," these allegations are insufficient under *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949. Because "economic justification" allows a competitor to solicit business, the failure to allege that Harout acted "solely" in a wrongful way to interfere with Plaintiff's expectation of business from these customers, the claim is implausible. Further, there is no reason to conclude that either customer could not have purchased rings from both Ritani and one of Harout's companies.

In sum, and as previously held by this Court, no plausible claim is pled. Accordingly, this claim should be dismissed. *See B&M Linen, Corp. v. Kannegiesser, USA, Corp.,* 679 F. Supp.2d 484-85 (S.D.N.Y. 2010)(dismissing claim for tortious interference for prospective advantage; plaintiff has not alleged that defendants intended to disrupt its business relationships, much less offered any factual support for such a contention).

### III.

### Plaintiff's Misappropriation Claim
### Against Harout Fails to State a Claim

**A.    The First Amended Complaint Merely Repeats the Allegations**
**That This Court Already Held Did Not State a Plausible Claim**

In alleging misappropriation, Ritani still fails to plead how or which of its trade secret files was used.  In this regard, the failure to so demonstrates nothing more than Ritani's attempt to re-state its dismissed copyright infringement claim (which it has not even tried to re-plead) as a "trade secret" claim.  The failure to show "substantial similarity of any design element or ring required this Court to dismiss the copyright claim; there is no reason to view the "trade secret" claim in a different manner.

Nowhere has Ritani connected the dots to show what design files it has, that were in Harout's possession, and were used by Harout.  Further, as this Court found in connection with Ritani's unsuccessful application for a preliminary injunction, Ritani must allege "that a particular Ritani design, that is to say [a] particular Ritani CAD/CAM file, has been used and resulted in a particular product that has been offered for sale."  Tr. 413.    The First Amended Complaint does not contain these allegations.   To the contrary, the First Amended Complaint clearly fails to allege that any particular design or CAD-CAM file belonging to Ritani was used to by Harout create even one of the Corporate Defendants' rings.  There is not a single specific, plausible allegation that connects even one of Ritani's CAD-CAM files, to one of Corporate Defendants' rings – let alone to show that such a design file is in Harout's possession.

With months having passed, and having been able to review the Corporate Defendants' websites and catalogues both before it even brought suit and subsequent to having received the emails and CAD-CAM files from Alexan last April, Ritani has not made the requisite showing. Ritani has had the time to review and should have been able to identify which "designs" Harout

supposedly used allegedly belonging to Ritani by the time Ritani served its First Amended Complaint. Its failure to allege any such facts in the First Amended Complaint speaks volumes. Further, the failure to plead facts demonstrating *use* of a trade secret by these Defendants makes this claim implausible and therefore it should be dismissed.

**B.    Ritani Has Failed to Plead Facts Establishing that It Possessed "Trade Secrets"**

As previously noted, it is well established that while the court must accept the factual allegations of a complaint as true on a motion to dismiss, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 556 U.S. at 678, 129 S.Ct. at 1950. Ritani's assertion in the First Amended Complaint that what was allegedly misappropriated by Harout were, in fact, "trade secrets," is precisely the kind of legal conclusion that this Court need not treat as true on this motion.

To recover under New York law for misappropriation of a trade secret, a plaintiff must demonstrate that it possessed a trade secret. *North Atl. Instruments, Inc. v. Haber,* 188 F.3d 38, 43 (2d Cir. 1999). New York looks to § 757 of the First Restatement of Torts for its definition of trade secrets. *See Softel, Inc. v. Dragon Med. and Scientific Commc'ns, Inc.,* 118 F.3d 955, 968 (2d Cir. 1997), *citing Ashland Mgmt. Inc. v. Janien,* 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 917 (1993), *cert. denied,* 523 U.S. 1020, 118 S. Ct. 1300 (1998). Among the Restatement factors are: the extent to which the information is known outside of plaintiff's business; the extent to which it is known by employees and others involved in plaintiff's business; the extent of measures taken by the plaintiff to guard the secrecy of the information; and the ease or difficulty with which the information could be properly acquired or duplicated by others. *North Atlantic,* 188 F.3d at 44. "Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret" and to be secret, the plaintiff must have employed "precautionary measures to

preserve such exclusive knowledge." *Frink America, Inc. v. Champion Rd. Machinery Ltd.,* 48 F.

Supp.2d 198, 206 (N.D.N.Y. 1999).

 Judged by this standard, the unidentified designs and unspecified CAD-CAM files are

simply not protectable as trade secrets.   Indeed, this Court found in connection with the

preliminary injunction hearing herein, that "Perfect Match," which was alleged by Ritani to be a

trade secret (First Amended Complaint, ¶68), is <u>not</u>.   Tr. at 412.   The same is true of the other

"trade secrets" claimed by Ritani.   As also revealed in connection with Ritani's unsuccessful

effort to obtain a preliminary injunction in this action, and as set forth in the Affidavit of

Shawndria Aghjayan, sworn to September 10, 2012 ["Shawndria Aff."], submitted in connection

with Defendants' opposition to Ritani's motion for leave to amend (Dkt. 73):  (i) Ritani routinely

sent such designs to others without requiring non-disclosure agreements, including to an

individual named Sako Kafian in New York, and to entities in Thailand called Beautygem and

Artinian, and in China called KTL; (ii) knowing that Harout had Ritani designs on his home

computer, and approving of such, never sought to recover such designs from his computer or

requested that his computers be scrubbed when Harout's  employment terminated; (iii) Plaintiff

did not require all of its CAD-CAM operators to sign non-disclosure agreements and failed to

take reasonable measures to guard their secrecy, including by allowing access to all computers

by the use of the same password and failing to place a legend or notation on them identifying

them as "confidential" or "proprietary" or to conduct any exit interviews with departing

employees or demand confirmation that they returned all materials claimed to be proprietary; (iv)

such could be acquired or duplicated with minimal effort by Harout and Shawndria Aghjayan;

and (v) they were generally known in the industry, easily obtainable through reverse engineering

and developed independently by Defendants.   Shawndria Aff. at ¶¶ 4-6; Tr. at 78-79.   Moreover,

skilled CAD-CAM designers, like Harout and Shawndria, can readily complete a design using CAD-CAM software (which is publicly available) and did not need Plaintiff's styles or design files to do so, nor did they use Plaintiff's files.  Harout Aff. at ¶16; Shawndria Aff. at ¶6. Moreover, just as Ritani did not take any steps to retrieve CAD-CAM files from Harout (though Ritani had sent them to him and knew he had worked on them on his home computer), Ritani has allowed Alexan to retain copies of the files.  Thus, they lost their trade secret status, were such ever attained.

CAD-CAM software itself is publicly available and ownership thereof is not a misappropriation of a trade secret.  Moreover, Harout owned his own copy of "jewelcad" software, which was on his own personal computer, and of course, Ritani knew he had that software, as Ritani alleges that he used such (as late as September-October 2009) to work on Ritani's designs at his home, on his un-secure home computer.  First Amended Complaint, ¶49; Harout Aff. at ¶17.   By Ritani sending these files to Harout and not securing them on their return, if they ever had trade secret status, they lost such protection.   Ritani failed to take requisite steps to protect the secrecy of these materials.   Ritani's effort to restore "trade secret" status to its designs for purposes of holding Harout liable for misappropriation must be rejected.

For these reasons as well, no claim for misappropriation of trade secrets is stated, and thus, this claim should be dismissed.

## Conclusion

As demonstrated by the foregoing, this Court correctly held that no claim for tortious interference was or could be stated, *i.e.,* that it was futile. That decision is law of the case. Even if the claim was not dismissed for this reason, because the First Amended Complaint does not cure the deficiencies in this claim as previously identified by this Court, Count IX of the First Amended Complaint should be dismissed. In addition, the misappropriation of trade secrets claim, Count VII, should be dismissed. Leave to replead should be denied.

Dated: Garden City, New York
       November 1, 2012

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.

By:/s/ *Erica B. Garay*
    Erica B. Garay
    Lynn M. Brown
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York  11530-9194
egaray@msek.com
lbrown@msek.com
Attorneys for Defendants and Counterclaim Plaintiffs

19

909246