UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                               :
                                          Docket #11-cv-08928
RITANI, LLC,                         :

                    Plaintiff,       :

   - against -                       :

AGHJAYAN, ET AL.,                    :
                                          New York, New York
                                     : May 1, 2013
                    Defendants.
------------------------------------- :

                        PROCEEDINGS BEFORE
                THE HONORABLE GABRIEL GORENSTEIN,
            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:        LEASON ELLIS LLP
                          BY:  PETER SLOANE, ESQ.
                               CAMERON REUBER, ESQ.
                               JONATHAN THOMAS, ESQ.
                          One Barker Ave, Fifth Floor
                          White Plains, New York 10601
                          (914) 288-0022


For the Defendants:       MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
                          BY:  ERICA GARAY, ESQ.
                          990 Stewart Avenue, Suite 3000
                          Garden City, New York 11530
                          (516)741-6565




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

1          THE CLERK:   Ritani v. Aghjayan, docket 11cv8928.

2   Counsels, please state your name for the record.

3          MR. PETER SLOANE:    Peter Sloane from Leason Ellis

4   LLP for plaintiff Ritani LLC, with my associate Cameron

5   Reuber and Jonathan Thomas.

6          MS. ERICA GARAY:  Good afternoon, You know, Erica

7   Garay, Meyer Suozzi English & Klein, P.C. for the

8   defendants.

9          THE COURT:   Okay, welcome.  You can be seated if

10  you're not addressing the Court.  We're here today based on

11  letters dated April 12th, 22nd, and then 24th.  I guess we'll

12  do this in pieces.  I guess, Miss Garay, what – you know,

13  the theory here in my view is if there's some, you know,

14  factual sharpening that the plaintiff can do that they

15  already know, that it often makes sense to reveal it.  But

16  if it's a situation where the plaintiffs themselves are

17  trying to figure things out, then there's nothing to

18  reveal.  So what piece of information do you think it is

19  that they're sitting on that you want them to give you?

20         MS. GARAY:   Your Honor, let me address that in

21  two ways.  First of all, I have received no documents from

22  the plaintiff other than --

23         THE COURT:   Can we do this in pieces the way I

24  suggest?  So I want to start with what's been referred to

25  as the contention interrogatory issue.

4

1          MS. GARAY:    Yes, Your Honor, I'd be happy to

2   address that first.   Your Honor, plaintiff last April

3   received emails from what Judge Sweet called the turncoat

4   partner, Alexon Kachadorian, and the plaintiff moved for a

5   preliminary injunction and a TRO to restrain the defendants

6   from using the plaintiff's CAD-CAM files, what it called

7   trade secrets, in the defendants' designs.   They also

8   amended their complaint at that time, or sought leave to

9   amend it, to include allegations regarding these emails and

10  the CAD-CAM files.

11          The complaint itself is bereft of specific

12  allegations as to what CAD-CAM file belonging to the

13  plaintiff must have been used and showed up in a design of

14  the bridal jewelry manufactured by any of the defendants.

15          We had a hearing in front of Judge Sweet last

16  June, and he denied, after the plaintiff put on its case,

17  he denied a preliminary injunction.   And part of what he

18  held, and I'm reading from the transcript on page 413, he

19  said that they had not established a causal link, and he

20  said that because an injunction, or damages for that

21  matter, would be against the sale of a produce that

22  resulted from a Ritani CAD-CAM file and that there was no

23  link for that.   And that he said that the prima facie case

24  that the plaintiff had to establish was that a particular

25  Ritani design, a particular Ritani CAD-CAM file had been

5

1  used and resulted in a particular product offered for sale

2  by the defendants.

3          So I served an interrogatory, Your Honor, that

4  asked them that question.  It's now over a year later; they

5  have their own thousands of CAD-CAM files and they've had

6  for more than a year and probably two years the defendants'

7  catalogues.  They could certainly look at the end result

8  and be able to allege very specifically what files that

9  they own must have resulted in which particular rings that

10  the defendants are offering for sale.  That's what we're

11  looking to defend against, Your Honor, in their trade

12  secret claim.  They have to establish, as they admit, that

13  they have something that is a trade secret and that it was

14  used by a defendant.

15          So I'm asking, and it's really kind of almost like

16  the reverse engineering, you look at the ring and these

17  are, they have a staff of designers, they can tell me which

18  ring that my client is selling is derived from which of

19  their designs.  That's the essence of the case.

20          When we were here last March on the Cantor

21  Fitzgerald motion, Your Honor, we addressed that issue, and

22  you encouraged --

23          THE COURT:   Do me a favor?  Did you order that

24  transcript?

25          MS. GARAY:   I don't have it with me, Your Honor.

```
 1                THE COURT:   Don't refer to anything --
 2                MS. GARAY:   Okay.
 3                THE COURT:   -- I say without a transcript because
 4   it doesn't help me and I need refreshing and backing up.
 5   So let's not reference that.
 6                MS. GARAY:   Okay.  Your Honor, it's impossible
 7   for us to defend a claim where we don't know what they
 8   contend we use.  And it's not the kind of - you know, I'm
 9   not even just talking about a trial by ambush here, but
10   where a plaintiff is saying I sell bridal jewelry, you've
11   copied it by using my design files, I need to know which
12   ring of my client's is derived from which of their rings
13   and design files.  Your Honor, not only does that help us
14   try the case and defend the case, but it also helps us
15   settle the case even if we know what is the gravamen of
16   their complaint.
17                So that is why we asked this interrogatory, which
18   they state is a contention interrogatory prematurely asked,
19   I think it goes to the heart of the case for us to know --
20                THE COURT:   Well, it may go to the heart of the
21   case, but I'm still framing it, if you recall, in a
22   different way, which is, is it that you think they're
23   sitting on this information or refusing to divulge it or
24   they're using the discovery process and maybe even the
25   expert process --
```

7

1          MS. GARAY:   Your Honor, I think they know --

2          THE COURT:   If I could just finish my sentences,

3    Miss Garay.

4          MS. GARAY:   Oh, I apologize.

5          THE COURT:   Were they using the discovery process

6    or even the expert process to figure out the answer to that

7    question?  And if, in fact, they are using the discovery

8    process or the expert process to figure it out, why are you

9    entitled to know what that answer is?

10         MS. GARAY:   I think for two reasons, Your Honor.

11   First of all, I think what they're doing is they are not

12   answering the question because they know my client didn't

13   use any of their CAD-CAM files to create any of the

14   defendant's jewelry.  So they know --

15         THE COURT:   Well, if that's the answer, then

16   you'll know that soon enough, and they will lose the case,

17   right?

18         MS. GARAY:   Well, Your Honor, I think I have a

19   right to know so I can defend against the case.  They have,

20   Your Honor, the catalogues and the website that shows every

21   single ring that my --

22         THE COURT:   But you have all that too.

23         MS. GARAY:   But I don't know - and I don't know

24   what ring --

25         THE COURT:   But you will know eventually.

8

1          MS. GARAY:   How, Your Honor?   Am I supposed to

2    take a deposition of a --

3          THE COURT:   No, no, you'll know – maybe it'll be

4    through an expert report.   Tell me why you need to know

5    now.

6          MS. GARAY:   Because --

7          THE COURT:   Maybe you need to know it to respond

8    to an expert report.

9          MS. GARAY:   Because I need to know the factual

10   basis on which an expert would be testifying, number one.

11         THE COURT:   But the facts are presumably someone

12   comparing these file and the designs.

13         MS. GARAY:   Because, Your Honor, I think that

14   it's – we're not talking about just --

15         THE COURT:   Or maybe in discovery someone will

16   break down and confess that they used the files, who knows.

17         MS. GARAY:   Well, Your Honor, that's my client,

18   right, the using of the file.

19         THE COURT:   Right.

20         MS. GARAY:   I think if they bring a lawsuit

21   saying you've stolen my trade secret and you've used it in

22   your jewelry, why can't I ask them which ring used what

23   trade secret?   In other words --

24         THE COURT:   Because maybe they can't give you a

25   definitive answer without going through this process.

1          MS. GARAY:   But, Your Honor, they know what files

2   they have, whether my client would have had – and we're

3   talking about thousands of files, okay.  So if I want to

4   depose the plaintiff and find out, okay, which rings –

5   we're talking about hundreds of designs in my client's

6   catalogues.  It's not very conducive to doing it at a

7   deposition when there's also thousand --

8          THE COURT:   I'm not saying it should be done at a

9   deposition.

10          MS. GARAY:   Well, Your Honor, if I wait until I

11   get their expert report --

12          THE COURT:   Because I don't know this is

13   something within the personal factual knowledge of, you

14   know, the plaintiff's principal.

15          MS. GARAY:   Well, Your Honor, if I don't get this

16   information until there's an expert report at the end of

17   the case, then the fact discovery is over and it makes it

18   difficult for me to then go back and find out, for example,

19   what security they used for that file, why it's a trade

20   secret, whether that file, whether my client even had

21   access to the file.  So, in other words, if fact discovery

22   is over and then they later have an expert who's opining

23   on, what, then I think it's prejudicial to my client

24   because, Your Honor, they've never been able to tell us

25   even informally, and the complaint doesn't tell us, which

1   is why we have a motion to dismiss the complaint pending,

2   that there's just no notice and opportunity to defend these

3   claims, which they're seeking substantial damages, as Your

4   Honor knows.

5           So I think it's only appropriate for them, and let

6   them answer and say under oath that they don't know, or

7   under oath that they, what information they do have or what

8   they're suspicious of.  But to just give me an objection I

9   think isn't advancing the cause, and it's really making

10  litigation into a game and rich man's sport.  Because, Your

11  Honor, if they know at this moment that they have no proof

12  that my clients used anything, because my clients didn't

13  use any of their, then all they're doing is trying to bleed

14  my clients dry and just prolong these proceedings for no

15  good faith reason.

16          THE COURT:  I'll hear from the other side.  When

17  are you planning to divulge this and in what form?

18          MR. REUBER:  Your Honor, we've only been on the

19  case for a little over a month.  During that time, I

20  alluded to it in our letter, that we've been I don't want

21  to say distracted, but we've been bogged down with other

22  issues unrelated to discovery.  We're trying to get our

23  arms wrapped around this case.

24          THE COURT:  Well, if the answer is you can't

25  answer my questions, then let's set a new date for this

1  conference.

2          MR. MR. REUBER:   Well, I can --

3          THE COURT:   But if you can answer my question,

4  I'd appreciate it.

5          MR. MR. REUBER:   Well, the problem is that the

6  issue is conflated, and I think that's a large part of this

7  particular problem.  The conflation here is between

8  copyright law, which is  no longer a part of this case, and

9  trade secret law, which is really the touchstone of this

10  case now.

11          Much of the argument you just heard was about

12  comparing and comparison and copying.  We don't need to

13  prove any of that for a trade secret claim.  We need to

14  prove --

15          THE COURT:   So is your intention not to identify

16  specific designs as having been derived from specific --

17          MR. MR. REUBER:   Our current intention --

18          THE COURT:   If I could just finish my sentences,

19  everyone.

20          MR. MR. REUBER:   I'm sorry, sir.

21          THE COURT:   It's not a conversation.  We're being

22  recorded, and it's gonna be transcribed if someone orders

23  the transcript, and if two people are talking, it doesn't

24  work.  Hold on.

25          Is it your intention to show in your trade secret

1  claim that there were specific rings that came from copying

2  or use of specific files?

3        MR. MR. REUBER:  As I understand the case today,

4  no, Your Honor.

5        THE COURT:  So you're not planning to do that at

6  all.  And I'm not saying you have to.  But Miss Garay's

7  point is that there could be specific discovery issues that

8  are – if you are going to do that through an expert or

9  something else, that there are specific discovery issues

10  that could arise, factual discovery issues that will then

11  be, you know, it'll have to be reopened if we find out the

12  sort of thing too late.  Do you see the problem?

13        MR. MR. REUBER:  I understand completely, Your

14  Honor.  And to the extent that, as we're going through

15  these documents that we come to the conclusion that there

16  are very close similarities between the two where we can

17  actually point out that as an element to the trade secret

18  case, here's our designs, here are their designs.  We have

19  the former business partner who's testified that he used

20  design A to make design B, and here's the proof thereof, I

21  would agree in that particular instance that for those

22  select designs that we find there's substantial similarity

23  to, then we can say, hey, this design is close enough that

24  it actually adds to the proof, we don't have to rely purely

25  on the witness' testimony that he did use design A and

1  design B, the proof is in the pudding, your eyes will you

2  the truth, yes.  But for all of the designs, absolutely

3  not.

4          THE COURT:   So — I'm not quite sure I followed

5  that.  You're saying you may find such evidence, you don't

6  have it at the moment, but it could come up as part of

7  someone admitting something in discovery?

8          MR. MR. REUBER:   Well, Your Honor, it's a trade

9  secret case to the extent that the CAD-CAM designs are

10  basically building blocks that are used to design rings.

11  They could have conceivably used these trade secrets, these

12  CAD-CAM designs, to completely renovate and redo every

13  single design so that it does not approximate the earlier

14  design.  That's still a violation of the trade secret

15  because they could not have created that design without the

16  underlying design.  You cannot use business assets from a

17  prior business without authorization and turn it into a

18  turnkey business and then compete with your prior employer.

19          THE COURT:   Okay.  I don't want to get into the

20  merits of whether that's sufficient or not sufficient, let

21  me just make that clear now.  I'm just trying to deal with

22  the narrow issue of whether there's something you should be

23  responding to now in terms of identifying specific files

24  that were used or specific rings or designs that were

25  created using those files.

1        So the way I'm thinking about the problem is is

2   there some information you have on that now or do you have

3   no information on that at this point?

4        MR. MR. REUBER:   Unfortunately, with the amount

5   of time we've been able to spend on the case delving into

6   its merits, I cannot answer that question.  But I can say,

7   you know, that to the extent this is going to be an issue,

8   if you give us 30 days without any interruption, without

9   having to argue a motion that really should have been

10  fought even months ago or after the case is over without

11  having to come here and argue discovery motions about we

12  haven't produced, at the end of 30 days I will be able to,

13  as far as I understand, produce the documents that they've

14  been waiting for.  I will be able to identify which 84

15  designs we think were misappropriated from us as well as

16  identify the designs that we believe were created using

17  those 84 designs.

18       THE COURT:   Say that again.  Which designs were

19  using — I'm sorry, say that what you just said again.

20       MR. MR. REUBER:   There's the core 84 designs that

21  we believe were emailed from --

22       THE COURT:   Your designs.

23       MR. MR. REUBER:   Our designs.

24       THE COURT:   Are those embodied in these CAD-CAM

25  files?

1          MR. MR. REUBER:   As far as I know, yes.

2          THE COURT:   Okay, and so what it is you could ID?

3  You could ID which of those --

4          MR. MR. REUBER:   We can ID which of those were

5  transmitted from our client's files.

6          THE COURT:   Okay.

7          MR. MR. REUBER:   To the business partner in

8  China.

9          THE COURT:   Okay, and then what could you do?

10         MR. MR. REUBER:   We could then identify what we

11 believe those 85, 84 designs were used to create.

12         THE COURT:   Which of defendant's products.

13         MR. MR. REUBER:   Correct.

14         THE COURT:   Oh, that sounds like what she wants.

15 You're just saying you want 30 days.

16         MR. MR. REUBER:   Yes.

17         THE COURT:   Oh, okay.  Well, that makes life

18 simpler.  All right.  So I'm ordering you to respond to

19 that within 30 days.

20         MR. MR. REUBER:   Thank you, Your Honor.

21         THE COURT:   June 1.  Okay, next issue is document

22 requests I guess.  It seems like this is a little bit in

23 flux.  Also, Miss Garay, you did something that I don't

24 permit under my rules, which is to attach letters from the

25 other side to identify for me issues.  You have to put

1   those in your own letter.

2           MS. GARAY:   I'm sorry, Your Honor.

3           THE COURT:   So that's in paragraph 2(a) of my

4   individual practices.

5           MS. GARAY:   I apologize.

6           THE COURT:   So where – I mean has there been

7   developments on this?  We're already on this?  What do you

8   me want me to do on this?

9           MS. GARAY:   Your Honor, I haven't gotten anything

10  from the defendant, I mean from the plaintiff.

11          THE COURT:   Okay, so let's go through the issues.

12  Are there things -- I mean I don't want to waste my time.

13          MS. GARAY:   Your Honor, I don't want to waste

14  your time either --

15          THE COURT:   Mr. Sloane, are there things that are

16  about to happen that's gonna change what we go through

17  today?

18          MS. GARAY:   Well, Your Honor, I haven't --

19          THE COURT:   Can I just finish – I asked Mr.

20  Sloane a question.

21          MS. GARAY:   I apologize.

22          MR. REUBER:   Your Honor --

23          THE COURT:   Everyone stop talking when I'm

24  talking please.  Since I asked Mr. Sloane a question, I'd

25  like --

 1          MS. GARAY:   Yes.

 2          THE COURT:   -- I'd like him to be able to answer

 3   it.  Go ahead.

 4          MR. REUBER:   Your Honor, we're in the --

 5          THE COURT:   I'm sorry, I thought that was Mr.

 6   Sloane talking.  That was Mr. who?

 7          MR. REUBER:   Reuber.

 8          THE COURT:   Reuber. Whoever wants to answer, I

 9   don't care.

10          MR. REUBER:   Thank you, Your Honor.  Your Honor,

11   we're still trying to wrap our arms around this case.  To

12   the extent that we can work with opposing counsel, we've

13   had two conversations, and it seems like every conversation

14   we have it's a moving target the next time.  If we can have

15   in writing exactly what she's asking for narrowed down --

16          THE COURT:   You don't' think it's in the letter?

17          MR. REUBER:   -- we'd be more than happy to

18   cooperate.

19          THE COURT:   You don't think it's in her letter?

20          MR. REUBER:   I don't believe it's in her letter,

21   Your Honor, and I still don't understand, to the extent

22   defendant's request 61, produce all documents concerning

23   devaluation of initial model and inventory valuation by 315

24   which we reduce Ritani's capital account.  Give me some

25   identification of where that particular excerpt came from

1  so I can go look at it, we can have a meeting of the minds,

2  and so when I can go to my client and identify what that

3  is, I'd be more than happy to figure out exactly what's

4  going on, see if we have documents to respond to it.

5          THE COURT:   You're reading from what?  That was

6  very quick, by the way.

7          MR. REUBER:   Defendant's request number 61,

8  produce all documents concerning the "devaluation of

9  initial model and inventory valuation by 315,000" which we

10  reduce Ritani's capital account.

11          THE COURT:   You don't know what the quote is.

12          MR. REUBER:   I have no idea what that quote is.

13          THE COURT:   This conversation wasn't had?

14          MR. REUBER:   This conversation was had, Your

15  Honor, it was had before, and then the answer changed in

16  the second conversation between counsel, and then we asked

17  for, in writing, exactly what you're looking for, she was

18  looking for, and we never received it.  Instead, we

19  received on April 2 a letter that was attached indicating

20  that she was disappointed that our conversation that we had

21  the previous day didn't reflect exactly what was going on.

22  In fact, the answer still doesn't identify where that issue

23  came from.  We still don't know where that quote came from,

24  and her letter did not respond to that.

25          THE COURT:   Miss Garay.

```
1              MS. GARAY:   Yes, Judge.

2              THE COURT:   61.

3              MS. GARAY:   Your Honor, there are only a few

4   financial statements at issue.  I'd be more than happy to

5   point out in a follow-up call if they've been unable to

6   locate the footnote to their own client's financials.  I'd

7   be more than happy to provide that information.

8              Your Honor, the plaintiff was, has not produced

9   any documents to me except financial statements and the

10  stack of emails that they got from a non-party, my client's

11  former "turncoat" partner.  I've got nothing from them, and

12  fact discovery ends June 28.

13             I think the fact that the plaintiff changed

14  counsel is not my problem.  We had agreed, Your Honor,

15  after, to adjourn the date the documents were due from the

16  end of December to mid-January because we had a settlement

17  conference with Your Honor.  And after that settlement

18  conference, when the parties were continuing their

19  discussion, Mr. Ratting, the former counsel, asked for us

20  to adjourn the date to mid-February, I've got nothing from

21  them.

22             THE COURT:   Okay, that's not the issue I want to

23  talk about now.  The issue I want to talk about now is your

24  letter which talks about five specific requests and seeks

25  to have me issue a ruling about what should and should not
```

1  be produced.  And I'm going to find out during this that a

2  conversation between the two of you would have reached an

3  agreement as to what should or should not be produced, I'm

4  going to be very annoyed.  If all that's at issue is

5  timing, we can talk about that separate I suppose.

6       But have each of these issues been discussed and

7  you're confident that there's no resolution, there's

8  something for me to do?  Because you didn't really present

9  it -- I really called this conference because of the first

10 issue which seemed had been presented.  These you just list

11 in a single paragraph, you didn't follow my rules as to

12 giving both sides' positions.  You attach letters which I

13 haven't read because it violated my rules.  Is this

14 something we should do now or is it something the two of

15 you could work out?  You could even use my jury room if you

16 want.  You tell me, Miss Garay?

17       MS. GARAY:   I'm more than happy to talk to the

18 plaintiff's counsel further, Your Honor, but I think – and

19 I'm more than happy to do that.

20       THE COURT:   Let's do that, and if you have a

21 problem, write me tomorrow.  Follow my practices.  Lay out

22 exactly what the dispute is.  I might not even have to have

23 you come in.  I can just make a ruling based upon – a well-

24 written letter, I can make a ruling based upon it because I

25 understand what the issue is and what the dispute is.

 1          MS. GARAY:    I apologize, Your Honor.  Your Honor,

 2   could I just ask the basic question of the fact that the

 3   plaintiff hasn't produced documents.  Perhaps if we could

 4   address that, it would make these little items --

 5          THE COURT:    I mean let me turn to the defendant.

 6   Let's assume that we reach an understanding of what's being

 7   requested and you understand it's something you're gonna

 8   have to produce.  When are you gonna produce it?

 9          MR. REUBER:    Your Honor, it's more a question of

10   manpower.  We have specifically asked - two weeks after we

11   got on the case, on April 1, we get the letter for a motion

12   for attorney's fees.  We asked her, asked opposing counsel

13   --

14          THE COURT:    Can you answer my question first

15   before you give me an explanation for the answer?

16          MR. REUBER:    Sure, Your Honor, the answer is that

17   we've met with our e-discovery personnel on Monday.  We're

18   trying to put a plan in place later this week, and

19   hopefully we're gonna start processing.  We have 27 gigs'

20   worth of information we're trying to process, and that's

21   supposed to start early next week.

22          THE COURT:    And you can't tell --

23          MR. REUBER:    I cannot tell --

24          THE COURT:    -- you don't have an answer as to

25   when documents would be produced.

1          MR. REUBER:    I do not have an answer, Your Honor.

2    It's as fast as we can burn through those 27 gigs.

3          THE COURT:    Well, I think what we have to do is

4    this, I think you have to be extremely forthcoming with

5    defendant's counsel as to precisely what's going on with

6    managing that discovery, with reviewing it, with how many

7    pages are going, and at what rate.  And I can't order he

8    impossible, but I can order the expensive if I think you're

9    not going fast enough.  So that's the kind of information

10   you're gonna have to give Miss Garay, and I think you're

11   gonna also have to give information as to costs.

12         I don't know what choice I have, Miss Garay.  The

13   firm came in just a few weeks ago, and, you know, I suppose

14   if there was some egregious problem, one could say, oh,

15   well, you missed your deadlines, and too late, and now I'm

16   defaulting you.  I'm not sure what the sanction would be.

17   But I'm not going to do that at this point.

18         The case, it's, unfortunately, gone on for a long

19   time, but a delay of a couple of weeks, three weeks,

20   whatever is not going to be big in the scheme of things.  A

21   delay of three months is going to be totally unacceptable,

22   and if they can't produce documents in a period of months

23   rather than days, than weeks, then we may be talking a

24   preclusive sanction or some other sanction because you

25   don't get a free pass just because you changed law firms.

1    But we have to do this a step at a time, and step
2    one is gonna be to have an understanding of precisely what
3    it is they do have to produce, which is why you need to try
4    to work about 58 through 62 with them, and if you can't,
5    come back to me immediately.  And then step two is going to
6    be what their proposal is for actually producing this, and
7    if it's not happening fast enough, you know, I can order
8    them to spend more money and hire more lawyers or contract
9    attorney, whatever I feel I have to do, or just give them a
10   deadline more likely, and if they don't meet it, then
11   there'd be a sanction.

12        But I've got no - I don't really have the
13   information right now to do it, and I'm authorizing you,
14   Miss Garay, to extract it from them, and I'm ordering them
15   to tell you.  So when the time comes, if you think it isn't
16   happening fast enough, you can present it to me.

17        MS. GARAY:  Thank you, Your Honor.  I guess what
18   my frustration is with this lawsuit hanging over my
19   client's head is that the plaintiff was supposed to begin
20   production at the end of December, so I'm really shocked to
21   hear May 1, I don't care that it's new counsel.  The
22   plaintiff should have had this all lined up and ready to
23   go.  We only put this off --

24        THE COURT:  Well, one of the things that they
25   should be revealing to you is what's been done already.  If

1   the answer is nothing has been done, then I think there may

2   be a good sanction motion if literally nothing has been

3   done.  Do you know the answer to that question?

4          MR. REUBER:   Your Honor, all the information has

5   been taken and secured from our client that we believe was

6   responsive.

7          THE COURT:   Well, no, no, hold on.  That you

8   believe was responsive.  Does that mean some effort was

9   made to sort through documents to get responsive -

10         MR. REUBER:   Sort through documents, no, but the

11  search terms that were used need discovery protocols.  They

12  came back with certain results.  Those results were copied

13  to another disk and are currently being held --

14         THE COURT:   So search terms have been run.

15         MR. REUBER:   Search terms have been run.

16         THE COURT:   Okay, so some things have happened.

17         MR. REUBER:   Some things have happened.

18         THE COURT:   Again, Miss Garay, I don't want to do

19  this now.  I want Mr. - is it Ruben?

20         MR. REUBER:   Reuber.

21         THE COURT:   Reuber, okay, hard to read.  I want

22  Mr. Reuber to tell you everything about this and to give

23  you all the information, including what he just told me

24  here.  Do you understand you have to do that, Mr. Reuber?

25         MR. REUBER:   Your Honor, I --

25

1          THE COURT:    Anything she want to know about

2  what's happened in the past, what's been done, you've got

3  to tell her.

4          MR. REUBER:    I have no objection to that, Your

5  Honor.

6          THE COURT:    Okay.  So I can't tell right now

7  whether that reflects sufficient compliance with what was

8  supposed to be going on or not, but I don't want this

9  presented on the fly.  If you have a serious motion you

10 want to make for sanctions because they didn't do what they

11 were supposed to do with the last attorney, then make it

12 based upon the information you get from Mr. Reuber.  If

13 not, proceed in the manner I'm talking.  Do you understand,

14 Miss Garay?

15         MS. GARAY:    Yes, Your Honor.

16         THE COURT:    Okay.  Miss Garay, anything else you

17 think we should be doing now?

18         MS. GARAY:    No, Your Honor.

19         THE COURT:    Mr. Reuber, anything?

20         MR. REUBER:    No, Your Honor.

21         THE COURT:    All right, thank you, everyone.

22         MR. SLOANE:    Thank you, Your Honor.

23         (Whereupon the matter is adjourned.)

24

25

26

## C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Ritani v. Aghajayan,

Docket #11cv8928, was prepared using digital transcription

software and is a true and accurate record of the

proceedings.

Signature_____

Date:  May 2, 2013