# MEYER SUOZZI

Erica B. Garay

Meyer, Suozzi, English & Klein, P.C.
990 Stewart Avenue, Suite 300
P.O. Box 9194
Garden City, New York 11530-9194
Direct Dial: 516-592-5770   Office: 516-741-6565
Fax: 516-741-6706
egaray@msek.com
www.msek.com

January 14, 2015

**VIA ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

    Re:   *Ritani v. Aghjayan*
             11-cv-08928 (RWS) (GWG)

Dear Magistrate Judge Gorenstein:

    We write on behalf of Defendants in the above-referenced action and Defendants' ESI Consultant, Business Intelligence Associates, Inc. ("BIA"), and its employee, Adam Feinberg, to request a pre-motion conference pursuant to Your Honor's Rule 2(A). Defendants seek an order quashing and/or limiting six subpoenae served by Plaintiff seeking the production of documents and deposition testimony from BIA, Mr. Feinberg, and upon Defendants' other ESI Consultant, Document Technologies, LLC ("DTI"), and its employee, Jeff Green, annexed hereto as Ex. A [collectively referred to as "ESI Subpoenae"]. [BIA and DTI are referred to as "the ESI Consultants".] Defendants also ask that Plaintiff be limited to ten depositions as required by Fed. R. Civ. P. 30. Plaintiff has now sought 15 depositions, exceeding the limit established by the Rule. Fact discovery is set to end January 30, 2015.

    The ESI Subpoenae (annexed as Ex. A) seek both the production of written communications between non-testifying ESI consultants and Defendants and Defendants' counsel and testimony concerning those communications and the work performed at the direction of Defendants' counsel. The communications between the ESI Consultants and counsel to Defendants do not relate to the underlying claims of Ritani. Neither of the ESI Consultants has been identified by Defendants as a testifying expert. It appears that Ritani's sole purpose for this discovery is to obtain "discovery about discovery." Thus, they invade both the attorney-client and attorney work-product privileges and seek information and documents immune from discovery, and, for these reasons, should be quashed.

    Ritani has failed to notice a single deposition of any Defendant, although fact discovery is set to end shortly, but has advised that it intends to depose all six defendants in six separate depositions. It has also recently served subpoenas on two additional non-party witnesses. Accordingly, it is now seeking more than ten depositions; it previously noticed another three

The Honorable Gabriel W. Gorenstein
January 14, 2015
Page 2

non-party depositions, which it has now, apparently, abandoned. Defendants ask that Plaintiff be limited to ten depositions.

## BACKGROUND OF THE SUBPOENAE

On December 23, 2014, Ritani provided Defendants' counsel with copies of the six ESI Subpoenae addressed to the two ESI Consultants used by Defendants' counsel to either harvest or produce ESI in this case. The ESI Subpoenae are exceedingly broad and seek both testimony and documents concerning communications between these non-testifying consultants and Defendants' counsel (and with Defendants). Plaintiff has been asked to voluntarily withdraw or limit the subpoenae, but refuses to do so.

Neither DTI nor BIA have been identified by Defendants as an "expert" pursuant to this Court's Order and/or Rule 26. Rather, these witnesses have acted only as non-testifying ESI Consultants to counsel.

BIA imaged Defendants' drives and collected certain email accounts in August 2012. In April 2013, Defendants made their production of ESI (after conducting a relevance review as Plaintiff's then-counsel refused to provide search terms). On January 7, 2014 at about 5 a.m., a few hours before a meet and confer regarding discovery issues, Plaintiff's counsel sent a letter regarding issues Plaintiff had regarding Defendants' ESI production ["January 7th Letter"]. This communication raised for the first time issues concerning "zero bytes" and "corrupt" email attachments and additional apparently unsearched email accounts. In the weeks following the January 7th Letter, we attempted to sort through these issues with the assistance of these ESI Consultants, recover and produce additional emails, and otherwise address the zero byte and corrupt file issues.

As part of our attempt to resolve this issue with Plaintiff and after a March 2014 court conference, in April 2014, Plaintiff was provided with affidavits that set forth what BIA and DTI had done to harvest and produce ESI, including their efforts to address the zero byte and corrupt attachment issues. Notwithstanding, Plaintiff again raised this issue with the Court. Because Plaintiff's May 29, 2014 letter to the Court did not include the affidavits previously provided (but referred to them), Defendants provided them to the Court. At a June 18, 2014 court conference (transcript annexed as Ex. B), this Court ordered that Defendants' imaged hard drives be provided to Plaintiff's ESI "expert" who would attempt to recover the 133 corrupt or zero-byte attachments from the specific "PST" file in question, determine if one or more viruses infected Defendants' computers and when, and examine only metadata (but not content) to determine what files were deleted, when and how (*e.g.*, via virus). In September 2014, Plaintiff's "expert" provided a report (later amended in October 2014) which found that he could not recover any of the corrupt or zero-byte attachments from the PST file in question. His report also confirmed that several viruses were indeed on the drives. (We believe his report indicates that he also exceeded the work authorized by this Court's Order including because he examined some content).

The Honorable Gabriel W. Gorenstein
January 14, 2015
Page 3

## SCOPE OF ESI SUBPOENAE AND MEET AND CONFER

The ESI Subpoenas are overly broad. The "Relevant Period" of the subpoenae to DTI is stated as being April 1, 2007 through April 1, 2015. The "Relevant Period" of the subpoena to BIA is April 1, 2007 through July 1, 2015. This lawsuit was not filed until December 2011, and obviously, the "relevant period," cannot precede these Consultants' retention, nor can it go into the future.

Further, the ESI Subpoenae seeking documents request:

(1)  "all [BIA or DTI] documents and communications reflecting or concerning the preservation, collection, and examination of Defendants' ESI in the lawsuit;"

(2)  all work performed in connection with affidavits submitted by Messrs. Feinberg and Green; and

(3)  "Whether, when, and in what context [BIA or DTI] was advised that a computer virus was responsible for the destruction of some of Defendants' ESI in The Lawsuit."

The "deposition topics" are identified as:

(1)  "The preservation, collection, and examination of Defendants' ESI in The Lawsuit;"

(2)  the Feinberg and Green affidavits and "all work performed in connection with the representations therein;"

(3)  "Whether when, and in what context [BIA or DTI] was advised that a computer virus was responsible for the destruction of some of Defendants' ESI in The Lawsuit;"

(4)  "All [BIA or DTI] communications concerning the preservation, harvesting, and production of Defendants' ESI;" and

(5)  "Identification, authentication, and explanation of all documents produced pursuant to this subpoena."

In other words, the ESI Subpoenae expressly seek <u>all</u> information and documents and communications possessed by the ESI Consultants in connection with their engagement. The scope includes materials covered by the attorney-client and work product privileges. Reviewing hundreds of emails (both with counsel and internal emails, communications and documents) to redact privileged material and/or to create a privilege log would take a considerable amount of time and be costly.

Plaintiff's counsel, Mr. Reuber, notified us of his intention to serve these subpoenas at 11:15 p.m. on December 23, 2014 (our office was closed the next two days for Christmas Eve and Christmas Day). On December 30, 2014, we requested a meet and confer regarding the subpoenas. On December 31, 2014, Mr. Reuber advised that no one at his firm was available to

The Honorable Gabriel W. Gorenstein
January 14, 2015
Page 4

meet and confer that week.  Finally, on January 7, 2015, and after Defendants served a formal objection to these subpoenae on January 6, 2015, I and my colleague, Lynn Brown, had a telephone call with Mr. Reuber that lasted from 6:30 p.m. to 6:41 p.m., during which Mr. Reuber refused either to withdraw or modify the subpoenas, and we advised him that we were at an impasse and that Defendants would be seeking relief from the Court.  (Defendants served objections to the subpoenae on their own behalf and on behalf of BIA, a copy of which is Ex. C.)

## OBJECTIONS

The ESI Subpoenae served on DTI, BIA and Messrs. Green and Feinberg seek documents and testimony protected by the attorney-client privilege and work product doctrine, and/or seek information as to which Plaintiff is not entitled to discovery pursuant to Fed. R. Civ. P. 26(b)(3)(A) and 45(d)(3)(A)(iii) and (B)(ii), and are overly broad and burdensome. Defendants ask that they be quashed (and/or limited).  Further, Defendants ask this Court to put an end to Plaintiffs' "discovery on discovery," as no legitimate purpose exists therefor, but rather needlessly to extend the discovery period and increase costs.  Defendants are individuals and start-up (or defunct) companies.  Plaintiff, on the other hand, is an established entity now owned by Cantor Fitzgerald (and one of the owners of the world's largest diamond purveyors) whose resources vastly exceed Defendants'.

The communications between BIA and DTI (and their employees) and Defendants or their counsel, or their internal communication are protected by the attorney-client and/or work product privileges. The protection afforded by the work product doctrine applies to work product by a party and its representatives, including the party's consultants and non-testifying consultants/experts. Fed. R. Civ. P. 26(b)(3)(A), 45(d)(3)(A)(iii) and (B)(ii).  The work product doctrine is broader than the attorney-client privilege.  *Hickman v. Taylor,* 329 U.S. 495, 508 (1947).  The work product doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from the unnecessary intrusion by his adversaries." *United States v. Adlman,* 134 F.3d 1194, 1196 (2d Cir. 1998), *quoting Hickman,* 329 U.S. at 510-11. *See Williams v. Bridgeport Music, Inc.,* 300 F.R.D. 120, 123 (2014) (Sweet, J.) (the purpose of the work product doctrine is to encourage zealous advocacy, protect privacy and prevent fishing expeditions). The work product doctrine protects the ruminations by an attorney or party concerning the strategy to be followed in a litigation. *In Re Grand Jury Subpoena Dated Oct. 22, 2001,* 282 F.3d 156, 160-61 (2d Cir. 2002) (noting that work product also applies to factual investigations).  The Agreements between these Consultants and Defendants or their counsel recognize the privileged nature of the communications, files and work product and agreed to keep them confidential.

BIA and DTI (and their employees, Messrs. Feinberg and Green), were hired as non-testifying consultants for the express purposes of advising and assisting counsel with electronic discovery in this matter, and, further, to respond to specific inquiries made by Plaintiff herein regarding the harvesting and processing of Defendants' ESI.  The ESI Subpoenae addressed to DTI, BIA and Messrs. Green and Feinberg seek testimony, documents and communications that were prepared and communications that took place solely to assist Defendants and their counsel in this endeavor, and, for this reason, and because they were prepared by or for a party, or by or for its representatives, the material and testimony sought by the ESI Subpoenae are protected by

The Honorable Gabriel W. Gorenstein
January 14, 2015
Page 5

the attorney-client privilege and work product doctrine and, thus, not discoverable. The ESI Subpoenae invade these privileges and would have a chilling effect on communications between counsel and non-testifying consultants, which is why Fed. R. Civ. P. 45 mandates the issuance of a protective order to protect attorney-client communications and permits such in order to protect work product.

Further, Federal Rules of Civil Procedure 26(b)(4)(D) provides that "ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or to prepare for trial and <u>who is not expected to be called as a witness at trial</u>," unless as provided under Rule 35(b) or the party shows "exceptional circumstances." *See Williams,* 300 F.R.D. at 122-23 (emphasis added). The ESI Subpoenae seek to discover such protected information, as well as communications with Defendants and their counsel, from both BIA and DTI, neither of whom Defendants intend to offer as witnesses at trial. As such, the discovery sought does not seek information of an opinion or work efforts that would be discoverable and thus, is improper. *See Employees Committed For Justice v. Eastman Kodak Co.,* 251 F.R.D. 101, 104 (W.D.N.Y. 2008) ("[w]hen an expert is retained as a litigation consultant, however, materials reviewed or generated by the expert are generally privileged and immune from disclosure"). Neither DTI nor BIA (nor Jeff Green nor Adam Feinberg) have been identified as testifying experts. No "exceptional circumstances" exist here for overcoming the work-product doctrine, nor does Rule 35(b) apply. They should be quashed on these bases. *See* Rule 45(d)(3)(A)(iii).

Notably, the ESI Subpoenae are <u>not</u> seeking information solely about what these consultants <u>did</u> to harvest and produce – that is set forth in their affidavits (and as far as we know, <u>not in dispute</u>) – but <u>what they were told</u>, either by Defendants and/or their counsel, and what information and views they shared therewith. This request for communications (and testimony concerning same) is patently improper, as it clearly seeks the disclosure of communications with Defendants themselves and/or their counsel, and the mental impressions, conclusions, opinions, or legal theories of Defendants' attorneys and their consultants.

The affidavits previously provided about what these Consultants did, which were proffered only to address an issue Plaintiff itself created, should suffice, particularly, as here, Plaintiff obviously does not have a legitimate interest in obtaining the discovery sought from these ESI Consultants. *See Hanan v. Corso,* No. CIV.A. 95-0292(TPJ)(JMF), 1998 WL 429841 (D.D.C. Apr. 24, 1998) at *7 (when defendant provided several declarations concerning efforts to comply with plaintiff's discovery requests, plaintiff was not entitled to further discovery concerning this process because plaintiff "[did] not specify what additional information the new discovery will yield which these declarations [did] not contain").

The ESI Subpoenae also are burdensome because they ask for the production and require the review of <u>every</u> communication and document with respect to BIA's and DTI's assignment(s) (which we believe amounts to hundreds of communications and documents). Review of such material is unduly burdensome, given the likelihood that the vast majority (if not virtually all) would be privileged and thus, not produced or would need to be redacted. Just placing these documents on a privilege log would likely cost thousands of dollars, a cost Defendants should have to not bear.

The Honorable Gabriel W. Gorenstein
January 14, 2015
Page 6

Under Rule 26(c), the trial court has "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." *Orillaneda v. The French Culinary Inst.,* No. 07 Civ. 3206 (RJH)(HBP), 2011 WL 4375365 (S.D.N.Y. Sept. 19, 2011) at *5, *quoting Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984). Here such a limit is appropriate. *See also* Rule 45(d) (requiring quashing or modification of subpoena seeking privileged matter).

We also ask the Court to put a halt to Plaintiff's year-long effort to engage in "discovery on discovery," which has been both costly and has caused extensive delays. Indeed, as we have previously advised this Court, Plaintiff already possesses sufficient evidence of Defendants' supposed wrongdoing (and does not require every piece of paper and communication as sought), including thousands of emails produced by Defendants between themselves and their "business partner" in China, Alexan Khatchadorian. Indeed, Plaintiff has used these very emails to identify which designs it claims belong to Ritani (*i.e.,* which it now contends were all allegedly created during the period of Harout Aghjayan's employ and during the one year non-compete (which can be established without any ESI), and others as "derivative" of such), and when such were transmitted back and forth with Alexan. Indeed Plaintiff has had a catalogue since 2011 of all designs then being offered for sale and documentation of Defendants' sales, losses and profits and profit margins have been produced. Thus, Plaintiff's ongoing investigation into Defendants' production herein, including its demand for every communication and document with Defendants' ESI Consultants, serves no legitimate purpose and is unrelated to Plaintiff's actual claims.

"Discovery on discovery" is disfavored as expensive and time-consuming. As recently noted in *Freedman v. Weatherford Int'l Ltd.,* No. 12 Civ. 2121 (LAK) (JCF), 2014 WL 4547039 at *1, 2 (S.D.N.Y. Sept. 2, 2014) (citations omitted), while "discovery on discovery" is sometimes warranted, such is not appropriate where a plaintiff seeking such "[has] not proffered an adequate factual basis for their belief that the current production is deficient." In denying such "discovery on discovery" on Plaintiff's motion for reconsideration, Magistrate Francis decided that requests for discovery about discovery "should be closely scrutinized in light of the danger of extending the already costly and time consuming discovery process *ad infinitim.*" Here, Plaintiff has never contended that it does not already have sufficient evidence of which designs were created and when, and even now, has not claimed that Defendants' ESI Consultants did not do whatever was reasonable to recover documents that had been deleted or were lost. Plaintiff cannot show that what BIA or DTI was told either by counsel or Defendants relates to what ESI was harvested and produced. Plaintiff wants discovery of the express advice exchanged with counsel as to all aspects of these Consultants' multiple assignments, including how to get to the bottom of the issues belatedly raised by Plaintiff, including specifically, what they told nearly three years ago either by Defendants or Defendants' counsel regarding viruses (which Plaintiff's expert has confirmed existed). Discovery of Defendants' ESI Consultants (including communications with Defendants' counsel) would have a chilling effect on all such communications between parties, their lawyers, and their non-testifying consultants. This harm is significant, going far beyond this particular lawsuit. Plaintiff is free to ask Defendants what they did with their ESI and about their communications and activities with Khatchadorian.

The Honorable Gabriel W. Gorenstein
January 14, 2015
Page 7

The tail wagging the dog here is Plaintiff's claim that Alexan produced more emails between himself and Defendants than Defendants produced. As Magistrate Francis has noted, however, "[t]he Federal Rules of Civil Procedure do not require perfection." Defendants, concede (and have conceded all along), that there may have been instances where documents produced by non-party Alexan Khatchadorian to Plaintiff were not produced by Defendants. Defendants made a relevance review and "de-duped" their production, which may account for the differences in the number of emails produced by them versus Alexan. At no time in our discussions has Plaintiff maintained that there are emails that are not available to it or that it is somehow prejudiced by something "missing". (If Plaintiff believes it has the makings of a spoliation motion it should make it so that Defendants can address the merits of such claim. Merely threatening the possibility of such is not proper.)

Undoubtedly, and as previously noted, by reason of Plaintiff's ability to identify particular designs that it contends were improperly exchanged with Alexan and the prior service of Responses to Request for Admissions, Plaintiff has sufficient evidence concerning the creation and sale of the subject bridal jewelry. It has the option to depose Defendants about viruses and their document retention policies, which it still has not done. Thus, this attempt to obtain yet more evidence regarding viruses and Defendants' harvesting of ESI from Defendants' Consultants appears to be a mere tactic, and we respectfully ask the Court to quash the ESI Subpoenae, and require Defendants to proceed with legitimate fact discovery scheduled to end on January 30, 2015.

### Excessive Number of Depositions

Besides these six ESI Subpoenas seeking testimony of non-parties (DTI, BIA, Mr. Green and Mr. Feinberg), Plaintiff has noticed the depositions of non-parties "Mireya" and International Diamond Distributors, Inc. Plaintiff previously served three additional non-party subpoenae, which apparently were abandoned. Having advised that it also seeks to depose each of the six Defendants individually, Plaintiff seeks a total at least of 12 depositions. (Plaintiff also served three prior subpoenas on non-parties (including Defendants' attorney) which it apparently has abandoned after Judge Sweet dismissed certain claims.) Rule 30 limits each party to 10 depositions per side. Plaintiff has not sought a court order permitting it to exceed the permissible number. Defendants brought this to Plaintiff's attention during the January 7, 2015 telephone call, but Plaintiff refused to withdraw any of the subpoenaes so as to comply with the Federal Rule nor has it sought leave of Court. We therefore request that the Court preclude Plaintiffs from taking an excessive number of depositions.

Respectfully submitted,

Erica B. Garay

EBG:mr
Attachments

The Honorable Gabriel W. Gorenstein
January 14, 2015
Page 8

cc:    Cameron Reuber, Esq. (via ECF)
       Peter S. Sloane, Esq. (via ECF)
       Patrick Papalia, Esq. (via ECF)
       Brian Schrader, Esq., BIA (Via Email)
       DTI (Via Email)

1034708