# LEASON ELLIS

May 18, 2015

**VIA ECF and FEDEX**

The Honorable Gabriel W. Gorenstein
Southern District of New York
500 Pearl Street
New York, New York 10007

One Barker Avenue
Fifth Floor
White Plains, New York 10601
t. 914.821.3092
f. 914.288.0023

Victoria T. Polidoro
Associate
Polidoro@leasonellis.com

Re:  *Ritani, LLC v. Harout Aghjayan, et al.*
1:11-cv-08928 (RWS) (GWG)

Dear Judge Gorenstein:

We are counsel for Plaintiff in the above-referenced civil action. We write to request that the Court address the following issue in a conference at its earliest opportunity. We note that the next conference with the Court will take place on May 21, 2015 at 4 p.m.

Meet and Confer

Prior to seeking judicial intervention with regard to the matter outlined below, we met and conferred with opposing counsel on Friday, May 15, 2015. Cameron Reuber participated in the telephonic meet and confer on behalf of Plaintiff, and Patrick Papalia participated on behalf of Defendants. The telephone conference lasted about 30 minutes and entailed a discussion of outstanding discovery matters in this case, including the instant matter. The parties were not able to amicably resolve the following, which has led to our seeking judicial intervention. *See Dkt*. 209.

Summary of Issue

Mr. Papalia continues to frustrate Plaintiff's ability to acquire discovery into his clients' business and sales. He routinely refuses to engage Plaintiff's counsel on operative case issues involving his clients and, instead, practices a strategy of distraction, avoidance, and verbal abuse. That is, rather than address any given issue on the merits, Mr. Papalia attacks the good faith, competence, and/or integrity of his adversary. Once limited to only discovery sought from his own clients, such tactics have now expanded to frustrate Plaintiff's ability to acquire discovery from *third-parties*. Plaintiff seeks a court order directing Mr. Papalia to abstain from further misconduct as well as sanctions for his egregious behavior outlined below and costs pursuant to Rule 30(d)(2), 28 U.S.C. §1927, and the inherent power of the Court to impose sanctions for attorney misconduct.

Relevant Facts

Plaintiff subpoenaed documents and testimony of International Diamond Distributors, Inc. (IDD). IDD is the largest reseller of Defendants' jewelry. IDD has also collaborated with Defendants on branding and product development. IDD is represented by Mr. Anthony Suarez of Werner Suarez Moran, LLC (*i.e., not* Mr. Papalia). Plaintiff and Mr. Suarez agreed that documents produced by IDD would be in native format, and that testimony would proceed after Plaintiff's counsel was afforded a reasonable amount of time to review the produced documents.

LEASON ELLIS

The Honorable Gabriel W. Gorenstein
May 18, 2015
Page 2

Nevertheless, on February 27, 2015, IDD produced documents consisting of voluminous spreadsheets indicating sales by IDD of Defendants' jewelry sold under the name "Harout R" or "Mireya" as well as emails relating to said sales.[1] The production consisted of several hundred pages of documents. The production was *not* in native format and was otherwise incomplete. Plaintiff's counsel discussed these issues with Mr. Suarez, who indicated his client would timely correct the deficiencies. Mr. Suarez later indicated that his client was leaving the state on business on April 13th, but would be available to testify (i) until 1:30pm on April 13th or (ii) on an alternate date. Plaintiff agreed to go forward on April 13th until 1:30pm, as long as the native files were produced in advance. On April 7th the undersigned reached out to Mr. Suarez to inquire when the native files would be produced, further reminding him that some time was necessary for our review. Mr. Suarez indicated he was away and asked to discuss the issue on Monday, April 13th.

On April 9th, the undersigned, Mr. Reuber, and Mr. Papalia discussed, *inter alia*, the scheduling of the IDD deposition during a telephone conference. Plaintiff's counsel sought Mr. Papalia's availability to reschedule the deposition since IDD had not yet complied with its discovery obligations. Mr. Papalia indicated that the deposition would go forward as scheduled. This position was confusing to us as (i) Mr. Papalia was aware of IDD's discovery deficiencies and (ii) Mr. Papalia had *not* cross-noticed IDD for a deposition. When I directed Mr. Papalia to correspondence with Mr. Suarez that refuted his contentions, he immediately became verbally abusive, at which point I excused myself from the call and left Mr. Reuber to complete same. Mr. Papalia thereafter advised Mr. Reuber to "check his email" and, shortly thereafter, Mr. Suarez sent an email confirming the April 13th deposition, but failing to address the production timetable. We responded to Mr. Suarez that same day, indicating (i) a preference to complete the IDD deposition in one day, but also (ii) a willingness to proceed on April 13th and reconvene again after IDD completed its production. Mr. Suarez's replied on April 10, indicating that "[i]t seems that the deposition of my client will need to be rescheduled. [...] Please advise of alternate [d]ates." Mr. Papalia again objected, emailing that "[t]here is no basis to adjourn."

On the morning of Friday, April 10th, Mr. Reuber again requested Mr. Suarez provide (1) a date we could expect to receive the native files, and (2) a date his client was available for deposition (indicating if it was after the close of discovery on April 17th, the parties would need to bring the issue before the court). Throughout that day Mr. Papalia sent additional contentious emails to Plaintiff's counsel, resulting in a second phone conference, where he again indicated that the deposition would go forward. When we pointed out that Mr. Suarez had indicated otherwise, discussed *supra*, Mr. Papalia responded that we should again "check our email." Shortly thereafter, Mr. Suarez sent an email indicating the native files had been provided and his client was prepared to go forward on Monday. Confused, the undersigned inquired of Mr. Suarez as to when and how IDD had completed its production, but before Mr. Suarez responded, Mr. Papalia directed the undersigned to an FTP link (Dropbox) that Suarez had presumably forwarded him and him alone.

The deposition went forward on April 13th. Mr. Alok Mehta attended on behalf of IDD and Mr. Suarez defended. Despite a short delay due to Mr. Suarez arriving about 20 minutes late, the deposition was completed a few minutes before 1:30 p.m.

---

[1] The majority of the emails provided by IDD are between its personnel and Defendants concerning the marketing and sale of Defendants' jewelry. Notably, **none** of the emails produced by IDD were produced to Plaintiff by Defendants, despite numerous document requests for these exact communications.

LEASON ELLIS

The Honorable Gabriel W. Gorenstein
May 18, 2015
Page 3

### Mr. Papalia Interfered in Plaintiff's Deposition of IDD

I have personally spent several hours with Mr. Papalia communicating about discovery in this case, both in via teleconferences as well as during and after five depositions of Defendants that Mr. Papalia defended. I am well aware of his argumentative and avoidance tactics off-the-record as well as his lengthy objections and insistence on having inappropriate discussions on-the-record. Despite having witnessed his vexatious behavior on numerous occasions, his behavior during the IDD deposition caught his abrasive "off-the-record" conduct on camera. Therein, Mr. Papalia repeatedly interrupted my questioning in what can only be interpreted as an attempt to bully me. Indeed, Mr. Papalia also attempted to bully the witness as well as Mr. Suarez.

The most outrageous and inflammatory conduct took place toward the end of the deposition, wherein the camera shows Mr. Papalia aggressively leaning across a conference table and shouting at, pointing at, and finally insulting me as I was in the midst of a line of questioning. He eventually stormed out of the deposition. Specifically, Mr. Papalia attempted to engage me in an inappropriate dialogue while I was posing a question to the witness, incorrectly stating that I had indicated to the witness and Mr. Suarez that I would be "getting done today." [IDD Depo. Tr. at P:184, L:7 – P:185 L:9].[2]

Clearly not satisfied with my effort to move the deposition along by suggesting that he save his arguments for when testimony had concluded, Mr. Papalia interrupted my examination again, but this time with tangible hostility. Mr. Papalia demanded that I immediately answer his question regarding the time the deposition would finish and whether it would continue another day. He then launched into a verbal attack – insulting my ability to ask questions, shouting louder each time I tried to answer him, leaning across the table to point his finger in my face in an attempt to frighten, belittle, and embarrass me in front of the witness. Mr. Mehta even attempted to intervene on my behalf during this assault. [IDD Depo. Tr. at P:187, L:9 – P:193, L:6]. This outburst was devoid of any consideration for the witness's limited time to answer Plaintiff's questions as well as any respect for the witness, his counsel, the court reporter, or the undersigned. It wholly undermined and prejudiced my ability to fairly examine Mr. Mehta on behalf of Plaintiff.

Although the examples illustrated above are the most egregious, alone warranting sanctions, other examples of Mr. Papalia's disruptive behavior also merit consideration by the Court. Mr. Papalia was offended that copies of exhibits (numbering in the hundreds of pages) were not printed for his reference. He thereafter proceeded to launch into another lengthy inquiry of me while a question was pending. [IDD Depo. Tr. at P:35, L:8 – P.38, L10]. Throughout the remainder of the deposition Mr. Papalia snatched every document out of my hands that I attempted to provide to Mr. Suarez, ultimately asking Mr. Suarez to "share" marked exhibits with the witness so that he could have the courtesy copies which had been printed for defending counsel. [IDD Depo. Tr. at P: 76, L:10 – P:78, L:2].[3] This behavior was simply invasive and unacceptable.

---

[2] For the courts ease of reference hyperlinks to the transcript and video of the deposition of IDD which took place on April 13, 2015 are included, and will be referred herein as the "IDD Depo. Tr.". A CD containing the hyperlinked version was sent via FedEx to the court and opposing counsel, inclusive of a copy of the entire deposition transcript.

[3] Notably, almost all of the exhibits derived from IDD's production, which were clearly in Mr. Papalia's possession prior to the deposition (and, indeed, in his possession prior to their production to Plaintiff (*i.e.,* via the Dropbox).

LEASON ELLIS

The Honorable Gabriel W. Gorenstein
May 18, 2015
Page 4

Despite the fact that Mr. Papalia's role at the deposition was limited, and that the time for the deposition was abbreviated to less than four hours, Mr. Papalia acted as though I were conducting the deposition on his behalf. He not only attempted to order me around, but did the same to Mr. Suarez and the witness. Mr. Suarez at one point attempted to go off the record and Mr. Papalia refused he be afforded that opportunity [IDD Depo. Tr. at P:136, L:9 – P:137, L:20] Mr. Mehta's phone rang repeatedly at another point (albeit on silent), and before I had a chance to indicate that the witness was entitled to take a break if he had a matter to attend to, Mr. Papalia interrupted the witness mid-answer to instruct him to turn off his phone and continue with the deposition. [IDD Depo. Tr. at P:150, L:17 – P:152, L23].

Notably, Mr. Suarez made a total of 1 objection to form. His objection was reasonable, and in line with the federal rules which state an objection should be "stated concisely and in a non-argumentative and non-suggestive manner." *See* F.R.C.P. 30(d)(1). In contrast, Mr. Papalia would object via sarcastic, argumentative dialogue. [IDD Depo. Tr. at P:22, L:10 – P:27, L: 19]. In fact, Mr. Papalia directed a total of 13 unsolicited and often obnoxious attacks towards me during the examination, even where Mr. Suarez did not object to the question and Mr. Mehta understood my inquiry. [*See e.g.,* IDD Depo. Tr. at P:29, L:9 – P:31, L:2] and [P:51, L,11 – P:52, L:9]. Although I admittedly could have phrased questions more clearly, the point remains Mr. Papalia's intention was to disrupt the deposition, undermine my ability to examine the witness unmolested, and ultimately, frustrate Plaintiff's ability to gather evidence from the primary reseller of Defendants' jewelry, sufficient to support Plaintiff's damages case.[4]

Although somewhat of an aside, but absolutely exemplary of his abusive "off-the-record" conduct when engaging an adversary, Mr. Papalia launched a personal attack on me during and after the IDD deposition. His actions during the deposition are illustrated above. His actions following the deposition took place during the meet-and-confer on May 15, 2015, wherein Mr. Papalia stated to Mr. Reuber that I was, in short, unqualified, incompetent, and "out of his league." Despite the fact that I take personal offense to his statements, as I am an experienced litigator, trial attorney, and former Assistant District Attorney who has practiced law in New York since 2007, I submit these statements to show that the behavior cataloged herein was an effort to frustrate and intimidate an adversary who Mr. Papalia believed to be inexperienced and unable to weather his attack, and not for any other purpose.[5]

Conclusion

Mr. Papalia's conduct, as demonstrated herein, establishes beyond cavil that he does not respect the undersigned, nor the federal litigation process itself. This Court has held that "[u]nder Section 1927 and their inherent power, courts have imposed deposition costs on attorneys 'whose disruptions of a deposition rendered it futile and ineffective, and were obnoxious to the orderly, reasonable, and proper conduct of an examination.'" *See Morales v. Zondo, Inc.*, 204 F.R.D. 50 (S.D.N.Y 2001)(citing *Unique Concepts, Inc. v Brown*, 115 F.R.D. 292, 293-294 (S.D.N.Y. 1987).

---

[4] As will be discussed at the upcoming discovery conference with Your Honor, Defendants refuse to produce any record of sales to IDD, income generated by IDD, or their communications with IDD.

[5] Indeed, the behavior described above is consistent with Mr. Papalia's conduct at prior depositions. If the court wishes, I will provide the record illustrating each such example of Mr. Papalia's conduct at the prior depositions, most notably instructing his client not to answer questions that did not seek privileged information.

LEASON ELLIS

The Honorable Gabriel W. Gorenstein
May 18, 2015
Page 5

    Thus, Plaintiff requests that Mr. Papalia be censured, sanctioned, and/or otherwise ordered to (i) avoid such outrageous conduct in the future; (ii) pay all costs in connection with the IDD deposition; and (iii) such other relief as the Court finds just and proper. Such a response by the Court would operate as a string deterrent to such egregious behavior by attorneys in the future as all parties in every case should be able take a simple deposition of a third-party without being subjected to any manner of abuse by a fellow Officer of the Court.

                                                  Respectfully submitted,

                                                  Victoria T. Polidoro

cc:      Counsel of Record (by ECF)

{10055/608847-000/01315523.1}